**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:23-cv-01043-O** |
| | § | |
| **NORTH TARRANT INFRASTRUCTURE LLC, FERROVIAL CONSTRUCTION US CORP AND WEBBER LLC,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**APPENDIX TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7.1(i), Plaintiff Liberty Mutual Fire Insurance Company ("Plaintiff") (file this Appendix to its Motion for Summary Judgment (the "Motion").


| **Document** | **Page Nos.** |
|---|---|
| **Exhibit A**<br>Defendants' Rule 26(a) Initial Disclosures | APP 1-7 |
| **Exhibit B**<br>Affidavit of Mark D. Tillman | APP 8-11 |
| **Exhibit B-1**<br>Certified Copy of the Policy | APP 12-168 |
| **Exhibit B-2**<br>*Carroll* Lawsuit | APP 169-202 |
| **Exhibit B-3**<br>*Cross* Lawsuit | APP 203-239 |
| **Exhibit B-4**<br>*Cruz* Lawsuit | APP 240-272 |
| **Exhibit B-5**<br>*A. Davis* Lawsuit | APP 273-302 |
| **Exhibit B-6**<br>*J. Davis* Lawsuit | APP 303-330 |
| **Exhibit B-7**<br>*Freites* Lawsuit | APP 331-344 |
| **Exhibit B-8**<br>*Flach* Lawsuit | APP 345-379 |

| | |
|---|---|
| **Exhibit B-9**<br>*Garcia* Lawsuit | APP 380-412 |
| **Exhibit B-10**<br>*Genualdo* Lawsuit | APP 413-431 |
| **Exhibit B-11**<br>*Gerred* Lawsuit | APP 432-511 |
| **Exhibit B-12**<br>*Gober* Lawsuit | APP 512-531 |
| **Exhibit B-13**<br>*Herrera* Lawsuit | APP 532-557 |
| **Exhibit B-14**<br>*Jones* Lawsuit | APP 558-585 |
| **Exhibit B-15**<br>*Kilbreath* Lawsuit | APP 586-607 |
| **Exhibit B-16**<br>*Klapprodt* Lawsuit | APP 608-638 |
| **Exhibit B-17**<br>*Livesay* Lawsuit | APP 639-677 |
| **Exhibit B-18**<br>*Mays* Lawsuit | APP 678-701 |
| **Exhibit B-19**<br>*Meek* Lawsuit | APP 702-722 |
| **Exhibit B-20**<br>*Montes* Lawsuit | APP 723-735 |
| **Exhibit B-21**<br>*Mooney* Lawsuit | APP 736-753 |
| **Exhibit B-22**<br>*Morris* Lawsuit | APP 754-781 |
| **Exhibit B-23**<br>*Patel* Lawsuit | APP 782-829 |
| **Exhibit B-24**<br>*Pennington* Lawsuit | APP 830-856 |
| **Exhibit B-25**<br>*Reid* Lawsuit | APP 857-872 |
| **Exhibit B-26**<br>*Robertson* Lawsuit | APP 873-886 |
| **Exhibit B-27**<br>*Roland* Lawsuit | APP 887-905 |
| **Exhibit B-28**<br>*Toney* Lawsuit | APP 906-944 |
| **Exhibit B-29**<br>*Vardy* Lawsuit | APP 945-965 |
| **Exhibit B-30**<br>*Watson* Lawsuit | APP 966-1020 |
| **Exhibit B-31**<br>*Wells* Lawsuit | APP 1021-1066 |

Respectfully submitted,

*/s/ Mark D. Tillman*
MARK D. TILLMAN
State Bar No. 00794742
**TILLMAN BATCHELOR LLP**
5605 N. MacArthur Blvd., Suite 560
Irving, Texas 75038
Telephone: (214) 492-5720
Facsimile: (214) 492-5721
Email: mark.tillman@tb-llp.com
**ATTORNEYS FOR PLAINTIFF LIBERTY MUTUAL FIRE INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Civil Procedure, on September 6, 2024, a true and correct copy of the above and foregoing instrument was served on the following counsel of record electronically or by another manner authorize by Federal Rule of Civil Procedure 5(b)(2):

**ATTORNEY FOR DEFENDANTS**
Travis M. Brown
tbrown@cokinoslaw.com
E. Samuel Crecelius III
screcelius@cokinoslaw.com
COKINOS | YOUNG
One Galleria Tower
13355 Noel Road, Suite 1375
Dallas, Texas 75240
Telephone: (817) 635-3600
Facsimile: (817) 635-3633

*/s/ Mark D. Tillman*
MARK D. TILLMAN

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY,**<br><br>**PLAINTIFF,**<br><br>**v.**<br><br>**NORTH TARRANT INFRASTRUCTURE, LLC, FERROVIAL CONSTRUCTION US CORP., AND WEBBER, LLC,**<br><br>**DEFENDANTS.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 4:23-CV-01043-O** |

**DEFENDANTS NORTH TARRANT INFRASTRUCTURE, LLC, FERROVIAL CONSTRUCTION US CORP., AND WEBBER, LLC'S RULE 26(a) INITIAL DISCLOSURES**

TO: Plaintiff Liberty Mutual Fire Insurance Company, by and through its attorney of record, Mark D. Tillman, TILLMAN BATCHELOR, 5605 N. MacArthur Blvd., Suite 560, Irving, Texas 75038.

In accordance with Rule 26(a) of the Federal Rules of Civil Procedure, Defendants North Tarrant Infrastructure, LLC, Ferrovial Construction US Corp., and Webber, LLC serve the following Initial Disclosures.

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:

**RESPONSE:** **Liberty Mutual Fire Insurance Company, its agents, employees, and representatives**
c/o Mark D. Tillman
TILLMAN BATCHELOR
5605 N. MacArthur Blvd., Suite 650
Irving, TX 75038
Telephone: (214) 492-5720
Facsimile: (214) 492-5721
Email: mark.tillman@tb-llp.com
***Plaintiff***

**North Tarrant Infrastructure, LLC, its agents, employees, and representatives**
c/o Travis M. Brown
COKINOS | YOUNG
One Galleria Tower
13355 Noel Rd., Suite 1375
Dallas, TX 75240
Telephone: (817) 635-3600
Fax: (817) 635-3633
Email: tbrown@cokinoslaw.com
***Defendant***

**Ferrovial Construction US Corp., its agents, employees, and representatives**
c/o Travis M. Brown
COKINOS | YOUNG
One Galleria Tower
13355 Noel Rd., Suite 1375
Dallas, TX 75240
Telephone: (817) 635-3600
Fax: (817) 635-3633
Email: tbrown@cokinoslaw.com
***Defendant***

**Webber, LLC, its agents, employees, and representatives**
c/o Travis M. Brown
COKINOS | YOUNG
One Galleria Tower
13355 Noel Rd., Suite 1375
Dallas, TX 75240
Telephone: (817) 635-3600
Fax: (817) 635-3633
Email: tbrown@cokinoslaw.com
***Defendant***

Defendants incorporate by reference person(s) identified by any other party as having knowledge of relevant facts, or disclosed as a testifying or consulting expert, as well as any other person(s) identified during the course of discovery in this lawsuit.

(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment:

**RESPONSE: Please see Exhibit A – Underlying Lawsuits Tendered to Liberty Mutual.**

(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or

other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered:

**RESPONSE: Defendants do not seek damages at this time, but reserve the right to later seek damages and to challenge Plaintiff's damages calculations, if any.**

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:

**RESPONSE: None applicable.**

Respectfully submitted,

**COKINOS | YOUNG**

By: /s/ *Travis M. Brown*
Travis M. Brown
State Bar No. 24036198
tbrown@cokinoslaw.com
E. Samuel Crecelius III
State Bar No. 24105757
screcelius@cokinoslaw.com
One Galleria Tower
13355 Noel Road, Suite 1375
Dallas, Texas 75240
Telephone: (817) 635-3600
Facsimile: (817) 635-3633

ATTORNEYS FOR DEFENDANTS NORTH TARRANT INFRASTRUCTURE, LLC, FERROVIAL CONSTRUCTION US CORP., AND WEBBER, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing motion was served upon counsel for all parties via electronic mail, in compliance with the Federal Rules of Civil Procedure and applicable local rules.

January 26, 2024 — *Travis M. Brown* (/s/)

Date — Travis M. Brown

**EXHIBIT A – UNDERLYING LAWSUITS TENDERED TO LIBERTY MUTUAL**

The Underlying Lawsuits have been consolidated, pursuant to Orders in MDL Docket 21-0821, under multi-district litigation ("MDL") Cause No. 153-000000-22 in the 153rd Judicial District Court of Tarrant County, Texas; *In re February 11, 2021 Incident on IH-35W*.

The styles of the Underlying Lawsuits tendered to Plaintiff are as follows:

(1) *Charles Carroll v. Rhonda Jones, et al.*; Cause No. 067-328315-21 in the 67th Judicial District Court of Tarrant County, Texas

(2) *Richard Cross, et al. v. Coca Cola Southwest Beverages, LLC, et al.*; Cause No. 048-340172-23 in the 48th Judicial District Court of Tarrant County, Texas

(3) *Jeremy Cruz v. Nolan Transportation Group, LLC, et al.*; Cause No. 2022-004123-2 in County Court at Law No. 2 of Tarrant County, Texas

(4) *Amanda Davis v. Ernst Val, et al.*; Cause No. 342-327892-21 in the 342nd Judicial District Court of Tarrant County, Texas

(5) *Johnathan D. Davis v. Rich Transport, LLC, et al.*; Cause No. DC-21-12071 in the 68th Judicial District Court of Dallas County, Texas

(6) *Marielena De Freites, et al. v. GG's Produce Transport, LLC, et al.*; Cause No. 096-327325-21 in the 96th Judicial District Court of Tarrant County, Texas

(7) *Shaun William Flach v. Carlos Ruvalcaba, et al.*; Cause No. 342-328313-21 in the 342nd Judicial District Court of Tarrant County, Texas

(8) *David Garcia v. Hector Garcia Rodriguez, et al.*; Cause No. CC-21-03642-A in County Court at Law No. 1 of Dallas County, Texas

(9) *Paul Richard Genualdo v. NTE Mobility Partners LLC, et al.*; Cause No. 236-340162-23 in the 236th Judicial District Court of Tarrant County, Texas

(10) *Juan Gerred, et al. v. FedEx Ground Package System Inc., et al.*; Cause No. 352-327055-21 in the 352nd Judicial District Court of Tarrant County, Texas

(11) *Kerry Quinn Gober v. NTE Mobility Partners LLC, et al.;* Cause No. 342-340160-23 in the 342nd Judicial District Court of Tarrant County, Texas

(12) *Nancy Herrera v. Fed Ex Ground Package System, Inc., et al.*; Cause No. 067-328210-21 in the 67th Judicial District Court of Tarrant County, Texas

(13) *Rhonda Carol Jones v. FedEx Ground Package System, Inc., et al.*; Cause No. 153-339123-22 in the 153rd Judicial District Court of Tarrant County, Texas

(14) *Suzette Kilbreath v. Steven Ridder, et al.*; Cause No. 096-332954-22 in the 96th Judicial District Court of Tarrant County, Texas

(15) *Cathleen Klapprodt v. NTE Mobility Partners LLC, et al.*; Cause No. 141-338433-22 in the 141st Judicial District Court of Tarrant County, Texas

(16) *Angela Livesay v. Arturo Montes, et al.*; Cause No. 017-333296-22 in the 17th Judicial District Court of Tarrant County, Texas

(17) *Destiny Mays v. FedEx Ground Package System, Inc., et al.*; Cause No. 141-329929-21 in the 141st Judicial District Court of Tarrant County, Texas

(18) *David Meek v. Go To Logistics Inc., et al.*; Cause No. 352-328172-21 in the 352nd Judicial District Court of Tarrant County, Texas

(19) *Arturo Montes v. New Prime, Inc. d/b/a Prime, Inc., et al.*; Cause No. 236-340148-23 in the 236th Judicial District Court of Tarrant County, Texas

(20) *Karen Mooney v. NTE Mobility Partners, LLC, et al.*; Cause No. 096-328290-21 in the 96th Judicial District Court of Tarrant County, Texas

(21) *Terry A. Morris, Jr., et al. v. NTE Mobility Partners LLC, et al.*; Cause No. 141-339836-23 in the 141st Judicial District Court of Tarrant County, Texas

(22) *Mark Patel, et al. v. FedEx Ground Package System, Inc., et al.*; Cause No. C-650-21-B in the 93rd Judicial District Court of Hidalgo County, Texas

(23) *Christopher S. Pennington v. FedEx Ground Package System, Inc., et al.*; Cause No. C-1550-21-B in the 93rd Judicial District Court of Hidalgo County, Texas

(24) *Glenn Reid, et al. v. NTE Mobility Partners LLC, et al.*; Cause No. 048-328274-21 in the 48th Judicial District Court of Tarrant County, Texas

(25) *Roby Robertson, et al. v. NTE Mobility Partners LLC, et al.*; Cause No. 067-339811-23 in the 67th Judicial District Court of Tarrant County, Texas

(26) *Jennifer Rebecca Roland, et al. v. New Prime, Inc. d/b/a Prime, Inc., et al.*; Cause No DC-21-11415 in the 95th Judicial District Court of Dallas County, Texas

(27) *Kayla Toney v. Arturo Montes, et al.*; Cause No. 048-333297-22 in the 48th Judicial District Court of Tarrant County, Texas

(28) *Tamara Suzanne Vardy, Ed.D, et al. v. New Prime, Inc. d/b/a Prime, Inc., et al.*; Cause No. DC-21-09849 in the 44th Judicial District Court of Dallas County, Texas

(29) *Jane Watson, et al. v. NTE Mobility Partners LLC, et al.*; Cause No. 342-326366-21 in the 342nd Judicial District Court of Tarrant County, Texas

(30) *Shay Wells, et al. v. FedEx Ground Package System Inc., et al.*; Cause No. 017-327863-21 in the 17th Judicial District Court of Tarrant County, Texas[1]

**Copies of the Underlying Lawsuits are available on file with the District Clerk of their respective county of filing, or with the Tarrant County District Clerk under the consolidated MDL.**

[1] Micah McGinty and Lauren Quilantan have intervened in the *Wells* lawsuit.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY,** | § | |
| **PLAINTIFF,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:23-cv-01043-O** |
| **NORTH TARRANT INFRASTRUCTURE LLC, FERROVIAL CONSTRUCTION US CORP AND WEBBER LLC,** | § | |
| **DEFENDANTS.** | § | |

**AFFIDAVIT OF MARK TILLMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

Before me, the undersigned notary, on this day personally appeared Mark Tillman the affiant, a person whose identity is known to me, and testified as follows:

1. My name is Mark Tillman. I am over 18 years of age, of sound mind and capable of making this affidavit. I am a partner with the law firm of Tillman Batchelor LLP, counsel of record for Liberty Mutual Fire Insurance Company ("Liberty" or "Plaintiff") in the above-referenced matter. I submit this affidavit in support of Plaintiff's Motion for Summary Judgment. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. As counsel for Plaintiff, I am familiar with the claim made the basis of Plaintiff's Lawsuit, and have personal knowledge of the claim file associated with his

claim. Attached hereto and incorporated by reference into Plaintiff's Motion for Summary Judgment are the following records from Plaintiff's records and files:

- **Exhibit B-1**: A true and correct copy of Policy No. TB2-691-460860-013 issued to Defendant North Tarrant Infrastructure LLC for the policy period of May 1, 2013 to May 1, 2024 (the "Policy") from Plaintiff' claim file;

- **Exhibits B-2 through B-31** are true and correct copies of the lawsuits tendered to Liberty Mutual Fire Insurance Company by Defendants as referenced in **Exhibit A** to Plaintiff's Initial Disclosures (which Disclosures are attached to Plaintiff's Motion for Summary Judgment as Exhibit A).

3. As counsel, I am aware of the fact that the records listed above as **Exhibits B-1 through B-31** are kept by Plaintiff in the regular course of business, and it was the regular course of business of LMFIC for an employee or representative of Plaintiff with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; the records were made by, or from information transmitted by, persons with knowledge of the matters set forth in them. Due to my position, I am aware that the records were made at or near the time or reasonably soon thereafter and that it is the regular practice of the business activity of Plaintiff to make these records. These records attached hereto and incorporated by reference into Plaintiff's Motion for Summary Judgment are the originals or exact duplicates of the originals.

Further Affiant sayeth not.

MARK D. TILLMAN

Sworn and subscribed before me by Mark D. Tillman on September 6, 2024.

Notary Public State of Texas
Diane M. Ferguson
Notary ID #128833556
My Commission Expires
December 22, 2027

Notary Public in and for the State of Texas

# EXHIBIT B-1

# POLICY CERTIFICATION FORM

**RE: NAMED INSURED: NOTH TARRANT INFRASTRUCTURE LLC SEGMENT 3A**

**POLICY NUMBER: TB2-691-460860-013**

**EFFECTIVE DATES: 05-01-2013 TO 05-01-2014**

**I certify this is to be a true copy of the original policy issued.**

**I certify this is to be a true copy of the original Declarations page issued.**

**I certify this is to be a true copy of the original Uninsured/Underinsured**

**Motor Rejection and/or the Personal Injury Rejection form(s).**

**This policy was retrieved from Liberty Mutual's files and is Liberty Mutual's best Current evidence of the policy. Liberty Mutual, however, reserves the right to Supplement or amend this policy should further or different terms, conditions, Endorsements, or exclusions become known. Liberty Mutual does not acknowledge that this is a certified copy of the policy, or that it is the exact copy of the policy that was delivered to the insured.**

**LIBERTY MUTUAL RESERVES THE RIGHT TO FURTHER AMEND OR SUPPLEMENT THIS POLICY SHOULD ANY ADDITIONAL TERMS, CONDITIONS OR EXCLUSIONS COME TO OUR ATTENTION.**

Lisa Donohue, Business Operations Manager
**Central Processing Operations**
**Commercial Insurance**
**Liberty Mutual Insurance**
**Lewiston, Maine**

**Date:** **09-02-2021**

North Tarrant Infrastructure LLC Segment 3A
9303 New Trails Drive
Suite 200
The Woodlands TX 77381-0000

WILLIS OF TEXAS INC
15305 NORTH DALLAS PKWY SUITE 1100
ADDISON TX 75001

CNI 90 05 01 12
Producer

Liberty Mutual.
INSURANCE

# COMMERCIAL POLICY

Policy Number TB2-691-460860-013

North Tarrant Infrastructure LLC Segment 3A
9303 New Trails Drive
Suite 200
The Woodlands TX 77381-0000

Liberty Mutual is the marketing name for the property and casualty insurance operations of Liberty Mutual Group Inc. Products may be written in the following stock insurance company subsidiaries of Liberty Mutual Group Inc.:

Liberty Mutual Insurance Company
Liberty Mutual Fire Insurance Company
Liberty Insurance Corporation
LM Insurance Corporation
The First Liberty Insurance Corporation
Liberty Insurance Company of America
Liberty Surplus Insurance Corporation
Liberty County Mutual Insurance Company
Wausau Business Insurance Company
Wausau General Insurance Company
Wausau Underwriters Insurance Company
Employers Insurance Company of Wausau

Not all products and coverages are available in all companies or jurisdictions.

 © 2011, Liberty Mutual Group. All rights reserved. 

# COMMERCIAL GENERAL LIABILITY DECLARATIONS
## OCCURRENCE

Liberty Mutual. INSURANCE

Issued By Liberty Mutual Fire Insurance Co.

| | | | |
|---|---|---|---|
| Policy Number | TB2-691-460860-013 | Issuing Office | BOSTON, MA |
| New | | Issue Date | 2013-05-16 |
| Account Number | 9-460860 | Sub Account | 0000 |

Named Insured and Mailing Address
North Tarrant Infrastructure LLC Segment 3A
9303 New Trails Drive
Suite 200
The Woodlands TX 77381-0000

Form of Business: Limited Liability Company

Policy Period: The policy period is from 05/01/2013 to 05/01/2014 12:01 A.M. standard time at the Insured's mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

### LIMITS OF INSURANCE

| | | | |
|---|---|---|---|
| Each Occurrence Limit | $ | 2,000,000 | |
| Damage to Premises Rented to You Limit | $ | 300,000 | Any one premises |
| Medical Expense Limit | $ | 5,000 | Any one person |
| Personal & Advertising Injury Limit | $ | 2,000,000 | |
| General Aggregate Limit | $ | 4,000,000 | |
| Products-Completed Operations Aggregate Limit | $ | 4,000,000 | |

### SCHEDULE

The declarations are completed on the accompanying "Declarations Extension Schedule(s)".

| | | |
|---|---|---|
| Commercial General Liability Coverage Part Premium | $ | 1,320,250 |
| Total Estimated Premium | $ | 1,320,250 |
| Other Charge(s) | $ | |

Policywriting Minimum Premium $ 1,000

Forms Applicable: See Attached Inventory

WILLIS O 0002004144
WILLIS OF TEXAS INC
15305 NORTH DALLAS PKWY SUITE 1100

ADDISON TX 75001


© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# DECLARATIONS EXTENSION SCHEDULE – CLASSIFICATION DESCRIPTIONS

Policy Number TB2-691-460860-013

| Class Code | Description |
|---|---|
| 15250 | Contracting (Medium) |


© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# DECLARATIONS EXTENSION SCHEDULE
## -- COMPOSITE RATED COVERAGES --

Policy Number TB2-691-460860-013

| Description | Premium Basis | | Rates | | Premium |
|---|---|---|---|---|---|
| All Operations of the Named Insured | Sales | 984,600,000 | Per 1000 | 1.2685 | $1,248,965 |
| Loss Prevention Expense | | | | | $71,285 |
| TOTAL | | | | | $1,320,250 |



© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

LIABILITY POLICY

Liberty Mutual.
INSURANCE

## Liberty Mutual Fire Insurance Company

(A Stock Company herein called the Company)

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations Page shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of our Board of Directors in compliance with any laws that apply.

This policy is classified for dividend purposes in DIVIDEND CLASS V.

**IN WITNESS WHEREOF**, the company has caused this policy to be signed by its President and its Secretary in Boston, Massachusetts, and the countersigned on the declaration page by a duly authorized representative of the company.

SECRETARY

PRESIDENT

GPO 4079 03 02

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

# Inventory
## Coverage Forms/Parts, Endorsements, Enclosures

COVERAGE FORMS/PARTS, ENDORSEMENTS AND ENCLOSURES FORMING A PART OF THIS POLICY AT INCEPTION:

| Form Number/Edition Date | Title |
|---|---|
| **COMMON POLICY FORMS** | |
| LIL 90 02 01 12 | All Lines Policy Cover |
| LC 00 04 08 12 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| LCS 00 01 05 12 | DECLARATIONS EXTENSION SCHEDULE - CLASSIFICATION DESCRIPTIONS |
| LCS 00 02 05 12 | DECLARATIONS EXTENSION SCHEDULE |
| GPO 4079 03 02 | Liberty Mutual Fire Insurance Company |
| IC 00 42 07 09 | Inventory Coverage Forms/Parts. Endorsements, Enclosures |
| **COMMERCIAL GENERAL LIABILITY** | |
| CG 00 01 1207 | Commercial General Liability Coverage Form |
| **Named Insured** | |
| LC 99 40 02 13 | Broad Form Named Insured - Majority Interest |
| **Deductible** | |
| LC 03 02 06 05 | Deductible - Damages and Supplementary Payments |
| **Composite Rate** | |
| LC 99 12 06 05 | Composite Rate Endorsement |
| **Coverage Endorsement(s)** | |
| CG 02 24 10 93 | Earlier Notice of Cancellation Provided By Us |
| CG 24 04 05 09 | Waiver of Transfer of Rights to Recovery Against Others to Us |
| LC 04 01 06 05 | Reasonable Force |
| LC 04 17 08 07 | Bodily Injury to Co-Employees - Supervisors and Good Samaritans |
| LC 25 13 08 08 | Non-Cumulation of Liability (Same Occurrence) |
| LC 29 01 0605 | Coverage Territory Redefined |
| LC 29 02 06 07 | Insured Contract Redefined |
| LC 29 04 08 08 | Personal and Advertising Injury - Definition of Publication |
| LC 29 06 08 08 | Personal and Advertising Injury - Occurrence Redefined |
| LC 99 03 06 07 | Unintentional Failure to Disclose |
| LN 04 05 06 05 | Broadened Damage to Premises Rented to You Coverage |
| LN 99 04 06 05 | Premium Responsibility Endorsement |

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

| Form Number/Edition Date | Title |
|---|---|
| LC 29 08 10 11 | Advertisement Redefined |
| LC 29 09 10 11 | Bodily Injury Redefined |
| LC 99 02 02 13 | Knowledge of Occurrence or Offense |
| LC 99 01 02 13 | Notice of Occurrence Offense or Injury |
| LC 04 02 10 11 | Professional health Care Services by Employees or Volunteer Workers Coverage |
| CG 21 65 12 04 | Total Pollution Exclusion with a Building Heating Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception |
| LD 99 137 0413A | Non-Vitiation |
| LD 04 35 10 11 | Products - Completed Operations - Extended Policy Period |
| LD 24 31 09 11 | Amendment - Other Insurance |

**Additional Insured(s)**

| | |
|---|---|
| CG 20 10 07 04 | Additional Insured - Owners, Lessees or Contractors- Scheduled Person or Organization |
| CG 20 37 07 04 | Additional Insured - Owners, Lessees or Contractors - Completed Operations |
| LD 20 58 04 13A | Additional Insured - Designated Person or Entity |

**TRIA Exclusion(s)**

| | |
|---|---|
| CG 21 73 01 08 | Exclusion of Certified Acts of Terrorism |
| CG 26 88 01 08 | Alaska Exclusion of Certified Acts of Terrorism |

**Other Exclusion(s)**

| | |
|---|---|
| CG 00 68 05 09 | Recording and Distribution of Material or Information in Violation of Law Exclusion |
| CG 21 34 01 87 | Exclusion - Designated Work |
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 86 12 04 | Exclusion - Exterior Insulation and Finish Systems |
| CG 22 79 07 98 | Exclusion - Contractors - Professional Liability |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| LC 21 01 06 05 | Asbestos Exclusion Endorsement |
| LC 21 02 06 05 | Silica Exclusion Endorsement |
| LC 21 04 06 05 | Discrimination Exclusion |
| LN 21 01 06 05 | Mold and Mold Related Construction Defect Exclusion |
| LC 21 06 06 07 | Lead Exclusion |

**State Mandatory**

| | |
|---|---|
| CG 01 03 06 06 | Texas Changes |
| CG 26 39 12 07 | Texas Changes - Employment-Related Practices Exclusion |
| IL 01 68 09 08 | Texas Changes - Duties |
| IL 02 75 09 07 | Texas Changes - Cancellation and Nonrenewal Provisions for Casualty Lines and Commercial Package Policies |
| LC 99 13 03 11 | Texas Disclosure Form |

**NOTICE(S) TO POLICYHOLDER**

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

| Form Number/Edition Date | Title |
|---|---|
| EN 90 48 07 09 | Disclosure - Terrorism Risk Insurance Act |
| SNI 42 01 08 10 | Loss Control Services Important Information to Policyholders Texas Liability |
| SNI 42 03 03 12 | TEXAS IMPORTANT NOTICE |
| SNI 90 01 05 12 | POLICYHOLDER NOTICE - COMPANY CONTACT INFORMATION |

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.


© ISO Properties, Inc., 2006

e. Damages because of "bodily injury" include damages claimed by any person or organization for care. loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not applyto liability for damages:

(1) That the insured would have in the absence ofthe contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract". reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage". provided:

(a) Liability to such party for. or for the cost of. that party's defense has also been assumed in the same "insured contract": and

(b) Such attomey fees and litigation expenses are for defense of that party against a civil or altemative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person:

(2) The fumishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol: or

(3) Any statute. ordinance or regulation relating to the sale. gift. distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing. selling. serving or fumishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation. disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured: or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".


© ISO Properties. Inc.. 2006

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".


© ISO Properties, Inc., 2006

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;


© ISO Properties, Inc., 2006

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.


© ISO Properties, Inc., 2006

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or


© ISO Properties, Inc., 2006

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

 © ISO Properties, Inc., 2006 

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and


© ISO Properties, Inc., 2006

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).


© ISO Properties, Inc., 2006

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and


© ISO Properties, Inc., 2006

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. Excess Insurance

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.


© ISO Properties, Inc., 2006

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".


© ISO Properties, Inc., 2006

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.


© ISO Properties, Inc., 2006

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

 © ISO Properties, Inc., 2006 

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and


© ISO Properties, Inc., 2006

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.


© ISO Properties, Inc., 2006

Policy Number TB2-691-460860-013
issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BROAD FORM NAMED INSURED - MAJORITY INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The term Named Insured includes in addition to the person or organization designated in the Declarations as the first Named Insured:

1. Not Applicable

   but only while the first Named Insured directly or indirectly owns, during the policy period, an interest therein of more than 50%; and

2. any other organization (except for a partnership or joint venture) incorporated or organized under the laws of the United States of America or its states, territories or possessions; Puerto Rico; or Canada or its provinces, but only while the first Named Insured or any of the Named Insureds in Paragraph A.1. above directly or indirectly owns, during the policy period, an interest therein of more than 50%. But:

None of the above-designated persons or organizations is a Named Insured with respect to:

(1) "bodily injury" or "property damage" that occurred; or

(2) "personal and advertising injury" caused by an offense or a series of related offenses committed

prior to the ownership interests described in Paragraph A.1. or A.2. above.

B. Paragraph 3. of Section II - Who Is An Insured is deleted.

C. The final paragraph of Section II – Who Is An Insured is replaced by the following:

A partnership or joint venture is not a Named Insured unless it is shown in the Declarations or in Paragraph A.1. of this endorsement. No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations or in Paragraph A.1. of this endorsement or for any limited liability company that is not a Named Insured.

D. The first Named Insured is authorized to act and agrees to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.


© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DEDUCTIBLE – DAMAGES AND SUPPLEMENTARY PAYMENTS

## DAMAGES WITHIN THE DEDUCTIBLE ERODE THE POLICY LIMITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| | DEDUCTIBLE AMOUNT |
|---|---|
| Bodily Injury and Property Damage Liability, Personal and Advertising Injury Liability, Medical Payments and Supplementary Payments | $ 250,000 |

A. DEDUCTIBLE

DAMAGES AND SUPPLEMENTARY PAYMENTS ERODE DEDUCTIBLE

You are responsible, up to the Deductible Amount shown in the Schedule, for the total of:

1. All damages, including amounts paid in settlement of a claim or "suit" and medical payments, plus
2. All SUPPLEMENTARY PAYMENTS

because of all "bodily injury" and "property damage" under Coverage A that results from any one "occurrence", all "personal and advertising injury" under Coverage B sustained by any one person or organization and all "bodily injury" sustained by one person under Coverage C.

We are responsible for those amounts of damages and medical expenses to which this insurance applies (subject to the applicable limits of insurance) and SUPPLEMENTARY PAYMENTS that exceed the Deductible Amount shown in the Schedule.

We have the right but not the duty to advance any part or all of these amounts. Exercise of our right to advance such amount shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy

B. EFFECT OF DEDUCTIBLE ON LIMITS OF INSURANCE

1. The Each Occurrence Limit, the Personal and Advertising Injury Limit, the Medical Expense Limit and any applicable aggregate limits of insurance are reduced by the amount of damages, as referred to in paragraph A. above, paid or payable by you within the deductible.
2. For purposes of this paragraph B., all damages are deemed to have been paid or to be payable before SUPPLEMENTARY PAYMENTS have been paid or are payable.

C. CONDITIONS

1. Recovery from Others

   In the event we recover any advance or payment made under this policy by exercising our right of subrogation, the amount so recovered shall first be applied to any payments made by us in excess of the Deductible Amount; only then shall the remainder of such recovery, if any, be applied to reduce the Deductible Amount payable or paid by you.

2. Cancellation

You must (a) promptly pay all amounts for which you are responsible under this endorsement, and (b) reimburse us for any such amounts that we pay or advance upon receipt of a billing from us.

If you fail to do so, we may, at our option and to the extent permitted by law, cancel either this endorsement or this policy by mailing or delivering to you notice of cancellation pursuant to the terms applicable to cancellation for non-payment of premium in the policy or an endorsement thereto.

3. Your Duties

a. The first Named Insured shown in the Declarations agrees and is authorized to pay all Deductible Amounts on behalf of all Named Insureds and to reimburse us for any such amounts that we advance.

b. Each Named Insured is jointly and severally liable for all Deductible Amounts under this policy.

4. Other Rights and Duties (Ours and Yours)

All other terms of this policy, including those which govern (a) our right and duty to defend any claim, proceeding or "suit" against you, and (b) your duties if injury occurs, apply irrespective of application of this deductible endorsement.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date    Expiration Date

For attachment to Policy No. TB2-691-460860-013

Audit Basis

Issued To

SECRETARY    PRESIDENT

Countersigned by................................................
Authorized Representative

Issued    Sales Office and No.    End. Serial No.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMPOSITE RATE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MOTOR TRUCK CARGO COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRINTERS LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
WAREHOUSEMEN'S LIABILITY COVERAGE PART

The composite rated premium for this policy shall be computed on the following basis:

| Rate | Rate Basis | Exposure Type |
|---|---|---|
| 1.2685 | ☐ Per 1 | ☐ Sales (Including Foreign) |
| | ☐ Per 100 | ☒ Sales (Excluding Foreign) |
| | ☒ Per 1,000 | ☐ Square Feet |
| | ☐ Other (Defined Below) | ☐ Workers Compensation Payroll |
| | | ☐ General Liability Payroll |
| | | ☐ Other (Defined Below) |

Rate Basis Other means:

Exposure Types are defined as:

Sales (Including Foreign) means the gross amount charged by you, your concessionaires or by others trading under your name for all goods or products sold or distributed during the policy period, operations performed during the policy period and rentals both in the United States of America, its territories and possessions and outside the United States of America, its territories and possessions. Sales includes taxes, foreign exchange discounts, freight allowance to customers, total sales of consigned goods and warehouse receipts, trade or cash discounts, bad debts, and repossessions of items sold on installments.

Sales (Excluding Foreign) means the gross amount charged by you, your concessionaires or by others trading under your name for all goods or products sold or distributed during the policy period, operations performed during the policy period and rentals only in the United States of America, its territories and possessions. Sales includes taxes, foreign exchange discounts, freight allowance to customers, total sales of consigned goods and warehouse receipts, trade or cash discounts, bad debts, and repossessions of items sold on installments.

Square Feet means area, as measured in square feet, of all property you own, lease or rent, including land held for investment, during the policy period.

Workers Compensation Payroll means all payments by you in money, or in substitutes for money during the policy period to all executive officers and other employees for services rendered, subject to any over-time earnings, limitation of remuneration or exception rules applicable in accordance with the Workers Compensation manual in use by the Company.

General Liability Payroll means all payments by you in money, or in substitutes for money, during the policy period to all executive officers and other employees for services rendered, subject to any over-time earnings, limitation of remuneration or exception rules applicable in accordance with the General Liability manual in use by the Company.

Other means:

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date | Expiration Date

For attachment to Policy No. TB2-691-460860-013

Audit Basis

Issued To

SECRETARY PRESIDENT

Countersigned by ______________________

Authorized Representative

Issued | Sales Office and No. | End. Serial No.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Number of Days' Notice** 60

(if no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2. of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $
Effective Date Expiration Date
For attachment to Policy No. TB2-691-460860-013
Audit Basis

Issued To

Countersigned by ______________________
Authorized Representative

Issued Sales Office and No. End. Serial No.

 Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER: TB2-691-460860-013

COMMERCIAL GENERAL LIABILITY
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule below because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule below.

## SCHEDULE

~~Name Of~~ Person Or Organization:

Any person or organization with whom you have agreed in writing to waive any right of recovery prior to a loss

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

 © Insurance Services Office, Inc., 2008 

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Reasonable Force

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion a. of Coverage A is replaced by the following:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Bodily Injury to Co-Employees – Supervisors and Good Samaritans

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Subject to the sublimit in Paragraph 3. below, the Each Occurrence Limit and the General Aggregate Limit, Paragraphs **2.a.(1)(a), (b)** and **(c)** of Section **II** – Who Is an Insured do not apply to your supervisory or management "employees" for "bodily injury" only.

2. Subject to the Each Occurrence Limit and the General Aggregate Limit, Paragraphs **2.a.(1)(a), (b)** and **(c)** of Section **II** – Who Is an Insured do not apply to your "employees" or "volunteer workers" for "bodily injury" arising out of a Good Samaritan act to a co-"employee" or co-"volunteer worker." A Good Samaritan act means an attempt to rescue or aid a person in imminent or serious peril, provided the attempt is not recklessly made.

3. Limits of Insurance

   a. The coverage afforded in Paragraph 1. above, is subject to a limit of:

      $ 250,000 each occurrence.

4. The insurance provided by this endorsement for "bodily injury" to a co-"employee" or "volunteer worker" will not apply if the injured co-"employee's" or "volunteer worker's" sole remedy for such injury is provided under a workers' compensation law or any similar law.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Non-Cumulation of Liability
## (Same Occurrence)

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. The following is added to paragraph 4. of the Limits of Insurance Section:

   If one "occurrence" causes "personal and advertising injury" to which this policy applies and to which one or more prior and/or future liability policy(ies) issued to you by us also applies, then this policy's Personal and Advertising Injury Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

2. The following is added to paragraph 5. of the Limits of Insurance Section:

   If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future liability policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

3. The final paragraph of the Limits of Insurance Section is replaced with the following:

   The aggregate Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the aggregated Limits of Insurance. However, the Each Occurrence Limit is the most we will pay for damages and Medical Expenses because of all "bodily injury" and "property damage" arising out of any one "occurrence" and the Personal and Advertising Injury Limit is the most we will pay for damage because of all "personal and advertising injury" arising out of any one "occurrence", regardless of the length of the policy period.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Coverage Territory Redefined

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

1. Amended Definition - Coverage Territory

Paragraph c. of the definition of "coverage territory" in the Definitions section is replaced by the following:

c. Anywhere in the world, except:

(1) Any country or jurisdiction which is subject to trade or other economic sanctions or embargo by the United States of America;

(2) With respect to injury or damage arising out of your "foreign based operations". As used herein, "foreign based operations" means:

(a) Construction, fabrication, erection or installation operations outside the territory described in a. above;

(b) The manufacturing, raising, or growing of goods or products or the rendering of services outside the territory described in a. above;

(c) The sale or distribution of goods or products manufactured, raised or grown or services rendered outside the territory described in a. above at or from locations outside the territory described in a. above;

(d) Any other operations performed at premises or property owned, rented or used by you which is outside the territory described in a. above, or your operations from such premises or property.

2. Investigation, Defense, Settlement - Foreign Claims or Suits

The insured under our supervision shall investigate, defend or settle any claim or "suit" brought in any country where we are prevented by law in that country from carrying out this agreement.

We will reimburse the insured for the reasonable costs of such investigation and defense and, within the applicable limit of insurance, for the amount of any settlement made with our prior written consent.

3. Exchange Rates

All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

4. Other Insurance

This insurance is excess over any of other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis that is coverage required by law, regulation or other governmental authority in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Insured Contract Redefined

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

1. Paragraph c. of the definition of "insured contract" is replaced with:

   c. An easement or license agreement

2. Exception (1) to the definition of "insured contract" is deleted.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Personal and Advertising Injury Redefined - Definition of Publication

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraphs **d.** and **e.** of the definition of "personal and advertising injury" are replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**d.** Oral or written "publication" directly to the public at large of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

**e.** (1) Oral or written "publication" directly to the public at large of material that violates a person's right of privacy;

(2) Oral or written "publication" of material that violates a person's right of privacy by misappropriation of that person's name or likeness.

The following definition is added to the Definitions Section:

"Publication" means an insured's act of disseminating or broadcasting material or information. Publication does not include the wrongful appropriation, interception or retrieval of material or information by a third party or the insured's dissemination or broadcasting of material or information to a person who is the subject of the material or the information.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Personal and Advertising Injury - Occurrence Redefined

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **4.** of the Limits of Insurance section is replaced by the following:

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" arising out of any one "occurrence".

**B.** The definition of "occurrence" in the Definitions section is replaced by the following:

"Occurrence" means:

**a.** With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** With respect to "personal and advertising injury", an offense or series of related offenses.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Unintentional Failure to Disclose

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Unintentional failure of the named insured to disclose all hazards existing at the inception of this policy shall not be a basis for denial of any coverage afforded by this policy.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

BROADENED DAMAGE TO PREMISES RENTED TO YOU COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The paragraph at the end of Paragraph 2. Exclusions of Coverage A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced with the following:

Exclusions c. through n. do not apply to damage by fire, lightning, or explosion to premises while rented to you or temporarily occupied by you with pennission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III - LIMITS OF INSURANCE.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

PREMIUM RESPONSIBILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph E. PREMIUMS of the COMMON POLICY CONDITIONS is deleted and replaced by the following:

1. Each Named Insured is jointly and severally liable for all premiums due under this policy and for any other financial obligations of any Named Insured to us arising out of any agreements contained in this policy.
2. The first Named Insured will be the payee for any return premiums we pay.

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADVERTISEMENT REDEFINED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILTY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

The definition of "advertisement" in the Definitions Section is replaced by the following:

"Advertisement" means a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Announcements that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.


© 2011 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BODILY INJURY REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
EXCESS COMMERCIAL GENERAL LIABLITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

The definition of "bodily injury" in the Definition section is replaced by the following:

"Bodily injury" means:

a. Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and

b. Mental anguish, shock or humiliation arising out of injury as defined in paragraph a. above. Mental anguish means any type of mental or emotional illness or distress.


© 2011, Liberty Mutual Group of Companies. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its pennission.

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**KNOWLEDGE OF OCCURRENCE OR OFFENSE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILTY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Knowledge of an "occurrence" or offense by your agent, servant or "employee" will not in itself constitute knowledge by you unless your "executive officer", "employee" or other third party designated by you to notify us of an "occurrence" or offense has knowledge of the "occurrence" or offense.


© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NOTICE OF OCCURRENCE, OFFENSE OR INJURY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILTY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

For purposes of Condition 2.a. of Section IV, you refers to an "executive officer" or "employee" designated by the first Named Insured to give us notice.

 © 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROFESSIONAL HEALTH CARE SERVICES BY EMPLOYEES OR VOLUNTEER WORKERS COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Amendment - Who Is An Insured**

Paragraph 2.a.(1)(d) of Section II - Who Is An Insured is replaced by the following:

(d) Arising out of his or her providing or failing to provide professional health care services. However, any "employee" or "volunteer worker" of the Named Insured who is a "designated health care provider" is an insured under this policy with respect to "bodily injury" and "personal and advertising injury":

(i) Which arises out of the providing of or failure to provide professional health care services; and

(ii) Which occurs in the course of and within the scope of such "employee's" or "volunteer worker's" employment by the Named Insured.

B. **Limits of Insurance**

1. This insurance is subject to a sublimit of:

$ each occurrence.

This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition to the Each Occurrence Limit.

If a sublimit is not designated above, the applicable limit is the Each Occurrence Limit shown in the Declarations.

2. This insurance is subject to the General Aggregate Limit shown in the Declarations.

C. With respect to "employees" and "volunteer workers" providing professional health care services, the following exclusions are added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

(1) Liability assumed under an "insured contract" or any other contract or agreement;

(2) Liability arising out of the providing of professional health care services in violation of law;

(3) Liability arising out of the providing of any professional health care services while in any degree under the influence of intoxicants or narcotics;

(4) Liability arising out of any dishonest, fraudulent, malicious or knowingly wrongful act or failure to act; or


© 2011, Liberty Mutual Group of Companies. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(5) Punitive or exemplary damages, fines or penalties.

D. The following definition is added to the Definitions Section:

"Designated health care provider" means any "employee" or "volunteer worker" of the Named Insured whose duties include providing professional health care services, including but not limited to doctors, nurses, emergency medical technicians or designated first aid personnel.

E. Other Insurance

1. This provision applies only to the Commercial General Liability Coverage Part.

2. The insurance provided by this endorsement is excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis.


© 2011, Liberty Mutual Group of Companies. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2. **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

f. **Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or


© ISO Properties, Inc., 2003

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date Expiration Date

For attachment to Policy No. TB2-691-460860-013

Audit Basis

Issued To

Countersigned by ______________________
Authorized Representative

Issued Sales Office and No. End. Serial No.



© ISO Properties, Inc., 2003

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NON-VITIATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

No acts or omissions of an Insured shall vitiate coverage of the other insureds. Without limiting the foregoing, any failure on the part of a named insured to comply with reporting provisions or other conditions of the insurance policy, any breach of warranty, any action or inaction of a named insured or others; or any change in ownership of all or any portion of the Facility or Developer's interest shall not affect coverage to the other named insureds or additional insureds (and their respective members, directors, officers, employees, agents and facility consultants).

 © 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PRODUCTS - COMPLETED OPERATIONS - EXTENDED POLICY PERIOD**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| |
|---|
| Projects: **Interstate 35W Fort Worth from Downtown at interstate 30 interchange going north to the Interstate 820 Interchange** |

Paragraph 1.b. of Section I – Coverages – Coverage A Bodily Injury and Property Damage Liability is replaced with the following:

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) (a) The "bodily injury" or "property damage" occurs during the policy period; or

(b) With respect to "bodily injury" or "property damage" within the "products-completed operations hazard", the "bodily injury" or "property damage" occurs within **10** years from the earliest of: (i) policy expiration, (ii) the completion of "your work" on the Designated Project(s) listed in the Schedule, or (iii) the date "your work" is put to its intended use by any person or organization other than another contractor or subcontractor working on the same project; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.


© 2011 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT – OTHER INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 4.b. (1) of the Other Insurance Condition – Section IV – Commercial General Liability Conditions is replaced by the following:

b. Excess Insurance

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, umbrella, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured to a policy, whether such policy is on a primary, excess, umbrella, or contingent basis.

(c) Any other insurance for that portion of any loss for which the insured has other valid and collectible insurance as an additional insured on a liability insurance policy issued to a subcontractor of the insured, whether such policy is on a primary, excess, umbrella, contingent or on any other basis.


© 2011 Liberty Mutual Group of Companies. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

POLICY NUMBER: TB2-691-460860-013

COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated below.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any owner, lessee, or contractor for whom you have agreed in writing prior to a loss to provide liability insurance | Union Pacific Railroad as respect to all liabilities arising out of the insured's work, as Licensee performance of any work on the property of the Railroad |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.


© ISO Properties, Inc., 2004

POLICY NUMBER: TB2-691-460860-013

COMMERCIAL GENERAL LIABILITY
CG 20 37 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| Any owner, lessee, or contractor for whom you have agreed in writing prior to a loss to provide liability insurance | Any locaton listed in such agreement |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.


© ISO Properties, Inc., 2004

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED– DESIGNATED PERSON OR ENTITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| |
|---|
| **Name of Person or Organization**: The Fort Worth & Western as respect to all liabilities arising out of the insured's work, as Licensee performance of any work on the property of the Railroad |

Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

a. In the performance of your ongoing operations; or

b. In connection with your premises owned by or rented to you.

The following provisions apply:

A. Coverage provided by this endorsement is primary and will not contribute with any other insurance available to the Additional Insureds shown in the Schedule, whether primary, excess, contributory or on any other basis.

B. Except with respect to the Limits of Insurance and any rights or duties specifically assigned to the first Named Insured this insurance applies: 1) as if each Named Insured were the only Named Insured and 2) separately to each insured against whom claim is made or "suit" is brought.

C. With respect to the persons or organizations listed in the Schedule, Commercial General Liability Conditions (Section IV) – Condition 8. Transfer of Rights of Recovery Against Others to Us is amended by the addition of the following:

   We waive any right of recovery we may have against any person or organization with whom you have agreed in writing prior to an "occurrence" to waive your rights because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".

D. With respect to the persons or organizations listed in the Schedule, we will give notice to those additional insureds 60 days prior to cancellation, non-renewal or material change to the subject policy by the insurer; except in the case of cancellation for non-payment of premium by the insured, in which case only 10 days notice will be given.


© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The following exclusion is added:

This insurance does not apply to:

TERRORISM

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

 © ISO Properties, Inc., 2007 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ALASKA EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The following exclusion is added:

This insurance does not apply to:

TERRORISM

"Any injury or damage" arising out of a "certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

 © ISO Properties, Inc., 2007 

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.


© Insurance Services Office, Inc., 2008

POLICY NUMBER: TB2-691-460860-013 COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

SCHEDULE

**Description of your work:**

This policy does not cover work conducted for any project other than the North Terrant Express Segment 1&2 Project that encompasses 13 miles along I-820 and SH 121/SH 183 from I-35W to SH 121

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

 Copyright, Insurance Services Office, Inc., 1986 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.


© ISO Properties, Inc., 2006

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or
2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the Definitions Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;
2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
3. A reinforced or unreinforced base coat;
4. A finish coat providing surface texture to which color may be added; and
5. Any flashing, caulking or sealant used with the system for any purpose.

 © ISO Properties, Inc., 2003 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.
2. Subject to Paragraph **3.** below, professional services include:
   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.
3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

 Copyright, Insurance Services Office, Inc., 1997 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Nuclear Energy Liability Exclusion Endorsement (Broad Form)

This endorsement modifies the insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2007

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Asbestos Exclusion Endorsement

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MOTOR TRUCK CARGO COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRINTERS LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
WAREHOUSEMAN'S LEGAL LIABILITY COVERAGE PART

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" arising out of or caused by, or allegedly caused by, asbestos either alone or in combination with other substances or factors.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Silica Exclusion Endorsement

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MOTOR TRUCK CARGO COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRINTERS LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
WAREHOUSEMEN'S LIABILITY COVERAGE PART

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" any part of which is caused by, or allegedly caused by, silica in any form or any substance containing silica, either alone or in combination with other substances or factors, whether included in a product or otherwise.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Discrimination Exclusion

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

Damages arising out of unlawful discrimination.

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MOLD AND MOLD RELATED CONSTRUCTION DEFECT EXCLUSION

This Endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following is added to Paragraph 1.a. of Coverage A of Section – I Coverages:

If a "suit" against the insured seeks damages because of "bodily injury" or "property damage" to which this insurance applies, as well as damage because of "bodily injury" or "property damage" to which this insurance does not apply because of the Fungi or Bacteria exclusion, we shall have no obligation to defend the insured against the "suit" or pay any related Supplementary Payments.

B. The following exclusion is added to Paragraph 2., Exclusions of Coverage A of Section – Coverages:

This insurance does not apply to:

Fungi or Bacteria

a. "Bodily injury", or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

C. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

If a "suit" against the insured seeks damages because of "personal and advertising injury" to which this insurance applies, as well as damage because of "personal and advertising injury" to which this insurance does not apply because of the Fungi or Bacteria exclusion, we shall have no obligation to defend the insured against the "suit" or pay any related supplementary Payments.

D. The following exclusion is added to Paragraph 2., Exclusions of Coverage A of Section – Coverages:

This insurance does not apply to:

Fungi or Bacteria

a. "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

E. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

This insurance does not apply to:

1. Any actual or alleged liability, damages, loss or injury that results directly or indirectly from the ingestion, inhalation, exposure to or absorption of lead in any form or to any claims or "suits" arising from lead;

2. Actual or alleged "property damage" that results directly or indirectly from lead or the exposure to lead in any form or to any claims or "suits" arising from lead;

3. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead in any form; or

4. Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $
Effective Date Expiration Date
For attachment to Policy No. TB2-691-460860-013
Audit Basis

Issued To

SECRETARY PRESIDENT

Countersigned by ______________________
Authorized Representative

Issued Sales Office and No. End. Serial No.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

 © ISO Properties, Inc., 2005 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

 © ISO Properties, Inc., 2006 

IL 01 68 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition.

We will notify the first Named Insured in writing of:

1. An initial offer to compromise or settle a claim made or "suit" brought against any insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.
2. Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.


© ISO Properties, Inc., 2007

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
GLASS COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.


© ISO Properties, Inc., 2006

The permissible reasons for cancellation are as follows:

a. If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

b. If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

(1) Fraud in obtaining coverage;

(2) Failure to pay premiums when due;

(3) An increase in hazard within the control of the insured which would produce an increase in rate;

(4) Loss of our reinsurance covering all or part of the risk covered by the policy; or

(5) If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

B. The following condition is added and supersedes any provision to the contrary:

NONRENEWAL

1. We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. This Paragraph, 2., applies unless the policy qualifies under Paragraph 3. below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

a. The first Named Insured; and

b. Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.


© ISO Properties, Inc., 2006

# TEXAS DISCLOSURE FORM

We acknowledge that the terms, conditions and coverages provided in this policy have been negotiated with you and you have agreed to accept such terms, conditions and coverages.

Your policy with us contains many forms and/or endorsements which affect your coverage. Please note that there are forms and/or endorsements included in your policy dealing with the issues marked with an (x) below that we wish to bring to your attention. As they are not the only forms and/or endorsements in your policy, we urge you to read your entire policy carefully.

- ☐ PCB Exclusion
- ☐ Electromagnetic Fields and Electromagnetic Radiation Exclusion
- ☒ Asbestos Exclusion
- ☒ Silica Exclusion
- ☐ Total Pollution Exclusion
- ☐ Supplementary Payments Included Within Limits
- ☒ Deductible Endorsement That Includes Supplementary Payments
- ☐ Tobacco Exclusion
- ☐ Other:

Policy No.: TB2-691-460860-013

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Co.

# Disclosure - Terrorism Risk Insurance Act

**This Endorsement Is Made Part Of Your Policy Pursuant To The Terrorism Risk Insurance Act.**

In accordance with the Terrorism Risk Insurance Act, including all amendments, ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

## Disclosure of Premium

The Company has made available coverage for "certified acts of terrorism" as defined in the Act. If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown in the Declarations, Declarations Extension Schedule or elsewhere by endorsement in your policy.

## Federal Participation In Payment Of Terrorism Losses

If an individual insurer's losses exceed a deductible amount specified in the Act, the federal government will reimburse the insurer for 85% of losses paid in excess of the deductible, provided that aggregate industry losses from a "certified act of terrorism" exceed $100 million.

## Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

# LOSS CONTROL SERVICES
# IMPORTANT INFORMATION TO POLICYHOLDERS
# TEXAS LIABILITY

Insurers writing liability insurance in Texas are required by law to provide loss control information to policyholders.

The term "information" may include, but is not limited to, loss data and the results of analysis of that data; training materials; selection of appropriate loss control measures to include record keeping and recommendations resulting from surveys of policyholders and facilities.

If you desire the assistance offered above, you can contact our Loss Control Consulting Center at 1-866-757-7324 or email CSUConsulting@LibertyMutual.com.


© 2010, Liberty Mutual Group of Companies. All rights reserved.

# TEXAS IMPORTANT NOTICE

To obtain information or make a complaint you may contact:

Presidential Service Team
Liberty Mutual Insurance
175 Berkeley Street – MS 10B
Boston, MA 02116
1-800-344-0197 Ext. 41015

To obtain information on companies, coverage's, rights or complaints you may contact:

Texas Department of Insurance
PO Box 149104
Austin, TX 78714-9104
1-800-252-3439

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.


© 2012 Liberty Mutual Insurance. All rights reserved.

## POLICYHOLDER NOTICE - COMPANY CONTACT INFORMATION

In the event you need to contact someone about this policy for any reason, please contact your Sales Representative or Producer of Record as shown on the policy Declarations or Information Page.

If you have additional questions, you may contact the company at the following address:

Liberty Mutual Insurance
175 Berkeley Street
Boston, MA 02116
(617) 357-9500 Ext. 41015


© 2012 Liberty Mutual Insurance. All rights reserved.

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Segment 3A Endorsement number 001

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 10/01/2013

Notice of Cancellation to Third Parties, Form LIM 99 03 10 12 is added per the attached.

Contractual Liability – Railroads, Form CG 24 17 10 01 is added per the attached.

Issued: KM 10/01/2013

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NOTICE OF CANCELLATION TO THIRD PARTIES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
MOTOR CARRIER COVERAGE FORM
MOTOR TRUCK CARGO COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRINTERS LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
WAREHOUSEMAN'S LEGAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**Schedule**

| **Name of Other Person(s) / Organization(s):** | **Email Address or mailing address:** | **Number Days Notice:** |
|---|---|---|
| As required by written contract prior to loss | Addresses kept on record at the brokers office | 30 |
| | | |

A. If we cancel this policy for any reason, we will notify the persons or organizations shown in the Schedule above. We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective.

B. This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.


© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Scheduled Railroad: | Designated Job Site: |
| --- | --- |
| Union Pacific Railroad Company | Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the Interstate 820 interchange |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

9. "Insured Contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;


© ISO Properties, Inc., 2000

(2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date Expiration Date

For attachment to Policy No. TB2-691-460860-013

Audit Basis

Issued To

Countersigned by ______________________
Authorized Representative

Issued Sales Office and No. End. Serial No.

 © ISO Properties, Inc., 2000 

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Segment 3A Endorsement number 002

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 10/02/2013

Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization, Form CG 20 10 07 04 is added per attached.

Issued: CM 10/02/2013

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Fort Worth & Western Railroad Company | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or



 © ISO Properties, Inc., 2004 

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $
Effective Date Expiration Date
For attachment to Policy No. TB2-691-460860-013
Audit Basis

Issued To

Countersigned by
Authorized Representative

Issued Sales Office and No. End. Serial No.


© ISO Properties, Inc., 2004

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Segment 3A Endorsement number 003

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 05/01/2013

Contractual Liability - Railroads, Form CG 24 17 10 01 is added per attached.

Issued: CM 10/08/2013

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| Dallas Area Rapid Transit & Trinity Railway Express | Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the Interstate 820 interchange |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;


© ISO Properties, Inc., 2000

(2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date Expiration Date

For attachment to Policy No. TB2-691-460860-013

Audit Basis

Issued To

Countersigned by

Authorized Representative

Issued Sales Office and No. End. Serial No.

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Segment 3A Endorsement number 004

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 05/01/2013

Exclusion-Designated Work, Form CG 21 34 01 87, is amended to read as follows:

This policy does not cover work conducted for any project other than the following North Tarrant Express.

Segment 3A defined as:
The project will rebuild 6.5 miles of the existing main lanes of I-35W, construct new, expanded frontage roads, and expand the highway with the addition of two TEXpress lanes (or managed toll lanes) in both directions, doubling the capacity of the highway. The 3A Segment extends from I-30 in downtown Fort Worth up to and through the I-35W/I-820 interchange.

Issued: JMM 11/19/2013

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Segment 3A

Endorsement number 005

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 05/01/2013

Commercial General Liability Declarations, Form LC 00 04 08 12 is amended in part as follows

Policy Period
05/01/2013 to 05/01/2018

Formerly
05/01/2013 to 05/01/2014

Issued: KM 12/05/2013

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Segment 3A

Endorsement number 006

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 10/01/2013

Commercial General Liability Declarations, Form LC 00 04 08 12 is amended in part as follows

Named Insured's Address:
4282 North Freeway
Fort Worth, TX 76137

Formerly:
9303 New Trails Drive
Suite 200
The Woodlands, TX 77381-0000

Issued: KM 12/05/2013


© 2008, Liberty Mutual Group of Companies. All rights reserved.

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Endorsement number 007

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 05/01/2013

Commercial General Liability Declarations, Form LC 00 04 08 12 is amended in part as follows:

Named Insured: North Tarrant Infrastructure LLC

Formerly: North Tarrant Infrastructure LLC Segment 3A

Professional Health Care Services By Employees Or Volunteer Workers Coverage, Form LC 04 02 10 11 is added per attached.

Issued: dmk 02/12/2014

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PROFESSIONAL HEALTH CARE SERVICES BY EMPLOYEES OR VOLUNTEER WORKERS COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Amendment - Who Is An Insured**

Paragraph 2.a.(1)(d) of Section II - Who Is An Insured is replaced by the following:

(d) Arising out of his or her providing or failing to provide professional health care services. However, any "employee" or "volunteer worker" of the Named Insured who is a "designated health care provider" is an insured under this policy with respect to "bodily injury" and "personal and advertising injury":

(i) Which arises out of the providing of or failure to provide professional health care services; and

(ii) Which occurs in the course of and within the scope of such "employee's" or "volunteer worker's" employment by the Named Insured.

B. **Limits of Insurance**

1. This insurance is subject to a sublimit of:

$250,000 each occurrence.

This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition to the Each Occurrence Limit.

If a sublimit is not designated above, the applicable limit is the Each Occurrence Limit shown in the Declarations.

2. This insurance is subject to the General Aggregate Limit shown in the Declarations.

C. With respect to "employees" and "volunteer workers" providing professional health care services, the following exclusions are added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

(1) Liability assumed under an "insured contract" or any other contract or agreement;

(2) Liability arising out of the providing of professional health care services in violation of law;

(3) Liability arising out of the providing of any professional health care services while in any degree under the influence of intoxicants or narcotics;

(4) Liability arising out of any dishonest, fraudulent, malicious or knowingly wrongful act or failure to act; or


© 2011 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(5) Punitive or exemplary damages, fines or penalties.

D. The following definition is added to the Definitions Section:

"Designated health care provider" means any "employee" or "volunteer worker" of the Named Insured whose duties include providing professional health care services, including but not limited to doctors, nurses, emergency medical technicians or designated first aid personnel.

E. **Other Insurance**

1. This provision applies only to the Commercial General Liability Coverage Part.

2. The insurance provided by this endorsement is excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis.


© 2011 Liberty Mutual Group of Companies. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Endorsement number 008

The following changes are effective as of the effective dales shown below and will lerminate wilh the policy. All other provisions of the policy remain unchanged.

Effective Dale: 03/10/2014

Commercial General Liability Declarations, Form LC 00 04 08 12 is amended in part as follows:

- Named Insured: North Tarrant Infrastructure LLC
- Formerly: North Tarrant Infraslruclure LLC Segmenl 3A

- Address of the Named Insured: 4282 North Freeway
  Forth Worth, TX 76137
- Formerly: 9303 New Trails Drive, Suile 200
  The Woodlands, TX 77381-0000

Issued: KS 3/11/14


© 2008, Liberty Mutual Group of Companies. All rights reserved.

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC

Endorsement number 009

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 06/05/2014

Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization, Form CG 20 10 07 04 is added per attached.

Waiver of Transfer of Rights of Recovery Against Others to Us, Form CG 24 04 05 09 is added per attached.

Contractual Liability- Railroads, Form CG 24 17 10 01 is added per attached.

Issued: CM 06/06/2014

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Burlington Northern Santa Fe Railway Company | Project: Construction of IH35W Overpass replacement in Fort Worth, TX |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

 © ISO Properties, Inc., 2004 

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $
Effective Date Expiration Date
For attachment to Policy No. TB2-691-460860-013
Audit Basis

Issued To

Countersigned by
Authorized Representative

Issued Sales Office and No. End. Serial No.

 © ISO Properties, Inc., 2004 

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Name Of Person Or Organization:**
Burlington Northern Santa Fe Railway Company
Project: Construction of IH35W Overpass replacement in Fort Worth, TX

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date Expiration Date

For attachment to Policy No. TB2-691-460860-013

Audit Basis

Issued To

Countersigned by ______________________
Authorized Representative

Issued Sales Office and No. End. Serial No.

APP 117

 © Insurance Services Office, Inc., 2008 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site: |
| --- | --- |
| Burlington Northern Santa Fe Railway Company | Project: Construction of IH35W Overpass replacement in Fort Worth, TX |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

9. "Insured Contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

APP 118


© ISO Properties, Inc., 2000


LIBERTY 000190

(2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

This endorsement is executed by the LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $
Effective Date Expiration Date
For attachment to Policy No. TB2-691-460860-013
Audit Basis

Issued To

Countersigned by

Authorized Representative

Issued Sales Office and No. End. Serial No.

 © ISO Properties, Inc., 2000 

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

Named Insured North Tarrant Infrastructure LLC Endorsement number 010

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 07/15/2016

Primary And Noncontributory - Other Insurance Condition, Form CG 20 01 04 13 is added per attached.

Additional Insured - Owners, Lessees Or Contractors - Automatic Status When Required In Construction Agreement With You, Form CG 20 33 04 13 is added per attached.

Contractual Liability - Railroads, Form CG 24 17 10 01 is added per attached.

No change in premium.

Issued: 07/28/2016 mmw

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

 © Insurance Services Office, Inc., 2012 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

 © Insurance Services Office, Inc., 2012 

2. "Bodily injury" or "property damage" occurring after:

   a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement you have entered into with the additional insured; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| Fort Worth Transportation Authority, 801 Cherry Street, Suite 850, Fort Worth, TX 76102 | Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the interstate 820 interchange (reconstruction and expansion of 9.1 miles of I-35W from north of I-30 to south of I-820 5.4 miles on I-35W; 3.7 miles on Interchange I-35W / I-820S) |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;


© ISO Properties, Inc., 2000

LIBERTY 000196

(2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.


© ISO Properties, Inc., 2000

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

Named Insured North Tarrant Infrastructure LLC Endorsement number 011

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 01/01/2017

Exclusion – Designated Work, Form CG 21 34 01 87, is added per the attached.

No change in premium.

Issued: 04/24/2017 mmw


© 2008, Liberty Mutual Group of Companies. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION-DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:** This policy does not cover work conducted for any project other than the following North Tarrant Express.

Change Order 005 -Segment 3B/3C Interchange â€“dated 12/08/2016 is issued in accordance with Section 15.3 of the Design-Build Contract (the DB Contract) dated March, 1 2013 between the North Tarrant Infrastructure, LLC (NTI) and NTE Mobility Partners Segments 3, LLC (Developer).

The Federal AID Project Number is:

County: Tarrant
Highway: IH 35WProject No.: IM 0355 (152)

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products - completed operations hazard" and arising out of "your work" shown in the Schedule.

 Copyright, Insurance Services Office, Inc., 1986 

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured North Tarrant Infrastructure LLC Endorsement number 012

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 01/01/2017

Exclusion – Designated Work, Form CG 21 34 01 87, added per Endorsement number 011, is deleted and replaced with the attached Form CG 21 34 01 87.

No change in premium.

Issued: 06/09/2017 mmw

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION-DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:** This policy does not cover work conducted for any project other than the following North Tarrant Express.

Change Order 005 -Segment 3B/3C Interchange dated 12/08/2016 is issued in accordance with Section 15.3 of the Design-Build Contract (the DB Contract) dated March, 1 2013 between the North Tarrant Infrastructure, LLC (NTI) and NTE Mobility Partners Segments 3, LLC (Developer).

The Federal AID Project Number is:

County: Tarrant
Highway: IH 35WProject No.: IM 0355 (152)

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products - completed operations hazard" and arising out of "your work" shown in the Schedule.


 Copyright, Insurance Services Office, Inc., 1986 

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

| Named Insured | Endorsement number |
|---|---|
| North Tarrant Infrastructure LLC | 013 |

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

**Change Description**

Effective Date: 05/15/2017

Exclusion – Designated Work, Form CG 21 34 01 87, added per Endorsement number 012, is deleted and replaced with the attached Form CG 21 34 01 87.

Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization, Form CG 20 10 04 13 is added per the attached.

Additional Insured – Owners, Lessees or Contractors – Completed Operations, Form CG 20 37 04 13 is added per the attached.

No change in premium.

Issued: SMR 06/16/2017

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION-DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Description of your work:**

This policy does not cover work conducted for any project other than the following North Tarrant Express.

Change Order 005 -Segment 3B/3C Interchange dated12/08/2016 is issued in accordance with Section 15.3 of the Design-Build Contract (the DB Contract) dated March, 1 2013 between the North Tarrant Infrastructure, LLC (NTI) and NTE Mobility Partners Segments 3, LLC (Developer).

The Federal AID Project Number is:
County: Tarrant
Highway: IH 35WProject No.: IM 0355 (152)

Beginning on May 15th, 2017 repairs consisting of Park Central Bridge , belonging to the Lyndon B. Johnson Expressway (I-635), located in Dallas, TX

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products - completed operations hazard" and arising out of "your work" shown in the Schedule.



 Copyright, Insurance Services Office, Inc., 1986 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

APP 138

 © ISO Properties, Inc., 2012 

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| LBJ Infrastructure Group LLC | Repairs in Park Central Bridge , belonging to the Lyndon B. Johnson Expressway (I-635), located in Dallas, TX |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| LBJ Infrastructure Group LLC | Repairs in Park Central Bridge , belonging to the Lyndon B. Johnson Expressway (I-635), located in Dallas, TX |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

APP 140


© Insurance Services Office, Inc., 2012


LIBERTY 000212

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

Named Insured
North Tarrant Infrastructure LLC

Endorsement number
014

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

**Change Description**

Effective Date: 05/15/2017

Endorsement number 013 issued on 06/16/2017 effective on 05/15/2017 is amended as follows:

Add:

Additional / Return Premium: $37,537

Issued: 08/02/2017 SMR

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

| Named Insured | Endorsement number |
|---|---|
| North Tarrant Infrastructure LLC | 015 |

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date: 05/15/2017

Exclusion – Designated Work, Form CG 21 34 01 87 is added per the attached.

Issued: 08/02/2017 BJS

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION-DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:** Change Order 007:
Design & Build of two new ramps (North & South) on Segment 3B
Change Order 007-Mod CV $4,800,000 est

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products - completed operations hazard" and arising out of "your work" shown in the Schedule.

 Copyright, Insurance Services Office, Inc., 1986 

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

**CNI 90 05 01 12**
Producer

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

| Named Insured | Endorsement number |
|---|---|
| North Tarrant Infrastructure LLC | 016 |

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

**Change Description**

Effective Date: 05/01/2013

The following form(s) are added:

Exclusion-Designated Work, Form CG 21 34 01 87

Issued: 05/18/2018 SMR

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION-DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

This policy does not cover work conducted for any project other than the following North Tarrant Express. Segment 1 & 2 Project that encompasses 13 miles along I-820 and SH 121/SH 183 from -35W To SH 121
Change Order 005 -Segment 3B/3C Interchange dated12/08/2016 is issued in accordance with Section 15.3 of the Design-Build Contract (the DB Contract) dated March, 1 2013 between the North Tarrant Infrastructure, LLC (NTI) and NTE Mobility Partners Segments 3, LLC (Developer).

The Federal AID Project Number is: County: Tarrant
Highway: IH 35WProject No.: IM 0355 (152)

Beginning on May 15th, 2017 repairs consisting of Park Central Bridge, belonging to the Lyndon B. Johnson Expressway (I-635), located in Dallas, TX

Change Order 007:
Design & Build of two new ramps (North & South) on Segment 3B Change Order 007-Mod CV $4,800,000 est

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to “bodily injury” or “property damage” included in the “products - completed operations hazard” and arising out of “your work” shown in the Schedule.



 Copyright, Insurance Services Office, Inc., 1986 

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

Named Insured
North Tarrant Infrastructure LLC

Endorsement number
017

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

**Change Description**

Effective Date: 05/15/2017

Endorsement number 015, Effective 05/15/2017, issued on 08/02/2017, is deleted in its entirety.

Issued: 05/22/2018 CRF

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

**CNI 90 05 01 12**
Producer

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

| Named Insured | Endorsement number |
|---|---|
| North Tarrant Infrastructure LLC | 018 |

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

**Change Description**

Effective Date: 05/17/2017

Exclusion-Designated Work, Form CG 21 34 01 87, added per Endorsement Number 013, Effective 05/15/2017, Issued on 06/16/2017, is deleted.

Issued: 05/22/2018 CRF

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

Named Insured
North Tarrant Infrastructure LLC

Endorsement number
019

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

**Change Description**

Effective Date: 05/01/2013

Commercial General Liability Declarations Occurrence, Form LC 00 04 08 12, is amended as follows:

The policy period: 05/01/2013 to 05/01/2019

Formerly: 05/01/2013 to 05/01/2018

Additional / Return Premium: $75,000

Issued: 05/22/2018 CRF

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

North Tarrant Infrastructure LLC
4282 North Freeway
Fort Worth, TX 76137

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

Named Insured
North Tarrant Infrastructure LLC

Endorsement number
020

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

**Change Description**

Effective Date: 05/01/2013

The following form(s) are added:

Additional Insured – Controlling Interest, Form CG 20 05 04 13

Other Insurance Amendment – Scheduled Additional Insured, Form LC 24 20 02 13

Issued: 07/11/2019 JJS

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name Of Person(s) Or Organization(s):**

Any Entity Whose Parent Company Is: (1) The Same As The Named Insured Or (2) The Same As One Of The Companies Who Have An Ownership Interest In The Named Insured; Herin After Referred To As – The Related Company-.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

1. Their financial control of you; or
2. Premises they own, maintain or control while you lease or occupy these premises.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

APP 164

 © Insurance Services Office, Inc., 2012 

Policy Number TB2-691-460860-013
Issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OTHER INSURANCE AMENDMENT – SCHEDULED ADDITIONAL INSURED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

**Schedule**

**Person or Organization:**

Any Entity Whose Parent Company Is: (1) The Same As The Named Insured Or (2) The Same As One Of The Companies Who Have An Ownership Interest In The Named Insured; Herin After Referred To As – The Related Company-.

If you are obligated under a written agreement to provide liability insurance on a primary, excess, contingent, or any other basis for any person or organization shown in the Schedule of this endorsement that qualifies as an additional insured on this policy, this policy will apply solely on the basis required by such written agreement and Paragraph 4. Other Insurance of Section IV - Conditions will not apply. If the applicable written agreement does not specify on what basis the liability insurance will apply, the provisions of Paragraph 4. Other Insurance of Section IV - Conditions will govern. However, this insurance is excess over any other insurance available to the additional insured for which it is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit".


© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

North Tarrant Infrastructure LLC
13601 North Freeway, Ste. 200
Fort Worth, TX 76177

Erin Dugan
Willis of Texas, Inc.
15305 North Dallas Parkway, Ste 1100
Addison, TX 75001

Policy Number TB2-691-460860-013
Issued by Liberty Mutual Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Change Endorsement

| Named Insured | Endorsement number |
| --- | --- |
| North Tarrant Infrastructure LLC | 021 |

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

**Change Description**

Effective Date: 04/30/2019

Commercial General Liability Declarations Occurrence, Form LC 00 04 08 12 is amended as follows:

Mailing Address:

13601 North Freeway, Ste. 200
Fort Worth, TX 76177

Formerly:

4282 N Freeway
Fort Worth, TX 76137-2422

Issued: 03/25/2020 JJS

 © 2008, Liberty Mutual Group of Companies. All rights reserved. 

# EXHIBIT B-2

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/14/2023
CT Log Number 543221472

## Service of Process Transmittal Summary

**TO:** Catherine David, General Counsel
FERROVIAL CONSTRUCTION US CORP.
9600 Great Hills Trl Ste 200E
Austin, TX 78759-5680

**RE:** **Process Served in Texas**

**FOR:** North Tarrant Infrastructure, LLC (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: CHARLES CARROLL // To: North Tarrant Infrastructure, LLC |
| **CASE #:** | 06732831521 |
| **NATURE OF ACTION:** | Personal Injury - Vehicle Collision |
| **PROCESS SERVED ON:** | C T Corporation System, Dallas, TX |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/14/2023 at 12:20 |
| **JURISDICTION SERVED:** | Texas |
| **ACTION ITEMS:** | CT will retain the current log<br>Image SOP<br>Email Notification, Catherine David catherine.david@ferrovial.us<br>Email Notification, Bryan W. Tate btate@wwebber.com<br>Email Notification, Juli Simoneaux jstibbe@gpi-99.com<br>Email Notification, LEAH SWAIM lswaim@ferrovial.us<br>Email Notification, Eric Etheridge eetheridge@ferrovial.us |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>866-665-5799<br>SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Tue, Feb 14, 2023
**Server Name:** Ashlie Lester

| | |
|---|---|
| Entity Served | NORTH TARRANT INFRASTRUCTURE, LLC |
| Case Number | 153-000000-22 |
| Jurisdiction | TX |

| Inserts | | |
|---|---|---|
| | | |

Delivered 2/14/2023



# THE STATE OF TEXAS
# DISTRICT COURT, TARRANT COUNTY

***CITATION*** ***Cause No. 153-000000-22***

**IN RE: FEBRUARY 11, 2021 INCIDENT ON IH35W**
**VS.**

**TO: NORTH TARRANT INFRASTRUCTURE LLC**

B/S REG AGT-CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS, TX 75201-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S SECOND AMENDED PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 153rd District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

CHARLES CARROLL

Filed in said Court on February 10th, 2023 Against
CINTRA US SERVICES LLC, NORTH TARRANT INFRASTRUCTURE LLC, WEBBER LLC, FERROVIAL CONSTRUCTION US CORP, CINTRA HOLDING US CORP, CINTRA TEXAS CORP, NTE MOBILITY PARTNERS HOLDING LLC, CINTRA NTE LLC, REDMOND MINERALS INC, NTE MOBILITY PARTNERS S For suit, said suit being numbered 153-000000-22 the nature of which demand is as shown on said PLAINTIFF'S SECOND AMENDED PETITION a copy of which accompanies this citation.

EDWARD S GAYTAN
Attorney for CHARLES CARROLL Phone No. (817)282-9700
Address 669 AIRPORT FRWY HURST, TX 76053

_______Thomas A. Wilder______ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 13th day of February, 2023.

By Natalie Thigpen ________________ Deputy
NATALIE THIGPEN

A CERTIFIED COPY
ATTEST: 02/13/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Natalie Thigpen

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *15300000022001468*

Received this Citation on the ______ day of ____________________, _____ at ______ o'clock ___M; and executed at ______________________________ within the county of ______________, State of ________ at _______ o'clock ___M on the _______ day of ________________, _____ by delivering to the within named (Def.): defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S SECOND AMENDED PETITION , having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff:
County of _________________________ State of_________ By ______________________________ Deputy

Fees $_________

State of ______________ County of _____________________________ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said ________________________________ before me this ____ day of ________, ____
to certify which witness my hand and seal of office
(Seal)

County of __________________, State of

# *CITATION*

A CERTIFIED COPY
ATTEST: 02/13/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Natalie Thigpen

Cause No. 153-000000-22

IN RE: FEBRUARY 11, 2021
INCIDENT ON IH35W

VS.

ISSUED

This 13th day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By NATALIE THIGPEN Deputy

EDWARD S GAYTAN
Attorney for: CHARLES CARROLL
Phone No. (817)282-9700
ADDRESS: 669 AIRPORT FRWY

HURST, TX 76053

*CIVIL LAW*

*153000000022001468*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

153-000000-22

FILED
TARRANT COUNTY
2/10/2023 9:53 AM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 153-000000-22**

**NOT APPLICABLE TO ALL ACTIONS**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH-35W** | § § § § § | **IN THE DISTRICT COURT OF TARRANT COUNTY, TEXAS 153RD JUDICIAL DISTRICT** |

---

**TRANSFERRED FROM**

**CAUSE NO. 067-328315-21**

| | | |
|---|---|---|
| **CHARLES CARROLL,** *Plaintiff,* | § § § | **IN THE DISTRICT COURT OF** |
| **v.** | § § | **TARRANT COUNTY, TEXAS** |
| **RHONDA JONES; J.B. HUNT TRANSPORT, INC.; JEAN MARIE SAINT LOT; FRANTZ CLEMENT; FEDEX GROUND PACKAGE, INC.; RYDER TRUCK RENTAL, INC.; NTE MOBILITY PARTNERS, LLC.; NTE MOBILITY PARTNERS SEGMENTS 3, LLC.; CINTRA US SERVICES, LLC.; CINTRA HOLDING US CORP. d/b/a CINTRA US CORP.; CINTRA NTE, LLC.; CINTRA TEXAS CORP.; CINTRA NTE MOBILITY PARTNERS SEGMENTS 3, LLC.; CINTRA TOLL SERVICES, LLC.; NORTH TARRANT INFRASTRUCTURE, LLC.; WEBBER, LLC.; FERROVIAL CONSTRUCTION US CORP.; FERROVIAL HOLDING US CORP.; NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC.; NTE MOBILITY PARTNERS HOLDING, LLC.; REDMOND MINERALS, INC.; REDMOND INCORPORATED; ENVIROTECH SERVICES, INC.; and SOUTHWEST ENVIROTX PARTNERS, LLC.,** *Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § | **67th JUDICIAL DISTRICT** |

## PLAINTIFF'S SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, **Charles Carroll**, complaining of Defendants, RHONDA JONES; J.B. HUNT TRANSPORT, INC.; JEAN MARIE SAINT LOT; FRANTZ CLEMENT; FEDEX GROUND PACKAGE INC., and RYDER TRUCK RENTAL, INC., NTE MOBILITY PARTNERS, INC., NTE MOBILITY PARTNERS SEGMENTS 3, LLC., **CINTRA US SERVICES, LLC.; CINTRA HOLDING US CORP. d/b/a CINTRA US CORP.; CINTRA NTE, LLC.; CINTRA TEXAS CORP.; CINTRA NTE MOBILITY PARTNERS SEGMENTS 3, LLC.; CINTRA TOLL SERVICES, LLC.; NORTH TARRANT INFRASTRUCTURE, LLC.; WEBBER, LLC.; FERROVIAL CONSTRUCTION US CORP.; FERROVIAL HOLDING US CORP.; NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC.; NTE MOBILITY PARTNERS HOLDING, LLC.; REDMOND MINERALS, INC.; REDMOND INCORPORATED; ENVIROTECH SERVICES, INC.; and SOUTHWEST ENVIROTX PARTNERS, LLC.**, and for cause of action would show the Court the following:

### I. INTENDED DISCOVERY CONTROL PLAN

1.01 Pursuant to TEX. R. CIV. P. 190.1, discovery in this case is intended to be conducted under Level 3.

### II. PARTIES

2.01 Plaintiff is an individual who was residing in Tarrant County, Texas, at the time of the incident in question. Plaintiff was operating Unit 129 as identified in the Texas Peace Officer's Crash Report.

2.02 Defendant, Rhonda Jones ("Jones"), is an individual who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. **Jones** operated Unit 113-114 as identified in the Texas Peace Officer's Crash Report. Defendant **Jones** has generally appeared and answered herein and is before the Court for all purposes.

2.03 Defendant, J.B. Hunt Transports, Inc. ("J.B. Hunt"), is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant **J.B. Hunt** operated Unit 39-40 as identified in the Texas Peace Officer's Crash Report. Defendant **J.B. Hunt** has generally appeared and answered herein and is before the Court for all purposes.

2.04 Defendant, Jean Marie Saint Lot ("Saint Lot"), is an individual who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant **Saint Lot** operated Unit 123-124 as identified in the Texas Peace Officer's Crash Report. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.05 Defendant, Frantz Clement ("Clement"), is an individual who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant Clement operated Unit 123-124 as identified in the Texas Peace Officer's Crash Report. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.06 Defendant, FedEx Ground Package System, Inc. ("FedEx"), is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.07 Defendant, Ryder Truck Rental, Inc. ("Ryder"), is a foreign for-profit corporation who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant **Ryder** was operating Unit 123-124 as identified in the Texas Peace Officer's Crash Report. Defendant **Ryder** has generally appeared and answered herein and is before the Court for all purposes.

**ROADWAY OPERATIONS AND MAINTENANCE DEFENDANTS**

2.08 Defendant, NTE Mobility Partners, LLC., is a limited liability company with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. This Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and hence said Defendant is deemed to be a citizen of Texas. This Defendant is one of the I-35 Tollway Owners, Operators, and/or Maintenance entities. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.09 Defendant, NTE Mobility Partners Segments 3, LLC., is a limited liability company with its principal place of business located at: 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. This Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180,

and hence said Defendant is deemed to be a citizen of Texas. This Defendant is one of the I-35 Tollway Owners, Operators, and/or Maintenance entities. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.10 Defendant **Cintra US Services, LLC.** is a Texas limited liability company with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.11 Defendant **Cintra Holding US Corp d/b/a Cintra US Corp.** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.12 Defendant **Cintra NTE, LLC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. **Plaintiff requests that citation be issued and served accordingly.**

2.13 Defendant **Cintra Texas Corp.** is a Delaware corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas through C T Corporation System at1999 Bryan Street, Suite 900, Dallas, Texas 75201. **Plaintiff requests that citation be issued and served accordingly.**

2.14 Defendant **Cintra NTE Mobility Partners Segments 3, LLC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. **Plaintiff requests that citation be issued and served accordingly**

2.15 Defendant **Cintra Toll Services, LLC.** is a foreign limited liability company with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.16 Defendant **North Tarrant Infrastructure, LLC.** is a Texas limited liability company with its principal office and principal place of business located in Tarrant County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.17 Defendant **Webber, LLC.** is a Texas limited liability company with its principal office and principal place of business located in Montgomery County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.18 Defendant **Ferrovial Construction US Corp.** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant

may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.19 Defendant **Ferrovial Holding US Corp.** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.20 Defendant **NTE Mobility Partners Segments 3 Holding, LLC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. **Plaintiff requests that citation be issued and served accordingly.**

2.21 Defendant **NTE Mobility Partners Holding, LLC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. **Plaintiff requests that citation be issued and served accordingly.**

**DE-ICING MANUFACTURER DEFENDANTS**

2.22 Defendant **Redmond Minerals, Inc.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of

Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C., 322 E. Gateway Drive, Suite 201, Heber City, UT 84032. **Plaintiff requests that citation be issued and served accordingly.**

2.23 Defendant **Redmond, Incorporated** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C., 322 E. Gateway Drive, Suite 201, Heber City, UT 84032. **Plaintiff requests that citation be issued and served accordingly.**

2.24 Defendant **EnviroTech Services, Inc.** is a foreign corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas through Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas 78701. **Plaintiff requests that citation be issued and served accordingly.**

2.34 Defendant **Southwest Envirotx Partners, LLC.** is a domestic limited liability company with its principal place of business located in Travis County, Texas. This Defendant may be served with process through its registered agent, Clay C. Speer, 10899 Deer Canyon Road, Jonestown, Texas 78645. **Plaintiff requests that citation be issued and served accordingly.**

2.25 At times all Defendants may be collectively referred to as "Defendants".

2.26 Plaintiff invokes the doctrine of *respondeat superior*. Whenever in this Petition it is alleged that a Defendant or Defendants did or failed to do any act or thing, it is meant that such Defendants' officer(s), agent(s), servant(s), employee(s), statutory employee(s), representative(s), and/or joint venturer(s) did or failed to do such act or thing and that at the time such conduct

occurred, it occurred with the authorization and/or ratification of Defendants and/or was done in the normal and routine course and scope of employment, agency, or statutory employment of Defendants' officer(s), agent(s), servant(s), employee(s), statutory employee(s), representative(s), or joint venturer(s).

## III. MISNOMER / ALTER EGO

3.01 Pursuant to Rule 28 of the of the Texas Rules of Civil Procedure, Plaintiff is suing any partnership, unincorporated association, private corporation, or individual whose name contains the words, or who does business under, the same or similar name of the Roadway Operations and Maintenance Defendants, Trucking Defendants, De-Icing Manufacturer Defendants, and/or whatever person, business, or entity that was responsible, in whole or in part, directly or indirectly, for the operations and maintenance (including de-icing and pretreatment) of the roadway where this collision occurred. In the event that any of the parties identified above are misnamed or misspelled or not included herein, it is the contention of Plaintiffs that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein.

## IV. JURISDICTION AND VENUE

4.01 This Court has jurisdiction over this matter as Plaintiff seeks damages well in excess of the minimal jurisdictional limits of this Court. The Texas Rules of Civil Procedure requires Plaintiff to plead that their case falls under a particular category. In order to comply with this procedural requirement, Plaintiff hereby pleads pursuant to Tex. R. Civ. P. 47, that Plaintiff seeks monetary relief over $1,000,000. Plaintiff seeks all other relief to which he may show himself to be justly entitled.

4.02 Additionally, Plaintiffs and Defendant NTE Mobility Partners, LLC., and Defendant NTE Mobility Partners Segments 3, LLC., are citizens of Texas, and hence there is no complete

diversity of citizenship. The remaining Defendants who are non-citizens of Texas have all consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers, and designating an agent for service of process in Texas. Designation of such an agent operates as an express consent to personal jurisdiction. *Knowlton v. Allied Van Lines*, 8th Cir., 900 F.2d 1196, 1200 (1989)("This designation of an agent, in accordance with federal law, also operates as consent to the personal jurisdiction of the [forum] courts."); see also *Paz v. Castellini Co., LLC*, No. B-07-036, 2007 U.S. Dist. LEXIS 83028, at *19 (S.D. Tex. 2007)(Approving of *Knowlton* but limiting its designation jurisdiction to causes of action that, as here, arose in Texas).

4.03 Moreover, said Defendants have established minimum contacts in Texas by driving, shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Further, all Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas. Therefore, this Court has specific personal jurisdiction over all Defendants. In addition, all Defendants have had continuous and systematic contacts with Texas invoking general personal jurisdiction over them. Accordingly, removal to federal court would be improper and sanctionable because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

4.04 Venue in Tarrant County is proper in this cause under TEX. CIV. PRAC. & REM. CODE §15.002(a)(1) because all or a substantial part of the acts and/or omissions giving rise to this action occurred in Tarrant County.

## V. FACTS

5.01 On or about February 11, 2021, Plaintiff was traveling southbound on the expressway of Interstate-35 in Fort Worth, Tarrant County, Texas. A multi-vehicle collision

occurred in front of Plaintiff when Defendant Jones, Defendant Saint Lot, and Defendant Clement, driving for Defendant JB Hunt and Defendant FedEx and Defendant Ryder respectively, in front of Plaintiff failed to drive with extreme caution under the circumstances and negligently lost control, crashed and blocked all lanes of southbound traffic. Plaintiff's vehicle came to a stop to avoid the collision and was struck by other passenger vehicles that were unable to avoid the pile up caused by the Defendant Truck Drivers and Defendant Trucking Companies.

5. 02 The term "**Truck Company Defendants**" collectively refers to Defendants J.B. Hunt, FedEx, and Ryder. The term "Truck Driver Defendants" collectively refers to Defendants Rhonda Jones, Jean Marie Saint Lot, and Frantz Clement. At all relevant times, the Truck Company Defendants were collectively operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle involved in this collision and were required to observe all commercial motor carrier safety rules and regulations.

5.03 The term "**Roadway Operations and Maintenance Defendants**" (or sometimes "Roadway Defendants") collectively refers to Defendants NTE Mobility Partners LLC, NTE Mobility Partners Segment 3 LLC, NTE Mobility Partners Segments 3 Holding, LLC, NTE Mobility Partners Holding, LLC., Cintra US Services, LLC., Cintra Holding US Corp. d/b/a Cintra Us Corp., Cintra NTE, LLC., Cintra Texas Corp., Cintra NTE Mobility Partners Segments 3, LLC., Cintra Toll Services, LLC., North Tarrant Infrastructure, LLC., Webber, LLC., Ferrovial Construction US Corp., and Ferrovial Holding US Corp. At all relevant times the Roadway Operations and Maintenance Defendants, upon information and belief, were responsible for operating and maintaining the express lanes where this collision occurred.

5.04 The term "**De-Icing Manufacturer Defendants**" collectively refers to Redmond Minerals, Inc., Redmond, Incorporated, EnviroTech Services, Inc., and Southwest Envirotx

Partners, LLC. At all relevant times the De-Icing Manufacturer Defendants, upon information and belief, were responsible for the design, manufacture, marketing, sale and/or distribution of the de-icing products used by the Roadway Defendants to treat the express lanes where this collision occurred.

5.05 Defendant Truck Drivers failed to control their speed, failed to take into account the icy road conditions, failed to use extreme caution and failed to observe the hazardous road conditions among other negligent acts. For all times relevant Defendant Jones, Defendant Saint Lot, and Defendant Clement were employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners with of their respective Truck Company Defendant and were acting in the course and scope of their employment, agency, joint venture, joint enterprise and/or partnership for his respective Truck Company Defendant, for which the Truck Company Defendant is responsible under the doctrines of *respondeat superior*, vicarious liability, agency, joint enterprise and/ or the statutory employee relationship.

5.06 The Roadway Operations and Maintenance Defendants were contractually responsible for operating, maintaining, and treating the express lanes where this collision occurred. As such, the Roadway Operations and Maintenance Defendants were responsible for preventing ice formation on the roadway through proper preventive treatments of the express lanes, and the Roadway Operations and Maintenance Defendants were likewise responsible for de-icing and removing any ice that formed on the express lanes. The Roadway Maintenance Defendants knew and were on notice that a prior collision had occurred just to the north in this same general vicinity approximately 3 hours prior to the collision at issue. Yet, the Roadway Maintenance Defendants failed to prevent further ice development on the express lanes, failed to de-ice or remove ice from the express lanes, and/or failed to simply close the express lanes to all traffic or at least to 18

wheelers. The Roadway Maintenance Defendants failed to comply with their respective duties and obligations for maintaining the express lanes, including their contractual duties.

5.07 The De-Icing Manufacturer Defendants were responsible for the design, manufacture, marketing, sale, and/or distribution of the de-icing products used to treat the express lanes where the collision occurred. The de-icing products applied and the procedures performed on the express lanes where the collision occurred was/were ineffective and/or failed.

5.08 As a proximate cause of the Defendants' negligence resulting in the collision, Plaintiff sustained serious and permanent injuries and continues to suffer serious and permanent injuries and damages from the crash all for which Plaintiff hereby sues.

## VI. GENERAL ALLEGATIONS

6.01 Plaintiff filed this lawsuit as a result of a motor vehicle collision that occurred on February 11, 2021, in the Southbound expressway of Interstate-35W in Fort Worth, Tarrant County, Texas, which collision was proximately caused by the negligence of Defendants.

6.02 The terms "Truck Company Defendants" and "Truck Driver Defendants" refer to the following defendants:

| Truck Company Defendants | Truck Driver Defendants | Unit Number from Texas Peace Officer's Crash Report |
|---|---|---|
| JB Hunt | Jones | 113-114 |
| FedEx / Ryder | Saint Lot | 123-124 |
| FedEx / Ryder | Clement | 123-124 |

## VII. CAUSES OF ACTION AGAINST TRUCK DRIVER DEFENDANTS

### A. NEGLIGENCE

7.01 Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

7.02 On the date of the incident in question, Truck Driver Defendants had a duty to exercise the degree of care that an ordinary person would have in operating a motor vehicle under the same or similar circumstances.

7.03 Truck Driver Defendants breached that duty of care by one or more of the following acts and/or omissions:

a) Failure to keep such proper lookout and attention to the roadway as a person or ordinary prudence would have kept under the same or similar circumstances;

b) Failure to use extreme caution in driving given the existing ice and freezing rain conditions;

c) Failure to monitor road and weather conditions;

d) Failure to pay attention to the weather conditions;

e) Failure to control speed and/or driving at an unsafe speed;

f) Failure to operate their 18-wheeler at a reasonable speed given the ice and freezing rain and freezing mist conditions;

g) Failure to timely apply the brakes of his 18-wheeler in order to avoid the collision in question;

h) Failure to take proper and timely evasive action;

i) Failure to maintain proper control of the commercial motor vehicle as a commercial driver using ordinary care would have done in similar circumstances;

j) Other negligent acts and omissions to be identified as discovery is conducted.

7.04 As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

**B. NEGLIGENCE PER SE**

7.05 Truck Driver Defendants were negligent *per se* in one or more of the following particulars:

a) Driving in hazardous conditions in violation of 49 CFR § 392.14 and Section 2.13 of the Texas Commercial Motor Vehicle Driver's Handbook;

b) Failing to use extreme caution given the existing ice and freezing mist and rain conditions in violation of 49 CFR § 392.14;

c) Failing to operate at a reasonable rate of speed given the existing ice and freezing mist and rain conditions in violation of Section 545.351 of the Texas Transportation Code and Section 2.6 of the Texas Commercial Motor;

d) Failing to control the speed of the truck and/or driving at an unsafe speed, in violation of §545.352 of the TEXAS TRANSPORTATION CODE;

e) Failing to safely observe hazards in the roadway in violation of Section 2.8 of the Texas Commercial Motor Vehicle Driver's Handbook; and

f) Engaging in reckless driving in violation of TEXAS TRANSPORTATION CODE §545.401(a).

7.06 As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

**C. GROSS NEGLIGENCE**

7.07 Collectively, Truck Driver Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the Truck Driver Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. This amounts to gross negligence; such gross negligence was a proximate cause of the collision, the injuries, harms, losses, and damages of Plaintiff, and the resulting injuries and damages suffered by Plaintiff; and as such the jury should consider assessing punitive or exemplary damages.

## VIII. CAUSES OF ACTION AGAINST TRUCK COMPANY DEFENDANTS

**A. NEGLIGENCE**

8.01 Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

8.02 On the date of the incident in question, Truck Company Defendants were the employers of negligent and reckless Truck Driver Defendants and at all times material hereto, the Truck Driver Defendants were in the course and scope of their employment with the named Truck

Company Defendants. Pursuant to respondeat superior, the negligence of Truck Company Defendants was a direct and proximate cause of Plaintiff's injuries.

8.03 Upon information and belief, Truck Company Defendants breached their duty of care by one or more of the following acts and/or omissions:

a) In failing to properly train, supervise and/or instruct employees in the proper manner to operate a commercial vehicle;

b) In failing to provide reasonable rules and regulations for safe conduct while driving at work;

c) In failing to obey traffic laws and regulations concerning the operation of commercial vehicles;

d) In failing to promulgate and/or execute a periodic inspection program to ensure that there were proper and safe driving habits being exercised;

e) In failing to perform regular maintenance on their equipment;

f) In failing to maintain their equipment in good working order;

g) In failing to ensure the drivers of their commercial vehicles were qualified, trained, experienced or certified to drive the vehicle;

h) In negligently entrusting end users of commercial vehicle to operators they knew or should have known were not qualified, trained, licensed or otherwise competent to operate said vehicle;

i) In failing to exercise ordinary care;

j) Negligent hiring, retention and supervision;

k) Negligent and dangerous towing procedures;

l) Failure to properly and adequately train their employees;

m) Failure to retain properly and adequately train employees;

n) Failure to ensure that their employees, agents, and/or Representatives, possessed the requisite and appropriate certifications, qualifications, and training;

o) Failure to properly and adequately supervise its employees, agents, and/or representatives;

p) Failure to implement proper and appropriate safety policies and procedures;

q) Defendant failed to establish reasonable safety rules and regulations;

r) In putting commercial vehicles on the roads when it was hazardous and unsafe to do so due to ice accumulation;

s) Defendants failed to instruct the employees of the safety rules and regulations; and

t) Such other and further acts and/or omissions as shown in trial.

8.04 As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

**B. VICARIOUS LIABILITY – RESPONDEAT SUPERIOR, STATUTORY EMPLOYEE, BORROWED SERVANT, AGENCY, JOINT VENTURE, PARTNERSHIP**

8.05 Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

8.06 Based on information and belief, on the occasion in question and at all relevant and material times pertinent to this suit, Truck Driver Defendants were driving the commercial motor vehicle on behalf of Truck Company Defendants; in doing so acting as an employee, statutory

employee, borrowed servant, agent, joint venturers, joint enterprisers and/or partners with Truck Company Defendants and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Truck Company Defendants' business goals and objectives.

8.07 At the time of the collision and at all relevant and material times, Truck Driver Defendants were driving the commercial motor vehicle in question in their capacity as employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners and they exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery, and manner of operations associated with the Truck Company Defendants. Additionally, Truck Company Defendants monitored and/or had the ability to monitor the routes, timing, dispatching, location, delivery, and manner of operations associated with the commercial truck and the drivers.

8.08 Additionally and/or alternatively, upon information and belief, Truck Company Defendants exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery and manner of operations associated with the commercial vehicles and drivers subjecting the commercial vehicle Defendants to vicarious liability for this collision and/or making the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Truck Company Defendants and/or making the Truck Drivers the agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Truck Company Defendants.

8.09 Truck Driver Defendants acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

8.10 Truck Company Defendants are therefore responsible under the doctrines of *respondeat superior*, vicarious liability, agency, joint enterprise, and the statutory employee relationship between the respective Truck Driver Defendants and Truck Company Defendants.

**C. NEGLIGENT ENTRUSTMENT**

8.11 The Truck Company Defendants are responsible for this collision under negligent entrustment, because (a) the Truck Company Defendants supervised and controlled the commercial tractor and trailer driven by Truck Driver Defendants at the time of the collision, (b) Truck Driver Defendants were incompetent and/or unsafe drivers, (c) the Truck Company Defendants either knew or should have known Truck Driver Defendants were incompetent and/or unsafe drivers, and (d) the negligence of Truck Driver Defendants on the occasion in question proximately caused the collision. The negligence of the Truck Company Defendants in negligently entrusting Truck Driver Defendants to drive proximately caused the collision giving rise to this case and the injuries and damages suffered by Plaintiff.

**D. NEGLIGENT HIRING, TRAINING, RETENTION, SUPERVISION, AND FAILURE TO CONTROL**

8.12 Truck Company Defendants owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions and injuries to other motorists, including Plaintiff, but failed to do so. Truck Company Defendants negligent acts and/or omissions in this regard include, but are not limited to the following:

a) Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b) Failing to prohibit unsafe driving practices, including in hazardous conditions;

c) Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d) Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e) Failing to monitor drivers;

f) Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g) Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

h) Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i) Aiding, abetting, and encouraging drivers to violate the rules of the road.

8.13 These acts and omissions described above, singularly or in combination, amount to negligence and/or gross negligence, and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

**E. GROSS NEGLIGENCE**

8.14 Collectively, Truck Company Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the

probability and magnitude of the potential harm to others. Further, the Truck Company Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. This amounts to gross negligence; such gross negligence was a proximate cause of the collision, the injuries, harms, losses, and damages of Plaintiff, and the resulting injuries and damages suffered by Plaintiff; and as such the jury should consider assessing punitive or exemplary damages.

## IX. CAUSES OF ACTION AGAINST ROADWAY OPERATIONS AND MAINTENANCE DEFENDANTS

### A. NEGLIGENCE

9.01 Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

9.02 On the date of the incident in question, and at all relevant and material times, the Roadway Operations and Maintenance Defendants owed a duty to traveling motorists travelling on the express lanes, including Plaintiff, were contractually responsible for maintaining and operating the lanes where this collision occurred, and failed to comply with its duties and obligations for maintaining the express lanes, including its contractual duties.

9.03 Defendant breached that duty of care by one or more of the following acts and/or omissions, included but not limited to:

a) Failing to properly operate and/or maintain the I-35 roadway where this incident occurred;

b) Failing to properly maintain the roadway in order to discover any defects as they existed at the time of this incident;

c) Failing to discover any hazards or defects which existed at this time of this incident;

d) Failing to inspect, or adequately and/or properly inspect, the roadway;

e) Failing to monitor, and/or timely monitor, the weather conditions that existed at the time of this incident;

f) Failing to adequately repair any defect which existed at the time of this incident;

g) Failing to post adequate warning signs on the roadway to warn of any hazards or defects of which this defendant had, or should have had, knowledge;

h) Failing to provide barriers that would have prevented this type of incident;

i) Failing to provide safeguards that would have prevented this type of incident;

j) Failing to adequately, properly, and timely treat and/or de-ice the I-35 tollway prior to the time of the incident made the basis of this suit;

k) Failing to adequately and properly train personnel on the proper and timely treatments required to prevent the formation of ice on the express lanes;

l) Failing to adequately and properly train personnel on the proper and timely de-icing and removal of ice required to prevent collisions on the express lanes;

m) Failing to implement proper policies and procedures for the prevention of ice formation, pretreatment, detection, de-icing and the removal of ice from the express lanes;

n) Failing to close the I-35 tollway because of the presence of ice on the tollway;

o) Failing to act as a reasonable and prudent roadway operations and maintenance company;

p) Failing to adequately, properly, and timely warn motorists of the icy road conditions on the express lanes;

q) Failing to close the express lanes to all traffic;

r) Failing to act as a reasonable and prudent roadway operations and maintenance company; and

s) Committing various acts and/or omissions of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

9.04 Each of the foregoing acts or omissions, singularly or in combination with others, constitute negligence, which proximately caused the incident made the basis of this lawsuit and Plaintiff's injuries and damages.

**B. PREMISES LIABILITY**

9.05 Additionally, or in the alternative, Plaintiffs allege that the Roadway Operations and Maintenance Defendants are liable under premises liability. At all times material, the Roadway Operations and Maintenance Defendants owned and/or controlled the I-35 express lanes and premises where this collision occurred and where Plaintiff was injured. The condition of the

express lanes at the time of the collision and Plaintiff's injuries posed an unreasonable risk of harm and the Roadway Operations and Maintenance Defendants had actual knowledge, or reasonably should have known of the unreasonably dangerous condition, which included the icy road conditions, and the Roadway Operations and Maintenance Defendants' failure to adequately prepare and plan for this known icy emergency. Moreover, Plaintiff did not have actual knowledge of the unreasonably dangerous condition. Plaintiff was a business invitee who entered the Roadway Operations and Maintenance Defendants' premises with their knowledge and for their benefit. The Roadway Operations and Maintenance Defendants had a duty to keep the premises safe and they breached this duty by failing to adequately warn Plaintiff, and other motorists, of the known unreasonably dangerous condition on the roadway and by failing to make this known unreasonably dangerous condition reasonably safe.

## C. GROSS NEGLIGENCE

9.06 Collectively, Roadway Operations and Maintenance Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the Roadway Operations and Maintenance Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. This amounts to gross negligence; such gross negligence was a proximate cause of the collision, the injuries, harms, losses, and damages of Plaintiff, and the resulting injuries and damages suffered by Plaintiff; and as such the jury should consider assessing punitive or exemplary damages.

## X. CAUSES OF ACTION AGAINST DE-ICING MANUFACTURER DEFENDANTS

### A. NEGLIGENCE

10.01 Based upon the allegations and designations of potential responsible third parties made by certain defendants in this litigation, Plaintiff hereby assert that the de-icing procedure(s) performed on the express lanes where this incident occurred was/were ineffective and/or failed. Plaintiff contends that this failure was caused in whole or in part by one or more of the following:

a) The "de-icing material" was ineffective, inadequate and/or defective;

b) The "de-icing material" was negligently designed, manufactured and/or marketed;

c) The "de-icing material" was not the appropriate "de-icing material" for the specific conditions that existed on the express lanes at the time of the collision;

d) The "de-icing material" lacked adequate instructions for the proper application of the deicing material; and

e) The manufacturer of the "de-icing material" failed to provide warnings, instructions, and/or training and/or failed to provide adequate and/or sufficient warnings, instructions and/or training regarding the proper application of the "de-icing material."

10.02 Upon information and belief, at all relevant times the De-Icing Manufacturer Defendants named herein were responsible for the design, manufacture, marketing, sale, and/or distribution of the "de-icing material" used by the Roadway Defendants to treat the express lanes where this collision occurred. And, said acts and omissions described above, singularly or in any

combination, amount to negligence and/or gross negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit and of the Plaintiff's injuries and damages.

## XI. DAMAGES

11.01 Plaintiffs incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

11.02 As a direct and proximate result of acts and/or omissions of Defendants, Plaintiff would show actual damages within the jurisdictional limits of this Court, including:

a) Reasonable medical care and expenses which have been sustained from the time of the occurrence until the time of the verdict herein;

b) Reasonable medical care and expenses which will likely be sustained in the future after the verdict herein;

c) Physical pain which has been sustained from the time of the occurrence until the time of the verdict herein;

d) Physical pain which will be suffered after the date of the verdict herein;

e) Mental anguish which has been sustained from the time of the occurrence until the time of the verdict herein;

f) Mental anguish which will be suffered after the date of the verdict herein;

g) Physical and mental impairment which has been sustained from the time of the occurrence until the time of the verdict herein;

h) Physical and mental impairment which will be sustained in the future after the verdict herein;

i) Lost earnings and/or loss of earning capacity which have been sustained from the time of the occurrence until the time of the verdict herein; and

j) Such other and further relief as the Court may deem just and proper.

## XII. ADDITIONAL MATTERS

12.01 Pursuant to TEX. R. CIV. P. 193.7, Plaintiff hereby provides notice to Defendants that Plaintiff intends to use all documents produced in response to written discovery by any party as evidence at any pre-trial proceeding or at trial.

## XIII. JURY DEMAND

13.01 Plaintiff requests the causes of actions alleged herein be tried before a jury consisting of citizens residing in Tarrant County, Texas.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and that upon final hearing hereof Plaintiff have and recover of and from Defendants damages as alleged, with prejudgment and post-judgment interest, costs of Court, and such other and further relief, general and special, at law or in equity, as Plaintiff may be entitled to receive.

Respectfully submitted,

/s/ *Edward S. Gaytan*
Charles M. Noteboom
State Bar No. 15116875
Edward S. Gaytan
State Bar No. 24087572
gaytan@noteboom.com

**NOTEBOOM - THE LAW FIRM**
669 Airport Freeway
Hurst, Texas 76053
817.282.9700 Phone
817.282.8073 Fax

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing was served on all attorneys of record on this the 10th day of February, 2023, via E-Filing.

*/s/ Edward S. Gaytan*
Edward S. Gaytan

# EXHIBIT B-3

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/22/2023
CT Log Number 543273814

## Service of Process Transmittal Summary

**TO:** Bryan W. Tate, General Counsel
Webber, LLC
1725 HUGHES LANDING BLVD STE 1200
THE WOODLANDS, TX 77380-3875

**RE:** **Process Served in Texas**

**FOR:** Webber, LLC (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: RICHARD CROSS and ROBERT CROSS // To: Webber, LLC |
| **CASE #:** | 04834017223 |
| **NATURE OF ACTION:** | Personal Injury - Failure to Maintain Premises in a Safe Condition |
| **PROCESS SERVED ON:** | C T Corporation System, Dallas, TX |
| **DATE/METHOD OF SERVICE:** | By Traceable Mail on 02/22/2023 |
| **JURISDICTION SERVED:** | Texas |
| **ACTION ITEMS:** | CT will retain the current log<br><br>Image SOP<br><br>Email Notification, Bryan W. Tate btate@wwebber.com<br><br>Email Notification, Mark Williams mark.williams@ferrovialservices.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>866-665-5799<br>SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Tarrant County
Thomas A. Wilder District Clerk
Civil Division
100 N. Calhoun St., 2nd Floor
Fort Worth, TX 76196-0402

CERTIFIED MAIL

9489 0090 0027 6060 3107 58

Label 230-PB, Oct. 2015
Pitney Bowes

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

WEBBER LLC
B/S REG AGENT-CT CORPORATION SYSTEM
1999 BRYAN ST STE 900
DALLAS, TX 75201-3136
048-340172-23 DP/AP/CM

THE STATE OF TEXAS SERVICE COPY
DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 048-340172-23*

RICHARD CROSS, ET AL
VS.
COCA COLA SOUTHWEST BEVERAGES, LLC, ET AL

TO: WEBBER LLC

B/S REG AGT-CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS TX 75201-3136

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 48th District Court in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

RICHARD CROSS, ROBERT CROSS

Filed in said Court on February 10th, 2023 Against
COCA COLA SOUTHWEST BEVERAGES LLC, GGS PRODUCE TRANSPORT LLC, I GARZA LLC, SONIC LOGISTICS LLC, ENTERPRISE FM TRUST, SIERRA MOUNTAIN EXPRESS INC, MCDANIEL & SON PLUMBING INC, NTE MOBILITY PARTNERS SEGMENTS 3 LLC, NTE MOBILITY PARTNERS LLC
For suit, said suit being numbered 048-340172-23 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION a copy of which accompanies this citation.

CARSON R RUNGE
Attorney for RICHARD CROSS Phone No. (903)757-7000
Address 101 E WHALEY ST LONGVIEW, TX 75601

Thomas A. Wilder , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 16th day of February, 2023.

By [signature] Deputy
AMANDA PRISTERER

DISTRICT COURT OF TARRANT COUNTY, TEXAS

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *04834017223000227*

Received this Citation on the _______ day of _________________________, _______ at ______ o'clock ___M; and executed at ________________________________ within the county of ________________, State of ________ at _______ o'clock ___M on the ________ day of , _______ by mailing to the within named ____________________________________

a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION having first endorsed on same the date of delivery.

Deputy/Constable/Sheriff:
County of ___________________________ State of ____________ By __________________________________________ Deputy
Fees $_________
State of County of (Must be verified if served outside the State of Texas)
Signed and sworn to by the said __________________________________ before me this ____ day of ________, ____
to certify which witness my hand and seal of office
(Seal)

County of ___________________, State of ________________

*CITATION*

Cause No. 048-340172-23

RICHARD CROSS, ET AL

VS.

COCA COLA SOUTHWEST BEVERAGES, LLC, ET AL

ISSUED

This 16th day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By AMANDA PFISTERER Deputy

CARSON R RUNGE
Attorney for: RICHARD CROSS
Phone No. (903)757-7000
ADDRESS: 101 E WHALEY ST

LONGVIEW, TX 75601

*CIVIL LAW*

*04834017223000227*

SERVICE COPY

048-340172-23

FILED
TARRANT COUNTY
2/10/2023 1:20 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. ____________

| | | |
|---|---|---|
| RICHARD CROSS and ROBERT CROSS<br>*Plaintiffs,*<br><br>VS.<br><br>COCA COLA SOUTHWEST BEVERAGES, LLC, GG'S PRODUCE TRANSPORT, LLC, I GARZA, LLC, SONICS LOGISTICS, LLC, ENTERPRISE FM TRUST, SIERRA MOUNTAIN EXPRESS, INC. MCDANIEL & SON PLUMBING, INC., NTE MOBILING PARTNERS SEGMENTS 3, LLC, NTE MOBILITY PARTNERS, LLC, NTE MOBILITY PARTNERS SEGMENTS 3 HOLDINGS, LLC, NTE MOBILITY PARTNERS HOLDINGS, LLC, NORTH TARRANT INFRASTRUCTURE, LLC, CINTRA HOLDING US CORP, CINTRA US CORP, CINTRA US SERVICES, LLC, CINTRA NTE LLC, CINTRA TEXAS CORP, CINTRA NTE MOBILITY PARTNERS SEGMENTS 3, LLC, FERROVIAL CONSTRUCTION TEXAS, LLC D/B/A FERROVIA AGROMAN US CORP, A/K/A FERROVIAL CONSTRUCTION US CORP, WEBBER LLC, TEXAS DEPARTMENT OF TRANSPORTATION, REDMOND MINERALS, INC, REDMOND INCORPORATED, ENVIROTECH SERVICES, INC., SOUTHWEST ENVIROTX PARTNERS, LLC D/B/A EENVIROTX, JALEN MCENLEY, JOSE BRENT DURAN, SUKHWINDER SINGH, DEREK FRANK, ARTURO MONTES, NADIA ROGERS, ANGIE DENISE LIVESAY, JACOB ALEXANDER YOUNG, MELISSA GARRETT, AMY CASE, ELVIRA HERRERA, AARON WATSON, TERRY MORRIS, MONICA SIMS, ALEXANDER GOYER, DUSTIN DUGGINGTON, AND ASHLEY BROOKE<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br><br>TARRANT COUNTY, TEXAS<br><br><br><br>____ JUDICIAL DISTRICT COURT |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Richard Cross and Robert Cross file this Original Petition against all Defendants for injuries and damages arising out of the catastrophic motor vehicle crash that occurred on February 11, 2021 and would respectfully show unto the Court as follows:

## I.
## DISCOVERY CONTROL PLAN

1.1 Pursuant to the provisions of Rule 190.3, Plaintiffs propose to conduct discovery pursuant to a Level 3 Discovery Control Plan. Plaintiffs affirmatively plead that this lawsuit is not governed by the expedited actions process in Rule 169 because Plaintiffs seek relief over $1,000,000.00.

## II.
## CLAIM FOR MONETARY RELIEF

2.1 In compliance with Rule 47, and as a consequence of Defendants' negligent and grossly negligent conduct causing the damages and injuries sustained, Plaintiffs Richard Cross and Robert Ross seek monetary relief over $1,000,000.00.

## III.
## PARTIES

3.1 Plaintiff Richard Cross is a resident of Fort Worth, Tarrant County, Texas. The last three digits of Plaintiff's driver's license are 929. The last three digits of Plaintiff's Social Security number are 303.

3.2 Plaintiff Robert Cross is a resident of Fort Worth, Tarrant County, Texas. The last three digits of Plaintiff's driver's license are 093. The last three digits of Plaintiff's Social Security number are 256.

3.3 Defendant Coca Cola Southwest Beverages, LLC ("Coca Cola") is a Delaware corporation with its principle office and place of business located in Dallas County, Texas. It may

be served by serving its agent for service of process -Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. ***Citation is requested.***

3.4 Defendant GG's Produce Transport LLC is a Texas limited liability company with its principle place of business at 2305 E. Trenton Road, Edinburg, Hidalgo County, Texas 78542. It may be served by serving its registered agent for service of process – George David Durham III at 517 W. Nolana Avenue, McAllen, Texas 78504. ***Citation is requested.***

3.5 I Garza, LLC is a Texas limited liability company with its principle office and principle place of business located in Hidalgo County, Texas. It may be served by serving its registered agent - Ismael Garza, 2305 E. Trenton, Edinburg, Texas 78539, or wherever he may be found. ***Citation is requested.***

3.6 Defendant Sonic Logistics, LLC is a Washington limited liability company with its principle office and principle place of business located in Ferndale, Washington. Sonic Logistics LLC may be served by serving its registered agent – Elite Registration Services, 1901 Front Street, Lynden, WA 98264. ***Citation is requested.***

3.7 Defendant Enterprise FM Trust, is a Missouri limited liability company with its principle office and principle place of business located in Jefferson City, Missouri and may be served by serving its registered agent for service, CT Corporation System, 120 S. Central Ave. Ste. 400, St. Louis, MO 63105. ***Citation is requested.***

3.8 Defendant Sierra Mountain Express, Inc. is a foreign-for-profit corporation with its principle office and principle place of business located in El Dorado Hills, CA and may be served by serving its registered agent for service, William Scanlon, 1814 Westfield Loop, Houston, TX 77073. ***Citation is requested.***

3.9 Defendant McDaniel & Son Plumbing, Inc. is a domestic-for-profit corporation

with its principle office and principle place of business located in Arlington, Texas and may be served by serving its registered agent for service, William A. McDaniel, 2215 W. Harris Rd., Arlington, TX 76001. ***Citation is requested.***

3.10 Defendant NTE Mobility Partners Segments 3 LLC is a foreign limited liability company with its principle place of business at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. It may be served by serving its registered agent – C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. ***Citation is requested.***

3.11 Defendant, NTE Mobility Partners, LLC, is a limited liability company with its principle place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. This Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and hence said Defendant is deemed to be a citizen of Texas. This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. This Defendant is one of the I-35 Tollway Owners, Operators, and/or Maintenance entities. ***Citation is requested.***

3.12 Defendant NTE Mobility Partners Segments 3 Holding, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin TX 78759. ***Citation is requested.***

3.13 Defendant NTE Mobility Partners Holdings, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom

service of process can be made. It is Plaintiffs' understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin TX 78759. ***Citation is requested.***

3.14 Defendant North Tarrant Infrastructure, LLC is a Texas limited liability company with its principle office and principle place of business located in Tarrant County, Texas. It may be served by serving its registered agent for service of process - CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. ***Citation is requested.***

3.15 Defendant Cintra Holding US Corp. d/b/a Cintra US Corp. is a Delaware corporation with its principle office and principle place of business located in Travis County, Texas. It may be served by serving its registered agent for service of process - CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. ***Citation is requested.***

3.16 Defendant Cintra US Services, LLC is a Texas limited liability company with its principle office and principle place of business located in Travis County, Texas. It may be served by serving its registered agent for service of process – CT Corporation System, 1999 Bryan Street Suite 900, Dallas, Texas 75201-3136. ***Citation is requested.***

3.17 Defendant Cintra NTE LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin TX 78759. ***Citation is requested.***

3.18 Defendant Cintra Texas Corp is a Delaware Corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, through CT Corporation System at 1999 Bryan Street, Suite 900 Dallas TX 75201. ***Citation is requested.***

3.19 Defendant Cintra NTE Mobility Partners Segments 3 Holding, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin TX 78759. ***Citation is requested.***

3.20 Defendant Ferrovial Construction Texas, LLC d/b/ Ferrovial Agroman US Corp a/k/a Ferrovial Construction US Corp is a Delaware corporation with its principle office and principle place of business located in Travis County, Texas. It may be served by serving its registered agent for service of process - CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, or Fernando Martinez Caro, 700 Chevy Chase Blvd., Suite 500, Austin, Texas 78752. ***Citation is requested.***

3.21 Defendant Webber, LLC is a Texas limited liability company with its principle office and principle place of business located in Montgomery County, Texas. It may be served by serving its registered agent for service of process - CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. ***Citation is requested.***

3.22 Defendant Texas Department of Transportation is a Texas government entity that may be served with process by serving its Executive Director Mark D. Williams at 125 E. 11th St. Austin, TX 78701. ***Citation is requested.***

3.23 Defendant Jalen McEnley is an individual residing in Irving, Dallas County, Texas and can be served with process at 3974 N. Story Road #925, Irving, Texas 75038. ***Citation is requested.***

3.24 Defendant Jose Brent Duran (hereinafter "Defendant Duran") is an individual residing in Mission, Hidalgo County, Texas and can be served with process at 3304 San Esteban

Street, Mission, Texas 78572. ***Citation is requested.***

3.25 Defendant Sukhwinder Singh (hereinafter "Defendant Driver or Singh") is an individual residing in Whatcom County, Washington and can be served with process at 4243 Stone Crest Ct., Bellingham, WA 98226. ***Citation is requested.***

3.26 Defendant Derek Michael Frank (hereinafter "Defendant Driver or Frank") is an individual residing in Wise County, Texas and can be served with process at 139 Creasser Lane, Rhome, TX 76078. ***Citation is requested.***

3.27 Defendant Arturo Montes (hereinafter "Defendant Driver or Montes") is an individual residing in Harris County, Texas and can be served with process at 16111 Marcelia Dr., Houston, TX 77049. ***Citation is requested***

3.28 Defendant Nadia Jean Rogers (hereinafter "Defendant Driver or Rogers") is an individual residing in Tarrant County, Texas and can be served with process at 713 Turner Blvd, Grand Prairie, TX 75050. ***Citation is requested.***

3.29 Defendant Angie Denise Livesay (hereinafter "Defendant Driver or Lively") is an individual residing in Fort Worth, Tarrant County, Texas and can be served with process at 12240 Walden Wood Drive, Fort Worth, Texas 76244. ***Citation is requested.***

3.30 Defendant Jacob Alexander Young (hereinafter "Defendant Driver or Young") is an individual residing in North Richland Hills, Tarrant County, Texas and can be served with process at 6716 Ridgewood Drive, North Richland Hills, Texas 76182. ***Citation is requested.***

3.31 Defendant Melissa Elizabeth Garrett (hereinafter "Defendant Driver or Garrett") is an individual residing in Tarrant County, Texas and can be served with process at 329 West Southern Ave., Saginaw, TX 76179. ***Citation is requested.***

3.32 Defendant Amy Renee Case (hereinafter "Defendant Driver or Case") is an

individual residing in Tarrant County, Texas and can be served with process at 11112 Hawks Landing, Haslet, TX 76052. ***Citation is requested.***

3.33 Defendant Elvira Herrera (hereinafter "Defendant Driver or Herrera") is an individual residing in Tarrant County, Texas and can be served with process at 7916 Crouse Dr., Fort Worth, TX 76137. ***Citation is requested.***

3.34 Defendant Aaron Luke Watson (hereinafter "Defendant Driver or Watson") is an individual residing in Tarrant County, Texas and can be served with process at 2400 Indian Head Dr., Fort Worth, Texas 76177. ***Citation is requested.***

3.35 Defendant Terry Allen Morris, Jr. (hereinafter "Defendant Driver or Morris") is an individual residing in Tarrant County, Texas and can be served with process at 6049 Nanci Dr, Watauga, TX 76148. ***Citation is requested.***

3.36 Defendant Monica Ivonne Sims (hereinafter "Defendant Driver or Sims") is an individual residing in Tarrant County, Texas and can be served with process at 8933 Proper St #5109, Fort Worth, TX 76177. ***Citation is requested.***

3.37 Defendant Alexandria Paige Gover (hereinafter "Defendant Driver or Gover") is an individual residing in Tarrant County, Texas and can be served with process at 2830 S. Hulen St. #166, Fort Worth, TX 76109. ***Citation is requested.***

3.38 Defendant Dustin Dale Duddington (hereinafter "Defendant Driver or Duddington") is an individual residing in Tarrant County, Texas and can be served with process at 14009 Tanglebrush Trl., Haslet, TX 76052. ***Citation is requested.***

3.39 Defendant Ashley Brooke (hereinafter "Defendant Driver or Brooke") is an individual residing in Tarrant County, Texas and can be served with process at 3301 Calera Trail, #3111, Fort Worth, TX 76177. ***Citation is requested.***

3.40 Defendant Redmond Minerals, Inc. is a foreign corporation that does not maintain a registered agent in the State of Texas. It may be served by serving its registered agent for service of process – Gordon Law Group, 322 E Gateway Dr. Ste. 201, Heber City, UT 84032. ***Citation is requested.***

3.41 Defendant **Redmond, Incorporated** is a Utah corporation that does business in the State of Texas. This Defendant may be served with citation and a true and correct copy of this petition by serving its registered agent for service of process: Gordon Law Group, P.C., 322 Gateway Drive, Suite 201, Heber City, UT 84032. ***Citation is requested.***

3.42 Defendant **EnviroTech Services, Inc.** is a Colorado corporation that does business in the State of Texas. This Defendant may be served with citation and a true and correct copy of this petition by serving its registered agent for service of process: Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, TX 78701. ***Citation is requested.***

3.43 Defendant **Southwest EnviroTX Partners, LLC d/b/a ENVIROTX** is a Texas corporation that may be served with citation and a true and correct copy of this petition by serving its registered agent for service of process: Clay C. Speer, 10899 Deer Canyon Road, Jonestown, TX 78645. ***Citation is requested.***

3.44 Plaintiffs specifically invoke Rule 28 of the Texas Rules of Civil Procedure and assert this lawsuit against whatever person, business or entity that was doing business under the assumed or common name "Ice Slicer NM" and/or whatever person business or entity that manufactured, sold, marketed and/or distributed the "ice slicer" product that was used by the Roadway Defendants to allegedly pre-treat the roadway where this collision occurred. Plaintiffs further assert this lawsuit against whatever person, business or entity that was doing business under the assumed or common name "Redmond," "Envirotech," "Envirotx" and/or whatever person

business or entity that manufactured, sold, marketed and/or distributed the "ice slicer" product that was allegedly used by the Roadway Defendants to pre-treat the roadway where this collision occurred. Additionally, Plaintiffs assert this lawsuit against whatever person, business or entity that was doing business under the assumed or common name "NTE," "Cintra," "Webber," "Ferrovial," "North Tarrant Infrastructure" and/or whatever person business or entity that was responsible, in whole or in part, directly or indirectly, for the operations and maintenance (including de-icing and pretreatment) of the roadway where this collision occurred.

3.45 In the event that any of the parties identified above are misnamed or misspelled or not included herein, it is the contention of Plaintiffs that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein.

## IV.
## VENUE & JURISDICTION

4.1 Venue is proper in Tarrant County, Texas, pursuant to Texas Civil Practice & Remedies Code Section 15.002(a)(1) because all or a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in Tarrant County. Venue is also proper with this Court, pursuant to Texas Civil Practice & Remedies Code Section 15.002(a)(3), as Tarrant County is the principal place of business for Defendant NTE Mobility Partners LLC and Defendant NTE Mobility Partners Segments 3 LLC, among other Defendants. The Court has jurisdiction over this lawsuit because the amount in controversy exceeds the Court's minimum jurisdictional requirements. Plaintiffs and numerous Defendants, as stated above, are citizens of Texas, and thus there is no complete diversity of citizenship.

## V.
## FACTS

5.1 On or about February 11, 2021, Plaintiffs Richard Cross and Robert Cross suffered severe injuries and damages from Defendants' negligence, negligence *per se* and gross negligence. On that date, Plaintiff Richard Cross was operating a 2020 Kia and his father Plaintiff Robert Cross was his seat-belted front seat passenger. Plaintiffs' vehicle was traveling on southbound on IH-35 (the "TEXPress Lanes") when Plaintiffs were involved in a catastrophic crash. Multiple vehicles were involved in a pile up collision as a result of the negligent, negligent *per se* and grossly negligent actions and/or omissions of Truck Company Defendants, Truck Driver Defendants, Road Maintenance Defendants and Defendant Drivers, as defined below.

5.2 The term "Truck Company Defendants" collectively refers to Defendants COCA COLA SOUTHWEST BEVERAGES, LLC, GG'S PRODUCE TRANSPORT, INC., I GARZA, LLC, SONICS LOGISTICS, LLC, ENTERPRISE FM TRUST, SIERRA MOUNTAIN EXPRESS, INC. and MCDANIEL & SON PLUMBING, INC. The term "Truck Driver Defendants" collectively refers to Defendants JALEY MCENLEY, JOSE BRENT DURAN, SUKHWINDER SINGH, DEREK FRANK, ARTURO MONTES, and NADIA ROGERS. At all relevant times, the Truck Company Defendants were collectively operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, and at all relevant times the commercial motor vehicles involved in this collision and were required to observe all commercial motor carrier safety rules and regulations.

5.3 The terms "Truck Company Defendants" and "Truck Driver Defendants" refer to the following (note: the professional commercial truck driver is listed to the immediate right of the professional commercial truck driver's employer/statutory employer/master, i.e., Truck Driver

Defendant Jalen McEnley was driving for Truck Company Defendants Coca Cola Southwest Beverages, LLC at the time of the subject collision):

| Truck Company Defendants | Truck Driver Defendants | Unit Number on CR-3 Report |
|---|---|---|
| Coca Cola Southwest Beverages, LLC | Jalen McEnley | 23 - 24 |
| GG's Produce Transport, LLC | Jose Brent Duran | 41 |
| I Garza, LLC | Jose Brent Duran | 42 |
| Sonic Logistics, LLC | Sukhwinder Singh | 6-7 |
| Enterprise FM Trust | Derek Frank | 17 |
| Sierra Mountain Express, Inc. | Arturo Montes | 19-20 |
| McDaniel & Son Plumbing, Inc. | Nadia Rogers | 26 |

5.4 Truck Company Defendants were involved in the crash and pile up due to their failure to adequately train, supervise, and dispatch their respective drivers (i.e., Truck Driver Defendants), and due to their respective drivers' failure to control their speed, failure to reduce speed in adverse weather conditions, failure to use extreme caution, failure to pull over until adverse weather conditions passed, failure to keep a proper lookout, failure to take road conditions into account, among other reasons listed below. Truck Company Defendants' actions lead to a blockage of the roadway causing numerous subsequent collisions.

5.5 Truck Company Defendants' vehicles were each driven by drivers (i.e., Truck Driver Defendants) in the course and scope of their respective employment and/or statutory employment and/or agency and/or ostensible agency with Truck Company Defendants, in furtherance of a mission for Truck Company Defendants' benefit, and within Truck Company

Defendants' control. Truck Company Defendants are liable for their drivers' negligence, negligence *per se* and gross negligence through the doctrine of vicarious liability/*respondeat superior*. Moreover, Truck Company Defendants are responsible for the negligent acts and/or omissions of their respective Truck Driver Defendants because at the time and place in question, each Truck Company Defendants' driver was operating a commercial motor vehicle and the Truck Driver Defendants, as well as the Truck Company Defendants, were therefore subject to the Federal Motor Carrier Safety Regulations, including 49 C.F.R §376.12(c)(1). Accordingly, at all relevant times hereto, Truck Driver Defendants were statutory employees of their respective Truck Company Defendants, and Richard and Robert Cross were members of the general driving public, a class of persons that 49 C.F.R. §376.12(c)(1) was designed to protect.

5.6 Truck Driver Defendants were driving commercial vehicles owned and/or maintained by Truck Company Defendants and were operating under their respective Truck Company Defendants' commercial operating authority.

5.7 Truck Company Defendants failed to properly hire, train, retain, and supervise their respective drivers. As a consequence, among other acts and omissions, and on information and belief, Truck Driver Defendants were driving distracted and/or fatigued at all material times.

5.8 The term "Road Maintenance Defendants" refers to the following Defendants who singularly or, upon information and belief, through a consortium of companies, had the responsibility to maintain the TEXPress Lanes where the subject collision occurred:

NTE Mobility Partners Segments 3, LLC

NTE Mobility Partners, LLC

NTE Mobility Partners Segments 3 Holding, LLC

NTE Mobility Partners Holdings, LLC

North Tarrant Infrastructure, LLC

Cintra Holding US Corp. d/b/a Cintra US Corp

Cintra US Services, LLC

Cintra NTE LLC

Cintra Texas Corp

Cintra NTE Mobility Partners Segments 3, LLC

Ferrovial Construction Texas, LLC d/b/a Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp

Webber LLC

Texas Department of Transportation

5.9 The Road Maintenance Defendants had control over the TEXPress Lanes where the collision occurred and were contractually responsible for maintaining the express lanes where the subject collision occurred, including anti-icing, de-icing, and mechanical removal of ice. The Road Maintenance Defendants had notice of a collision that occurred approximately three hours earlier near the area of this collision but failed to treat, clear, de-ice, and/or close the TEXPress Lanes prior to this catastrophic collision. The Road Maintenance Defendants failed to comply with its duties and obligations for maintaining the express lanes, including its contractual duties.

5.10 The term "De-Icing Manufacturer Defendants" refers to the following Defendants who singularly or, upon information and belief, through a consortium of companies, had the responsibility to maintain the TEXPress Lanes where this collision occurred (listed in alphabetical order):

Envirotech Services, Inc.
Redmond Incorporated
Redmond Minerals, Inc.

[ Southwest Envirotx Partners, LLC., d/b/a ENVIROTX |

At all relevant times the De-Icing Manufacturer Defendants, upon information and belief, were responsible for the design, manufacture, marketing, sale and/or distribution of the de-icing products used, if any, by the Roadway Defendants to treat the express lanes where this collision occurred.

5.11 As a proximate cause of the Truck Company Defendants', Truck Driver Defendants', Road Maintenance Defendants', and De-Icing Manufacturer Defendants' negligence, negligence *per se*, defective product and gross negligence, the subject collision occurred and Plaintiffs' sustained serious and permanent injuries. Plaintiffs continue to suffer serious and permanent injuries and damages from the crash all for which Plaintiffs hereby sue.

5.12 The term "Defendant Drivers" collectively refers to the following Defendants:

| Defendant Driver | Unit Number from CR-3 Report |
|---|---|
| ANGIE DENISE LIVESAY | 31 |
| JACOB ALEXANDER YOUNG | 34 |
| MELISSA GARRETT | 9 |
| AMY CASE | 11 |
| ELVIRA HERRERA | 12 |
| AARON WATSON | 13 |
| TERRY MORRIS | 15 |
| MONICA SIMS | 16 |
| ALEXANDER GOYER | 18 |
| DUSTIN DUGGINTON | 25 |
| BROOKE, ASHLEY | 27 |

5.13 Defendant Drivers failed to control their speed, failed to take into account the icy road conditions, failed to observe the hazardous road conditions, failed to properly slow and control their vehicle given the road and weather conditions, among other negligent acts.

5.14 As a proximate cause of Defendant Drivers' negligent acts and omissions resulting in the collision, Plaintiffs sustained serious and permanent injuries.

## VI.
## CAUSES OF ACTION AGAINST ALL TRUCK DRIVER DEFENDANTS

**A. Negligence**

6.1 On the date of the incident in question, Truck Driver Defendants had a duty to exercise the degree of care that an ordinary person would have in operating a commercial motor vehicle under the same or similar circumstances. Truck Driver Defendants breached their duty of care by one or more of the following acts or omissions:

a) Driving a commercial vehicle in hazardous conditions;

b) Failing to use extreme caution in driving their commercial motor vehicle given the existing ice, freezing mist, and freezing rain conditions;

c) Failure to maintain a proper and safe distance given the weather and road conditions;

d) Failure to pay attention to the road and driving conditions;

e) Failure to monitor road, weather and driving conditions;

f) Failure to properly follow Federal Motor Safety Carrier Regulations;

g) Traveling at an unreasonable rate of speed given the weather and road conditions;

h) Failure to make timely application of brakes; and

i) Failure to maintain proper control of the commercial motor vehicle.

6.2 Each of the Defendant Truck Drivers' acts and omissions as described above constitute negligence, and, separately or in combination, were a proximate cause of the collision in question and the Plaintiffs' injuries and damages as set forth below.

**B. Negligence *Per Se***

6.3 The Truck Driver Defendants were negligent *per se* in committing acts and/or omissions that violated various statutes intended to protect the safety of other motorists traveling on roadways, including but not limited to:

a) Driving in hazardous conditions in violation of 49 CFR §392.14 and Section 2.13 of the Texas Commercial Motor Vehicle Driver's Handbook;

b) Failing to use extreme caution given the existing weather conditions in violation of 49 CFR §392.14;

c) Failing to operate at a reasonable rate of speed given the existing weather conditions in violation of Section 545.351 of the Texas Transportation Code and Section 2.6 of the Texas Commercial Motor Vehicle Driver's Handbook;

d) Failing to control the speed of the commercial motor vehicle and/or operating the commercial motor vehicle at an unsafe speed in violation of Section 545.352 of the Texas Transportation Code;

e) Failing to observe hazards in the roadway in violation of Section 2.8 of the Texas Commercial Motor Vehicle Driver's Handbook; and

f) Engaging in reckless driving in violation of Texas Transportation Code Section 545.401(a).

6.4 Each of the Defendant Truck Drivers' acts and omissions as described above constitute negligence *per se*, and, separately or in combination, were a proximate cause of the collision in question and the Plaintiffs' injuries and damages as set forth below.

**C. Gross Negligence**

6.5 Each of the Defendant Truck Drivers' actions and or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the

probability and magnitude of the potential harm to others. The Defendant Truck Drivers had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, welfare and lives of others, including Plaintiffs. This amounts to gross negligence, and such gross negligence was a proximate cause of the collisions and injuries to Plaintiffs. Thus, Plaintiffs are entitled to exemplary damages.

## VII.

## CAUSES OF ACTION AGAINST ALL TRUCK COMPANY DEFENDANTS

### A. Negligence

7.1 On the date of the incident in question, Truck Company Defendants had a duty to properly train and properly supervise their employees. Truck Company Defendants breached their duty of care by one or more of the following acts or omissions:

a) Failed to maintain a safe speed;

b) Failed to maintain a safe distance;

c) Failed to pay attention to the road ahead;

d) Failed to drive safely given the road conditions;

e) Failed to operate the vehicle safely;

f) Failed to properly supervise their drivers;

g) Failed to properly train their drivers;

h) Failed to properly hire and retain their drivers;

i) Failed to properly entrust their drivers; and

j) Failed to follow applicable state and federal rules and regulations, including but not limited to the Federal Motor Carrier Safety Regulations.

7.2 Each of the Truck Company Defendants' acts and omissions as described above constitute negligence, and, separately or in combination, were a proximate cause of the collision

in question and the Plaintiffs' injuries and damages as set forth below.

**B. Negligence *Per Se***

7.3 The Truck Company Defendants were negligent *per se* in committing acts and/or omissions that violated various statutes intended to protect the safety of other motorists traveling on roadways.

7.4 Plaintiffs would show Truck Company Defendants' professional commercial drivers were negligent *per se* for violating the applicable FMCSRs and Texas Transportation Code provisions regarding safe driving and driving in adverse weather conditions. Such negligence *per se* was a proximate cause of Plaintiffs' damages and as described herein.

**C. Negligent Hiring**

7.5 Plaintiffs sustained injuries as a proximate result of Truck Company Defendants' negligent hiring because of Truck Company Defendants':

a) Failure to conduct a reasonable interview of their professional commercial drivers prior to hiring them;

b) Failure to properly investigate information provided by their professional commercial drivers during the application and interview process;

c) Failure to conduct a proper employment and background check;

d) Failure to comply with the FMCSRs;

e) Failure to sufficiently investigate their professional commercial drivers' training, prior employment, criminal record, and past; and

f) Failure to adopt proper policies and procedures regarding the interview of a potential employee who will be driving a tractor-trailer on Texas highways.

**D. Negligent Training**

7.6 Plaintiffs sustained injuries as a proximate result of Truck Company Defendants' negligent training because of Truck Company Defendants':

a) Failure to explain and demonstrate its safety policies and procedures to their professional commercial drivers;

b) Failure to provide the necessary training to their professional commercial drivers regarding driving the commercial vehicles they were driving, vehicle safety, safety classes, how to properly and safely drive a commercial motor vehicle, the proper method to maintain a commercial motor vehicle, the proper way and necessity of keeping the commercial motor vehicle clean and in proper working order, and in all matters the proper and safe operation of the commercial motor vehicles and the maintenance of the commercial motor vehicles in various situations, including adverse weather conditions;

c) Failure to properly train their professional commercial drivers in all aspects of driver safety, including, but not limited to, safely operating a commercial motor vehicle in adverse weather conditions;

d) Failure to properly train and educate its professional commercial drivers on applicable FMCSRs;

e) Failure to train its employees, including its professional commercial drivers, regarding safe and proper operation of a commercial motor vehicle such as a person or commercial motor carrier of ordinary care would have done in the same or similar circumstances;

f) Failure to train their professional commercial drivers on the effects of distracted and/or fatigued driving; and

g) Failure to provide and perform regular follow-up professional commercial driver education and training.

**E. Negligent Supervision, Retention, Dispatching, Monitoring and Failure to Control**

7.7 Plaintiffs sustained injuries as a proximate result of Truck Company Defendants' negligent supervision, retention, dispatching, monitoring and failure to control because of Truck Company Defendants':

a) Failure to monitor their drivers to make sure that they were complying with policies and procedures;

b) Failure to interview and test their drivers to make sure they had read, and were familiar with, understood, and followed the company policies and procedures;

c) Failure to implement proper policies and procedures for their employees, including their drivers, regarding driving safety and vehicle safety;

d) Failure to document and make a determination regarding fault in the accident made the basis of this lawsuit;

e) Failure to supervise their drivers to ensure that they were keeping the vehicle properly maintained;

f) Failure to adequately supervise their drivers to ensure that the drivers were not distracted or fatigued;

g) Dispatching their drivers despite knowing that their drivers would encounter adverse weather conditions; and

h) Failing to stop its drivers from operating commercial motor vehicles under their operating authority despite knowing of the adverse weather conditions its drivers would encounter.

**F. Negligent Entrustment**

7.8 Plaintiffs sustained injuries as a result of Truck Company Defendants' negligent entrustment because Truck Company Defendants' provided a commercial motor vehicle and/or authority to their commercial drivers who were not properly trained and did not have proper education, background, training, or experience to safely operate the commercial motor vehicle generally, and in adverse weather conditions specifically, and who were incompetent and reckless drivers.

**G. Ratification**

7.9 Truck Company Defendants' are responsible for the negligence and gross negligence of their drivers because Truck Company Defendants' ratified their drivers' actions and omissions by:

a) Retaining their drivers after their drivers committed the underlying tortious acts;

b) Knowing of their drivers' tortious acts;

c) Recognizing that their drivers will likely continue to be negligent if retained;

d) Recognizing that their drivers will likely continue to be grossly negligent if retained;

e) Failing to take adequate measures to prevent their drivers from committing future tortious acts; and

f) Otherwise adopting, confirming, or failing to repudiate their drivers' negligent and grossly negligent conduct after Defendants gained knowledge of the conduct.

**H. Gross Negligence**

7.10 Each of the Trucking Company Defendants' actions and or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Trucking Company Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, welfare and lives of others, including Plaintiffs. This amounts to gross negligence, and such gross negligence was a proximate cause of the collisions and injuries to Plaintiffs. Thus, Plaintiffs are entitled to exemplary damages.

**I. *Respondeat Superior*, Agency, Statutory Employment, and Direct Negligence**

7.11 At the time of the collision described above, Truck Driver Defendants were the agent, servant, and employees of their respective Truck Company Defendants, and were acting within the scope of their respective Truck Company Defendants' operating authority as such agent, servant, and employee. Truck Driver Defendants were in the course and scope of their respective employment with Truck Company Defendants at the time of the subject incident. The negligence/ negligence *per se* of Truck Driver Defendants is therefore imputed to each Truck Driver Defendants' respective Truck Company Defendants. Moreover, Truck Company Defendants are responsible for the negligent acts and/or omissions of their respective Truck Driver Defendants because at the time and place in question, Truck Driver Defendants were operating a commercial vehicle under their respective Truck Company Defendants' US DOT authority and thus Truck

Driver Defendants, as well as Truck Company Defendants, were therefore subject to the Federal Motor Carrier Safety Regulations, including 49 C.F.R. §376.12 (c)(1). Accordingly, at all relevant times hereto, Truck Driver Defendants were statutory employees of their respective Truck Company Defendants (see chart above showing each Truck Driver Defendants' employer/statutory employer), and Plaintiffs were members of the class of persons 49 C.F.R. §376.12(c)(1) was designed to protect.

## VIII. CAUSES OF ACTION AGAINST DEFENDANT DRIVERS

### A. Negligence

8.1 Defendant Drivers had a duty to exercise ordinary care and to operate his/her vehicle in a reasonable and prudent manner and he/she failed to do so. Defendant Drivers breached his/her duty of care in at least the following ways:

a) Traveling at an unreasonable rate of speed;

b) Failure to keep a proper lookout;

c) Failure to maintain a proper and safe distance;

d) Failure to pay attention to the road and driving conditions;

e) Failure to monitor road and driving conditions;

f) Failure to make timely application of brakes; and

g) Failure to maintain proper control of his/her vehicle.

8.2 Defendant Drivers' failure to exercise ordinary care was a proximate cause of the collisions and injuries to Plaintiffs.

# IX.
# CAUSES OF ACTION AGAINST ROAD MAINTENANCE DEFENDANTS

## A. Negligence

9.1 On the date of the incident in question, the Road Maintenance Defendants failed to comply with their duties and obligations for maintaining the express lanes, including their contractual duties.

9.2 The Road Maintenance Defendants breached the duty of care by one or more of the following acts and/or omissions:

a) Failing to adequately, properly, and timely treat the express lanes to prevent the formation of ice on the I-35 roadway where this incident occurred;

b) Failing to properly maintain the roadway in order to discover any defects as they existed at the time of this incident;

c) Failing to discover any hazards or defects which existed at this time of this incident;

d) Failing to inspect, or adequately and/or properly inspect, the roadway;

e) Failing to monitor, and/or timely monitor, the weather conditions that existed at the time of this incident;

f) Failing to adequately repair any defect which existed at the time of this incident;

g) Failing to post adequate warning signs on the roadway to warn of any hazards or defects of which this defendant had, or should have had, knowledge;

h) Failing to provide barriers that would have prevented this type of incident;

i) Failing to provide safeguards that would have prevented this type of incident;

j) Failing to de-ice the I-35 tollway prior to the time of the incident made the basis of this suit;

k) Failing to close the I-35 tollway because of the presence of ice on the tollway;

l) Failing to properly train personnel on the proper and timely treatment required to prevent the formation of ice on the express lanes;

m) Failing to implement proper policies and procedures for the prevention of ice formation, pretreatment, de-icing and ice removal from the express lanes;

n) Failing to act as a reasonable and prudent roan maintenance company;

o) Failing to de-ice the TexPress Lanes;

p) Failing to spot treat the TEXPress Lanes;

q) Failing to adequately warn motorists of the icy conditions on the TEXPress lanes;

r) Failing to comply with its contractual obligations to maintain the express lanes in a safe condition for motorists and the general traveling public; and

s) Committing various acts and/or omissions of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

9.3 Each of the Road Maintenance Defendants' acts and omissions as described above constitute negligence, and, separately or in combination, were a proximate cause of the incident in question and the Plaintiffs' injuries and damages as set forth below.

**B. Premises Liability**

9.4 Additionally, or in the alternative, Plaintiffs allege that the Roadway Maintenance Defendants are liable under premises liability. At all times material, the Roadway Maintenance Defendants owned and/or controlled the I-35 express lanes and premises where this collision occurred and where Plaintiffs were injured. Plaintiffs were business invitees. The condition of the express lanes at the time of the collision posed an unreasonable risk of harm and the Roadway Maintenance Defendants had actual knowledge, or reasonably should have known, of the unreasonably dangerous condition, which included icy road conditions, and the Roadway Maintenance Defendants' failure to adequately prepare and plan for these conditions. Moreover, Plaintiffs did not have actual knowledge of the unreasonably dangerous condition. Plaintiffs were business invitees who entered the Roadway Maintenance Defendants' premises with their knowledge and for their benefit. The Roadway Maintenance Defendants had a duty to keep the

premises safe and they breached this duty by failing to adequately warn Plaintiffs, and other motorists, of the unreasonably dangerous condition on the roadway and by failing to make the unreasonably dangerous condition safe.

**C. Gross Negligence**

9.5 The Road Maintenance Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the Road Maintenance Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, and/or welfare of others, including Plaintiffs. This amounts to gross negligence; such gross negligence was a proximate cause of the incident, and the resulting injuries and damages suffered by Plaintiffs; and as such the Plaintiffs are entitled to punitive/exemplary damages.

**X.**
**CAUSES OF ACTION AGAINST DE-ICING MANUFACTURER DEFENDANTS**

**A. Negligence**

10.1 Plaintiffs contend that the de-icing procedure(s), if any, performed on the TEXPress Lanes of I-35W where this incident occurred was ineffective and failed. Plaintiffs contend that this failure was caused by De-Icing Manufacturer Defendants in whole or part by one or more of the following:

a) The "de-icing material" was ineffective;

b) The "de-icing material" was not the appropriate "de-icing material" for the specific conditions that existed on the TEXPress lanes of I-35W at the time of this incident;

c) The "de-icing material" lacked adequate instructions for the proper application of the de-icing material; and

d) The manufacturer of the "de-icing material" failed to provide warnings, instructions, and/or training and/or failed to provide adequate and/or sufficient warnings, instructions and/or training regarding the proper application of the "de-icing material."

10.2 Each of the foregoing acts or omissions, singularly or in combination with others, constitute negligence, which proximately caused the incident made the basis of this lawsuit and Plaintiffs' injuries and damages.

**B. Strict Products Liability – Marketing Defect**

10.3 Plaintiffs re-allege and incorporate by reference each and every allegation set forth hereinabove in Paragraphs 10.1 through 10.2, inclusive, as though set out in full. Accordingly, Plaintiffs allege and assert a Marking Defect Claim against De-Icing Manufacturer Defendants.

10.4 While engaged in the design, manufacture and sale of de-icing material, De-Icing Manufacturer Defendants designed, manufactured and marketed a de-icing material and distributed the de-icing material into the stream of commerce. De-Icing Manufacturer Defendants intended and expected that the De-Icing Manufacturer Defendants' de-icing material so introduced and passed on in the course of trade would ultimately reach a consumer or user in the condition in which it was originally sold.

10.5 Plaintiffs allege that Road Maintenance Defendants purchased said De-Icing Manufacturer Defendants' de-icing material for the purpose for which it was intended and the use of this product caused Plaintiffs' injuries and damages as alleged further herein. That is, the De-Icing Manufacturer Defendants' de-icing material was unreasonably dangerous because it was defectively marketed in that De-Icing Manufacturer Defendants' de-icing material failed to provide any appropriate warnings and/or instructions regarding the use and effectiveness of said de-icing material. Thus, De-Icing Manufacturer Defendants' de-icing material was unsuitable for the purpose for which it was designed, manufactured, marketed and sold. Plaintiffs further allege

that De-Icing Manufacturer Defendants' de-icing material was defective and unsafe for its intended purpose at the time it left control of De-Icing Manufacturer Defendants' and at the time it was sold.

10.6 De-Icing Manufacturer Defendants' defective marketing of the De-Icing Manufacturer Defendants' de-icing material was a producing cause of the Plaintiffs' injuries and damages, which are more fully set forth below. Plaintiffs therefore invoke the Doctrine of Strict Liability in RESTATEMENT (SECOND) OF TORTS, §402A, and as adopted by the Supreme Court of Texas.

**C. Gross Negligence**

10.7 De-Icing Manufacturer Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the De-Icing Manufacturer Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiffs. This amounts to gross negligence; such gross negligence was a proximate cause of the incident, and the resulting injuries and damages suffered by Plaintiffs; and as such the Plaintiffs are entitled to punitive/exemplary damages.

## XI.
## DAMAGES

**A. Plaintiff Robert Cross' Damages**

11.1 As a direct and proximate result of the negligent, negligent *per se,* and grossly negligent conduct of Defendants, Plaintiff Robert Cross sustained serious personal injuries. As a result of these injuries, he has suffered the following damages:

a) Reasonable and necessary medical expenses incurred by or on behalf of Plaintiff Robert Cross in the past;

b) Medical expenses that, in reasonable probability, Plaintiff Robert Cross will incur in the future;

c) Past physical pain and suffering;

d) Physical pain and suffering that, in reasonable probability, Plaintiff Robert Cross will suffer in the future;

e) Past mental anguish;

f) Mental anguish that, in reasonable probability, Plaintiff Robert Cross will suffer in the future;

g) Past physical impairment;

h) Physical impairment that, in reasonable probability, Plaintiff Robert Cross will suffer in the future;

i) Disfigurement; and

j) Bystander damages.

11.2 Plaintiff Robert Cross seeks fair and reasonable compensation for his damages together with pre-judgment and post-judgment interest at the maximum amount for the maximum period allowed by law.

11.3 All damages sought herein are within this Court's jurisdictional limits.

**B. Plaintiff Richard Cross' Damages**

11.4 As a direct and proximate result of the negligent, negligent *per se,* and grossly negligent conduct of Defendants, Plaintiff Richard Cross sustained serious personal injuries. As a result of these injuries, he has suffered the following damages:

a) Reasonable and necessary medical expenses incurred by or on behalf of Plaintiff Richard Cross in the past;

b) Medical expenses that, in reasonable probability, Plaintiff Richard Cross

will incur in the future;

c) Past physical pain and suffering;

d) Physical pain and suffering that, in reasonable probability, Plaintiff Richard Cross will suffer in the future;

e) Past mental anguish;

f) Mental anguish that, in reasonable probability, Plaintiff Richard Cross will suffer in the future;

g) Past physical impairment;

h) Physical impairment that, in reasonable probability, Plaintiff Richard Cross will suffer in the future;

i) Lost Wages; and

j) Bystander damages.

11.5 Plaintiff Richard Cross seeks fair and reasonable compensation for these damages together with pre-judgment and post-judgment interest at the maximum amount for the maximum period allowed by law.

11.6 All damages sought herein are within this Court's jurisdictional limits.

## XII.
## EXEMPLARY DAMAGES

12.1 Truck Company Defendants', Truck Driver Defendants', Road Maintenance Defendants', and De-Icing Manufacturer Defendants' conduct was more than momentary thoughtlessness, inadvertence, or error of judgment, and was of such a character as to make the Defendants listed above guilty of gross negligence. Truck Company Defendants', Truck Driver Defendants', Road Maintenance Defendants', and De-Icing Manufacturer Defendants' acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others of which Truck Company Defendants, Truck Driver Defendants,

Road Maintenance Defendants, and De-Icing Manufacturer Defendants had actual awareness, but nevertheless proceeded with conscious indifference to the rights, safety, and/or welfare of others, and Plaintiffs therefore sue for the maximum amount of exemplary damages, pursuant to Texas Civil Practice and Remedies Code § 41.003, from the parties Plaintiffs asserted gross negligence claims against herein, in the amount to be determined by the trier of fact.

## XIII.
## RULE 193.7 NOTICE

13.1 Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiffs reserve the right to utilize any documents produced during the course of discovery in this case as evidence at the time of trial.

## PRAYER

For these reasons, Plaintiffs pray that Defendants be cited to appear and answer and, on final trial, that they have and be awarded damages, both compensatory and exemplary, in an amount to be determined by a jury, that Plaintiffs have and recover judgment against Defendants, jointly and severally, for all actual damages, exemplary damages, costs of court, pre-judgment interest and post-judgment interest at the highest legal rate thereon for all damages, and that they be awarded all other relief to which they are entitled.

Respectfully submitted,
SLOAN, HATCHER, PERRY, RUNGE, ROBERTSON & SMITH

CARSON R. RUNGE
State Bar No. 24059262
crunge@sloanfirm.com
SAVANNAH M. RAND
State Bar No. 24121694
srand@sloanfirm.com

101 East Whaley Street
Longview, Texas 75601
Telephone: (903) 757-7000
Facsimile: (903) 757-7574

ATTORNEYS FOR PLAINTIFFS

# EXHIBIT B-4

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/24/2023
CT Log Number 543292556

## Service of Process Transmittal Summary

**TO:** Catherine David, General Counsel
FERROVIAL CONSTRUCTION US CORP.
9600 Great Hills Trl Ste 200E
Austin, TX 78759-5680

**RE:** **Process Served in Texas**

**FOR:** North Tarrant Infrastructure, LLC (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: FEBRUARY 11,2021 INCIDENT ON HI 35W // To: North Tarrant Infrastructure, LLC |
| **CASE #:** | 15300000022 |
| **NATURE OF ACTION:** | Wrongful Death - Vehicle Collision |
| **PROCESS SERVED ON:** | C T Corporation System, Dallas, TX |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/24/2023 at 14:12 |
| **JURISDICTION SERVED:** | Texas |
| **ACTION ITEMS:** | CT will retain the current log<br>Image SOP<br>Email Notification, Catherine David catherine.david@ferrovial.us<br>Email Notification, Bryan W. Tate btate@wwebber.com<br>Email Notification, Juli Simoneaux jstibbe@gpi-99.com<br>Email Notification, LEAH SWAIM lswaim@ferrovial.us<br>Email Notification, Eric Etheridge eetheridge@ferrovial.us |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>866-665-5799<br>SouthTeam2@wolterskluwer.com |

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/24/2023
CT Log Number 543292556

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED | DATE/METHOD OF SERVICE | TO | LOG NUMBER |
|---|---|---|---|
| -- | By Process Server on 02/17/2023 at 15:20 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543250703 |
| -- | By Process Server on 02/16/2023 at 11:16 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543236920 |
| -- | By Process Server on 02/15/2023 at 12:29 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543231889 |
| -- | By Process Server on 02/14/2023 at 12:41 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543221645 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Fri, Feb 24, 2023
**Server Name:** Alan Davis

| | |
|---|---|
| Entity Served | NORTH TARRANT INFRASTRUCTURE, LLC |
| Case Number | 153-000000-22 |
| Jurisdiction | TX |

Inserts

2-28-23
PSC 949

# THE STATE OF TEXAS
# DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 153-000000-22*

IN RE: FEBRUARY 11, 2021 INCIDENT ON IH35W
VS.

TO: NORTH TARRANT INFRASTRUCTURE LLC

B/S REG AGT-CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS, TX 75201-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 153rd District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

JEREMY CRUZ

Filed in said Court on February 9th, 2023 Against
ISO RIZO INC, SIMON EXPRESS LLC, ENERGY TRUCKING LLC, FRANTZ CLEMENT, NTE MOBILITY PARTNERS LLC, NTE MOBILITY PARTNERS SEGMENTS 3 LLC, JOSE BRENT DURAN, CINTRA US SERVICES LLC, NORTH TARRANT INFRASTRUCTURE LLC, WEBBER LLC, FERROVIAL CONSTRU
For suit, said suit being numbered 153-000000-22 the nature of which demand is as shown on said PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION a copy of which accompanies this citation.

RYAN H ANDERSON
Attorney for JEREMY CRUZ Phone No. (214)755-7777
Address 3300 OAK LAWN AVE 3RD FLR DALLAS, TX 75219

Thomas A. Wilder , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 23rd day of February, 2023.

By Natalie Thigpen Deputy
NATALIE THIGPEN

A CERTIFIED COPY
ATTEST: 02/23/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY /s/ Natalie Thigpen

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *15300000022002011*

Received this Citation on the ______ day of ____________, ____ at _____ o'clock ___M; and executed at ____________ within the county of ____________, State of ________ at ________ o'clock ___M on the _______ day of ____________, ____ by delivering to the within named (Def.): defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION, having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff:
County of ____________ State of ________ By ____________ Deputy

Fees $________

State of ____________ County of ____________ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said ____________ before me this ____ day of ________, ____
to certify which witness my hand and seal of office
(Seal)

County of ____________, State of ____________

## *CITATION*

A CERTIFIED COPY
ATTEST: 02/23/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY /s/ Natalie Thigpen

Cause No. 153-000000-22

**IN RE: FEBRUARY 11, 2021**
**INCIDENT ON IH35W**

VS.

**ISSUED**

This 23rd day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By NATALIE THIGPEN Deputy

---

RYAN H ANDERSON
Attorney for: JEREMY CRUZ
Phone No. (214)755-7777
ADDRESS: 3300 OAK LAWN AVE 3RD FLR

DALLAS, TX 75219

*CIVIL LAW*

*153000000022002011*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

153-000000-22

FILED
TARRANT COUNTY
2/9/2023 3:49 PM
THOMAS A. WILDER
DISTRICT CLERK

**MASTER CAUSE NO. 153-000000-22**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH 35W** | § § § § § | **IN THE DISTRICT COURT** **153RD JUDICIAL** **DISTRICT** **TARRANT COUNTY, TEXAS** |

**"NOT APPLICABLE TO ALL ACTIONS"**

**CAUSE NO. 2022-004123-2**

| | | |
|---|---|---|
| **JEREMY CRUZ** **Plaintiff,** | § § § § | **IN THE COUNTY COURT** |
| **v.** | § § | **AT LAW NO. 2** |
| **NOLAN TRANSPORTATION GROUP, LLC, JEAN MARIE SAINT LOT, NTE MOBILITY PARTNERS SEGMENTS 3, LLC, NTE MOBILITY PARTNERS, LLC, NORTH TARRANT INFRASTRUCTURE, LLC, CINTRA HOLDING US CORP. d/b/a CINTRA US CORP., CINTRA US SERVICES, LLC., FERROVIAL AGROMAN US CORP a/k/a FERROVIAL CONSTRUCTION US CORP, AND WEBBER LLC, ERNST VAL, J.B. HUNT TRANSPORTATION, INC., GG PRODUCE TRANSPORT, LLC, JOSE BRENT DURAN, ISO RIZO, INC., SIMON EXPRESS, LLC, ENERGY TRUCKING, LLC, FRANTZ CLEMENT AND RYDER TRUCK RENTAL, INC.** **Defendants.** | § § § § § § § § § § § § § § § § § § § § | **TARRANT COUNTY, TEXAS** |

**PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Jeremy Cruz ("Plaintiff") and files this his Plaintiff's First Amended Original Petition complaining of **NOLAN TRANSPORTATION GROUP, LLC, JEAN MARIE SAINT LOT, NTE MOBILITY PARTNERS SEGMENTS 3, LLC, NTE MOBILITY PARTNERS, LLC, NORTH TARRANT INFRASTRUCTURE, LLC, CINTRA HOLDING US CORP. d/b/a CINTRA US CORP., CINTRA US SERVICES, LLC., FERROVIAL AGROMAN US CORP a/k/a FERROVIAL CONSTRUCTION US CORP, AND WEBBER LLC, ERNST VAL, J.B. HUNT TRANSPORTATION, INC., GG PRODUCE TRANSPORT, LLC, JOSE BRENT DURAN, ISO RIZO, INC., SIMON EXPRESS, LLC, ENERGY TRUCKING, LLC, FRANTZ CLEMENT AND RYDER TRUCK RENTAL, INC.** ("Defendants") and for cause of action would respectfully shows as follows:

## I.
## DISCOVERY CONTROL PLAN

1. Plaintiff intends for discovery to be conducted under Level 3 of Rule 190.2 of the TEXAS RULES OF CIVIL PROCEDURE.

## II.
## PARTIES AND SERVICE OF PROCESS

2. Plaintiff Jeremy Cruz is an individual residing in Tarrant County, Texas.

3. Defendant **Nolan Transportation Group LLC** (hereinafter "Nolan" or "Nolan Transportation") is foreign limited liability company operating in the State of Texas. This Defendant has appeared by and through counsel in this lawsuit.

4. Defendant **Jean Marie Saint Lot** (hereinafter "Saint Lot") is an individual residing in the State of Florida. This Defendant has appeared by and through counsel in this lawsuit.

5. Defendant **NTE Mobility Partners Segments 3, LLC,** is a foreign limited liability company with its principal place of business located in Tarrant County, Texas. *Service of process has been completed.*

6. Defendant **NTE Mobility Partners, LLC,** is a foreign limited liability company with its principal place of business located in Tarrant County, Texas. *Service of process has been completed.*

7. Defendant **North Tarrant Infrastructure, LLC** is a domestic limited liability company with its principal place of business located in Tarrant County, Texas. *Service of process has been completed.*

8. Defendant **Cintra Holding US Corp. d/b/a Cintra US Corp.** is a Delaware corporation with its principal place of business located in Travis County, Texas. *Service of process has been completed.*

9. Defendant **Cintra US Services, LLC** is a domestic limited liability company with its principal place of business located in Travis County, Texas. *Service of process has been completed.*

10. Defendant **Ferrovial Agroman US Corp a/k/a Ferrovial Construction US Corp** is a Delaware corporation with its principal place of business located in Travis County, Texas. *Service of process has been completed.*

11. Defendant **Webber, LLC** is a domestic limited liability company with its principal office and place of business located in Montgomery County, Texas. *Service of process has been completed.*

12. **Ernst Val,** is a resident of Tarrant County, Texas. *Service of process has been completed.*

13. **J.B. Hunt Transportation, Inc.,** is a foreign corporation with its principal place of business located in Lowell, Arkansas. *Service of process has been completed.*

14. **GG Produce Transport, LLC,** is a Texas limited liability company with its principal place of business located in Hidalgo County, Texas. *Service of process has been completed.*

15. **Jose Brent Duran,** is a resident of Hidalgo County, Texas. *Service of process has been completed.*

16. Defendant **FedEx Ground Package System Inc.** (hereinafter "FedEx") is a foreign corporation operating in the State of Texas. This Defendant has appeared by and through counsel in this lawsuit.

17. Defendant **Iso Rizo Inc.** (hereinafter "Iso Rizo") is a foreign corporation operating in the State of Texas. This Defendant has appeared by and through counsel in this lawsuit.

18. Defendant **Simon Express LLC** (hereinafter "Simon Express") is a foreign corporation operating in the State of Texas. This Defendant has appeared by and through counsel in this lawsuit.

19. Defendant **Energy Trucking LLC** (hereinafter "Energy Trucking") is a foreign corporation operating in the State of Texas. This Defendant has appeared by and through counsel in this lawsuit.

20. Defendant **Frantz Clement** (hereinafter "Clement") is an individual residing in the State of Florida. This Defendant has appeared by and through counsel in this lawsuit.

21. Defendant **Ryder Truck Rental, Inc.** is a Florida Corporation doing business in the state of Texas and can be served with process Pursuant to CPRC 17.062(a) by serving J. Bruce Bugg, Jr., Chairman, Texas Transportation Commission, 125 E. 11th Street, Austin, Texas 78701-2483 who will then forward to Ryder Truck Rental, Inc.'s registered agent for service Robert D

Fatovic, 11690 NW 105 Street, Miami, FL 33178.

22. In the event any party is misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice. In the event that the true parties are misidentified, Plaintiff asserts reliance upon the doctrine of misidentification.

23. The terms "FedEx Truck" and "FedEx Truck Defendants" collectively refers to Defendants FedEx, Nolan, Iso Rizo, Simon Express, Energy Trucking, Jean Marie Saint Lot, Frantz Clement and Ryder Truck Rental, Inc. At all relevant times, the FedEx Truck Defendants were collectively operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle involved in this collision and were required to observe all commercial motor carrier safety rules and regulations."

## III.
## VENUE

24. The subject matter and the amount in controversy are within the jurisdictional limits of this Court. The Texas Rules of Civil Procedure require Plaintiff to plead that his case falls under a particular category. In order to comply with this procedural requirement, Plaintiff pleads pursuant to Tex. R. Civ. P. 47, that Plaintiff seeks monetary relief monetary relief over $250,000 but not more than $1,000,000. Plaintiff further seeks all other relief to which Plaintiff may be shown to be justly entitled.

25. The Trucking Defendants who are non-citizens of Texas all have consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers and designating an agent for service of process in Texas. Designation of such an agent operates as an

express consent to personal jurisdiction. *Knowlton v. Allied Van Lines*, 8th Cir., 900 F.2d 1196, 1200 (1989)("This designation of an agent, in accordance with federal law, also operates as consent to the personal jurisdiction of the [forum] courts."); *see also Paz v. Castellini Co., LLC*, No. B-07-036, 2007 U.S. Dist. LEXIS 83028, at *19 (S.D. Tex. 2007)(Approving of Knowlton but limiting its designation jurisdiction to causes of action that, as here, arose in Texas). Moreover, said Defendants have established minimum contacts in Texas by driving, shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Further, all Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas. Therefore, this Court has specific personal jurisdiction over all Defendants. In addition, all Defendants have had continuous and systematic contacts with Texas invoking general personal jurisdiction over them. Accordingly, removal to federal court would be improper and sanctionable because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

26. Venue is proper in Tarrant County pursuant to the TEXAS CIVIL PRACTICE & REMEDIES CODE §15.002(a)(3) because it is the location of a principal office of Defendant in this state.

## IV.
## FACTS

27. The term **"Road Maintenance Defendants"** refers to the following Defendants who singularly or, upon information and belief, through a consortium of companies, had the responsibility to maintain the TEXPress lanes on I35 where the collision occurred: NTE Mobility Partners Segments 3, LLC, NTE Mobility Partners, LLC, North Tarrant Infrastructure, LLC, Cintra Holding US Corp d/b/a Cintra US Corp, Cintra US Services, LLC, Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp., and Webber LLC.

28. The term **"Trucking Company Defendants"** refers to Rich Transport LLC, J.B. Hunt Transportation, Inc., GG Produce Transport, LLC, Sun Valley, Inc., Go To Logistics, Inc., and New Prime, Inc.. The term also includes FedEx and FedEx Trucking Defendants.

29. The term **"Truck Driver Defendants"** refers to Hector Garcia Rodriguez, Ernst Val, Jose Brent Duran, Charles Bowman, And Cody Sloan Williams, as well as Defendants Clement and St. Lot.

30. The respective Unit numbers of the parties as reflected in the Texas Peace Officer's Crash Report are as follows:

| | |
|---|---|
| JB Hunt and Val Ernst | Units 39 and 40 |
| GG Produce and Jose Brent Duran | Units 41 |
| Nolan Transportation, Inc and Saint Lot | Units 123 and 124 |
| Fed Ex Defendants | Unit 124 |

31. "NTE" collectively refers to Defendants NTE Mobility Partners LLC and NTE Mobility Partners Segment 3 LLC. At all relevant times, NTE was responsible for maintaining the express lanes where this collision occurred.

32. On or about February 11, 2021, Plaintiff was traveling southbound on the expressway of Interstate-35 in Fort Worth, Tarrant County, Texas. A multi-vehicle collision occurred in front of Plaintiff when Defendant Val and Defendant Duran, driving for Defendant J.B. Hunt and Defendant GG's Produce respectively, in front of him failed to drive with extreme caution under the circumstances and negligently lost control, crashed and blocked all lanes of southbound traffic. Other Trucking Defendants with lower and higher unit numbers also traveling southbound on the expressway of Interstate 35, at an excessive speed for the road conditions violently collided with these vehicles contributing to the blockage of the Interstate and causing

other vehicles, including Plaintiff, to come to a stop behind them. Plaintiff brought his vehicle to a stop but was struck from behind by other Trucking Defendants including FedEx Trucking Defendants, collectively or separately, and their Drivers including Clement and Saint Lot. Defendant Trucking Companies and their respective Truck Driver defendants as previously identified, simultaneously traveling southbound on the expressway of Interstate-35, at an excessive speed for the road conditions and failing to use extreme caution, violently collided with Plaintiff's vehicle and/or other vehicles that were pushed into Plaintiff's vehicle.

33. Trucking Defendants and Defendant Truck Drivers failed to control their speed, failed to take into account the icy road conditions, failed to use extreme caution and failed to observe the hazardous road conditions among other negligent acts. For all times relevant Defendant Truck Drivers were employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners with of their respective Truck Company Defendant and were acting in the course and scope of their employment, agency, joint venture, joint enterprise and/or partnership for his respective Truck Company Defendant, for which the Truck Company Defendant is responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and/ or the statutory employee relationship.

34. The Road Maintenance Defendants listed previously herein were contractually obligated to maintain the TEXpress lane(s) where this collision occurred. These entities were individually or collectively responsible for all activities related to the safe travels of vehicles in the lane. Those activities included those which would prevent ice formation on the roadway, de-icing, anti-icing, and physical and mechanical removal of any ice that had accumulated on the roadway. Moreover, Road Maintenance Defendants were on notice of a prior collision occurring approximately 3 hours prior and failed to close the TEXPress lane, remove any ice accumulation,

or de-ice it.

35. As a proximate cause of the Defendants' negligence resulting in the collision, Plaintiff sustained serious and permanent injuries and continues to suffer serious and permanent injuries and damages from the crash all for which he sues.

## V.
## CAUSES OF ACTION

### CAUSES OF ACTION AGAINST TRUCKING COMPANY DEFENDANTS

**A.** ***VICARIOUS LIABILITY – RESPONDEAT SUPERIOR, STATUTORY EMPLOYEE, BORROWED SERVANT, AGENCY, JOINT VENTURE, JOINT ENTERPRISE, PARTNERSHIP***

36. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

37. Based on information and belief, on the occasion in question and at all times pertinent to this suit, Truck Driver Defendants were employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners with Trucking Company Defendants and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Trucking Company Defendants' business goals and objectives.

38. Truck Driver Defendants acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

39. Trucking Company Defendants are therefore responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and the statutory employee relationship between the respective Trucking Company Defendant and Truck Driver Defendants.

**B.** ***Negligent Entrustment***

40. As an additional cause of action, Plaintiff would show that at the time and on the occasion in question, Trucking Company Defendants were the owners of the vehicles driven by Truck Driver Defendants. Trucking Company Defendants entrusted the vehicles to Truck Driver Defendants. The Truck Driver Defendants were incompetent, and/or reckless and the Trucking Company Defendants knew or should have known that the Truck Driver Defendants were incompetent, and/or reckless. The Truck Driver Defendants' negligence on the occasion in question proximately caused the collision.

**C. *Negligent Hiring, Training, Retention, Supervision and Failure to Control***

41. The Trucking Company Defendants owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions and injuries to other motorists, including Plaintiff, but failed to do so. The Trucking Company Defendants' negligent acts and/or omissions in this regard include, but are not limited to the following:

a. Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b. Failing to prohibit unsafe driving practices, including in hazardous conditions;

c. Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d. Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e. Failing to monitor drivers;

f. Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g. Negligent entrustment of commercial motor vehicle to unfit, unsafe

drivers;

h. Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i. Aiding, abetting, and encouraging drivers to violate the rules of the road.

42. These acts and omissions described above, singularly or in combination, amount to negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

## VI.

## CAUSES OF ACTION AGAINST ROAD MAINTAINENCE DEFENDANTS

### A. *Negligence*

43. At the time of the collision made basis of this current suit, the Road Maintenance Defendants had a contractual duty to the motorists traveling in the TEXPress lanes, including Plaintiff, breached said duty and was negligent in the following acts and/or omissions:

a. Failing to de-ice the TEXPress lanes;

b. Failing to properly pre-treat and prepate the TEXPress lanes for inclement weather conditions;

c. Failing to inspect and/or adequately inspect the TEXPress lanes;

d. Failing to spot treat the TEXPress lanes;

e. Failing to monitor the TEXPress lanes given the weather forecast and occurring weather events;

f. Failing to close the TEXPress lanes considering the weather conditions and being put on notice of a prior collision occurring near this collision scene;

g. Failing to adequately warn motorists of the icy conditions on the TEXPress lanes of which Road Maintenance Defendants should have or had actual knowledge;

h. Failing to implement proper procedures for anti-icing, de-icing, and removing accumulated iced on the TEXPress lanes;

i. Failing to discover hazards or defects that existed prior to and at the time of this collision;

j. Failing to act as a reasonably prudent road maintenance company would act under the same or similar circumstances.

44. Each of the above-listed acts and/or omissions singularly, or combined, constituted negligence on the part of the Road Maintenance Defendants, and were a proximate cause of the collision made the basis of this suit and the resulting injuries of Plaintiff.

**B. *Gross Negligence***

45. Plaintiff further alleges that the acts and/or omissions of the Road Maintenance Defendants when viewed objectively from an independent standpoint, involved an extreme degree of risk to Plaintiff. These Defendants were not only aware of the danger and put on notice of the existence of the danger, but they also chose to ignore it and proceeded with conscious indifference to safety, well-being, rights, and safety of Plaintiff and the other motorists traveling on the TEXPress lanes the morning of this collision. These acts and omissions constitute gross negligence and are a proximate cause of the collision and Plaintiff's resulting injuries.

## VII.
## CAUSES OF ACTION

### CAUSES OF ACTION AGAINST TRUCK DRIVER DEFENDANTS

**A. *VICARIOUS LIABILITY – RESPONDEAT SUPERIOR, STATUTORY EMPLOYEE,***

***Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership***

46. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

47. At the time the collision made the basis of this lawsuit, and at all relevant and material times, the Truck Driver Defendants owed a duty of care to other motorists, including Plaintiff, to operate the truck in a reasonable and prudent manner, and said Defendants failed to do so. The Truck Driver Defendants' negligent acts and/or omissions include, but are not limited to, the following:

a) Driving their commercial motor vehicle in hazardous conditions;

b) Failing to use extreme caution in driving their commercial motor vehicle given the existing ice and freezing mist and freezing rain conditions;

c) Driving their commercial motor vehicle in the express lanes given the existing ice and freezing mist and freezing rain conditions;

d) Failing to operate their commercial motor vehicle at a reasonable rate of speed given the existing ice and freezing mist and freezing rain conditions;

e) Failing to control the speed of their commercial motor vehicle and/or driving at an unsafe speed;

f) Failing to safely observe hazards in the roadway;

g) Failing to maintain a proper and safe distance given the weather conditions that day;

h) Failing to pay attention to the road and driving conditions;

i) Failing to pay attention to the weather conditions;

j) Failing to monitor road and weather conditions;

k) Failing to operate their commercial motor vehicle in a reasonably safe manner;

l) Failing to properly heed the warning signs posted on the highway concerning the road and weather conditions;

m) Failing to properly heed to weather warning alerts;

n) Failing to properly and/or timely apply the brakes of their commercial motor vehicle in order to avoid the collision in question;

o) Failing to keep a proper lookout as a commercial motor driver using ordinary care would have done;

p) Failing to maintain proper control of the commercial motor vehicle as a commercial driver using ordinary care would have done under the same or similar circumstances;

q) Failing to take proper and timely evasive action; and

r) Other negligent acts and omissions to be identified as discovery is conducted.

48. The acts and omissions described above, singularly or in any combination, amount to negligence and were a proximate cause of the collision involving Plaintiff that made the basis of this suit and of the Plaintiff's injuries and damages.

## VIII.
## RESPONDEAT SUPERIOR

49. At the time of the accident, Truck Driver Defendants were respectively the agents, servants, and employees of their Trucking Company Defendants and were acting within the scope of their authority as such agent, servant, and employee. Trucking Company Defendants are liable to Plaintiff for the negligence of their respective Truck Driver Defendants under the common law doctrine of *respondeat superior*. In addition and/or in the alternative to the foregoing, the Truck Driver Defendants were the statutory employees of their respective Trucking Company Defendants.

## IX.
## DAMAGES

50. Plaintiff incorporates herein by reference the allegations set forth in all preceding paragraphs.

51. As a direct and proximate result of the above-referenced acts and omissions of Defendants, Plaintiff would show actual damages within the jurisdictional limits of this Court as follows:

a. Reasonable and necessary medical care and expenses which have been sustained from the time of the occurrence until the time of the verdict herein;

b. Reasonable and necessary medical care and expenses which will be sustained in the future;

c. Physical pain and mental anguish which has been sustained from the time of the occurrence until the time of the verdict herein;

d. Physical pain and mental anguish which will be sustained in the future;

e. Physical impairment which has been sustained from the time of the occurrence until the time of the verdict herein;

f. Physical impairment which will be sustained in the future;

g. Lost earnings or loss of earning capacity which have been sustained from the time of the occurrence until the time of the verdict herein; and

h. Loss of earning capacity or lost earnings which will be sustained in the future.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer, and this case be tried and that Plaintiff have and recover the following from Defendants:

a. Judgment against Defendants for a sum within the jurisdictional limits of this Court for all actual damages as indicated above;

b. Pre-judgment interest at the maximum amount allowed by law;

c. Post-judgment interest at the maximum rate allowed by law;

d. Costs of suit; and

e. Such other and further relief to which Plaintiff may be shown to be justly entitled.

Respectfully submitted,

**THOMPSON LAW LLP**
3300 Oak Lawn Avenue, 3rd Floor
Dallas, Texas 75219
Tel. 214/755-7777
Fax 214/716-0116

**RYAN H. ANDERSON**
State Bar No. 24059380
randerson@triallawyers.com
**RYAN L. THOMPSON**
State Bar No. 24046969
rthompson@triallawyers.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document has been served pursuant to the Texas Rules of Civil Procedure on all counsel of record on Thursday, February 9, 2023.

Ryan H. Anderson

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Associated Case Party: SHAYWELLS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Loren G.Klitsas | | klitsas@kv-law.com | 2/9/2023 3:49:34 PM | SENT |

Associated Case Party: THEFEDEX GROUND PACKAGE SYSTEM INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kimberly Chojnacki | 24068696 | kchojnacki@bakerdonelson.com | 2/9/2023 3:49:34 PM | SENT |
| Bradley E. Chambers | 24001860 | bchambers@bakerdonelson.com | 2/9/2023 3:49:34 PM | SENT |
| Bobbie Stratton | 24051394 | bstratton@bakerdonelson.com | 2/9/2023 3:49:34 PM | SENT |
| Linda Kramb | | lkramb@bakerdonelson.com | 2/9/2023 3:49:34 PM | SENT |
| Belinda A.Ellender | | bellender@bakerdonelson.com | 2/9/2023 3:49:34 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Betsy Yocum | | byocum@belaw.com | 2/9/2023 3:49:34 PM | SENT |
| Carter LFerguson | | cferguson@belaw.com | 2/9/2023 3:49:34 PM | SENT |
| Rachel EMontes | | Rachel@monteslawgroup.com | 2/9/2023 3:49:34 PM | SENT |
| Samuel JPolak | | spolak@pandblaw.com | 2/9/2023 3:49:34 PM | SENT |
| Bryan Rutherford | | brutherford@macdonalddevin.com | 2/9/2023 3:49:34 PM | SENT |
| William RJenkins | | wjenkins@jw.com | 2/9/2023 3:49:34 PM | SENT |
| Pat Durrwachter | | pdurrwachter@thompsoncoe.com | 2/9/2023 3:49:34 PM | SENT |
| Matthew RMumm | | mmumm@harrisonhull.com | 2/9/2023 3:49:34 PM | SENT |
| Stormi Valentine | | sdg@mcdonaldlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Angela Bobbitt | | angela@parkerlawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Robert BWagstaff | | rwagstaff@mcmahonlawtx.com | 2/9/2023 3:49:34 PM | SENT |
| Amanda Livezey | | alivezey@mcmahonlawtx.com | 2/9/2023 3:49:34 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Linda Hammon | | lhammon@feesmith.com | 2/9/2023 3:49:34 PM | SENT |
| Shonda Fields | | shonda@monteslawgroup.com | 2/9/2023 3:49:34 PM | SENT |
| Keith CCramer | | kcramer@gordonrees.com | 2/9/2023 3:49:34 PM | SENT |
| VLS DFW Support | | VLS_DFWSupport@grsm.com | 2/9/2023 3:49:34 PM | SENT |
| Soña J.Garcia | | sjgarcia@grsm.com | 2/9/2023 3:49:34 PM | SENT |
| Darrell Wayne Calvin | 24012372 | calvin@mdjwlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Robert James Collins | 24031970 | robert.collins@gkbklaw.com | 2/9/2023 3:49:34 PM | SENT |
| Samuel Joseph Polak | 788210 | spolak@pandblaw.com | 2/9/2023 3:49:34 PM | SENT |
| Marc B. Johnson | 90001975 | mjohnson@bairhilty.com | 2/9/2023 3:49:34 PM | SENT |
| Stewart Kimball Schmella | 24033041 | sschmella@lanzalawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Richard J. Byrne | 3566435 | rbyrne@ekvallbyrne.com | 2/9/2023 3:49:34 PM | SENT |
| Karl Wayne Koen | 11652275 | karl.koen@gkbklaw.com | 2/9/2023 3:49:34 PM | SENT |
| Lynn Layne Rada | 12066500 | espeyservice@lawespey.com | 2/9/2023 3:49:34 PM | SENT |
| Jason Brandt Stephens | 24003001 | Jason@StephensLaw.com | 2/9/2023 3:49:34 PM | SENT |
| Amie Pina Fordan | 24036580 | amie.fordan@tbjbs.com | 2/9/2023 3:49:34 PM | SENT |
| Michael Paul Sharp | 788857 | msharp@feesmith.com | 2/9/2023 3:49:34 PM | SENT |
| Samantha Rokkett | 24038924 | Samantha.Rokkett@usaa.com | 2/9/2023 3:49:34 PM | SENT |
| Gregory Peterson | 24057580 | greg@ljglaw.com | 2/9/2023 3:49:34 PM | SENT |
| Robert L. McGee | 13620720 | efile@thebassettfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Micheal Vernon Winchester | 21754350 | mwinchester@winchesterlaw.net | 2/9/2023 3:49:34 PM | SENT |
| Scott Riddle | 24059232 | sriddle@krcl.com | 2/9/2023 3:49:34 PM | SENT |
| James R.Ames | | james@texaslit.com | 2/9/2023 3:49:34 PM | SENT |
| Eric Gifford | | egifford@harrisonhull.com | 2/9/2023 3:49:34 PM | SENT |
| Malcolm G. Renwick | | mgr-firm@renwicklaw.com | 2/9/2023 3:49:34 PM | SENT |
| Michael Calvin Wright | 22049807 | mwright@rwtrial.com | 2/9/2023 3:49:34 PM | SENT |
| Marcus Tolliver | 24079646 | marc.tolliver@tbjbs.com | 2/9/2023 3:49:34 PM | SENT |
| Dennis Bentley | 24079654 | dbentley-svc@thomasjhenrylaw.com | 2/9/2023 3:49:34 PM | SENT |
| R. Wayne Gordon | 8206500 | wayne.gordon@tbjbs.com | 2/9/2023 3:49:34 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Bryan Gerald Rutherford | 24025628 | BRutherford@MacdonaldDevin.com | 2/9/2023 3:49:34 PM | SENT |
| Gregory Ryan Brenner | 24027052 | gbrenner@coxpllc.com | 2/9/2023 3:49:34 PM | SENT |
| Ryan Thompson | 24046969 | rthompson@triallawyers.com | 2/9/2023 3:49:34 PM | SENT |
| Jonathan Parkey Ayers | 1465900 | jayers@ayersfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Amelia Susan Harris | 9050850 | aharris@macdonalddevin.com | 2/9/2023 3:49:34 PM | SENT |
| Timothy Drew Newsom | 784677 | tnewsom@flbranson.com | 2/9/2023 3:49:34 PM | SENT |
| Michael H. Bassett | 1890500 | efile@thebassettfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Steven L. Russell | 17437040 | srussell@rwtrial.com | 2/9/2023 3:49:34 PM | SENT |
| Scott Allen Shanes | 784953 | sshanes@clarkhill.com | 2/9/2023 3:49:34 PM | SENT |
| Keith Cramer | 24051678 | kcramer@gordonrees.com | 2/9/2023 3:49:34 PM | SENT |
| Dean J. Siotos | 793018 | dsiotos@imtexaslaw.com | 2/9/2023 3:49:34 PM | SENT |
| Ann Austin | 1434150 | aaustin@stewartlawgrp.com | 2/9/2023 3:49:34 PM | SENT |
| John Holman Barr | 1798700 | jbarr@bbarr.com | 2/9/2023 3:49:34 PM | SENT |
| George Haratsis | 8941000 | gharatsis@mcdonaldlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Randall G. Walters | 20819480 | waltersedocsnotifications@wbclawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Jeffrey Thomas Roebuck | 24027812 | jeff@roebuckthomas.com | 2/9/2023 3:49:34 PM | SENT |
| Charles D.Adams, IV | | cda@bigangry.com | 2/9/2023 3:49:34 PM | SENT |
| Gary Michael Ashmore | 793284 | gashmore@ashmorelaw.com | 2/9/2023 3:49:34 PM | SENT |
| Adam Strange | 24090763 | astrange@feesmith.com | 2/9/2023 3:49:34 PM | SENT |
| William H. Chamblee | 4086100 | whchamblee@chambleeryan.com | 2/9/2023 3:49:34 PM | SENT |
| Marcy Lynn Rothman | 17318500 | mrothman@krcl.com | 2/9/2023 3:49:34 PM | SENT |
| Geoffrey Schorr | 24029828 | Geoff@schorrfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Stuart White | 24075268 | efiling@lileswhite.com | 2/9/2023 3:49:34 PM | SENT |
| Kevin Warren Liles | 798329 | kevin@lileswhite.com | 2/9/2023 3:49:34 PM | SENT |
| Stuart R.White | | Stuart@LilesWhite.com | 2/9/2023 3:49:34 PM | SENT |
| Erik E. Ekvall | 6507022 | eekvall@ekvallbyrne.com | 2/9/2023 3:49:34 PM | SENT |
| Nicholas J. Lanza | 11941225 | eservice@lanzalawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Frank Branson | 2899000 | flbranson@flbranson.com | 2/9/2023 3:49:34 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Kevin Lamar Sewell | 789619 | sewell@mdjwlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Sona Julianna Garcia | 24045917 | sjgarcia@grsm.com | 2/9/2023 3:49:34 PM | SENT |
| David Herring Estes | 24012599 | destes@hartlinebarger.com | 2/9/2023 3:49:34 PM | SENT |
| Jana Hicks Taylor | 24012826 | jtaylor@sheehyware.com | 2/9/2023 3:49:34 PM | SENT |
| Richard M. Mosher | 14580300 | rmosher@thompsoncoe.com | 2/9/2023 3:49:34 PM | SENT |
| Thomas Ridley Stevens | 19189800 | texnewmexlegal@farmersinsurance.com | 2/9/2023 3:49:34 PM | SENT |
| Robert Chad Kimble | 24007483 | eservice@chadkimblelaw.com | 2/9/2023 3:49:34 PM | SENT |
| William W. Hancock | 8892300 | whancock@watsoncaraway.com | 2/9/2023 3:49:34 PM | SENT |
| Barry L. Hardin | 8961900 | bhardin@wslawpc.com | 2/9/2023 3:49:34 PM | SENT |
| Garland Williams | 24079580 | Garland.Williams@oag.texas.gov | 2/9/2023 3:49:34 PM | SENT |
| Wendi Ervin Powers | 6651220 | wervin@bairhilty.com | 2/9/2023 3:49:34 PM | SENT |
| Wade B. Williams | 21582900 | e-service@lewisandwilliams.com | 2/9/2023 3:49:34 PM | SENT |
| Lewis Williams | | E-service@lewisandwilliams.com | 2/9/2023 3:49:34 PM | SENT |
| Jeffrey Wolf | 21849012 | jwolf@wolflawpc.com | 2/9/2023 3:49:34 PM | SENT |
| John D. Malanga | 12853800 | jmalanga@flash.net | 2/9/2023 3:49:34 PM | SENT |
| Christopher Norcross | 24081677 | cnorcross@gordonrees.com | 2/9/2023 3:49:34 PM | SENT |
| Michael Worthington | 24082219 | worthington@mdjwlaw.com | 2/9/2023 3:49:34 PM | SENT |
| David J. Metzler | 13982550 | dmetzler@cowlesthompson.com | 2/9/2023 3:49:34 PM | SENT |
| D'juana Bellue Parks | 15519395 | dparks@pulf.com | 2/9/2023 3:49:34 PM | SENT |
| Patrick Francis Madden | 787943 | pmadden@macdonalddevin.com | 2/9/2023 3:49:34 PM | SENT |
| Stephen Lund | 24086920 | salund@tarrantcountytx.gov | 2/9/2023 3:49:34 PM | SENT |
| John Keith Hyde | 10370250 | khyde@pulf.com | 2/9/2023 3:49:34 PM | SENT |
| David Bruce Koch | 11643850 | david@oharelawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Coby L. Wooten | 797742 | coby@cobywootenlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Mattilyn Smith | 24097093 | Mattilyn@cobywootenlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Janice Coby Wooten | | Janice@CobyWootenLaw.com | 2/9/2023 3:49:34 PM | SENT |
| Gerald M. Johnson | | tjohnson@feesmith.com | 2/9/2023 3:49:34 PM | SENT |
| Donna Keaton | | dkeaton@bradley.com | 2/9/2023 3:49:34 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Patti Lampton | | plampton@bradley.com | 2/9/2023 3:49:34 PM | SENT |
| Ian Faria | | ifaria@bradley.com | 2/9/2023 3:49:34 PM | SENT |
| Kellie McGill | | kmcgill@bradley.com | 2/9/2023 3:49:34 PM | SENT |
| Stacy Lord | | slord@bradley.com | 2/9/2023 3:49:34 PM | SENT |
| Michael Cancienne | | mcancienne@jlcfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Nathan Graham | | ngraham@bradley.com | 2/9/2023 3:49:34 PM | SENT |
| Michael V.Winchester | | mwinchester@winchesterlaw.net | 2/9/2023 3:49:34 PM | SENT |
| Joyce Woodson | | jwoodson@winchesterlaw.net | 2/9/2023 3:49:34 PM | SENT |
| Kyle Moore | | kmoore@winchesterlaw.net | 2/9/2023 3:49:34 PM | SENT |
| Daniel Troiano | 24106520 | dtroiano@clarkhill.com | 2/9/2023 3:49:34 PM | SENT |
| David Reeder | 24106728 | drr@manningllp.com | 2/9/2023 3:49:34 PM | SENT |
| Eloisa Bouche | | ebouche@harrisonhull.com | 2/9/2023 3:49:34 PM | SENT |
| Karen Morris | | Karen.Morris@gkbklaw.com | 2/9/2023 3:49:34 PM | SENT |
| Clinton Vaylord Cox | 24040738 | ccox@coxpllc.com | 2/9/2023 3:49:34 PM | SENT |
| John House | 784296 | jhouse@bbarr.com | 2/9/2023 3:49:34 PM | SENT |
| Cassandra Osterhoudt | | costerhoudt@sheehyware.com | 2/9/2023 3:49:34 PM | SENT |
| Preston Hino | 24104701 | phino@krcl.com | 2/9/2023 3:49:34 PM | SENT |
| Mark Siemer | 24110361 | mark.siemer@gkbklaw.com | 2/9/2023 3:49:34 PM | SENT |
| Jennifer Gutierrez | | jgutierrez@cowlesthompson.com | 2/9/2023 3:49:34 PM | SENT |
| Samantha Matthews | 24104520 | smatthews@ashmorelaw.com | 2/9/2023 3:49:34 PM | SENT |
| Keith Cramer | | kcramer@grsm.com | 2/9/2023 3:49:34 PM | SENT |
| Andrew Dao | 24082895 | adao@dalyblack.com | 2/9/2023 3:49:34 PM | SENT |
| Becky Hunt | | bhunt@grsm.com | 2/9/2023 3:49:34 PM | SENT |
| Connie Cobb | | ccobb@bairhilty.com | 2/9/2023 3:49:34 PM | SENT |
| Becky Johnson | | bjohnson@bairhilty.com | 2/9/2023 3:49:34 PM | SENT |
| Elva Jasso | | ejasso@thompsoncoe.com | 2/9/2023 3:49:34 PM | SENT |
| Pricilla Hernandez | | pricilla@monteslawgroup.com | 2/9/2023 3:49:34 PM | SENT |
| Connor J.Moore | | connor.moore@tbjbs.com | 2/9/2023 3:49:34 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Neely Fortinberry | | nfortinberry@ekvallbyrne.com | 2/9/2023 3:49:34 PM | SENT |
| Robyn Cruze | | rcruze@mklawpc.com | 2/9/2023 3:49:34 PM | SENT |
| Chris Cude | | ccude@mklawpc.com | 2/9/2023 3:49:34 PM | SENT |
| Michael Miller | | mmiller@mklawpc.com | 2/9/2023 3:49:34 PM | SENT |
| Jennifer White | | JWhite@hartlinebarger.com | 2/9/2023 3:49:34 PM | SENT |
| Charles Bush | 24096028 | cbush@bushlawgrp.com | 2/9/2023 3:49:34 PM | ERROR |
| Saul Castro | | scastro@pandblaw.com | 2/9/2023 3:49:34 PM | SENT |
| Michael Gorman | | mgorman@geico.com | 2/9/2023 3:49:34 PM | SENT |
| Donna M.Ramirez | | dramirez@pandblaw.com | 2/9/2023 3:49:34 PM | SENT |
| Stefan Allen | | sallen@ekvallbyrne.com | 2/9/2023 3:49:34 PM | SENT |
| Marie Aguilar | | maguilar@ekvallbyrne.com | 2/9/2023 3:49:34 PM | SENT |
| Adam J.Strange | | astrange@feesmith.com | 2/9/2023 3:49:34 PM | SENT |
| William Hancock | | whancock@watsoncaraway.com | 2/9/2023 3:49:34 PM | SENT |
| John W.Greene | | jgreene@scopelitis.com | 2/9/2023 3:49:34 PM | SENT |
| James D.Ellman | | jellman@scopelitis.com | 2/9/2023 3:49:34 PM | SENT |
| Claire E.Fore | | claire@parkerlawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Courtney D.Kirsch | | courtney.kirsch@tbjbs.com | 2/9/2023 3:49:34 PM | SENT |
| Colleen L.McCoy | | cmccoy@scopelitis.com | 2/9/2023 3:49:34 PM | SENT |
| Valerie Whitesell | | vwhitesell@feesmith.com | 2/9/2023 3:49:34 PM | SENT |
| Lori Sarathy | | lsarathy@ekvallbyrne.com | 2/9/2023 3:49:34 PM | SENT |
| James H.Fendley | | jfendley@watsoncaraway.com | 2/9/2023 3:49:34 PM | SENT |
| eService PFM | | eservicePFM@macdonalddevin.com | 2/9/2023 3:49:34 PM | SENT |
| Henri Dussault | | hdussault@belaw.com | 2/9/2023 3:49:34 PM | SENT |
| Edward SGaytan | | gaytan@noteboom.com | 2/9/2023 3:49:34 PM | SENT |
| Tracy L.Heffner | | tracy@StephensLaw.com | 2/9/2023 3:49:34 PM | SENT |
| Dustin W. Clay | | dustin@oharelawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| James L.Williams, Jr. | | williams@texasdefensecounsel.com | 2/9/2023 3:49:34 PM | SENT |
| Sherri Gallant | | gallant@texasdefensecounsel.com | 2/9/2023 3:49:34 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Krista Hillman | | Hillman@texasdefensecounsel.com | 2/9/2023 3:49:34 PM | SENT |
| Marilyn Brown | | mbrown@jw.com | 2/9/2023 3:49:34 PM | SENT |
| Liles White Efiling Notifications | | Efiling@lileswhite.com | 2/9/2023 3:49:34 PM | SENT |
| Michael P.Sharp | | msharp@feesmith.com | 2/9/2023 3:49:34 PM | SENT |
| Marlene Merritt | | mmerritt@cowlesthompson.com | 2/9/2023 3:49:34 PM | SENT |
| Gracie Garcia | | ggarcia@jw.com | 2/9/2023 3:49:34 PM | SENT |
| Amanda Saputo | | asaputo@hartlinebarger.com | 2/9/2023 3:49:34 PM | ERROR |
| Faisal Al-Alam | | fal-alam@hartlinebarger.com | 2/9/2023 3:49:34 PM | SENT |
| Whitney Morgan | | wmorgan@cowlesthompson.com | 2/9/2023 3:49:34 PM | ERROR |
| George Haratsis | | gch@mcdonaldlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Randyl Meigs | | rsm@mcdonaldlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Ellen Sorrells | | ecs@mcdonaldlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Morgan Reinhardt | | mreinhardt@pandblaw.com | 2/9/2023 3:49:34 PM | SENT |
| John A.Landreth | | jlandreth@coxpllc.com | 2/9/2023 3:49:34 PM | SENT |
| Cindy Parnell | | cparnell@hartlinebarger.com | 2/9/2023 3:49:34 PM | SENT |
| Randall G.Walters | | Randy.walters@wbclawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Jordan C.Harrison | | jharrison@thompsoncoe.com | 2/9/2023 3:49:34 PM | SENT |
| Karen Wiley | | kwiley@cr.law | 2/9/2023 3:49:34 PM | SENT |
| Kelley Cash | | kcash@cr.law | 2/9/2023 3:49:34 PM | SENT |
| Rhonda Braun | | rbraun@cr.law | 2/9/2023 3:49:34 PM | SENT |
| Courtney Liggitt | | Courtney.Liggitt@lewisbrisbois.com | 2/9/2023 3:49:34 PM | SENT |
| Gregory Peterson | | mail@ljglaw.com | 2/9/2023 3:49:34 PM | SENT |
| Jacob RMalatek | | jmalatek@bradley.com | 2/9/2023 3:49:34 PM | SENT |
| Pam Salmon | | psalmon@thompsoncoe.com | 2/9/2023 3:49:34 PM | SENT |
| Britanie Cruze | | bcruze@mklawpc.com | 2/9/2023 3:49:34 PM | SENT |
| Dean J.Siotos | | service@thewillislawgroup.com | 2/9/2023 3:49:34 PM | SENT |
| Kaneisha Lewis | | kcl@mcdonaldlaw.com | 2/9/2023 3:49:34 PM | SENT |
| Angelica Paluch | | apaluch@harrisonhull.com | 2/9/2023 3:49:34 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Ari Morales | | ari@lileswhite.com | 2/9/2023 3:49:34 PM | SENT |
| Erika Singler | | esingler@ekvallbyrne.com | 2/9/2023 3:49:34 PM | SENT |
| Heather Vandever | | heather.vandever@tbjbs.com | 2/9/2023 3:49:34 PM | SENT |
| Thomas Stevens | | thomas.stevens@farmersinsurance.com | 2/9/2023 3:49:34 PM | SENT |
| Sylvia Marinez | | smarinez@krcl.com | 2/9/2023 3:49:34 PM | SENT |
| Dianne Davis | | diadavis@geico.com | 2/9/2023 3:49:34 PM | SENT |
| Andrea E.Cook | | acook@clarkhill.com | 2/9/2023 3:49:34 PM | ERROR |
| Lynn Rada | | lrada@lawespey.com | 2/9/2023 3:49:34 PM | SENT |
| William Chamblee | | wchamblee@cr.law | 2/9/2023 3:49:34 PM | SENT |
| Alexander Martin | | amartin@wslawpc.com | 2/9/2023 3:49:34 PM | SENT |
| Karen Spencer | | kspencer@rwtrial.com | 2/9/2023 3:49:34 PM | SENT |
| Christopher White | | Chris.White@lewisbrisbois.com | 2/9/2023 3:49:34 PM | SENT |
| Terre Meza | | Terre.Meza@lewisbrisbois.com | 2/9/2023 3:49:34 PM | SENT |
| Charles Settle | | Charles.Settle@lewisbrisbois.com | 2/9/2023 3:49:34 PM | ERROR |
| Clint Dye | | cdye@sheehyware.com | 2/9/2023 3:49:34 PM | SENT |
| Janet Avila | | javila@lyons-simmons.com | 2/9/2023 3:49:34 PM | SENT |
| Suzanne Le Blanc | | sleblanc@lyons-simmons.com | 2/9/2023 3:49:34 PM | SENT |
| Christopher Simmons | | csimmons@lyons-simmons.com | 2/9/2023 3:49:34 PM | SENT |
| Stephen Higdon | | shigdon@lyons-simmons.com | 2/9/2023 3:49:34 PM | SENT |
| Michael Lyons | | mlyons@lyons-simmons.com | 2/9/2023 3:49:34 PM | SENT |
| Rileigh Hanson | | rileigh@oharelawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Wade Barrow | | service@barrow-law.com | 2/9/2023 3:49:34 PM | SENT |
| Tim Newsom | | efiletn@flbranson.com | 2/9/2023 3:49:34 PM | SENT |
| Kurt Arnold | | eservice@arnolditkin.com | 2/9/2023 3:49:34 PM | SENT |
| Adam Lewis | | alewis@arnolditkin.com | 2/9/2023 3:49:34 PM | SENT |
| Crystal DeLeon | | cdeleon@arnolditkin.com | 2/9/2023 3:49:34 PM | SENT |
| Alda Hernandez | | ahernandez@arnolditkin.com | 2/9/2023 3:49:34 PM | SENT |
| Clinton Cox | | ccoc@coxpllc.com | 2/9/2023 3:49:34 PM | ERROR |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Bradley Dickens | | brad.dickens@wbclawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Ariana Boyd | | aboyd@wslawpc.com | 2/9/2023 3:49:34 PM | SENT |
| Bradley Dickens | | brad.dickens@wbclawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Eric DHitchcock | | edh@manningllp.com | 2/9/2023 3:49:34 PM | SENT |
| Cherie Crayton | | vanessaannsamuels45@gmail.com | 2/9/2023 3:49:34 PM | SENT |
| Paige AndersLewiecki | | paige@colanerifirm.com | 2/9/2023 3:49:34 PM | SENT |
| Debra Wisnewski | | debra@colanerifirm.com | 2/9/2023 3:49:34 PM | SENT |
| Shelly Owen | | shelly@colanerifirm.com | 2/9/2023 3:49:34 PM | SENT |
| The Bassett Firm | | eservice@thebassettfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Michelle Guillory | | mguillory@arnolditkin.com | 2/9/2023 3:49:34 PM | SENT |
| Karen Mayo | | kmayo@pulf.com | 2/9/2023 3:49:34 PM | SENT |
| Raechel Carder | | rcarder@sheehyware.com | 2/9/2023 3:49:34 PM | SENT |
| Michelle Guillory | | mguillory@arnolditkin.com | 2/9/2023 3:49:34 PM | SENT |
| Katherine Raunikar | | kraunikar@jlcfirm.com | 2/9/2023 3:49:34 PM | SENT |
| John ScottBlack | | jblack@dalyblack.com | 2/9/2023 3:49:34 PM | SENT |
| John ScottBlack | | ecfs@dalyblack.com | 2/9/2023 3:49:34 PM | SENT |
| Amber Chambers | | achambers@bushlawgrp.com | 2/9/2023 3:49:34 PM | ERROR |
| Bilaal Badat | | bilaalbadat.law@outlook.com | 2/9/2023 3:49:34 PM | SENT |
| Cherie Crayton | | vanessaannsamuels45@gmail.com | 2/9/2023 3:49:34 PM | SENT |
| Bob Meagher | | bmeagher@rwtrial.com | 2/9/2023 3:49:34 PM | SENT |
| Elsa Killebrew | | elsa.killebrew@sargentlawtx.com | 2/9/2023 3:49:34 PM | SENT |
| Teresa Reeves | | treeves@wslawpc.com | 2/9/2023 3:49:34 PM | SENT |
| William Carson | | william.carson@sargentlawtx.com | 2/9/2023 3:49:34 PM | SENT |
| Kern ALewis | | Klewis@galyen.com | 2/9/2023 3:49:34 PM | SENT |
| Jennie HTrussell | | jennie@lileswhite.com | 2/9/2023 3:49:34 PM | SENT |
| Sabrina LGalvan | | sgalvan@pandblaw.com | 2/9/2023 3:49:34 PM | SENT |
| Christie Bunch | | cbunch@coxpllc.com | 2/9/2023 3:49:34 PM | SENT |
| Susan Royall | | sroyall@belaw.com | 2/9/2023 3:49:34 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72622611
Status as of 2/9/2023 4:26 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Erica W.Hyman | | ehyman@macdonalddevin.com | 2/9/2023 3:49:34 PM | SENT |
| John Malanga | | jmalanga@outlook.com | 2/9/2023 3:49:34 PM | SENT |
| Dee Cesna | | dxv@manningllp.com | 2/9/2023 3:49:34 PM | SENT |
| David Sargent | | david.sargent@sargentlawtx.com | 2/9/2023 3:49:34 PM | SENT |
| Sarah Schuller | | sschuller@coxpllc.com | 2/9/2023 3:49:34 PM | SENT |
| Travis Cox | | Travis.Cox@lewisbrisbois.com | 2/9/2023 3:49:34 PM | SENT |
| Steven R.Samples | | docket@tex.law | 2/9/2023 3:49:34 PM | SENT |
| Samantha Palma | | spalma@belaw.com | 2/9/2023 3:49:34 PM | SENT |
| Taylor Accountius | | taccountius@hartlinebarger.com | 2/9/2023 3:49:34 PM | SENT |
| Morgan Trenary | | mrt@manningllp.com | 2/9/2023 3:49:34 PM | SENT |
| Gwen Purdom | | gpurdom@macdonalddevin.com | 2/9/2023 3:49:34 PM | SENT |
| Trudy Vernon | | tvernon@clarkhill.com | 2/9/2023 3:49:34 PM | SENT |
| Audrea S.Moore | | asm@manningllp.com | 2/9/2023 3:49:34 PM | SENT |
| Richard B.Waterhouse, Jr. | | Rick@oharelawfirm.com | 2/9/2023 3:49:34 PM | SENT |
| Katherine Anthony | | kanthony@watsoncaraway.com | 2/9/2023 3:49:34 PM | SENT |
| Justin Williams | | service@williamstrial.com | 2/9/2023 3:49:34 PM | SENT |
| Ross Darville | | rdarville@bradley.com | 2/9/2023 3:49:34 PM | SENT |
| Barbara Vest | | Barbara.Vest@sargentlawtx.com | 2/9/2023 3:49:34 PM | SENT |
| Sunayana Thukral | | Sunayana.Thukral@lewisbrisbois.com | 2/9/2023 3:49:34 PM | SENT |
| Debra K.Zahalsky | | dzahalsky@wolflawpc.com | 2/9/2023 3:49:34 PM | SENT |
| Clint BLee | | clee@galyen.com | 2/9/2023 3:49:34 PM | SENT |

# EXHIBIT B-5

153-000000-22

FILED
TARRANT COUNTY
9/20/2022 2:54 PM
THOMAS A. WILDER
DISTRICT CLERK

**MASTER CAUSE NO. 153-000000-22**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH 35W** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | **153RD JUDICIAL DISTRICT** |
| | § | |
| | § | **TARRANT COUNTY, TEXAS** |

**"NOT APPLICABLE TO ALL ACTIONS"**

---

**CAUSE NO. 342-327892-21**

| | | |
|---|---|---|
| **AMANDA DAVIS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **342nd JUDICIAL DISTRICT** |
| | § | |
| **ERNST VAL,** | § | |
| **J.B. HUNT TRANSPORT, INC.,** | § | |
| **JOSE DURAN,** | § | |
| **GG'S PRODUCE TRANSPORT, LLC,** | § | |
| **I. GARZA, LLC,** | § | |
| **HECTOR GARCIA RODRIGUEZ,** | § | |
| **RICH TRANSPORT LLC,** | § | |
| **CHARLES BOWMAN,** | § | |
| **SUN VALLEY INC.,** | § | |
| **CODY SLOAN WILLIAMS,** | § | |
| **GO TO LOGISTICS, INC.,** | § | |
| **NTE MOBILITY PARTNERS** | § | |
| **SEGMENTS 3, LLC,** | § | |
| **NTE MOBILITY PARTNERS, LLC,** | § | |
| **NORTH TARRANT** | § | |
| **INFRASTRUCTURE, LLC,** | § | |
| **CINTRA HOLDING US CORP. d/b/a** | § | |
| **CINTRA US CORP.,** | § | |
| **CINTRA US SERVICES, LLC.,** | § | |
| **FERROVIAL AGROMAN US CORP** | § | |
| **a/k/a FERROVIAL CONSTRUCTION** | § | |
| **US CORP, and** | § | |
| **WEBBER LLC.** | § | |
| | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

---

# PLAINTIFF'S FIRST AMENDED PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **Amanda Davis**, Plaintiff herein, and file this, her Plaintiff's Original Petition, complaining of Defendants **Ernst Val, J.B. Hunt Transport, Inc., Jose Duran; GG's Produce Transport, LLC, I. Garza, LLC; Hector Garcia Rodriguez, Rich Transport LLC, Charles Bowman, Sun Valley Inc., Cody Sloan Williams, Go To Logistics, Inc.** (sometimes collectively referred to herein as "Defendants"); and **NTE Mobility Partners Segments 3, LLC, NTE Mobility Partners, LLC, North Tarrant Infrastructure, LLC, Cintra Holding US Corp d/b/a Cintra US Corp, Cintra US Services, LLC, Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp., and Webber LLC.**, and for causes of action would respectfully show unto the Court as follows:

**I.**

**DISCOVERY CONTROL PLAN**

1. Discovery shall be conducted according to the MDL Court's Case Management Orders (Level 3).

**II.**

**PARTIES AND SERVICE OF PROCESS**

2. Plaintiff Amanda Davis is an individual residing in Tarrant County, Texas. Davis was operating Unit 47 as identified in the Texas Peace Officer's Crash Report.

3. Defendant Ernst Val ("Val") is an individual who was operating a vehicle involved in the crash made the basis of this suit. This Defendant operated Unit 39-40 as identified in the Texas Peace Officer's Crash Report. Service of process has been completed.

4. Defendant J.B. Hunt Transports, Inc. ("J.B. Hunt"), is a foreign corporation with its principal place of business located in Lowell, Arkansas. Defendant J.B. Hunt operates under

USDOT number 80806 and under Motor Carrier number 135797. This Defendant is identified as Unit 39-40 in the Texas Peace Officer's Crash Report. *Service of process has been completed.*

5. Defendant Jose Duran ("Duran") is an individual who was operating a vehicle involved in the crash made the basis of this suit. This Defendant operated Unit 41-42 as identified in the Texas Peace Officer's Crash Report. Duran is a resident of Texas. *Service of process has been completed.*

6. Defendant GG's Produce Transport, LLC ("GG's Produce"), is a Texas limited liability company with its principal office and place of business located in Hidalgo County, Texas. Defendant GG's Produce operates under USDOT number 2813179 and under Motor Carrier number 937984.This Defendant is identified as Unit 41 in the Texas Peace Officer's Crash Report. *Service of process has been completed.*

7. Defendant I. Garza, LLC, is a Texas limited liability company with its principal office and place of business located in Hidalgo County, Texas. Defendant I. Garza, LLC operates under USDOT number 1446628 and under Motor Carrier number 546757. This Defendant is identified as Unit 42 in the Texas Peace Officer's Crash Report. *Service of process has been completed.*

8. Defendant Hector Garcia Rodriguez ("Rodriguez") is an individual who was operating a vehicle involved in the crash made the basis of this suit. This Defendant operated Units 49-50 as identified in the Texas Peace Officer's Crash Report. Defendant Rodriguez is a resident of Mexico and may be served with process at *Hacienda Raldea 131 Garcia, Mexico NL 66000* in accordance with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, (20 U.S.T 361; 658 U.N.T.S 163).

9. Defendant Rich Transports, LLC ("Rich Transports"), is a foreign limited liability company with its principal place of business located in Little Rock, Pulaski County, Arkansas. Defendant Rich Transports operates under USDOT number 305789 and under Motor Carrier

numbers 311647. This Defendant is identified as Units 49-50 in the Texas Peace Officer's Crash Report. *Service of process has been completed.*

10. Defendant Charles Bowman ("Bowman") is an individual who was operating a vehicle involved in the crash made the basis of this suit. This Defendant operated Units 51-52 as identified in the Texas Peace Officer's Crash Report. Defendant Bowman is a nonresident of Texas. *Service of process has been completed.*

11. Defendant Sun Valley, Inc. ("Sun Valley"), is a foreign corporation with its principal place of business located in Hutchinson, Reno County, Kansas. Defendant Sun Valley operates under USDOT number 1292112 and under Motor Carrier number 501577. This Defendant is identified as Units 51-52 in the Texas Peace Officer's Crash Report. *Service of process has been completed.*

12. Defendant Go To Logistics, Inc., ("Go To Logistics"), is a foreign corporation with its principal place of business located in River Grove, Cook County, Illinois. Defendant Go To Logistics operates under USDOT number 1500245 and under Motor Carrier number 563531. This Defendant is identified as Units 57-58 in the Texas Peace Officer's Crash Report. *Service of process has been completed.*

13. Defendant Cody Sloan Williams ("Williams") is an individual who was operating a vehicle involved in the crash made the basis of this suit. This Defendant operated Units 57-58 as identified in the Texas Peace Officer's Crash Report. Defendant Williams is a resident of Texas. *Service of process has been completed.*

14. Defendant **NTE Mobility Partners Segments 3, LLC,** is a foreign limited liability company with its principal place of business located in Tarrant County, Texas. This defendant may be served with this lawsuit by serving its agent: *CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.* **Issuance of Citation is requested at this time.**

15. Defendant **NTE Mobility Partners, LLC,** is a foreign limited liability company with its principal place of business located in Tarrant County, Texas. This defendant may be served with this lawsuit by serving its agent: *CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.* **Issuance of Citation is requested at this time.**

16. Defendant **North Tarrant Infrastructure, LLC** is a domestic limited liability company with its principal place of business located in Tarrant County, Texas. This defendant may be served with this lawsuit by serving its agent: *CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.* **Issuance of Citation is requested at this time.**

17. Defendant **Cintra Holding US Corp. d/b/a Cintra US Corp.** is a Delaware corporation with its principal place of business located in Travis County, Texas. This defendant may be served with this lawsuit by serving its agent: *CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.* **Issuance of Citation is requested at this time.**

18. Defendant **Cintra US Services, LLC** is a domestic limited liability company with its principal place of business located in Travis County, Texas. This defendant may be served with this lawsuit by serving its agent: *Guillermo Sanguesa, 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.* **Issuance of Citation is requested at this time.**

19. Defendant **Ferrovial Agroman US Corp a/k/a Ferrovial Construction US Corp** is a Delaware corporation with its principal place of business located in Travis County, Texas. This defendant may be served with this lawsuit by serving its agent: *CT Corporations System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, and Fernando Martinez Caro, 700 Chevy Chase Blvd., Suite 500, Austin, Texas 78752.* **Issuance of Citation is requested at this time.**

20. Defendant **Webber, LLC** is a domestic limited liability company with its principal office and place of business located in Montgomery County, Texas. This defendant may be served with

this lawsuit by serving its agent: *CT Corporations System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201*. **Issuance of Citation is requested at this time.**

**III.**

**JURISDICTION AND VENUE**

21. This Court has jurisdiction over this matter as Plaintiff seeks damages well in excess of the minimal jurisdictional limits of this Court. The Texas Rules of Civil Procedure requires Plaintiff to plead that her case falls under a particular category. In order to comply with this procedural requirement, Plaintiff hereby pleads pursuant to Tex. R. Civ. P. 47, that Plaintiff seeks monetary relief over $1,000,000. Plaintiff seeks all other relief to which she may show herself to be justly entitled.

22. Additionally, Plaintiff, Defendant Val, Defendant Duran, Defendant GG' Produce, Defendant I. Garza, LLC and Defendant Williams are citizens of Texas, and hence there is no complete diversity of citizenship. The remaining Defendants who are non-citizens of Texas all have consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers, and designating an agent for service of process in Texas. Designation of such an agent operates as an express consent to personal jurisdiction. *Knowlton v. Allied Van Lines*, 8th Cir., 900 F.2d 1196, 1200 (1989)("This designation of an agent, in accordance with federal law, also operates as consent to the personal jurisdiction of the [forum] courts."); *see also Paz v. Castellini Co., LLC*, No. B-07-036, 2007 U.S. Dist. LEXIS 83028, at *19 (S.D. Tex. 2007)(Approving of Knowlton but limiting its designation jurisdiction to causes of action that, as here, arose in Texas). Moreover, said Defendants have established minimum contacts in Texas by driving, shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Further,

all Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas. Therefore, this Court has specific personal jurisdiction over all Defendants. In addition, all Defendants have had continuous and systematic contacts with Texas invoking general personal jurisdiction over them. Accordingly, removal to federal court would be improper and sanctionable because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

23. Venue in Tarrant County is proper in this cause under TEX. CIV. PRAC. & REM. CODE §15.002(a)(1) because all or a substantial part of the acts and/or omissions giving rise to this action occurred in Tarrant County.

## IV.

## BACKGROUND FACTS

24. The term **"Trucking Defendants"** refers to the following Defendants: Ernest Val, J. B. Hunt Transport, Inc., Jose Duran, GG's Produce Transport, LLC, I. Garza, LLC, Hector Garcia Rodriguez, Rich Transport, LLC, Charles Bowman, Sun Valley, Inc., Cody Sloan Williams, and Go To Logistics, Inc.

25. The term **"Road Maintenance Defendants"** refers to the following Defendants who singularly or, upon information and belief, through a consortium of companies, had the responsibility to maintain the TEXPress lanes on I35 where the collision occurred: NTE Mobility Partners Segments 3, LLC, NTE Mobility Partners, LLC, North Tarrant Infrastructure, LLC, Cintra Holding US Corp d/b/a Cintra US Corp, Cintra US Services, LLC, Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp., and Webber LLC.

26. On or about February 11, 2021, Plaintiff was traveling southbound on the expressway of Interstate-35 in Fort Worth, Tarrant County, Texas. A multi-vehicle collision occurred in front of

Plaintiff when Defendant Val and Defendant Duran, driving for Defendant J.B. Hunt and Defendant GG's Produce respectively, in front of her failed to drive with extreme caution under the circumstances and negligently lost control, crashed and blocked all lanes of southbound traffic. Moments after Plaintiff's vehicle came to a stop, Defendant Rodriguez, Defendant Bowman and Defendant Williams driving for the respective Defendant Trucking Companies as previously identified, simultaneously traveling southbound on the expressway of Interstate-35, at an excessive speed for the road conditions and failing to use extreme caution, violently collided with Plaintiff's vehicle in some form or fashion.

27. Defendant Truck Drivers failed to control their speed, failed to take into account the icy road conditions, failed to use extreme caution and failed to observe the hazardous road conditions among other negligent acts. For all times relevant Defendant Val, Defendant Duran, Defendant Rodriguez, Defendant Bowman and Defendant Williams were employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners with of his respective Truck Company Defendant and were acting in the course and scope of their employment, agency, joint venture, joint enterprise and/or partnership for his respective Truck Company Defendant, for which the Truck Company Defendant is responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and/ or the statutory employee relationship.

28. The Road Maintenance Defendants listed previously herein were contractually obligated to maintain the TEXpress lane where this collision occurred. These entities were individually or collectively responsible for all activities related to the safe travels of vehicles in the lane. Those activities included those which would prevent ice formation on the roadway, de-icing, anti-icing, and physical and mechanical removal of any ice that had accumulated on the roadway. Moreover,

Roadway Maintenance Defendants were on notice of a prior collision occurring approximately 3 hours prior and failed to close the TEXPress lane, remove any ice accumulation, or de-ice it.

29. As a proximate cause of the Defendants' negligence resulting in the collision, Plaintiff sustained serious and permanent injuries and continues to suffer serious and permanent injuries and damages from the crash all for which she hereby sues.

## V.

## GENERAL ALLEGATIONS

30. Plaintiff filed this lawsuit as a result of a motor vehicle collision that occurred on February 11, 2021, in the Southbound expressway of Interstate-35 in Fort Worth, Tarrant County, Texas, which collision was proximately caused by the negligence of Defendants.

31. The terms "Truck Company Defendants" and "Truck Driver Defendants" refer to the following defendants.

| Truck Company Defendants | Truck Driver Defendants | Unit Number from Texas Peace Officer's Crash Report |
|---|---|---|
| J.B. Hunt Transport, Inc. | Ernst Val | 39-40 |
| GG's Produce Transport | Jose Duran | 41 |
| I Garza, LLC | Jose Duran | 42 |
| Rich Transport LLC | Hector Garcia Rodriguez | 49-50 |
| Sun Valley, Inc. | Charles Bowman | 51-52 |
| Go To Logistics | Cody Sloan Williams | 57-58 |

## VI.

## CAUSES OF ACTION AGAINST VAL

**A.** ***Negligence***

32. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

33. On the date of the incident in question, Defendant Val had a duty to exercise the degree of care that an ordinary person would have in operating a motor vehicle under the same or similar circumstances.

34. Defendant Val breached that duty of care by one or more of the following acts and/or omissions:

a) Failure to keep such proper lookout and attention to the roadway as a person or ordinary prudence would have kept under the same or similar circumstances;

b) Failure to use extreme caution in driving given the existing ice and freezing rain conditions;

c) Failure to monitor road and weather conditions;

d) Failure to pay attention to the weather conditions;

e) Failure to control speed;

f) Failure to operate his 18-wheeler at a safe speed;

g) Failure to timely apply the brakes of his 18-wheeler in order to avoid the collision in question; and

h) Other acts of negligence.

35. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

## VII.

## CAUSES OF ACTION AGAINST J.B. HUNT

**A.** ***Vicarious Liability – Respondeat Superior, Statutory Employee, Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership***

36. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

37. Based on information and belief, on the occasion in question and at all times pertinent to this suit, Defendant Val was an employee, statutory employee, borrowed servant, agent, joint venturers, joint enterprisers and/or partners with Defendant J.B. Hunt and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Defendant J.B. Hunt's business goals and objectives.

38. Defendant Val acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

39. Defendant J.B. Hunt is therefore responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and the statutory employee relationship between the respective Defendant J.B. Hunt and Defendant Val.

**B. *Negligent Entrustment***

40. As an additional cause of action, Plaintiff would show that at the time and on the occasion in question, Defendant J.B. Hunt was the owner of the vehicle driven by Defendant Val. Defendant J.B. Hunt entrusted the vehicle to Defendant Val. Defendant Val was incompetent, and/or reckless and Defendant J.B. Hunt knew or should have known that Defendant Val was incompetent, and/or reckless. Defendant Val's negligence on the occasion in question proximately caused the collision.

**C. *Negligent Hiring, Training, Retention, Supervision and Failure to Control***

41. Defendant J.B. Hunt owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions

and injuries to other motorists, including Plaintiff, but failed to do so. Defendant J.B. Hunt's negligent acts and/or omissions in this regard include, but are not limited to the following:

a. Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b. Failing to prohibit unsafe driving practices, including in hazardous conditions;

c. Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d. Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e. Failing to monitor drivers;

f. Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g. Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

h. Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i. Aiding, abetting, and encouraging drivers to violate the rules of the road.

42. These acts and omissions described above, singularly or in combination, amount to negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

## VIII.

## CAUSES OF ACTION AGAINST DURAN

**A. *Negligence***

43. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in

all preceding paragraphs.

44. On the date of the incident in question, Defendant Duran had a duty to exercise the degree of care that an ordinary person would have in operating a motor vehicle under the same or similar circumstances.

45. Defendant Duran breached that duty of care by one or more of the following acts and/or omissions:

a) Failure to keep such proper lookout and attention to the roadway as a person or ordinary prudence would have kept under the same or similar circumstances;

b) Failure to use extreme caution in driving given the existing ice and freezing rain conditions;

c) Failure to monitor road and weather conditions;

d) Failure to pay attention to the weather conditions;

e) Failure to control speed;

f) Failure to operate his 18-wheeler at a safe speed;

g) Failure to timely apply the brakes of his 18-wheeler in order to avoid the collision in question; and

h) Other acts of negligence.

46. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

## IX.

## CAUSES OF ACTION AGAINST GG'S PRODUCE

**A.** ***VICARIOUS LIABILITY – RESPONDEAT SUPERIOR, STATUTORY EMPLOYEE, BORROWED SERVANT, AGENCY, JOINT VENTURE, JOINT ENTERPRISE, PARTNERSHIP***

47. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in

all preceding paragraphs.

48. Based on information and belief, on the occasion in question and at all times pertinent to this suit, Defendant Duran was an employee, statutory employee, borrowed servant, agent, joint venturers, joint enterprisers and/or partners with Defendant GG's Produce and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Defendant GG's Produce's business goals and objectives.

49. Defendant Duran acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

50. Defendant GG's Produce is therefore responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and the statutory employee relationship between the respective Defendant GG's Produce and Defendant Duran.

**B.** ***Negligent Entrustment***

51. As an additional cause of action, Plaintiff would show that at the time and on the occasion in question, Defendant GG's Produce was the owner of the vehicle driven by Defendant Duran. Defendant GG's Produce entrusted the vehicle to Defendant Duran. Defendant Duran was incompetent, and/or reckless and Defendant GG's Produce knew or should have known that Defendant Duran was incompetent, and/or reckless. Defendant Duran's negligence on the occasion in question proximately caused the collision.

**C.** ***Negligent Hiring, Training, Retention, Supervision and Failure to Control***

52. Defendant GG's Produce owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions and injuries to other motorists, including Plaintiff, but failed to do so. Defendant GG's Produce's

negligent acts and/or omissions in this regard include, but are not limited to the following:

a. Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b. Failing to prohibit unsafe driving practices, including in hazardous conditions;

c. Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d. Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e. Failing to monitor drivers;

f. Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g. Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

h. Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i. Aiding, abetting, and encouraging drivers to violate the rules of the road.

53. These acts and omissions described above, singularly or in combination, amount to negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

## X.

## CAUSES OF ACTION AGAINST I. GARZA, INC.

**A. *Negligent Entrustment***

54. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

55. Plaintiff would show that at the time and on the occasion in question, Defendant I. Garza, Inc. was the owner of the tractor driven by Defendant Duran. Defendant I. Garza, Inc.entrusted

the tractor to Defendant Duran. Defendant Duran was incompetent, and/or reckless and Defendant I. Garza, Inc. knew or should have known that Defendant Duran was incompetent, and/or reckless. Defendant Duran's negligence on the occasion in question proximately caused the collision.

## XI.

## CAUSES OF ACTION AGAINST RODRIGUEZ

**A.** ***Negligence***

56. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

57. On the date of the incident in question, Defendant Rodriguez had a duty to exercise the degree of care that an ordinary person would have in operating a motor vehicle under the same or similar circumstances.

58. Defendant Rodriguez breached that duty of care by one or more of the following acts and/or omissions:

a) Failure to keep such proper lookout and attention to the roadway as a person or ordinary prudence would have kept under the same or similar circumstances;

b) Failure to use extreme caution in driving given the existing ice and freezing rain conditions;

c) Failure to monitor road and weather conditions;

d) Failure to pay attention to the weather conditions;

e) Failure to control speed;

f) Failure to keep a safe and proper following distance;

g) Failure to operate his 18-wheeler at a safe speed;

h) Failure to timely apply the brakes of his 18-wheeler in order to avoid the collision in question; and

i) Other acts of negligence.

59. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

XII.

CAUSES OF ACTION AGAINST RICH TRANSPORT

**A. *Vicarious Liability – Respondeat Superior, Statutory Employee, Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership***

60. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

61. Based on information and belief, on the occasion in question and at all times pertinent to this suit, Defendant Rodriguez was an employee, statutory employee, borrowed servant, agent, joint venturers, joint enterprisers and/or partners with Defendant Rich Transport and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Defendant Rich Transport's business goals and objectives.

62. Defendant Rodriguez acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

63. Defendant Rich Transport is therefore responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and the statutory employee relationship between the respective Defendant Rich Transport and Defendant Rodriguez.

**B. *Negligent Entrustment***

64. As an additional cause of action, Plaintiff would show that at the time and on the occasion in question, Defendant Rich Transport was the owner of the vehicle driven by Defendant

Rodriguez. Defendant Rich Transport entrusted the vehicle to Defendant Rodriguez. Defendant Rodriguez was incompetent, and/or reckless and Defendant Rich Transport knew or should have known that Defendant Rodriguez was incompetent, and/or reckless. Defendant Rodriguez's negligence on the occasion in question proximately caused the collision.

**C. *Negligent Hiring, Training, Retention, Supervision and Failure to Control***

65. Defendant Rich Transport owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions and injuries to other motorists, including Plaintiff, but failed to do so. Defendant Rich Transport's negligent acts and/or omissions in this regard include, but are not limited to the following:

a. Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b. Failing to prohibit unsafe driving practices, including in hazardous conditions;

c. Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d. Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e. Failing to monitor drivers;

f. Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g. Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

h. Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i. Aiding, abetting, and encouraging drivers to violate the rules of the road.

66. These acts and omissions described above, singularly or in combination, amount to

negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

**XIII.**

**CAUSES OF ACTION AGAINST BOWMAN**

**A.** ***Negligence***

67. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

68. On the date of the incident in question, Defendant Bowman had a duty to exercise the degree of care that an ordinary person would have in operating a motor vehicle under the same or similar circumstances.

69. Defendant Bowman breached that duty of care by one or more of the following acts and/or omissions:

a. Failure to keep such proper lookout and attention to the roadway as a person or ordinary prudence would have kept under the same or similar circumstances;

b. Failure to use extreme caution in driving given the existing ice and freezing rain conditions;

c. Failure to monitor road and weather conditions;

d. Failure to pay attention to the weather conditions;

e. Failure to control speed;

f. Failure to keep a safe and proper following distance;

g. Failure to operate his 18-wheeler at a safe speed;

h. Failure to timely apply the brakes of his 18-wheeler in order to avoid the collision in question; and

i. Other acts of negligence.

70. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

## XIV.

## CAUSES OF ACTION AGAINST SUN VALLEY

**A. *Vicarious Liability – Respondeat Superior, Statutory Employee, Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership***

71. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

72. Based on information and belief, on the occasion in question and at all times pertinent to this suit, Defendant Bowman was an employee, statutory employee, borrowed servant, agent, joint venturers, joint enterprisers and/or partners of Defendant Sun Valley and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Defendant Sun Valley's business goals and objectives.

73. Defendant Bowman acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

74. Defendant Sun Valley is therefore responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and the statutory employee relationship between the respective Defendant Sun Valley and Defendant Bowman.

**B. *Negligent Entrustment***

75. As an additional cause of action, Plaintiff would show that at the time and on the occasion in question, Defendant Sun Valley was the owner of the vehicle driven by Defendant Bowman. Defendant Sun Valley entrusted the vehicle to Defendant Bowman. Defendant Bowman was incompetent, and/or reckless and Defendant Sun Valley knew or should have known that

Defendant Bowman was incompetent, and/or reckless. Defendant Bowman 's negligence on the occasion in question proximately caused the collision.

### C. *Negligent Hiring, Training, Retention, Supervision and Failure to Control*

76. Defendant Sun Valley owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions and injuries to other motorists, including Plaintiff, but failed to do so. Defendant Sun Valley's negligent acts and/or omissions in this regard include, but are not limited to the following:

a. Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b. Failing to prohibit unsafe driving practices, including in hazardous conditions;

c. Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d. Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e. Failing to monitor drivers;

f. Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g. Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

h. Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i. Aiding, abetting and encouraging drivers to violate the rules of the road.

77. These acts and omissions described above, singularly or in combination, amount to negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

XV.

## CAUSES OF ACTION AGAINST WILLIAMS

**A.** ***Negligence***

78. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

79. On the date of the incident in question, Defendant Williams had a duty to exercise the degree of care that an ordinary person would have in operating a motor vehicle under the same or similar circumstances.

80. Defendant Williams breached that duty of care by one or more of the following acts and/or omissions:

a. Failure to keep such proper lookout and attention to the roadway as a person or ordinary prudence would have kept under the same or similar circumstances;

b. Failure to use extreme caution in driving given the existing ice and freezing rain conditions;

c. Failure to monitor road and weather conditions;

d. Failure to pay attention to the weather conditions;

e. Failure to control speed;

f. Failure to keep a safe and proper following distance;

g. Failure to operate his 18-wheeler at a safe speed;

h. Failure to timely apply the brakes of his 18-wheeler in order to avoid the collision in question; and

i. Other acts of negligence.

81. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

## XVI.

## CAUSES OF ACTION AGAINST GO TO LOGISTICS

**A.** ***Vicarious Liability – Respondeat Superior, Statutory Employee, Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership***

82. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

83. Based on information and belief, on the occasion in question and at all times pertinent to this suit, Defendant Williams was an employee, statutory employee, borrowed servant, agent, joint venturers, joint enterprisers and/or partners of Defendant Go To Logistics and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Defendant Go To Logistics' business goals and objectives.

84. Defendant Williams acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

85. Defendant Go To Logistics is therefore responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and the statutory employee relationship between the respective Defendant Go To Logistics and Defendant Williams.

**B.** ***Negligent Entrustment***

86. As an additional cause of action, Plaintiff would show that at the time and on the occasion in question, Defendant Go To Logistics was the owner of the vehicle driven by Defendant Williams. Defendant Go To Logistics entrusted the vehicle to Defendant Williams. Defendant Williams was incompetent, and/or reckless and Defendant Go To Logistics knew or should have known that Defendant Williams was incompetent, and/or reckless. Defendant Williams ' negligence on the occasion in question proximately caused the collision.

**C.** ***Negligent Hiring, Training, Retention, Supervision and Failure to Control***

87. Defendant Go To Logistics owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions and injuries to other motorists, including Plaintiff, but failed to do so. Defendant Go To Logistics' negligent acts and/or omissions in this regard include, but are not limited to the following:

a. Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b. Failing to prohibit unsafe driving practices, including in hazardous conditions;

c. Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d. Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e. Failing to monitor drivers;

f. Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g. Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

h. Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i. Aiding, abetting and encouraging drivers to violate the rules of the road.

88. These acts and omissions described above, singularly or in combination, amount to negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

## XVII.

## CAUSES OF ACTION AGAINST ROAD MAINTAINENCE DEFENDANTS

***A. Negligence***

89. At the time of the collision made basis of this current suit, the Road Maintenance Defendants had a contractual duty to the motorists traveling in the TEXPress lanes, including Plaintiff, breached said duty and was negligent in the following acts and/or omissions:

a. Failing to de-ice the TEXPress lanes;
b. Failing to properly pre-treat and prepate the TEXPress lanes for inclement weather conditions;
c. Failing to inspect and/or adequately inspect the TEXPress lanes;
d. Failing to spot treat the TEXPress lanes;
e. Failing to monitor the TEXPress lanes given the weather forecast and occurring weather events;
f. Failing to close the TEXPress lanes considering the weather conditions and being put on notice of a prior collision occurring near this collision scene;
g. Failing to adequately warn motorists of the icy conditions on the TEXPress lanes of which Road Maintenance Defendants should have or had actual knowledge;
h. Failing to implement proper procedures for anti-icing, de-icing, and removing accumulated iced on the TEXPress lanes;
i. Failing to discover hazards or defects that existed prior to and at the time of this collision;
j. Failing to act as a reasonably prudent road maintenance company would act uder the same or similar circumstances.

90. Each of the above-listed acts and/or omissions singularly, or combined, constituted negligence on the part of the Road Maintenance Defendants, and were a proximate cause of the collision made the basis of this suit and the resulting injuries of Plaintiff.

***B. Gross Negligence***

91. Plaintiff further alleges that the acts and/or omissions of the Road Maintenance Defendants when viewed objectively from an independent standpoint, involved an extreme degree of risk to Plaintiff. These Defendants were not only aware of the danger and put on notice of the existence of the danger, but they also chose to ignore it and proceeded with conscious indifference to safety, well-being, rights, and safety of Plaintiff and the other motorists traveling on the TEXPress lanes the morning of this collision. These acts and omissions constitute gross negligence and are a proximate cause of the collision and Plaintiff's resulting injuries.

**XVIII.**

**DAMAGES**

92. Plaintiffs incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

93. As a direct and proximate result of acts and/or omissions of Defendants and Road Maintenance Defendants, Plaintiff would show actual damages within the jurisdictional limits of this Court.

The elements of Plaintiff's damages are as follows:

a) Reasonable medical care and expenses which have been sustained from the time of the occurrence until the time of the verdict herein; and

b) Reasonable medical care and expenses which will likely be sustained in the future after the verdict herein.

c) Physical pain which has been sustained from the time of the occurrence until the time of the verdict herein;

d) Physical pain which will be suffered after the date of the verdict herein;

e) Mental anguish which has been sustained from the time of the occurrence until the time of the verdict herein;

f) Mental anguish which will be suffered after the date of the verdict herein;

g) Physical and mental impairment which has been sustained from the time of the occurrence until the time of the verdict herein;

h) Physical and mental impairment which will be sustained in the future after the verdict herein;

i) Lost earnings and/or loss of earning capacity which have been sustained from the time of the occurrence until the time of the verdict herein.

**XIX.**

**JURY DEMAND**

94. Plaintiff requests the causes of actions alleged herein be tried before a jury consisting of citizens residing in Tarrant County, Texas. Plaintiff has tendered the appropriate jury fee.

**XX.**

**CONDITIONS PRECEDENT**

95. All conditions precedent to the filing of this suit have been performed or have occurred.

**XX.**

**PRAYER**

96. WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Defendants and Road Maintenance Defendants be cited to appear and answer, and that this case be tried after which Plaintiff recovers the following:

a) Judgment against Defendants and Road Maintenance Defendants for a sum within the jurisdictional limits of this Court for all actual damages, both past and future, as indicated above;

b) Pre-judgment interest at the maximum amount allowed by law;

c) Post-judgment interest at the maximum rate allowed by law;

d) Costs of suit; and

e) Such other and further relief to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

*/s/ Corwyn M. Davis*

W. Bradley Parker
State Bar No. 15501500
brad@parkerlawfirm.com
Corwyn M. Davis
State Bar No. 24078399
corwyn@parkerlawfirm.com
**PARKER LAW FIRM, P.C.**
2317 Plaza Parkway, Suite 100
Bedford, Texas 76021
(817) 503-9200 telephone
(817) 503-9203 fax

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was transmitted to all counsel of record as indicated below on this 20th day of September 2022:

*Via Eservice: jtaylor@sheehyware.com*

Jana Hicks Taylor
Sheehy Ware & Pappas, PC
3838 Oak Lawn Avenue, Suite 250
Dallas, TX 75219
*ATTORNEY FOR DEFENDANTS GG'S PRODUCE TRANSPORT, LLC; I GARZA; AND JOSE DURAN*

*Via Eservice: ccox@coxpllc.com*

Clinton V. Cox, IV
*Via Eservice: jlandreth@coxpllc.com*

John A. Landreth
Cox PLLC
8144 Walnut Hill Lane, Suite 1090
Dallas, TX 75231
*ATTORNEYS FOR DEFENDANT RICH TRANSPORT, LLC.*

*Via Eservice: mjohnson@bairhilty.com*

Marc B. Johnson

*Via Eservice: wervin@bairhilty.com*

Wendi R. Ervin
BairHilty, PC
14711 Pebble Bend Drive
Houston, TX 77068
*ATTORNEYS FOR DEFENDANTS GO TO LOGISTICS, INC. AND CODY SLOAN WILLIAMS*

*Via Eservice: mwright@rwtrial.com*

Michael C. Wright
*Via Eservice: srussell@rwtrial.com*

Steven L. Russell
Russell & Wright, PLLC
15770 Dallas Parkway, Suite 1050
Dallas, TX 75248
*ATTORNEYS FOR DEFENDANT J. B. HUNT TRANSPORT, INC.*

*Via Eservice: efile@thebassettfirm.com*

Mike H. Bassett
Robert L. McGee, Jr.
The Bassett Firm
Two Turtle Creek Village
3838 Oak Lawn Avenue, Suite 1300
Dallas, TX 75219
*ATTORNEYS FOR DEFENDANTS CHARLES BOWMAN AND SUN VALLEY, INC.*

*/s/ Corwyn M. Davis*
Corwyn M. Davis

# EXHIBIT B-6

**MASTER CAUSE NO. 153-000000-22**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH 35W** | § § § § § § § | **IN THE DISTRICT COURT OF** <br> **TARRANT COUNTY, TEXAS** <br> **153RD JUDICIAL DISTRICT** |

**"NOT APPLICABLE TO ALL ACTIONS"**

**CAUSE NO. DC-21-12071**

| | | |
|---|---|---|
| **JOHNATHAN D. DAVIS,** <br> **Plaintiff,** <br> **v.** <br> **RICH TRANSPORT, LLC, VICTOR ROGELIO ZUIGA-GUEVARA, COCA-COLA SOUTHWEST BEVERAGES, LLC, JALEN MCENLEY A/K/A JAILEN MCKENNLY, AUTOMATIC SPRINKLER OF TEXAS, INC., AND JAMES LEE KIND** <br> **Defendants.** | § § § § § § § § § § § § § § § | **IN THE DISTRICT COURT OF** <br> **DALLAS COUNTY, TEXAS** <br> **68TH JUDICIAL DISTRICT** |

**PLAINTIFF'S FIRST AMENDED PETITION AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Johnathan D. Davis ("Davis" or "Plaintiff") files this First Amended Petition and Jury Demand complaining of Rich Transport, LLC, Victor Rogelio Zuiga-Guevara, Coca-Cola Southwest Beverages, LLC, Jalen McEnley a/k/a Jailen McKneely, Automatic Sprinkler of Texas, Inc., James Lee Kind, Sonic Logistics, LLC, Singh Sukhwinder, Sierra Mountain Express, Arturo Montes, JB Hunt Transport, Inc., Val Ernst a/k/a Ernst Val, GG's Produce Transport, LLC, I. Garza, LLC, Jose Brent Duran, Hector Fernando Garcia Rodriguez, Sun Valley, Inc., Charles Grant Bowman, Go To Logistics, Inc., Cody Sloan Williams, New Prime, Inc., d/b/a Prime, Inc.,

Steven Anthony Ridder, Jordan Janae St. Pierre, Tab Anthony Key, Gretchen Bergman, WHB Transportation, LLC, David James Short, David Lee Garcia, Oluwakemi Olofinkua, Ward Timber, Ltd., Timothy Scott Mills, Astyn Marie Filbert, Barrett Cody Yates, Angelica Rodriguez, Evangelyn Okereke, Rhonda Jones, Cintra Holdings US Corporation d/b/a Cintra US Corporation, Cintra US Services, LLC, Cintra NTE, LLC, Cintra Texas Corporation, Cintra NTE Mobility Partners Segments 3, LLC, Cintra NTE Mobility Partners Segments 3 Holdings, LLC, Cintra Toll Services, LLC, Ferrovial Agroman US Corp a/k/a Ferrovial Construction US Corp, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp., Ferrovial Holdings US Corp., North Tarrant Infrastructures, LLC, NTE Mobility Partners, LLC, NTE Mobility Partners Holding, LLC, NTE Mobility Partners Segments 3, LLC, NTE Mobility Partners Segments 3 Holding, LLC, Webber, LLC, (collectively referred to as "Defendants") and respectfully shows the Court as follows:

**DISCOVERY CONTROL PLAN**

1. Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiff intends to proceed with discovery under Level 3 as set forth in Rule 190.4 of the Texas Rules of Civil Procedure.

**PARTIES**

2. Plaintiff Davis is a natural person and a citizen and resident of Texas. The last three digits of his driver's license are 176 and the last three digits of his social security number are 047.

3. Defendant Rich Transport, LLC, is a Delaware limited liability company with its principal place of business in Little Rock, Arkansas, and operating throughout Texas. This Defendant is identified as Units 49-50 and 91-92 in the Texas Peace Officer's Crash Report. Rich has already answered and appeared in this lawsuit.

4. Defendant Zuiga-Guevara is a natural person and is a citizen and resident of Nueva Leon, Mexico. This Defendant is identified as Units 91-92 in the Texas Peace Officer's Crash Report. Zuiga-Guevara has already answered and appeared in this lawsuit.

5. Defendant Coca-Cola Southwest Beverages, LLC is a Delaware company with its principal place of business in Dallas County, Texas. This Defendant is identified as Units 23-24 in the Texas Peace Officer's Crash Report. Southwest has already answered and appeared in this lawsuit.

6. Defendant Jalen McEnley a/k/a Jailen McKneely is a natural person and citizen of Texas. This Defendant is identified as Units 23-24 in the Texas Peace Officer's Crash Report. McEnley has already answered and appeared in this lawsuit.

7. Defendant Automatic Sprinkler of Texas, Inc. is a Texas company with its principal place of business in Dallas County, Texas. This Defendant is identified as Unit 73 in the Texas Peace Officer's Crash Report. AST has already answered and appeared in this lawsuit.

8. Defendant James Lee Kind is a natural person and citizen of Texas. This Defendant is identified as Unit 73 in the Texas Peace Officer's Crash Report. Kind has already answered and appeared in this lawsuit.

9. Defendant Sonic Logistics, LLC, is a Washington limited liability company with its principal office and principal place of business located in Ferndale, Washington. This Defendant is identified as Units 6-7 in the Texas Peace Officer's Crash Report. This Defendant may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711, to be forwarded to the Defendant's Washington based registered agent Elite Registration Services, 1901 Front Street, Lynden Washington, 98264.

10. Defendant Singh Sukhwinder is an individual Washington citizen that resides in Bellingham, Washington. This Defendant operated Units 6-7 as identified in the Texas Peace

Officer's Crash Report. This Defendant may be served through the Texas Department of Transportation to be forwarded to 4243 Stone Crest Ct., Bellingham, Washington, 98226.

11. Defendant Sierra Mountain Express is a Nevada corporation with its principal office and principal place of business located in Houston, Harris County, Texas. This Defendant is identified as Units 19-20 in the Texas Peace Officer's Crash Report. This Defendant may be served through it registered agent William Scanlon at 1814 Westfield Loop Houston, Texas 77073, or wherever he may be found.

12. Defendant Arturo Montes is an individual Texas citizen that resides in Houston, Harris County, Texas. This Defendant operated Units 19-20 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 16711 Marcilia Drive, Houston, Texas 77049, or wherever he may be found.

13. Defendant J.B. Hunt Transport, Inc., is a Georgia corporation with its principal office and principal place of business in Texas in Dallas County, Texas. This Defendant is identified as Units 39-40 and 113-114 in the Texas Peace Officer's Crash Report. This Defendant may be served with process through its registered agent Corporation Service Company, d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

14. Defendant Val Ernst a/k/a Ernst Val is an individual Texas citizen that resides in Tarrant County, Texas. This Defendant operated Units 39-40 as identified in the Texas Peace Officer's Crash Report. The crash report identifies this Defendant as Val Ernst. Upon information and belief, this Defendant's name may be Ernst Val. This Defendant may be served with process at 1704 Griffin Lane, Mansfield, Texas 76063, or wherever he may be found.

15. Defendant GG's Produce Transport, LLC is a Texas limited liability company with its principal office and principal place of business located in Hidalgo County, Texas. This Defendant

is identified as Unit 41 in the Texas Peace Officer's Crash Report. This Defendant may be served with process through its registered agent George David Durham III, 517 Nolana Avenue, McAllen, Texas 78504, or wherever he may be found.

16. Defendant I. Garza, LLC is a Texas limited liability company with its principal office and principal place of business located in Hidalgo County, Texas. This Defendant is identified as Unit 42 in the Texas Peace Officer's Crash Report. This Defendant may be served with process by serving its registered agent Ismael Garza at 2305 E. Trenton, Edinburg, Texas 78539, or wherever he may be found.

17. Defendant Jose Brent Duran is an individual Texas citizen that resides in Hidalgo County, Texas. This Defendant operated Units 41-42 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 3304 San Esteban Street, Mission, Texas 78572, or wherever he may be found.

18. Defendant Hector Fernando Garcia Rodriguez is an individual citizen of Mexico. This Defendant operated units 49-50 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served through the Texas Department of Transportation forwarded to Hacienda Raldea 131, Garcia, Mexico NL 6600.

19. Defendant Sun Valley, Inc. is a Kansas corporation with its principal office and principal place of business located in Reno County, Kansas. This Defendant is identified as Units 51-52 in the Texas Peace Officer's Crash Report. This Defendant may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711, to be forwarded to the Defendant's Kansas based registered agent Keith Bauer, 1601 ED. Blanchard Avenue, Hutchinson, Kansas 67501.

20. Defendant Charles Grant Bowman is an individual citizen of the State of Kansas. This

Defendant operated Units 51-52 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served through the Texas Department of Transportation to be forwarded to 1818 East 24th Avenue, #7, Hutchinson, Kansas 67502.

21. Defendant Go To Logistics, Inc. is an Illinois corporation with its principal office and principal place of business located in Cook County, Illinois. This Defendant is identified as Units 57-58 in the Texas Peace Officer's Crash Report. This Defendant may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711, to be forwarded to the Defendant's Illinois based registered agent Tomasz Rzedzian, 2233 West Street, River Grove, Illinois 60171.

22. Defendant Cody Sloan Williams is an individual Texas citizen that resides in Tarrant County, Texas. This Defendant operated Units 57-58 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 6078 Copperfield Drive, #411, Fort Worth, Texas 76132.

23. Defendant New Prime, Inc. d/b/a Prime, Inc. is a Nebraska corporation with its principal office and principal place of business located in Greene County, Missouri. This Defendant is identified as Units 67-68 in the Texas Peace Officer's Crash Report. This Defendant may be served with process through its registered agent Incorporated Services, Inc. 815 Brazos, Suite 500, Austin, Texas 78701.

24. Defendant Steven Anthony Ridder is an individual Texas citizen that resides in Pottawatomie County, Kansas. This Defendant operated Units 67-68 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served through the Texas Department of Transportation to be forwarded to 6125 Otter Creek Road Olsburg, Kansas 66520.

25. Defendant Jordan Janae St. Pierre is a natural person and citizen of Texas. This

Defendant operated Unit 79 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 10041 Tulare Lane Fort Worth, Texas 76177, or wherever she may be found.

26. Defendant Tab Anthony Key is a natural person and citizen of Texas. This Defendant operated Unit 80 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 115 Sierra Trail Justin, Texas 76247, or wherever he may be found.

27. Defendant Gretchen Bergman is a natural person and citizen of Texas. This Defendant operated Unit 82 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 9709 Furman Court Fort Worth, Texas 76244, or wherever he may be found.

28. Defendant WHB Transportation, LLC, is an Oklahoma limited liability company with its principal office in Tuttle, Oklahoma. This Defendant is identified as Units 83-84 in the Texas Peace Officer's Crash Report. This Defendant may be served with process through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711, to be forwarded to the Defendant's Oklahoma based registered agent C T Corporation System, 1833 South Morgan Road Oklahoma City, Oklahoma 73128.

29. Defendant David James Short is a natural person and citizen of Oklahoma. This Defendant operated Units 83-84 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 203 N. Cimarron Road Tuttle, Oklahoma 73089, or wherever he may be found.

30. Defendant David Lee Garcia is a natural person and citizen of Texas. This Defendant operated Unit 85 as identified in the Texas Peace Officer's Crash Report. This

Defendant may be served with process at 10209 Fossil Valley Drive Fort Worth, Texas 76131, or wherever he may be found.

31. Defendant Oluwakemi Olofinkua is a natural person and citizen of Texas. This Defendant operated Unit 86 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 3820 Villa Floria Drive, #2101, Fort Worth, Texas 76137, or wherever he may be found.

32. Defendant Ward Timber, Ltd., is a Texas limited partnership with its principal office in Linden, Texas. This Defendant is identified as Units 87 in the Texas Peace Officer's Crash Report. This Defendant may be served with process through its registered agent W R Ward at 1101 Highway 59 South Linden, Texas 75563, or wherever he may be found.

33. Defendant Timothy Scott Mills is a natural person and citizen of Texas. This Defendant operated Unit 87 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 5013 Marble Falls Road Fort Worth, Texas 76103, or wherever he may be found.

34. Defendant Astyn Marie Filbert is a natural person and citizen of Texas. This Defendant operated Unit 89 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 2148 Biggs Street Fort Worth, Texas 76177, or wherever she may be found.

35. Defendant Angelica Rodriguez is a natural person and citizen of Texas. This Defendant operated/owned Unit 93 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 7900 Crouse Drive Fort Worth, Texas 76137, or wherever she may be found.

36. Defendant Evangelyn Okereke is a natural person and citizen of Texas. This

Defendant operated/owned Unit 94 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 9809 Broiles Lane Fort Worth, Texas 76244, or wherever she may be found.

37. Defendant Rhonda Jones is a natural person and citizen of Texas. This Defendant operated Units 113-114 as identified in the Texas Peace Officer's Crash Report. This Defendant may be served with process at 8160 Fawn Circle Granbury, Texas 76049, or wherever she may be found.

38. Defendant Cintra Holding US Corp. d/b/a Cintra US Corp. is a Delaware corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

39. Defendant Cintra US Services, LLC is a Texas limited liability company with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with process through its registered agent Guillermo Sanguesa, 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759, or wherever he may be found.

40. Defendant Cintra NTE, LLC, is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant does business in the State of Texas and may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711, to be forwarded to the Defendant's Delaware based registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street Wilmington, Delaware 19801.

41. Defendant Cintra Texas Corporation is a Delaware corporation qualified to do business in the State of Texas and may be served with process through its registered agent C T

Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

42. Defendant Cintra NTE Mobility Partners Segments 3, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant does business in the State of Texas and may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711, to be forwarded to the Defendant's Delaware based registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street Wilmington, Delaware 19801.

43. Defendant Cintra NTE Mobility Partners Segments 3 Holding, LLC is a foreign limited liability company that does not maintain a registered agent in the State of Texas. This Defendant does business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. Upon information and belief, this Defendant's home office is located at: 9600 Great Hills Trail, Suite 250E, Austin, TX 78759.

44. Defendant Cintra Toll Services, LLC is a foreign corporation with its principal office in Travis County, Texas, is qualified to do business in Texas, and may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

45. Defendant Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp. is a Delaware corporation with its principal office and principal place of business located in Travis County, Texas, is qualified to do business in Texas, and may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Tx 75201-3136 or Fernando Martinez Caro, 700 Chevy Chase Blvd., Suite 500, Austin, Texas 78752.

46. Defendant Ferrovial Construction US Corp f/k/a Ferrovial Agroman US Corp is a Delaware Corporation with its principal place of business in Austin, Texas, is qualified to do business in the State of Texas, and may be served with process through its registered agent C T Corporation

System at 1999 Bryan St., Suite 900 Dallas, Texas 75201.

47. Defendant Ferrovial Holding US Corp. is a Delaware Corporation with its principal place of business in Austin, Texas, is qualified to business in the State of Texas, and may be served through its registered agent for services of process in Texas, through C T Corporation System at 1999 Bryan St., Suite 900 Dallas, Texas 75201.

48. Defendant North Tarrant Infrastructure, LLC is a Texas limited liability company with its principal office and principal place of business located in Tarrant County, Texas. This Defendant may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Tx 75201-3136.

49. Defendant NTE Mobility Partners, LLC is a Delaware limited liability corporation with its principal office and principal place of business located in Tarrant County, Texas. This Defendant may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Tx 75201-3136.

50. Defendant NTE Mobility Partners Holding, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711, to be forwarded to the Defendant's Delaware based registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street Wilmington, Delaware 19801.

51. Defendant NTE Mobility Partners Holdings, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great

Hills Trail, Suite 250E, Austin, TX 78759.

52. Defendant NTE Mobility Partners Segments 3, LLC is a Delaware limited liability company with its principal office and principal place of business located in Tarrant County, Texas. This Defendant may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

53. Defendant NTE Mobility Partners Segments 3 Holding, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711, to be forwarded to the Defendant's Delaware based registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street Wilmington, Delaware 19801.

54. Defendant Webber, LLC is a Texas limited liability company with its principal office and principal place of business located in Montgomery County, Texas. This Defendant may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**AMOUNT IN CONTROVERSY**

55. Pursuant to Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief over $1,000,000 due to the severe injuries suffered by him. This amount is within the jurisdictional limits of the Court. Plaintiff, however, reserves the right to amend and/or supplement should the damages exceed this amount.

**JURISDICTION**

56. This Court has subject matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

57. This Court has personal jurisdiction over Defendants because they are Texas citizens, their principal place of business is in Texas, and/or they committed torts, which are the subject of this lawsuit, in Texas. Further, this Court has jurisdiction over the out of state corporate Defendants because they have purposefully availed themselves of the benefits of doing business in Texas, employed Texas residents, and/or maintain offices in Texas. Moreover, their tortious conduct in Texas are the subject of this lawsuit.

58. This case is not removeable. A citizen of the State of Texas asserts claims against citizens of the State of Texas, a citizen of the state of Delaware, and a citizen of Mexico which means there is no diversity jurisdiction under 28 U.S.C. § 1332. Further none of the claims at issue arise under or are pre-empted by either federal statutes or raise substantial questions of federal law. No other possible basis for federal jurisdiction exists. As such, any removal of this case would be in objective and subjective bad faith. 28 U.S.C. § 1447(c) (authorizing the award of attorneys' fees and costs for bad faith removals).

**VENUE**

59. Venue is proper in this Court under § 15.002(2) and (3) of the Texas Civil Practices & Remedies Code because Defendants Southwest, McEnley, and AST resided or had their principal place of business in Dallas County, Texas, at the time the cause of action accrued.

60. Pursuant to § 15.005 of the Texas Civil Practices & Remedies Code, because venue is proper in Dallas County, Texas, as to at least one Defendant, venue is proper in Dallas County, Texas, as to all Defendants.

**JURY DEMAND**

61. Plaintiff hereby demands that this case be set for a trial by jury. The cost for a jury trial has been paid with the filing of Plaintiff's Original Petition.

## FACTUAL BACKGROUND

### A. General Allegations

62. Plaintiff files this lawsuit to recover damages caused by a collision occurring on February 11, 2021, in the southbound Lanes of I-35W in Tarrant County, Texas, which collision was proximately caused by the negligence, negligence per se, and gross negligence of Defendants.

63. The terms "**Truck Company Defendants**" and "**Truck Driver Defendants**" refer to the following defendants:

| Truck Company Defendants | Truck Driver Defendants | Unit Number from Texas Peace Officer's Crash Report |
|---|---|---|
| Sonic Logistics, LLC | Singh Sukhwinder | 6-7 |
| Sierra Mountain Express | Arturo Montes | 19-20 |
| Coca-Cola Southwest Beverages, LLC | Jalen McEnley a/k/a Jailen McKneely | 23-24 |
| J.B. Hunt Transport, Inc. | Val Ernst a/k/a Ernst Val | 39-40 |
| GG's Produce, LLC | Jose Brent Duran | 41 |
| I Garza, LLC | Jose Brent Duran | 42 |
| Rich Transport, LLC | Hector Fernando Garcia Rodriguez | 49-50 |
| Sun Valley, Inc. | Charles Grant Bowman | 51-52 |
| Go To Logistics, Inc. | Cody Sloan Williams | 57-58 |
| New Prime, Inc. d/b/a Prime, Inc. | Steven Anthony Ridder | 67-68 |
| WHB Transportation, LLC | David James Short | 83-84 |
| Rich Transport, LLC | Victor Rogelio Zuiga-Guevara | 91-92 |
| J.B. Hunt Transport, Inc. | Rhonda Jones | 113-114 |

64. The term "**Commercial Defendants**" and "**Commercial Vehicle Drivers**" refers to the following Defendants:

| Commercial Defendants | Commercial Vehicle Drivers | Unit Number from Texas Peace Officer's Crash Report |
|---|---|---|
| Automatic Sprinkler of Texas, Inc. | James Lee Kind | 73 |
| Ward Timber Limited | Timothy Scott Mills | 87 |

65. The term "**Non-Commercial Drivers**" refers to the following Defendants:

| Non-Commercial Drivers | Unit Number from Texas Peace Officer's Crash Report |
|---|---|
| Jordan Janae St. Pierre | 79 |
| Tab Anthony Key | 80 |
| Gretchen Bergman | 82 |
| David Lee Garcia | 85 |
| Oluwakemi Olofinkua | 86 |
| Astyn Marie Filbert | 89 |
| Barrett Cody Yates | 90 |
| Angelica Rodriguez | 93 |
| Evangelyn Okereke | 93 |

66. The term "**Roadway Defendants**" refers to the following Defendants who singularly or, upon information and belief, through a consortium of companies, had the responsibility to operate and maintain the TEXPress Lanes where this collision occurred (listed in alphabetical order):

a. Cintra Holding US Corp. d/b/a Cintra US Corp.

b. Cintra NTE LLC.

c. Cintra NTE Mobility Partners Segments 3, LLC

d. Cintra NTE Mobility Partners Segments 3 Holding, LLC.

e. Cintra Texas Corp.

f. Cintra Toll Services, LCC.

g. Cintra US Services, LLC.

h. Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp.

i. Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp.

j. Ferrovial Holding US Corp.

k. North Tarrant Infrastructure, LLC.

l. NTE Mobility Partners, LLC.

m. NTE Mobility Partners Holdings, LLC.

n. NTE Mobility Partners Segments 3, LLC.

o. NTE Mobility Partners Segments 3 Holdings, LLC.

p. Webber LLC.

67. Plaintiff specifically invokes Rule 28 of the Texas Rules of Civil Procedure and Plaintiffs assert this lawsuit against whatever person, business, or entity that was doing business under the assumed or common name "NTE," "Cintra," "Webber," "Ferrovial," North Texas Infrastructure" and/or whatever person, business, or entity that was responsible, in whole or in part, directly or indirectly, for the operations and maintenance (including de-icing and pretreatment) of the TEXPress Lanes where this collision occurred.

68. In the event that any of the parties identified above are misnamed or misspelled or not included herein, it is the contention of Plaintiffs that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein.

69. For all relevant times, the Truck Driver Defendants and Truck Company Defendants were operating a commercial vehicle as defined by 49 C.F.R. § 390.5 of the Federal Motor Carrier Safety Regulations. Furthermore, the Truck Driver Defendants and Truck Company Defendants were required to observe all motor carrier safety regulations pursuant to the Federal Motor Carrier Safety Regulations. 49 C.F.R. § 390.11.

70. Whenever it is said that any employee, servant, agent, broker, or representative of any Defendant did or failed to do any act or thing, it was done in his/her capacity as an employee, servant, agent, broker, or representative of said Defendant, with full authorization or ratification of said Defendant, and in the course and scope of his/her employment as an employee, servant, agent, broker, or representative of said Defendant.

**B. Specific Allegations**

71. On February 11, 2021, Davis was driving home from work in a silver Nissan Murano on IH 35W. The roadway was slick and icy due to the winter storm that had descended upon North Texas.

72. While driving home that day, Davis was involved in a multi-vehicle collision wherein Defendants driving vehicles ahead of Davis negligently drove too fast for the conditions, followed behind others too closely, lost control of their vehicles, swerved across lanes, and/or crashed caused all three lanes of traffic to be blocked and the Defendants around and behind Davis did the same, crashing into each other and into Davis (the "Collision").

73. The Truck Company Defendants and Truck Driver Defendants failed to control their speed, failed to take into account the icy road conditions, and failed to observe the hazardous road conditions as required by the Federal Motor Carrier Safety Regulations and the common law. For all relevant times, each Truck Driver Defendant was an employee and agent of his respective Truck Company Defendant and was acting in the course and scope of his agency and employment for his respective Truck Company Defendant, for which the Truck Company Defendant is responsible under the doctrines of respondeat superior, vicarious liability, agency, and the statutory employee relationship between the respective Truck Company Defendant and Truck Driver Defendant.

74. The Commercial Defendants and Commercial Vehicle Driver Defendants failed to control their speed, failed to take into account the icy road conditions, and failed to observe the hazardous road conditions as required by common law. For all relevant times, each Commercial Vehicle Driver was an employee and agent of his respective Commercial Defendant and was acting in the course and scope of his agency and employment for his respective Commercial Defendant,

for which the Commercial Defendant is responsible under the doctrines of respondeat superior, vicarious liability, agency, and the statutory employee relationship between the respective Commercial Defendant and Commercial Vehicle Driver.

75. The Non-Commercial Drivers failed to control their speed, failed to take into account the icy road conditions, and failed to observe the hazardous road conditions as required by common law.

76. The Roadway Defendants had control over the TEXPress Lanes where the collision occurred. The Roadway Defendants were responsible for operating and maintaining the TEXPress Lanes, including anti-icing, de-icing, and mechanical removal of ice. The Roadway Defendants had notice of a collision that occurred approximately three hours earlier near the area of this collision but failed to treat, clear, de-ice, and/or close the TEXPress Lanes prior to this catastrophic collision. The collision was caused by the negligence, negligence per se, and gross negligence of all Defendants, and that of each of them, and proximately caused the injuries and damages to Davis.

77. Davis suffered serious, debilitating injuries as a result of the Collision. Following the Collision, Davis began receiving treatment for the serious and debilitating injuries that he sustained because of the Collision. More specifically, Davis sustained serious injuries to his body including his neck, back, knee, and ankle from Defendants' negligent acts and omissions.

78. As a result of the injuries he sustained in the Collision, Davis has undergone extensive medical therapy and treatments and continues to suffer from his physical injuries to this day.

79. Davis has not been able to return to work because of his injuries from the Collision.

**CAUSES OF ACTION**

### COUNT ONE: NEGLIGENCE OF TRUCK DRIVER DEFENDANTS

80. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

81. As motorists operating vehicles in Texas, Truck Driver Defendants owed duties to Davis. As stated herein, Truck Driver Defendants' acts and omissions, singularly or in combination with others, constituted negligence in that they breached their duties to Davis. Davis' injuries and damages were proximately caused by the negligent conduct of Truck Driver Defendants in the operation of their vehicles, which negligent acts and/or omissions are generally described herein and include, but are not limited to, the following:

a. Failing to control their speed;

b. Failing to maintain a proper lookout;

c. Failing to timely apply their brakes;

d. Failing to take evasive measures to avoid the Collision;

e. Failed to drive safely given the road conditions;

f. Failing to maintain a proper distance between their vehicles and other vehicles;

g. Driving in ice conditions in violation of 49 CFR § 392.14, Section 2.13 of the Texas Commercial Motor Vehicle Driver's Handbook, and the common law;

h. Failing to use extreme caution with existing ice conditions in violation of 49 CFR § 392.14 and the common law;

i. Failing to operate at a reasonable rate of speed in violation of Section 45.351 of the Texas Transportation Code, Section 2.6 of the Texas Commercial Motor Vehicle Driver's Handbook, and the common law;

j. Failing to safely observe hazards in the roadway in violation of Section 2.8 of the Texas Commercial Motor Vehicle Driver's Handbook and the common law;

and

k. Inattentiveness.

82. Each of these acts and omissions by Truck Driver Defendants, singularly or in combination with others, constituted negligence which proximately caused the Collision and Davis' extensive injuries and damages.

**COUNT TWO: VICARIOUS LIABILITY/RESPONDEAT SUPERIOR AGAINST TRUCK COMPANY DEFENDANTS**

83. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

84. Truck Company Defendants, by and through Truck Driver Defendants, their respective employees, agents, servants, and apparent or ostensible agents who were acting within the course and scope of their agency or employment for Truck Company Defendants when the Collision occurred, are liable for Truck Driver Defendants' acts under the theories of respondeat superior and/or apparent agency.

85. By reason of the facts set forth above, Truck Company Defendants, by and through Truck Driver Defendants, were negligent thereby proximately causing the Collision, and Davis' extensive injuries and damages.

**COUNT THREE: NEGLIGENCE OF TRUCK COMPANY DEFENDANTS**

86. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

87. As a company employing Truck Driver Defendants and others who operate motor vehicles in Texas, Truck Company Defendants owed duties to Davis. As stated herein, Truck Company Defendants' acts and omissions, singularly or in combination with others, constituted negligence in that Truck Company Defendants breached their duties to Davis. Davis' injuries and damages were proximately caused by the negligent acts or omissions of Truck Company Defendants, which are generally described herein and include, but are not limited to, the following:

a. Improperly hiring and retaining Truck Driver Defendants as a driver when they knew or reasonably should have known that Truck Driver Defendants were unfit, negligent or reckless drivers;

b. Improperly entrusting Truck Driver Defendants with the company vehicles when they knew or reasonably should have known that Truck Driver Defendants were unfit, negligent or reckless drivers;

c. Failing to properly supervise, train, and/or evaluate Truck Driver Defendants as drivers; and

d. Failing to maintain the appropriate policies and procedures for drivers, including Truck Driver Defendants, to ensure Davis' and the public's safety.

88. Each of these acts and omissions by Truck Company Defendants, singularly or in combination with others, constituted negligence which proximately caused the Collision, and Davis' injuries and damages.

**COUNT FOUR: NEGLIGENCE OF COMMERCIAL VEHICLE DRIVERS**

89. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

90. As motorists operating vehicles in Texas, the Commercial Vehicle Drivers owed duties to Davis. As stated herein, the Commercial Vehicle Drivers' acts and omissions, singularly or in combination with others, constituted negligence in that they breached their duties to Davis. Davis' injuries and damages were proximately caused by the negligent conduct of Commercial Vehicle Drivers in the operation of their vehicles, which negligent acts and/or omissions are generally described herein and include, but are not limited to, the following:

l. Failing to control their speed;

m. Failing to maintain a proper lookout;

n. Failing to timely apply their brakes;

o. Failing to take evasive measures to avoid the Collision;

p. Failed to drive safely given the road conditions;

q. Failing to maintain a proper distance between their vehicles and other vehicles;

r. Failing to operate at a reasonable rate of speed in violation of Section 45.351 of the Texas Transportation Code and the common law; and

s. Inattentiveness.

91. Each of these acts and omissions by Commercial Vehicle Drivers, singularly or in combination with others, constituted negligence which proximately caused the Collision and Davis' extensive injuries and damages.

**COUNT TWO: VICARIOUS LIABILITY/RESPONDEAT SUPERIOR AGAINST COMMERCIAL DEFENDANTS**

92. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

93. Commercial Defendants, by and through Commercial Vehicle Drivers, their respective employees, agents, servants, and apparent or ostensible agents who were acting within the course and scope of their agency or employment for Commercial Defendants when the Collision occurred, are liable for Commercial Vehicle Drivers' acts under the theories of respondeat superior and/or apparent agency.

94. By reason of the facts set forth above, Commercial Defendants, by and through Commercial Vehicle Drivers, were negligent thereby proximately causing the Collision, and Davis' extensive injuries and damages.

**COUNT THREE: NEGLIGENCE OF COMMERCIAL DEFENDANTS**

95. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

96. As a company employing Commercial Vehicle Drivers and others who operate

motor vehicles in Texas, Commercial Defendants owed duties to Davis. As stated herein, Commercial Defendants' acts and omissions, singularly or in combination with others, constituted negligence in that Commercial Defendants breached their duties to Davis. Davis' injuries and damages were proximately caused by the negligent acts or omissions of Commercial Defendants, which are generally described herein and include, but are not limited to, the following:

e. Improperly hiring and retaining Commercial Vehicle Drivers as drivers when they knew or reasonably should have known that Commercial Vehicle Drivers were unfit, negligent or reckless drivers;

f. Improperly entrusting Commercial Vehicle Drivers with the company vehicles when they knew or reasonably should have known that Commercial Vehicle Drivers were unfit, negligent or reckless drivers;

g. Failing to properly supervise, train, and/or evaluate Commercial Vehicle Drivers as drivers; and

h. Failing to maintain the appropriate policies and procedures for drivers, including Commercial Vehicle Drivers, to ensure Davis' and the public's safety.

97. Each of these acts and omissions by Commercial Defendants, singularly or in combination with others, constituted negligence which proximately caused the Collision, and Davis' injuries and damages.

**COUNT SEVEN: NEGLIGENCE OF NON-COMMERCIAL DRIVERS**

98. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

99. As motorists operating vehicles in Texas, the Non-Commercial Drivers owed duties to Davis. As stated herein, the Non-Commercial Drivers' acts and omissions, singularly or in

combination with others, constituted negligence in that they breached their duties to Davis. Davis' injuries and damages were proximately caused by the negligent conduct of Non-Commercial Drivers in the operation of their vehicles, which negligent acts and/or omissions are generally described herein and include, but are not limited to, the following:

t. Failing to control their speed;

u. Failing to maintain a proper lookout;

v. Failing to timely apply their brakes;

w. Failing to take evasive measures to avoid the Collision;

x. Failed to drive safely given the road conditions;

y. Failing to maintain a proper distance between their vehicles and other vehicles;

z. Failing to operate at a reasonable rate of speed in violation of Section 45.351 of the Texas Transportation Code and the common law; and

aa. Inattentiveness.

100. Each of these acts and omissions by Non-Commercial Drivers, singularly or in combination with others, constituted negligence which proximately caused the Collision and Davis' extensive injuries and damages.

**COUNT EIGHT: GROSS NEGLIGENCE OF DEFENDANTS**

101. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

102. When viewed objectively, Defendants' conduct, acts, and/or omissions as generally described above involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Furthermore, Defendants had actual, subjective awareness of the risk but proceeded with a conscious indifference to the rights, safety, or welfare of others.

103. As such, Defendants' conduct rises to the level of gross negligence such that

exemplary damages are warranted and appropriate.

## ACTUAL DAMAGES

104. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

105. The negligent and/or intentional acts and/or omissions of Defendants set forth above were a proximate cause of Davis' injuries and damages, as follows:

a. Past and future physical impairment;

b. Past and future pain and suffering;

c. Past and future disfigurement;

d. Past and future mental anguish;

e. Past and future medical expenses;

f. Past loss of income;

g. Future loss of earning capacity;

h. Pre and post-judgment interest; and

i. Costs of court.

## EXEMPLARY DAMAGES

106. Each of the foregoing paragraphs and facts are incorporated herein for all purposes.

107. Under TEX. CIV. PRAC. & REM. CODE § 41.003(a)(3), Plaintiff is entitled to exemplary damages because his injuries and damages resulted from Defendants' gross negligence.

## REQUIRED DISCLOSURES

108. Plaintiff hereby demands that Defendants make their required disclosures within the timeframe required by TEX. R. CIV. P. 194.2.

## TEXAS RULE OF CIVIL PROCEDURE 193.7 NOTICE

109. This paragraph serves as notice, pursuant to Texas Rule of Civil Procedure 193.7,

that documents produced in response to written discovery requests served by Plaintiff will be used against the producing party in any pretrial proceeding and/or trial.

## PRAYER

Plaintiff respectfully requests that Defendants be cited to answer and appear, and, that upon final trial, Plaintiff recover damages, as specified above, from Defendants. Plaintiff further prays that the Court will award all costs of court, pre-judgment and post-judgment interest at the legal rate, and grant such other and further relief, general and special, at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**LYONS & SIMMONS, LLP**

**Michael P. Lyons**
State Bar No. 24013074
mlyons@lyons-simmons.com
**Christopher J. Simmons**
State Bar No. 24058796
csimmons@lyons-simmons.com
**Stephen Higdon**
State Bar No. 24087719
shigdon@lyons-simmons.com
**Michael S. Fechner, Jr.**
Texas Bar No. 24108166
mfechner@lyons-simmons.com
2101 Cedar Springs Road, Suite 1900
Dallas, Texas 75201
Telephone: (214) 665-6900
Facsimile: (214) 665-6950

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on February 10. 2023, a true and correct copy of the foregoing instrument was forwarded to all counsel of record in accordance with Texas Rule of Civil Procedure 21(a).

____________________________________
**Christopher J. Simmons**

# EXHIBIT B-7

FILED
TARRANT COUNTY
8/18/2021 1:27 PM
THOMAS A. WILDER
DISTRICT CLERK
096-327325-21

NO. 096-327325-21

| | | |
|---|---|---|
| MARIELENA FATIMA DE FRIETES MENDOZA, OTILIA QUERALES, LUIS MENDOZA, AND JOANN BURGESS AS ADMINISRATOR OF THE ESTATE OF TAMARA MENDOZA | § | IN THE DISTRICT COURT OF |
| VS. | § | TARRANT COUNTY, TEXAS |
| J.B. HUNT TRANSPORT, INC, VAL ERNST, GG'S PRODUCE TRANSPORT, LLC, JOSE BRENT DURAN, NTE MOBILITY PARTNERS SEGMENTS 3, LLC, AND NEAL WILLIAM GUTHRIE | § | 96th JUDICIAL DISTRICT |

**PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, JOANN BURGESS, AS ADMINISTRATOR OF THE ESTATE OF TAMARA MENDOZA QUERALES, MARIELENA FATIMA DE FRIETES MENDOZA, OTILIA QUERALES, and LUIS MENDOZA Plaintiffs, complaining of J.B. HUNT TRANSPORT, INC, VAL ERNST, GG'S PRODUCE TRANSPORT, LLC, JOSE BRENT DURAN, NTE MOBILITY PARTNERS SEGMENTS 3, LLC, and NEAL WILLIAM GUTHRIE, Defendants, and for cause of action show the following:

**I.**

**DISCOVERY CONTROL PLAN**

1. The Plaintiff intends that discovery in this case shall proceed as a Level 3 case pursuant to Rule 190.4 of the Texas Rules of Civil Procedure and affirmatively pleads that this case is

not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief in excess of $250,000.

## II.

## CLAIM FOR RELIEF

2. The Plaintiff seeks monetary relief over $1,000,000.

## III.

## PARTIES

1. Joann Burgesss is the Administrator of the Estate of Tamara Mendoza (a/k/a Tamara Satima Querales, a/k/a Tamara Mendoza Querales), Deceased. Joann Burgess is a resident of Denton County, Texas.
2. Plaintiff Marielena Fatima DeFrietes Mendoza is the eighteen-year-old daughter of Tamara Mendoza Querales (hereinafter called "Tamara Mendoza"), deceased. Plaintiff Marielena Fatima DeFrietes Mendoza is an individual residing in Denton County, Texas.
3. Plaintiff Otilia Querales is the mother of Tamara Mendoza, deceased. Plaintiff Otilia Querales is an individual residing in Venezuela.
4. Plaintiff Luis Mendoza is the father of Tamara Mendoza, deceased. Plaintiff Luis Mendoza is an individual residing in Venezuela.
5. Defendant J.B. Hunt Transport, Inc. (hereinafter "Defendant J.B. Hunt") is a foreign corporation with its principal place of business in Lowell, Arkansas and may be served with process though its registered agent, Corporation Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701.

6. Defendant Val Ernst (hereinafter "Defendant Ernst") is an individual residing in Mansfield, Tarrant County, Texas and can be served with process at 1704 Griffin Lane, Mansfield, Texas 76063.

7. Defendant GG's Produce Transport, LLC (hereinafter "Defendant GG's") is a Texas Limited Liability Company with its principal place of business in Hidalgo County, Texas, and can be served with process through its registered agent, George David Durham III, at 517 W. Nolana Avenue, McAllen, Texas 78504.

8. Defendant Jose Brent Duran (hereinafter "Defendant Duran") is an individual residing in Mission, Hidalgo County, Texas and can be served with process at 3304 San Esteban Street, Mission, Texas 78572.

9. Defendant NTE Mobility Partners Segments 3, LLC (hereinafter "Defendant NTE") is a Delaware corporation with its principal place of business at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and can be served with process through its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

10. Defendant Neal William Guthrie (hereinafter "Defendant Guthrie") is an individual residing in Bridgeport, Texas, and has been properly named and served as a defendant at this time. The officer's return of service on Defendant Guthrie is on file with the papers of this cause.

## IV.

## JURISDICTION AND VENUE

11. The State District Court of Tarrant County, Texas, has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds the Court's minimum jurisdictional

requirements. Additionally, the cause of action arose in Tarrant County, Texas and multiple defendants are citizens and/or have their principal place of business in the State of Texas. A nonresident does business in Texas if the nonresident commits a tort in whole or in party in this state. Tex. Civ. Prac. & Rem. Code § 17.042(2). Although Defendant J.B. Hunt is a foreign corporation, it engaged in interstate commerce and committed tort(s) in the state of Texas. Therefore, this Court has specific personal jurisdiction over Defendant J.B. Hunt. Defendant J.B. Hunt also had continuous and systematic contacts with Texas, invoking general personal jurisdiction. Thus, jurisdiction and venue are proper and permissible in the State District Court of Tarrant County, Texas.

## V.

## FACTS

12. On February 11, 2021, Tamara Mendoza suffered fatal injuries as a result of Defendants' negligence. Tamara had been driving southbound on the elevated toll lane of Interstate 35 West in Fort Worth, Tarrant County, Texas between its intersection with NE 28th Street/Texas Highway 183 (Exit 54) to the north and its intersection with East Northside Drive (Exit 53), when she was caused to be involved in a catastrophic incident. Specifically, Tamara had exited her car when she was struck by another unit(s). Tamara's lifeless body was found by emergency personnel near and/or under the units operated by Defendant Ernst, Defendant Duran, and Defendant Guthrie.

13. Additionally, at the time of the incident, the section of the southbound toll lanes of Interstate 35 were operated and maintained by Defendant NTE. Defendant NTE failed to properly operate and maintain the roadway at and/or near the time of the incident.

## VI.

## NEGLIGENCE OF DEFENDANT ERNST

14. Defendant Ernst had a duty to exercise ordinary care and to operate his vehicle in a reasonable and prudent manner.

15. Defendant Ernst breached his duty of care in at least the following ways:

    a. Traveling at an unreasonable rate of speed;

    b. Failure to keep a proper lookout;

    c. Failure to maintain a proper and safe distance;

    d. Failure to pay attention to the road and driving conditions;

    e. Failure to monitor road and driving conditions;

    f. Failure to properly follow Federal Motor Safety Carrier Regulations;

    g. Failure to make timely application of brakes; and,

    h. Failure to maintain proper control of his vehicle.

16. Each of Defendant Ernst's acts and omissions as described above was negligence, and, separately or in combination, was a proximate cause of the collision in question and the Plaintiffs' injuries and damages as set forth below.

17. Defendant Ernst's actions were done with reckless disregard for the safety and lives of others. Thus, Plaintiffs are entitled to exemplary damages.

## VII.

## RESPONDEAT SUPERIOR AND DIRECT NEGLIGENCE OF DEFENDANT J.B. HUNT

18. At the time of the collision described above, Defendant Ernst was the agent, servant, and employee of Defendant J.B. Hunt, and was acting within the scope of his authority as such agent, servant, and employee.

19. Additionally, Defendant J.B. Hunt breached its duty of care in at least the following ways:

    a. Failure to property train employees;

    b. Failure to properly follow Federal Motor Safety Carrier Regulations;

    c. Failure to properly supervise employees; and

    d. Committing various other acts of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

20. Each of Defendant J.B. Hunt's acts and omissions as described above was negligence, and, separately or in combination, was a proximate cause of the collision in question and the Plaintiffs' injuries and damages as set forth below.

21. Defendant J.B. Hunt's actions were done with reckless disregard for the safety and lives of others. Thus, Plaintiffs are entitled to exemplary damages.

## VIII.

## NEGLIGENCE OF DEFENDANT DURAN

22. Defendant Duran had a duty to exercise ordinary care and to operate his vehicle in a reasonable and prudent manner.

23. Defendant Duran breached his duty of care in at least the following ways:

    a. Traveling at an unreasonable rate of speed;

    b. Failure to keep a proper lookout;

    c. Failure to maintain a proper and safe distance;

    d. Failure to pay attention to the road and driving conditions;

    e. Failure to monitor road and driving conditions;

    f. Failure to properly follow Federal Motor Safety Carrier Regulations;

    g. Failure to make timely application of brakes; and,

h. Failure to maintain proper control of his vehicle.

24. Each of Defendant Duran's acts and omissions as described above was negligence, and, separately or in combination, was a proximate cause of the collision in question and the Plaintiffs' injuries and damages as set forth below.

25. Defendant Duran's actions were done with reckless disregard for the safety and lives of others. Thus, Plaintiffs are entitled to exemplary damages.

## IX.

## RESPONDEAT SUPERIOR AND DIRECT NEGLIGENCE OF DEFENDANT GG'S

26. At the time of the collision described above, Defendant Duran was the agent, servant, and employee of Defendant GG's, and was acting within the scope of his authority as such agent, servant, and employee.

27. Additionally, Defendant GG's breached its duty of care in at least the following ways:

   a. Failure to property train employees;

   b. Failure to properly follow Federal Motor Safety Carrier Regulations;

   c. Failure to properly supervise employees; and

   d. Committing various other acts of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

28. Each of Defendant GG's's acts and omissions as described above was negligence, and, separately or in combination, was a proximate cause of the collision in question and the Plaintiffs' injuries and damages as set forth below.

29. Defendant GG's actions were done with reckless disregard for the safety and lives of others. Thus, Plaintiffs are entitled to exemplary damages.

## X.

## NEGLIGENCE OF DEFENDANT NTE

30. Defendant NTE had a duty to exercise ordinary care and to operate and/or maintain the roadway in a reasonable and prudent manner.

31. Defendant NTE breached its duty of care in at least the following ways:

    a. Failure to property operate and/or maintain the Interstate 35 roadway where the incident occurred;

    b. Failure to properly maintain the roadway in order to discover any defects as they existed at the time of the incident;

    c. Failure to discover any hazards or defects which existed at the time of the incident;

    d. Failure to inspect, or adequately and properly inspect, the roadway;

    e. Failure to monitor, and/or timely monitor, the weather conditions that existed at the time of the incident;

    f. Failure to adequately repair any defect which existed at the time of the incident;

    g. Failure to post adequate warning signs on the roadway to warn of any hazards or defects of which Defendant NTE had, or should have had, knowledge;

    h. Failure to provide safeguards that would have prevented this type of incident;

    i. Failure to timely de-ice the Interstate 35 tollway prior to the time of the incident that made the basis of this suit;

    j. Failure to close the interstate 35 tollway because of the presence of ice on the roadway; and

    k. Committing various acts and/or omissions of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

32. Each of Defendant NTE's acts and omissions as described above was negligence, and, separately or in combination, was a proximate cause of the collision in question and the Plaintiffs' injuries and damages as set forth below.

33. Defendant NTE's actions were done with reckless disregard for the safety and lives of others. Thus, Plaintiffs are entitled to exemplary damages.

## XI.

## Negligence of Defendant Guthrie

34. Defendant Guthrie had a duty to exercise ordinary care and to operate his vehicle in a reasonable and prudent manner and he failed to do so.

35. Defendant Guthrie's failure to exercise ordinary care was a proximate cause of the injuries to and death of Tamara Mendoza.

## XII.

## Wrongful Death Claims

36. Defendants' wrongful acts, neglect, carelessness, unskillfulness, or default caused the death of Tamara Mendoza, and are, therefore, liable for damages arising from the injuries and resulting death pursuant to Chapter 71 of the Texas Civil Practice & Remedies Code. Tamara Mendoza's wrongful death beneficiaries include her parents, Plaintiff Otilia Querales and Plaintiff Luis Mendoza, and her daughter Marielena Fatima DeFrietes Mendoza, pursuant to Section 71.004 of the Texas Civil Practice & Remedies Code.

## XIII.

## Wrongful Death Damages – Surviving Child

37. As a result of the wrongful death of Tamara Mendoza, her daughter, Marielena Fatima DeFrietes Mendoza, is entitled to recover the following elements of damage:

a. Pecuniary loss sustained in the past, including the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Marielena Fatima DeFrietes Mendoza, in reasonable probability, would have received from Tamara Mendoza had she lived.

b. Pecuniary loss that, in reasonable probability, Marielena Fatima DeFrietes Mendoza will sustain in the future.

c. Loss of companionship and society sustained in the past, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that Marielena Fatima DeFrietes Mendoza, in reasonable probability, would have received from Tamara Mendoza had she lived.

d. Loss of companionship and society that, in reasonable probability, Marielena Fatima DeFrietes Mendoza will sustain in the future.

e. Mental Anguish sustained in the past including the emotional pain, torment, and suffering that Marielena Fatima DeFrietes Mendoza experienced because of the death of her mother, Tamara Mendoza.

f. Mental Anguish that, in reasonable probability, Marielena Fatima DeFrietes Mendoza will sustain in the future.

g. Loss of inheritance including the loss of the present value of the assets that the deceased, in reasonable probability, would have added to the estate and left at her natural death to Marielena Fatima DeFrietes Mendoza.

h. Exemplary Damages.

## XIV.

## Wrongful Death Damages – Surviving Parents

38. As a result of the wrongful death of Tamara Mendoza, her surviving parents, Otilia Querales and Luis Mendoza, are each entitled to recover the following elements of damage:

i. Pecuniary loss sustained in the past, including the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Otilia Querales and Luis Mendoza, in reasonable probability, would have received from Tamara Mendoza had she lived.

j. Pecuniary loss that, in reasonable probability, Otilia Querales and Luis Mendoza will sustain in the future.

k. Loss of companionship and society sustained in the past, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that Otilia Querales and Luis Mendoza, in reasonable probability, would have received from Tamara Mendoza had she lived.

l. Loss of companionship and society that, in reasonable probability, Otilia Querales and Luis Mendoza will sustain in the future.

m. Mental Anguish sustained in the past including the emotional pain, torment, and suffering that Otilia Querales and Luis Mendoza experienced because of the death of their daughter, Tamara Mendoza.

n. Mental Anguish that, in reasonable probability, Otilia Querales and Luis Mendoza will sustain in the future.

o. Exemplary Damages.

## XV.

## Damages To The Estate Of Tamara Mendoza

39. Joann Burgess, as administrator of the Estate of Tamara Mendoza is entitled to recover on behalf of the Estate the following elements of damage:

   a. Pain and mental anguish including the conscious physical pain and emotional pain, torment, and suffering experienced by Tamara Mendoza before her death as a result of the occurrence in question.

   b. Funeral and burial expenses including the reasonable amount of expenses for the funeral and burial for Tamara Mendoza suitable to her station in life.

   c. Exemplary Damages.

## XVI.

## Jury Demand

40. Plaintiffs demand that this case be tried to a jury.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer and that, upon trial, judgment be entered in favor of Plaintiff and against Defendants, jointly and severally, awarding the following:

a. Actual damages in amounts in excess of the minimum jurisdictional limits of the Court;

b. Exemplary Damages;

c. Pre-judgment interest;

d. Costs of suit;

e. Post-judgment interest; and,

f. Such other and future relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

**SLACK DAVIS SANGER LLP**
100 Lexington Street, Suite 070
Fort Worth, Texas 76102
(817) 288-8988
FAX: (817) 288-8999
jjose@slackdavis.com
dvaughn@slackdavis.com

By:/s/John S. Jose_______________
JOHN S. JOSE
State Bar No.: 11027550
DILLON L. VAUGHN
State Bar No. 24121179

AND

Randall D. Moore
State Bar No.: 14362275
rmoore@randallmoorelaw.com
Law Offices of Randall D. Moore, P.L.L.C
3701 S. University Drive
Fort Worth, Texas 76109

ATTORNEYS FOR PLAINTIFFS

# EXHIBIT B-8

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/16/2023
CT Log Number 543236789

## Service of Process Transmittal Summary

**TO:** Catherine David, General Counsel
FERROVIAL CONSTRUCTION US CORP.
9600 Great Hills Trl Ste 200E
Austin, TX 78759-5680

**RE:** **Process Served in Texas**

**FOR:** North Tarrant Infrastructure, LLC (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** IN RE: FEBRUARY 11,2021 INCIDENT ON 11135W vs. FEDEX GROUND PACKAGE SYSTEM, INC.

**CASE #:** 15300000022

**PROCESS SERVED ON:** C T Corporation System, Dallas, TX

**DATE/METHOD OF SERVICE:** By Process Server on 02/16/2023 at 11:00

**JURISDICTION SERVED:** Texas

**ACTION ITEMS:** CT will retain the current log

Image SOP

Email Notification, Catherine David catherine.david@ferrovial.us

Email Notification, Bryan W. Tate btate@wwebber.com

Email Notification, Juli Simoneaux jstibbe@gpi-99.com

Email Notification, LEAH SWAIM lswaim@ferrovial.us

Email Notification, Eric Etheridge eetheridge@ferrovial.us

**REGISTERED AGENT CONTACT:** C T Corporation System
1999 Bryan Street
Suite 900
Dallas, TX 75201
866-665-5799
SouthTeam2@wolterskluwer.com

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED | DATE/METHOD OF SERVICE | TO | LOG NUMBER |
|---|---|---|---|
| -- | By Process Server on 02/10/2023 at 13:59 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543201241 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT

disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Delivered 2/16/2023

# THE STATE OF TEXAS
# DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 153-000000-22*

**IN RE: FEBRUARY 11, 2021 INCIDENT ON IH35W**
**VS.**

TO: NORTH TARRANT INFRASTRUCTURE LLC

B/S REG AGT-CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS TX 75201-3136

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S THIRD AMENDED PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 153rd District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

SHAUN WILLIAM FLACH

Filed in said Court on February 10th, 2023 Against CARLOS RUVALCABA, COCA COLA BEVERAGES LLC, JOHN MICHAEL HOWARD, MERCER TRANSPORTATION, RHONDA JONES, J B HUNT TRANSPORTS INC, JEAN MARIE SAINT LOT, FRANTZ CLEMENT, FEDEX GROUND PACKAGE SYSTEM INC, RYDER TRUCK RENTAL INC, NTE MOBILI For suit, said suit being numbered 153-000000-22 the nature of which demand is as shown on said PLAINTIFF'S THIRD AMENDED PETITION a copy of which accompanies this citation.

EDWARD S GAYTAN
Attorney for SHAUN WILLIAM FLACH Phone No. (817)282-9700
Address 669 AIRPORT FRWY HURST, TX 76053

________Thomas A. Wilder_______ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 15th day of February, 2023.

By [signature] AMANDA PFISTERER

A CERTIFIED COPY
ATTEST: 02/15/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Pfisterer

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *15300000022001592*

Received this Citation on the ______ day of ____________________, ____ at ____ o'clock ___M; and executed at ____________________________ within the county of ______________, State of _______ at ______ o'clock ___M on the ______ day of ______________, ____ by delivering to the within named (Def.): defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S THIRD AMENDED PETITION , having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff:
County of ____________________ State of________ By _________________________ Deputy

Fees $________

State of ____________ County of ______________________ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said ___________________________ before me this ____ day of _______, ____
to certify which witness my hand and seal of office
(Seal)

County of ________________, State of ______________

A CERTIFIED COPY
ATTEST: 02/15/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Pfisterer

*CITATION*

Cause No. 153-000000-22

IN RE: FEBRUARY 11, 2021
INCIDENT ON IH35W

VS.

ISSUED

This 15th day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By AMANDA PFISTERER Deputy

EDWARD S GAYTAN
Attorney for: SHAUN WILLIAM FLACH
Phone No. (817)282-9700
ADDRESS: 669 AIRPORT FRWY

HURST, TX 76053

*CIVIL LAW*

*153000000022001592*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

153-000000-22

FILED
TARRANT COUNTY
2/10/2023 12:54 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 153-000000-22**

**NOT APPLICABLE TO ALL ACTIONS**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH-35W** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | **TARRANT COUNTY, TEXAS** |
| | § | |
| | § | **153RD JUDICIAL DISTRICT** |

---

**TRANSFERRED FROM**

**CAUSE NO. 342-328313-21**

| | | |
|---|---|---|
| **SHAUN WILLIAM FLACH,** *Plaintiff,* | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **TARRANT COUNTY, TEXAS** |
| | § | |
| **CARLOS RUVALCABA; COCA COLA BEVERAGES, LLC.; JOHN MICHAEL HOWARD; MERCER TRANSPORTATION CO., INC.; RHONDA JONES; J.B. HUNT TRANSPORT, INC.; JEAN MARIE SAINT LOT; FRANTZ CLEMENT; FEDEX GROUND PACKAGE, INC.; RYDER TRUCK RENTAL, INC.; NTE MOBILITY PARTNERS, LLC.; NTE MOBILITY PARTNERS SEGMENTS 3, LLC., CINTRA US SERVICES, LLC.; CINTRA HOLDING US CORP. d/b/a CINTRA US CORP.; CINTRA NTE, LLC.; CINTRA TEXAS CORP.; CINTRA NTE MOBILITY PARTNERS SEGMENTS 3, LLC.; CINTRA TOLL SERVICES, LLC.; NORTH TARRANT INFRASTRUCTURE, LLC.; WEBBER, LLC.; FERROVIAL CONSTRUCTION US CORP.; FERROVIAL HOLDING US CORP.; NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC.; NTE MOBILITY PARTNERS HOLDING, LLC.; REDMOND MINERALS, INC.; REDMOND** | § | |

| | | |
|---|---|---|
| **INCORPORATED; ENVIROTECH SERVICES, INC.; and SOUTHWEST ENVIROTX PARTNERS, LLC.,** *Defendants.* | § § § § | **342ND JUDICIAL DISTRICT** |

**PLAINTIFF'S THIRD AMENDED PETITION**

TO THE HONORABLE JUDGE OF SAID COURT

NOW COMES Plaintiff, **Shaun William Flach**, complaining of Defendants, CARLOS RUVALCABA; COCA COLA BEVERAGES, LLC.; JOHN MICHAEL HOWARD; MERCER TRANSPORTATION CO., INC.; RHONDA JONES; J.B. HUNT TRANSPORT, INC.; JEAN MARIE SAINT LOT; FRANTZ CLEMENT; FEDEX GROUND PACKAGE, INC.; RYDER TRUCK RENTAL, INC.; NTE MOBILITY PARTNERS, LLC.; and NTE MOBILITY PARTNERS SEGMENTS 3, LLC., **CINTRA US SERVICES, LLC.; CINTRA HOLDING US CORP. d/b/a CINTRA US CORP.; CINTRA NTE, LLC.; CINTRA TEXAS CORP.; CINTRA NTE MOBILITY PARTNERS SEGMENTS 3, LLC.; CINTRA TOLL SERVICES, LLC.; NORTH TARRANT INFRASTRUCTURE, LLC.; WEBBER, LLC.; FERROVIAL CONSTRUCTION US CORP.; FERROVIAL HOLDING US CORP.; NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC.; NTE MOBILITY PARTNERS HOLDING, LLC.; REDMOND MINERALS, INC.; REDMOND INCORPORATED; ENVIROTECH SERVICES, INC.; and SOUTHWEST ENVIROTX PARTNERS, LLC.**, and for cause of action would show the Court the following:

## I. INTENDED DISCOVERY CONTROL PLAN

1.01 Pursuant to TEX. R. CIV. P. 190.1, discovery in this case is intended to be conducted under Level 3.

## II. PARTIES

2.01 Plaintiff is an individual who was residing in Tarrant County, Texas, at the time of the incident in question. Plaintiff was operating Unit 110 as identified in the Texas Peace Officer's Crash Report.

2.02 Defendant, Carlos Ruvalcaba ("Ruvalcaba") is an individual who was operating a vehicle involved in the crash made the basis for this suit. **Ruvalcaba** operated Unit 99-100 as identified in the Texas Peace Officer's Crash Report. Defendant **Ruvalcaba** has generally appeared and answered herein and is before the Court for all purposes.

2.03 Defendant, Coca Cola Beverages, LLC. ("Coca Cola") is a Delaware corporation, organized of and by virtue of the laws of the State of Texas. Defendant **Coca Cola** was operating Unit 99-100 as identified in the Texas Peace Officer's Sworn Report. Defendant **Coca Cola** has generally appeared and answered herein and is before the Court for all purposes.

2.04 Defendant, John Michael Howard ("Howard") is an individual who was operating a vehicle involved in the crash made the basis of this suit. **Howard** operated Units 105-106 as identified in the Texas Peace Officer's Crash Report. **Howard** is a nonresident of Texas whose resident address is, 1817 East 24th Ave. #7 Hutchinson, Kansas 67502. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.05 Defendant, Mercer Transportation Co., Inc. ("Mercer") is a Delaware corporation organized of and by virtue of the laws of the State of Texas. **Mercer** was operating Unit 105-106 as identified in the Texas Peace Officer's Sworn Report. Pursuant to its BOC-3 filing, Defendant **Mercer** has designated as its blanket agent for service of process in Texas and may be served with this lawsuit by serving its agent at: C T Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas

75201. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.06 Defendant, Rhonda Jones ("Jones"), is an individual who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Jones operated Unit 113-114 as identified in the Texas Peace Officer's Crash Report. Defendant **Jones** has generally appeared and answered herein and is before the Court for all purposes.

2.07 Defendant, J.B. Hunt Transports, Inc. ("J.B. Hunt"), is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant **J.B. Hunt** operated Unit 39-40 as identified in the Texas Peace Officer's Crash Report. Defendant **J.B. Hunt** has generally appeared and answered herein and is before the Court for all purposes.

2.08 Defendant, Jean Marie Saint Lot ("Saint Lot"), is an individual who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant **Saint Lot** operated Unit 123-124 as identified in the Texas Peace Officer's Crash Report. **Saint Lot** is a nonresident of Texas whose resident address is, 6201 Westgate Dr., Apartment 1305, Orlando, Florida 32835-7023. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.09 Defendant, Frantz Clement ("Clement"), is an individual who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses.

Defendant Clement operated Unit 123-124 as identified in the Texas Peace Officer's Crash Report. **Clement** is a nonresident of Texas whose resident address is, 418 W 17th St., New York, New York 10011-5812. Defendant has generally appeared and answered herein and is before the Court for all purposes.

2.10 Defendant, FedEx Ground Package System, Inc. ("FedEx"), is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant **FedEx Ground** was operating Unit 123-124 as identified in the Texas Peace Officer's Crash Report. Defendant FedEx has generally appeared and answered herein and is before the Court for all purposes.

2.11 Defendant, Ryder Truck Rental, Inc. ("Ryder"), is a foreign for-profit corporation who was operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms, and losses. Defendant **Ryder** was operating Unit 123-124 as identified in the Texas Peace Officer's Crash Report. Defendant **Ryder** has generally appeared and answered herein and is before the Court for all purposes.

**ROADWAY OPERATIONS AND MAINTENANCE DEFENDANTS**

2.12 Defendant, NTE Mobility Partners, LLC., is a limited liability company with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. This Defendant is one of the I-35 Tollway Owners, Operators, and/or Maintenance entities. Defendant **NTE Mobility Partners, LLC.** has generally appeared and answered herein and is before the Court for all purposes.

2.13 Defendant, NTE Mobility Partners Segments 3, LLC., is a limited liability company with its principal place of business located at: 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. This Defendant is one of the I-35 Tollway Owners, Operators, and/or Maintenance entities. Defendant **NTE Mobility Partners Segments 3, LLC.** has generally appeared and answered herein and is before the Court for all purposes.

2.14 Defendant **Cintra US Services, LLC.** is a Texas limited liability company with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.15 Defendant **Cintra Holding US Corp d/b/a Cintra US Corp.** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.16 Defendant **Cintra NTE, LLC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. **Plaintiff requests that citation be issued and served accordingly.**

2.17 Defendant **Cintra Texas Corp.** is a Delaware corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas

through C T Corporation System at1999 Bryan Street, Suite 900, Dallas, Texas 75201. **Plaintiff requests that citation be issued and served accordingly.**

2.18 Defendant **Cintra NTE Mobility Partners Segments 3, LLC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. **Plaintiff requests that citation be issued and served accordingly**

2.19 Defendant **Cintra Toll Services, LLC.** is a foreign limited liability company with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.20 Defendant **North Tarrant Infrastructure, LLC.** is a Texas limited liability company with its principal office and principal place of business located in Tarrant County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.21 Defendant **Webber, LLC.** is a Texas limited liability company with its principal office and principal place of business located in Montgomery County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.22 Defendant **Ferrovial Construction US Corp.** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.23 Defendant **Ferrovial Holding US Corp.** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. **Plaintiff requests that citation be issued and served accordingly.**

2.24 Defendant **NTE Mobility Partners Segments 3 Holding, LLC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. **Plaintiff requests that citation be issued and served accordingly.**

2.25 Defendant **NTE Mobility Partners Holding, LLC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. **Plaintiff requests that citation be issued and served accordingly.**

**DE-ICING MANUFACTURER DEFENDANTS**

2.26 Defendant **Redmond Minerals, Inc.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C., 322 E. Gateway Drive, Suite 201, Heber City, UT 84032. **Plaintiff requests that citation be issued and served accordingly.**

2.27 Defendant **Redmond, Incorporated** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C., 322 E. Gateway Drive, Suite 201, Heber City, UT 84032. **Plaintiff requests that citation be issued and served accordingly.**

2.28 Defendant **EnviroTech Services, Inc.** is a foreign corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas through Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas 78701. **Plaintiff requests that citation be issued and served accordingly.**

2.29 Defendant **Southwest Envirotx Partners, LLC.** is a domestic limited liability company with its principal place of business located in Travis County, Texas. This Defendant may be served with process through its registered agent, Clay C. Speer, 10899 Deer Canyon Road, Jonestown, Texas 78645. **Plaintiff requests that citation be issued and served accordingly.**

2.30 At times all Defendants may be collectively referred to as "Defendants".

2.31 Plaintiff invokes the doctrine of *respondeat superior*. Whenever in this Petition it is alleged that a Defendant or Defendants did or failed to do any act or thing, it is meant that such Defendants' officer(s), agent(s), servant(s), employee(s), statutory employee(s), representative(s), and/or joint venturer(s) did or failed to do such act or thing and that at the time such conduct occurred, it occurred with the authorization and/or ratification of Defendants and/or was done in the normal and routine course and scope of employment, agency, or statutory employment of Defendants' officer(s), agent(s), servant(s), employee(s), statutory employee(s), representative(s), or joint venturer(s).

**III. MISNOMER / ALTER EGO**

3.01 Pursuant to Rule 28 of the of the Texas Rules of Civil Procedure, Plaintiff is suing any partnership, unincorporated association, private corporation, or individual whose name contains the words, or who does business under, the same or similar name of the Roadway Operations and Maintenance Defendants, Trucking Defendants, De-Icing Manufacturer Defendants, and/or whatever person, business, or entity that was responsible, in whole or in part, directly or indirectly, for the operations and maintenance (including de-icing and pretreatment) of the roadway where this collision occurred. In the event that any of the parties identified above are misnamed or misspelled or not included herein, it is the contention of Plaintiffs that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein.

**IV. JURISDICTION AND VENUE**

4.01 This Court has jurisdiction over this matter as Plaintiff seeks damages well in excess of the minimal jurisdictional limits of this Court. The Texas Rules of Civil Procedure requires Plaintiff to plead that their case falls under a particular category. In order to comply with this procedural requirement, Plaintiff hereby pleads pursuant to Tex. R. Civ. P. 47, that Plaintiff

seeks monetary relief over $1,000,000. Plaintiff seeks all other relief to which he may show himself to be justly entitled.

4.02 Additionally, Plaintiff and Defendant NTE Mobility Partners, LLC., and Defendant NTE Mobility Partners Segments 3, LLC., are citizens of Texas, and hence there is no complete diversity of citizenship. The remaining Defendants who are non-citizens of Texas have all consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers, and designating an agent for service of process in Texas. Designation of such an agent operates as an express consent to personal jurisdiction. *Knowlton v. Allied Van Lines*, 8th Cir., 900 F.2d 1196, 1200 (1989)("This designation of an agent, in accordance with federal law, also operates as consent to the personal jurisdiction of the [forum] courts."); see also *Paz v. Castellini Co., LLC*, No. B-07-036, 2007 U.S. Dist. LEXIS 83028, at *19 (S.D. Tex. 2007)(Approving of *Knowlton* but limiting its designation jurisdiction to causes of action that, as here, arose in Texas).

4.03 Moreover, said Defendants have established minimum contacts in Texas by driving, shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Further, all Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas. Therefore, this Court has specific personal jurisdiction over all Defendants. In addition, all Defendants have had continuous and systematic contacts with Texas invoking general personal jurisdiction over them. Accordingly, removal to federal court would be improper and sanctionable because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

4.04 Venue in Tarrant County is proper in this cause under TEX. CIV. PRAC. & REM. CODE §15.002(a)(1) because all or a substantial part of the acts and/or omissions giving rise to this action occurred in Tarrant County.

## V. FACTS

5.01 On or about February 11, 2021, Plaintiff was traveling southbound on the expressway of Interstate-35 in Fort Worth, Tarrant County, Texas. A multi-vehicle collision occurred in front of Plaintiff when Defendant Howard, Defendant Ruvalcaba, Defendant Jones, Defendant Saint Lot, and Defendant Clement, driving for Defendant Mercer, Defendant Coca Cola, Defendant JB Hunt and Defendant FedEx and Defendant Ryder respectively, in front of Plaintiff failed to drive with extreme caution under the circumstances and negligently lost control, crashed and blocked all lanes of southbound traffic. Plaintiff's vehicle came to a stop to avoid the collision and was struck by other passenger vehicles that were unable to avoid the pile up caused by the Defendant Truck Drivers and Defendant Trucking Companies.

5. 02 The term "**Truck Company Defendants**" collectively refers to Defendants J.B. Hunt, FedEx, Coca Cola, Mercer Transportation, and Ryder. The term "Truck Driver Defendants" collectively refers to Defendants Rhonda Jones, Jean Marie Saint Lot, Carlos Ruvalcaba, John Michael Howard, and Frantz Clement. At all relevant times, the Truck Company Defendants were collectively operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle involved in this collision and were required to observe all commercial motor carrier safety rules and regulations.

5.03 The term "**Roadway Operations and Maintenance Defendants**" (or sometimes "Roadway Defendants") collectively refers to Defendants NTE Mobility Partners LLC, NTE Mobility Partners Segment 3 LLC, NTE Mobility Partners Segments 3 Holding, LLC, NTE

Mobility Partners Holding, LLC., Cintra US Services, LLC., Cintra Holding US Corp. d/b/a Cintra Us Corp., Cintra NTE, LLC., Cintra Texas Corp., Cintra NTE Mobility Partners Segments 3, LLC., Cintra Toll Services, LLC., North Tarrant Infrastructure, LLC., Webber, LLC., Ferrovial Construction US Corp., and Ferrovial Holding US Corp. At all relevant times the Roadway Operations and Maintenance Defendants, upon information and belief, were responsible for operating and maintaining the express lanes where this collision occurred.

5.04 The term "**De-Icing Manufacturer Defendants**" collectively refers to Redmond Minerals, Inc., Redmond, Incorporated, EnviroTech Services, Inc., and Southwest Envirotx Partners, LLC. At all relevant times the De-Icing Manufacturer Defendants, upon information and belief, were responsible for the design, manufacture, marketing, sale and/or distribution of the de-icing products used by the Roadway Defendants to treat the express lanes where this collision occurred.

5.05 Defendant Truck Drivers failed to control their speed, failed to take into account the icy road conditions, failed to use extreme caution and failed to observe the hazardous road conditions among other negligent acts. For all times relevant Defendant Jones, Defendant Saint Lot, Defendant Ruvalcaba, Defendant Howard, and Defendant Clement were employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners with of their respective Truck Company Defendant and were acting in the course and scope of their employment, agency, joint venture, joint enterprise and/or partnership for his respective Truck Company Defendant, for which the Truck Company Defendant is responsible under the doctrines of *respondeat superior*, vicarious liability, agency, joint enterprise and/ or the statutory employee relationship.

5.06 The Roadway Operations and Maintenance Defendants were contractually responsible for operating, maintaining, and treating the express lanes where this collision occurred. As such, the Roadway Operations and Maintenance Defendants were responsible for preventing ice formation on the roadway through proper preventive treatments of the express lanes, and the Roadway Operations and Maintenance Defendants were likewise responsible for de-icing and removing any ice that formed on the express lanes. The Roadway Maintenance Defendants knew and were on notice that a prior collision had occurred just to the north in this same general vicinity approximately 3 hours prior to the collision at issue. Yet, the Roadway Maintenance Defendants failed to prevent further ice development on the express lanes, failed to de-ice or remove ice from the express lanes, and/or failed to simply close the express lanes to all traffic or at least to 18 wheelers. The Roadway Maintenance Defendants failed to comply with their respective duties and obligations for maintaining the express lanes, including their contractual duties.

5.07 The De-Icing Manufacturer Defendants were responsible for the design, manufacture, marketing, sale, and/or distribution of the de-icing products used to treat the express lanes where the collision occurred. The de-icing products applied and the procedures performed on the express lanes where the collision occurred was/were ineffective and/or failed.

5.08 As a proximate cause of the Defendants' negligence resulting in the collision, Plaintiff sustained serious and permanent injuries and continues to suffer serious and permanent injuries and damages from the crash all for which Plaintiff hereby sues.

## VI. GENERAL ALLEGATIONS

6.01 Plaintiff filed this lawsuit as a result of a motor vehicle collision that occurred on February 11, 2021, in the Southbound expressway of Interstate-35W in Fort Worth, Tarrant County, Texas, which collision was proximately caused by the negligence of Defendants.

6.02 The terms "Truck Company Defendants" and "Truck Driver Defendants" refer to the following defendants:

| **Truck Company Defendants** | **Truck Driver Defendants** | **Unit Number from Texas Peace Officer's Crash Report** |
|---|---|---|
| JB Hunt | Jones | 113-114 |
| FedEx / Ryder | Saint Lot | 123-124 |
| FedEx / Ryder | Clement | 123-124 |
| Coca Cola | Ruvalcaba | 99-100 |
| Mercer | Howard | 105-106 |

## VII. CAUSES OF ACTION AGAINST TRUCK DRIVER DEFENDANTS:

### A. NEGLIGENCE

7.01 Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

7.02 On the date of the incident in question, Truck Driver Defendants had a duty to exercise the degree of care that an ordinary person would have in operating a motor vehicle under the same or similar circumstances.

7.03 Truck Driver Defendants breached that duty of care by one or more of the following acts and/or omissions:

a) Failure to keep such proper lookout and attention to the roadway as a person or ordinary prudence would have kept under the same or similar circumstances;

b) Failure to use extreme caution in driving given the existing ice and freezing rain conditions;

c) Failure to monitor road and weather conditions;

d) Failure to pay attention to the weather conditions;

e) Failure to control speed and/or driving at an unsafe speed;

f) Failure to operate their 18-wheeler at a reasonable speed given the ice and freezing rain and freezing mist conditions;

g) Failure to timely apply the brakes of his 18-wheeler in order to avoid the collision in question;

h) Failure to take proper and timely evasive action;

i) Failure to maintain proper control of the commercial motor vehicle as a commercial driver using ordinary care would have done in similar circumstances;

j) Other negligent acts and omissions to be identified as discovery is conducted.

7.04 As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

**B. NEGLIGENCE PER SE**

7.05 Defendants were negligent *per se* in one or more of the following particulars:

a) Driving in hazardous conditions in violation of 49 CFR § 392.14 and Section 2.13 of the Texas Commercial Motor Vehicle Driver's Handbook;

b) Failing to use extreme caution given the existing ice and freezing mist and rain conditions in violation of 49 CFR § 392.14;

c) Failing to operate at a reasonable rate of speed given the existing ice and freezing mist and rain conditions in violation of Section 545.351 of the Texas Transportation Code and Section 2.6 of the Texas Commercial Motor;

d) Failing to control the speed of the truck and/or driving at an unsafe speed, in violation of §545.352 of the TEXAS TRANSPORTATION CODE;

e) Failing to safely observe hazards in the roadway in violation of Section 2.8 of the Texas Commercial Motor Vehicle Driver's Handbook; and

f) Engaging in reckless driving in violation of TEXAS TRANSPORTATION CODE §545.401(a).

7.06 As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

## C. GROSS NEGLIGENCE

7.07 Collectively, Truck Driver Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the Truck Driver Defendants

had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. This amounts to gross negligence; such gross negligence was a proximate cause of the collision, the injuries, harms, losses, and damages of Plaintiff, and the resulting injuries and damages suffered by Plaintiff; and as such the jury should consider assessing punitive or exemplary damages.

## VIII. CAUSES OF ACTION AGAINST TRUCK COMPANY DEFENDANTS

### A. NEGLIGENCE

8.01 Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

8.02 On the date of the incident in question, Truck Company Defendants were the employers of negligent and reckless Truck Driver Defendants and at all times material hereto, the Truck Driver Defendants were in the course and scope of their employment with the named Truck Company Defendants. Pursuant to respondeat superior, the negligence of Truck Company Defendants was a direct and proximate cause of Plaintiff's injuries.

8.03 Upon information and belief, Truck Company Defendants breached their duty of care by one or more of the following acts and/or omissions:

a) In failing to properly train, supervise and/or instruct employees in the proper manner to operate a commercial vehicle;

b) In failing to provide reasonable rules and regulations for safe conduct while driving at work;

c) In failing to obey traffic laws and regulations concerning the operation of commercial vehicles;

d) In failing to promulgate and/or execute a periodic inspection program to ensure that there were proper and safe driving habits being exercised;

e) In failing to perform regular maintenance on their equipment;

f) In failing to maintain their equipment in good working order;

g) In failing to ensure the drivers of their commercial vehicles were qualified, trained, experienced or certified to drive the vehicle;

h) In negligently entrusting end users of commercial vehicle to operators they knew or should have known were not qualified, trained, licensed or otherwise competent to operate said vehicle;

i) In failing to exercise ordinary care;

j) Negligent hiring, retention and supervision;

k) Negligent and dangerous towing procedures;

l) Failure to properly and adequately train their employees;

m) Failure to retain properly and adequately train employees;

n) Failure to ensure that their employees, agents, and/or Representatives, possessed the requisite and appropriate certifications, qualifications, and training;

o) Failure to properly and adequately supervise its employees, agents, and/or representatives;

p) Failure to implement proper and appropriate safety policies and procedures;

q) Defendant failed to establish reasonable safety rules and regulations;

r) In putting commercial vehicles on the roads when it was hazardous and unsafe to do so due to ice accumulation;

s) Defendants failed to instruct the employees of the safety rules and regulations; and

t) Such other and further acts and/or omissions as shown in trial.

8.04 As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

**B. VICARIOUS LIABILITY – RESPONDEAT SUPERIOR, STATUTORY EMPLOYEE, BORROWED SERVANT, AGENCY, JOINT VENTURE, PARTNERSHIP**

8.05 Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

8.06 Based on information and belief, on the occasion in question and at all relevant and material times pertinent to this suit, Truck Driver Defendants were driving the commercial motor vehicle on behalf of Truck Company Defendants; in doing so acting as an employee, statutory employee, borrowed servant, agent, joint venturers, joint enterprisers and/or partners with Truck Company Defendants and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Truck Company Defendants' business goals and objectives.

8.07 At the time of the collision and at all relevant and material times, Truck Driver Defendants were driving the commercial motor vehicle in question in their capacity as employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners and they exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery, and manner of operations associated with the Truck Company Defendants. Additionally, Truck Company Defendants monitored and/or had the

ability to monitor the routes, timing, dispatching, location, delivery, and manner of operations associated with the commercial truck and the drivers.

8.08 Additionally and/or alternatively, upon information and belief, Truck Company Defendants exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery and manner of operations associated with the commercial vehicles and drivers subjecting the commercial vehicle Defendants to vicarious liability for this collision and/or making the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Truck Company Defendants and/or making the Truck Drivers the agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Truck Company Defendants.

8.09 Truck Driver Defendants acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

8.10 Truck Company Defendants are therefore responsible under the doctrines of *respondeat superior*, vicarious liability, agency, joint enterprise, and the statutory employee relationship between the respective Truck Driver Defendants and Truck Company Defendants.

**C. NEGLIGENT ENTRUSTMENT**

8.11 The Truck Company Defendants are responsible for this collision under negligent entrustment, because (a) the Truck Company Defendants supervised and controlled the commercial tractor and trailer driven by Truck Driver Defendants at the time of the collision, (b) Truck Driver Defendants were incompetent and/or unsafe drivers, (c) the Truck Company Defendants either knew or should have known Truck Driver Defendants were incompetent and/or unsafe drivers, and (d) the negligence of Truck Driver Defendants on the occasion in question proximately caused the collision. The negligence of the Truck Company Defendants in negligently

entrusting Truck Driver Defendants to drive proximately caused the collision giving rise to this case and the injuries and damages suffered by Plaintiff.

**D. NEGLIGENT HIRING, TRAINING, RETENTION, SUPERVISION, AND FAILURE TO CONTROL**

8.12 Truck Company Defendants owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions and injuries to other motorists, including Plaintiff, but failed to do so. Truck Company Defendants negligent acts and/or omissions in this regard include, but are not limited to the following:

a) Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b) Failing to prohibit unsafe driving practices, including in hazardous conditions;

c) Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d) Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e) Failing to monitor drivers;

f) Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g) Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

h) Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i) Aiding, abetting, and encouraging drivers to violate the rules of the road.

8.13 These acts and omissions described above, singularly or in combination, amount to negligence and/or negligence *per se*, and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

**E. GROSS NEGLIGENCE**

8.14 Collectively, Truck Company Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the Truck Company Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. This amounts to gross negligence; such gross negligence was a proximate cause of the collision, the injuries, harms, losses, and damages of Plaintiff, and the resulting injuries and damages suffered by Plaintiff; and as such the jury should consider assessing punitive or exemplary damages.

## IX. CAUSES OF ACTION AGAINST ROADWAY OPERATIONS AND MAINTENANCE DEFENDANTS

**A. NEGLIGENCE**

9.01 Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

9.02 On the date of the incident in question, and at all relevant and material times, the Roadway Operations and Maintenance Defendants owed a duty to traveling motorists travelling

on the express lanes, including Plaintiff, were contractually responsible for maintaining and operating the lanes where this collision occurred, and failed to comply with its duties and obligations for maintaining the express lanes, including its contractual duties.

9.03 Defendant breached that duty of care by one or more of the following acts and/or omissions, included but not limited to:

a) Failing to properly operate and/or maintain the I-35 roadway where this incident occurred;

b) Failing to properly maintain the roadway in order to discover any defects as they existed at the time of this incident;

c) Failing to discover any hazards or defects which existed at this time of this incident;

d) Failing to inspect, or adequately and/or properly inspect, the roadway;

e) Failing to monitor, and/or timely monitor, the weather conditions that existed at the time of this incident;

f) Failing to adequately repair any defect which existed at the time of this incident;

g) Failing to post adequate warning signs on the roadway to warn of any hazards or defects of which this defendant had, or should have had, knowledge;

h) Failing to provide barriers that would have prevented this type of incident;

i) Failing to provide safeguards that would have prevented this type of incident;

j) Failing to adequately, properly, and timely treat and/or de-ice the I-35 tollway prior to the time of the incident made the basis of this suit;

k) Failing to adequately and properly train personnel on the proper and timely treatments required to prevent the formation of ice on the express lanes;

l) Failing to adequately and properly train personnel on the proper and timely de-icing and removal of ice required to prevent collisions on the express lanes;

m) Failing to implement proper policies and procedures for the prevention of ice formation, pretreatment, detection, de-icing and the removal of ice from the express lanes;

n) Failing to close the I-35 tollway because of the presence of ice on the tollway;

o) Failing to act as a reasonable and prudent roadway operations and maintenance company;

p) Failing to adequately, properly, and timely warn motorists of the icy road conditions on the express lanes;

q) Failing to close the express lanes to all traffic;

r) Failing to act as a reasonable and prudent roadway operations and maintenance company; and

s) Committing various acts and/or omissions of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

9.04 Each of the foregoing acts or omissions, singularly or in combination with others, constitute negligence, which proximately caused the incident made the basis of this lawsuit and Plaintiff's injuries and damages.

**B. PREMISES LIABILITY**

9.05 Additionally, or in the alternative, Plaintiffs allege that the Roadway Operations and Maintenance Defendants are liable under premises liability. At all times material, the Roadway Operations and Maintenance Defendants owned and/or controlled the I-35 express lanes and premises where this collision occurred and where Plaintiff was injured. The condition of the express lanes at the time of the collision and Plaintiff's injuries posed an unreasonable risk of harm and the Roadway Operations and Maintenance Defendants had actual knowledge, or reasonably should have known of the unreasonably dangerous condition, which included the icy road conditions, and the Roadway Operations and Maintenance Defendants' failure to adequately prepare and plan for this known icy emergency. Moreover, Plaintiff did not have actual knowledge of the unreasonably dangerous condition. Plaintiff was a business invitee who entered the Roadway Operations and Maintenance Defendants' premises with their knowledge and for their benefit. The Roadway Operations and Maintenance Defendants had a duty to keep the premises safe and they breached this duty by failing to adequately warn Plaintiff, and other motorists, of the known unreasonably dangerous condition on the roadway and by failing to make this known unreasonably dangerous condition reasonably safe.

## C. GROSS NEGLIGENCE

9.06 Collectively, Roadway Operations and Maintenance Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the Roadway Operations and Maintenance Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. This amounts to gross negligence; such gross negligence was a proximate cause of the collision, the injuries, harms, losses, and damages of Plaintiff, and the resulting injuries and damages suffered by Plaintiff; and as such the jury should consider assessing punitive or exemplary damages.

## X. CAUSES OF ACTION AGAINST DE-ICING MANUFACTURER DEFENDANTS

## A. NEGLIGENCE

10.01 Based upon the allegations and designations of potential responsible third parties made by certain defendants in this litigation, Plaintiff hereby assert that the de-icing procedure(s) performed on the express lanes where this incident occurred was/were ineffective and/or failed. Plaintiff contends that this failure was caused in whole or in part by one or more of the following:

a) The "de-icing material" was ineffective, inadequate and/or defective;

b) The "de-icing material" was negligently designed, manufactured and/or marketed;

c) The "de-icing material" was not the appropriate "de-icing material" for the specific conditions that existed on the express lanes at the time of the collision;

d) The "de-icing material" lacked adequate instructions for the proper application of the deicing material; and

e) The manufacturer of the "de-icing material" failed to provide warnings, instructions, and/or training and/or failed to provide adequate and/or sufficient warnings, instructions and/or training regarding the proper application of the "de-icing material."

10.02 Upon information and belief, at all relevant times the De-Icing Manufacturer Defendants named herein were responsible for the design, manufacture, marketing, sale, and/or distribution of the "de-icing material" used by the Roadway Defendants to treat the express lanes where this collision occurred. And, said acts and omissions described above, singularly or in any combination, amount to negligence and/or gross negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit and of the Plaintiff's injuries and damages.

## XI. DAMAGES

11.01 Plaintiffs incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

11.02 As a direct and proximate result of acts and/or omissions of Defendants, Plaintiff would show actual damages within the jurisdictional limits of this Court, including:

a) Reasonable medical care and expenses which have been sustained from the time of the occurrence until the time of the verdict herein;

b) Reasonable medical care and expenses which will likely be sustained in the future after the verdict herein;

c) Physical pain which has been sustained from the time of the occurrence until the time of the verdict herein;

d) Physical pain which will be suffered after the date of the verdict herein;

e) Mental anguish which has been sustained from the time of the occurrence until the time of the verdict herein;

f) Mental anguish which will be suffered after the date of the verdict herein;

g) Physical and mental impairment which has been sustained from the time of the occurrence until the time of the verdict herein;

h) Physical and mental impairment which will be sustained in the future after the verdict herein;

i) Lost earnings and/or loss of earning capacity which have been sustained from the time of the occurrence until the time of the verdict herein; and

j) Such other and further relief as the Court may deem just and proper.

## XII. ADDITIONAL MATTERS

12.01 Pursuant to TEX. R. CIV. P. 193.7, Plaintiff hereby provides notice to Defendants that Plaintiff intends to use all documents produced in response to written discovery by any party as evidence at any pre-trial proceeding or at trial.

## XIII. JURY DEMAND

13.01 Plaintiff requests the causes of actions alleged herein be tried before a jury consisting of citizens residing in Tarrant County, Texas.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and that upon final hearing hereof Plaintiff have and recover of and from Defendants damages as alleged, with prejudgment and post-judgment interest, costs of Court, and such other and further relief, general and special, at law or in equity, as Plaintiff may be entitled to receive.

Respectfully submitted,

*_/s/ Edward S. Gaytan*
Charles M. Noteboom
State Bar No. 15116875
Edward S. Gaytan
State Bar No. 24087572
gaytan@noteboom.com

**NOTEBOOM - THE LAW FIRM**
669 Airport Freeway
Hurst, Texas 76053
817.282.9700 Phone
817.282.8073 Fax

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing was served on all attorneys of record on this the 10th day of February, 2023, via E-Filing.

*/s/ Edward S. Gaytan*
Edward S. Gaytan

# EXHIBIT B-9

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
03/02/2023
CT Log Number 543331855

## Service of Process Transmittal Summary

**TO:** Bryan W. Tate, General Counsel
Webber, LLC
1725 HUGHES LANDING BLVD STE 1200
THE WOODLANDS, TX 77380-3875

**RE:** **Process Served in Texas**

**FOR:** Webber, LLC (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** IN RE: FEBRUARY 11,2021 INCIDENT ON 111-35W vs. Webber, LLC

**CASE #:** 15300000022

**PROCESS SERVED ON:** C T Corporation System, Dallas, TX

**DATE/METHOD OF SERVICE:** By Process Server on 03/02/2023 at 13:45

**JURISDICTION SERVED:** Texas

**ACTION ITEMS:** CT will retain the current log

Image SOP

Email Notification, Bryan W. Tate btate@wwebber.com

Email Notification, Mark Williams mark.williams@ferrovialservices.com

**REGISTERED AGENT CONTACT:** C T Corporation System
1999 Bryan Street
Suite 900
Dallas, TX 75201
866-665-5799
SouthTeam2@wolterskluwer.com

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED | DATE/METHOD OF SERVICE | TO | LOG NUMBER |
|---|---|---|---|
| -- | By Process Server on 02/17/2023 at 15:20 | Bryan W. Tate, General Counsel Webber, LLC | 543250731 |
| -- | By Process Server on 02/16/2023 at 11:00 | Bryan W. Tate, General Counsel Webber, LLC | 543236791 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Thu, Mar 2, 2023
**Server Name:** Alan Davis

| | |
|---|---|
| Entity Served | WEBBER, LLC |
| Case Number | 153-000000-22 - CC-21-03642-A |
| Jurisdiction | TX |

| Inserts | | |
|---|---|---|
| | | |

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 153-000000-22*

IN RE: FEBRUARY 11, 2021 INCIDENT ON IH35W
VS.

TO: WEBBER LLC

B/S REG AGT-CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS TX 75201

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S FIRST AMENDED PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 153rd District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

DAVID GARCIA

Filed in said Court on February 9th, 2023 Against
HECTOR F GARCIA RODRIGUEZ, NTE MOBILITY PARTNERS SEGMENTS 3 LLC, NTE MOBILITY PARTNERS LLC, NORTH TARRANT INFRASTRUCTURE LLC, CINTRA HOLDING US CORP, D/B/A CINTRA US CORP, CINTRA US SERVICES LLC, FERROVIAL CONSTRUCTION US CORP, For suit, said suit being numbered 153-000000-22 the nature of which demand is as shown on said PLAINTIFF'S FIRST AMENDED PETITION a copy of which accompanies this citation.

RYAN H ANDERSON
Attorney for DAVID GARCIA Phone No. (214)755-7777
Address 3300 OAK LAWN AVE 3RD FLR DALLAS, TX 75219

Thomas A. Wilder , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 24th day of February, 2023.

By [signature] AMANDA PFISTERER

A CERTIFIED COPY
ATTEST: 02/24/2023
THOMAS A. WILDER
DISTRICTCLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Pfisterer

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *15300000022002049*

Received this Citation on the _______ day of ____________, _____ at _______ o'clock ___M; and executed at ______________________ within the county of ________________, State of ________ at _______ o'clock ___M on the _______ day of _________________, _____ by delivering to the within named (Def.): ____________ defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S FIRST AMENDED PETITION , having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff: ______________
County of ______________ State of_________ By ____________________ Deputy
Fees $_________
State of ______________ County of ______________ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said ______________________ before me this ____ day of ________, ____
to certify which witness my hand and seal of office
(Seal)
County of _________________, State of _______________

A CERTIFIED COPY
ATTEST: 02/24/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Pfisterer

*CITATION*

Cause No. 153-000000-22

IN RE: FEBRUARY 11, 2021
INCIDENT ON IH35W

VS.

ISSUED

This 24th day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By AMANDA PFISTERER Deputy

RYAN H ANDERSON
Attorney for: DAVID GARCIA
Phone No. (214)755-7777
ADDRESS: 3300 OAK LAWN AVE 3RD FLR

DALLAS, TX 75219

*CIVIL LAW*

*15300000022002049*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
**ORIGINAL**

153-000000-22

FILED
TARRANT COUNTY
2/9/2023 3:30 PM
THOMAS A. WILDER
DISTRICT CLERK

**MASTER CAUSE NO. 153-000000-22**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH 35W** | § | **IN THE DISTRICT COURT** |
| | § | **153RD JUDICIAL** |
| | § | **DISTRICT** |
| | § | **TARRANT COUNTY, TEXAS** |

**"NOT APPLICABLE TO ALL ACTIONS"**

**CAUSE NO. CC-21-03642-A**

| | | |
|---|---|---|
| **DAVID GARCIA** | § | **IN THE COUNTY COURT** |
| **Plaintiff,** | § | |
| **v.** | § | **AT LAW NO. 1** |
| **HECTOR GARCIA RODRIGUEZ, RICH TRANSPORT LLC, NTE MOBILITY PARTNERS SEGMENTS 3, LLC, NTE MOBILITY PARTNERS, LLC, NORTH TARRANT INFRASTRUCTURE, LLC, CINTRA HOLDING US CORP. d/b/a CINTRA US CORP., CINTRA US SERVICES, LLC., FERROVIAL AGROMAN US CORP a/k/a FERROVIAL CONSTRUCTION US CORP, AND WEBBER LLC, ERNST VAL, J.B. HUNT TRANSPORTATION, INC., GG PRODUCE TRANSPORT, LLC, JOSE BRENT DURAN, CHARLES BOWMAN, SUN VALLEY, INC., GO TO LOGISTICS, INC., CODY SLOAN WILLIAMS, NEW PRIME, INC., STEVEN RIDDER, OLUWAKEMI B. OLOFINKUA, VICTOR ROGELIO ZUIGA-GUEVARA, RHONDA JONES,** | § | |
| **Defendants.** | § | **DALLAS COUNTY, TEXAS** |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, David Garcia ("Plaintiff") and files this his Plaintiff's First Amended Original Petition complaining of **HECTOR GARCIA RODRIGUEZ, RICH TRANSPORT LLC, NTE MOBILITY PARTNERS SEGMENTS 3, LLC, NTE MOBILITY PARTNERS, LLC, NORTH TARRANT INFRASTRUCTURE, LLC, CINTRA HOLDING US CORP. d/b/a CINTRA US CORP., CINTRA US SERVICES, LLC., FERROVIAL AGROMAN US CORP a/k/a FERROVIAL CONSTRUCTION US CORP, WEBBER LLC, ERNST VAL, J.B. HUNT TRANSPORTATION, INC., GG PRODUCE TRANSPORT, LLC, JOSE BRENT DURAN, CHARLES BOWMAN, SUN VALLEY, INC., GO TO LOGISTICS, INC., CODY SLOAN WILLIAMS, NEW PRIME, INC., STEVEN RIDDER, OLUWAKEMI B. OLOFINKUA, VICTOR ROGELIO ZUIGA-GUEVARA, RHONDA JONES** ("Defendants") and for cause of action would respectfully shows as follows:

### I.
### DISCOVERY CONTROL PLAN

1. Plaintiff intends for discovery to be conducted under Level 3 of Rule 190.2 of the TEXAS RULES OF CIVIL PROCEDURE.

### II.
### PARTIES AND SERVICE OF PROCESS

2. Plaintiff David Garcia is an individual residing in Tarrant County, Texas.

3. Defendant Hector F. Garcia Rodriguez is an individual who was operating a vehicle involved in the crash made the basis of this suit. This Defendant operated Units 49-50 as identified

in the Texas Peace Officer's Crash Report is a resident of Mexico. Upon information and belief, this Defendant is believed to be staying and/or residing at 131 Hacienda Raldena Garcia, Neuvo Leon, Mexico 66000. Hence pursuant to Tex. Civ. Prac. & Rem. Code Section 17.061, et Seq., service of process on Defendant may be achieved by serving a certified copy of process on his agent for service od process, the Chairman of the Texas Transportation Commission, 125 E. 11st Street, Austin, Texas 78701, who, after being served, shall mail a copy of the process, and notice that the process has been served on the Chairman, to Defendant at his residence.

4. Defendant **Rich Transport, LLC** is a foreign limited liability company, operating in the State of Texas. It has a principal place of business in Texas at 4444 Irving Blvd., Dallas, Texas, 75247. *Service of process has been completed.*

5. Defendant **NTE Mobility Partners Segments 3, LLC,** is a foreign limited liability company with its principal place of business located in Tarrant County, Texas. *Service of process has been completed.*

6. Defendant **NTE Mobility Partners, LLC,** is a foreign limited liability company with its principal place of business located in Tarrant County, Texas. *Service of process has been completed.*

7. Defendant **North Tarrant Infrastructure, LLC** is a domestic limited liability company with its principal place of business located in Tarrant County, Texas. *Service of process has been completed.*

8. Defendant **Cintra Holding US Corp. d/b/a Cintra US Corp.** is a Delaware corporation with its principal place of business located in Travis County, Texas. *Service of process has been completed.*

9. Defendant **Cintra US Services, LLC** is a domestic limited liability company with

its principal place of business located in Travis County, Texas. *Service of process has been completed.*

10. Defendant **Ferrovial Agroman US Corp a/k/a Ferrovial Construction US Corp** is a Delaware corporation with its principal place of business located in Travis County, Texas. *Service of process has been completed.*

11. Defendant **Webber, LLC** is a domestic limited liability company with its principal office and place of business located in Montgomery County, Texas. *Service of process has been completed.*

12. **Ernst Val,** is a resident of Tarrant County, Texas. *Service of process has been completed.*

13. **J.B. Hunt Transportation, Inc.,** is a foreign corporation with its principal place of business located in Lowell, Arkansas. *Service of process has been completed.*

14. **GG Produce Transport, LLC,** is a Texas limited liability company with its principal place of business located in Hidalgo County, Texas. *Service of process has been completed.*

15. **Jose Brent Duran,** is a resident of Hidalgo County, Texas. *Service of process has been completed.*

16. **Charles Bowman,** is a resident of Reno County, Kansas. *Service of process has been completed.*

17. **Sun Valley, Inc.,** is a foreign corporation with its principal place of business in Reno County, Kansas. *Service of process has been completed.*

18. **GO TO Logistics, Inc.,** is a foreign corporation with its principal place of business in Cook County, Illinois. *Service of process has been completed.*

19. **Cody Sloan Williams,** is a resident of Tarrant County, Texas. *Service of process has been completed.*

20. **New Prime, Inc.,** is a foreign corporation with its principal place of business in Main Green County, Missouri. *Service of process has been completed.*

21. **Steven Ridder,** is a resident of Pottawatomie County, Kansas. *Service of process has been completed.*

22. **Oluwakemi B. Olofinkua,** is an individual residing in Tarrant County, Texas. Defendant may be served with process at his residence 605 Luna Springs Drive, Mansfield, Texas 76063. **ISSUANCE OF CITATION IS REQUESTED**.

23. **Victor Rogelio Zuiga-Guevara,** is a resident of Tarrant County, Texas. *Service of process has been completed.*

24. **Rhonda Jones,** is a resident of Hood County, Texas. *Service of process has been completed.*

25. In the event any party is misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice. In the event that the true parties are misidentified, Plaintiff asserts reliance upon the doctrine of misidentification.

## III.
## VENUE

26. The subject matter and the amount in controversy are within the jurisdictional limits of this Court. The Texas Rules of Civil Procedure require Plaintiff to plead that his case falls under a particular category. In order to comply with this procedural requirement, Plaintiff pleads pursuant to Tex. R. Civ. P. 47, that Plaintiff seeks monetary relief monetary relief over $250,000 but not more than $1,000,000. Plaintiff further seeks all other relief to which Plaintiff may be shown to be justly entitled.

27. The remaining Trucking Defendants who are non-citizens of Texas all have consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers and designating an agent for service of process in Texas. Designation of such an agent operates as an express consent to personal jurisdiction. *Knowlton v. Allied Van Lines*, 8th Cir., 900 F.2d 1196, 1200 (1989)("This designation of an agent, in accordance with federal law, also operates as consent to the personal jurisdiction of the [forum] courts."); *see also Paz v. Castellini Co., LLC*, No. B-07-036, 2007 U.S. Dist. LEXIS 83028, at *19 (S.D. Tex. 2007)(Approving of Knowlton but limiting its designation jurisdiction to causes of action that, as here, arose in Texas). Moreover, said Defendants have established minimum contacts in Texas by driving, shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Further, all Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas. Therefore, this Court has specific personal jurisdiction over all Defendants. In addition, all Defendants have had continuous and systematic contacts with Texas invoking general personal jurisdiction over them. Accordingly, removal to federal court would be improper and sanctionable because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

28. Venue is proper in Dallas County pursuant to the TEXAS CIVIL PRACTICE & REMEDIES CODE §15.002(a)(3) because it is the location of a principal office of Defendant Rich Transport's in this state.

## IV.
## FACTS

29. The term **"Road Maintenance Defendants"** refers to the following Defendants who singularly or, upon information and belief, through a consortium of companies, had the responsibility to maintain the TEXPress lanes on I35 where the collision occurred: NTE Mobility Partners Segments 3, LLC, NTE Mobility Partners, LLC, North Tarrant Infrastructure, LLC, Cintra Holding US Corp d/b/a Cintra US Corp, Cintra US Services, LLC, Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp., and Webber LLC.

30. The term **"Trucking Company Defendants"** refers to Rich Transport LLC, J.B. Hunt Transportation, Inc., GG Produce Transport, LLC, Sun Valley, Inc., Go To Logistics, Inc., and New Prime, Inc.,

31. The term **"Truck Driver Defendants"** refers to Hector Garcia Rodriguez, Ernst Val, Jose Brent Duran, Charles Bowman, And Cody Sloan Williams.

32. The respective Unit numbers of the parties as reflected in the Texas Peace Officer's Crash Report are as follows:

| | |
|---|---|
| JB Hunt and Val Ernst | Units 39 and 40 |
| GG Produce and Jose Brent Duran | Units 41 |
| Rich Transport and Hector Fernando Garcia Rodriguez | Units 49 and 50 |
| Sun Valley and Charles Bowman | Units 51 and 52 |
| Go To Logistics and Cody Sloan Williams | Units 57 and 58 |
| New Prime, Inc. and Steven Ridder | Units 67 and 68 |

| | |
|---|---|
| Oluwakemi B. Olofinkua | Unit 86 |
| Rich Transport and Victor Rogelio Zuiga-Guevara | Units 91 and 92 |
| JB Hunt and Rhonda Jones | Units 113 and 114 |

33. "NTE" collectively refers to Defendants NTE Mobility Partners LLC and NTE Mobility Partners Segment 3 LLC. At all relevant times, NTE was responsible for maintaining the express lanes where this collision occurred.

34. On or about February 11, 2021, Plaintiff was traveling southbound on the expressway of Interstate-35 in Fort Worth, Tarrant County, Texas. A multi-vehicle collision occurred in front of Plaintiff when Defendant Val and Defendant Duran, driving for Defendant J.B. Hunt and Defendant GG's Produce respectively, in front of him failed to drive with extreme caution under the circumstances and negligently lost control, crashed and blocked all lanes of southbound traffic. Other Trucking Defendants with lower unit numbers also traveling southbound on the expressway of Interstate 35, at an excessive speed for the road conditions violently collided with these vehicles contributing to the blockage of the Interstate and causing other vehicles, including Plaintiffs, to come to a stop behind them. Plaintiff brought his vehicle to a stop but was struck from behind by other Trucking Defendants with higher unit numbers and their Drivers including Rich Transport and Zuiga-Guevara, as well individual Defendant Olofinuka. Defendant Trucking Companies and their respective Truck Driver defendants as previously identified, simultaneously traveling southbound on the expressway of Interstate-35, at an excessive speed for the road conditions and failing to use extreme caution, violently collided with Plaintiff's vehicle and/or other vehicles that were pushed into Plaintiff's vehicle.

35. Defendant Olofinuka and Trucking Defendants and Defendant Truck Drivers

failed to control their speed, failed to take into account the icy road conditions, failed to use extreme caution and failed to observe the hazardous road conditions among other negligent acts. For all times relevant Defendant Truck Drivers were employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners with of their respective Truck Company Defendant and were acting in the course and scope of their employment, agency, joint venture, joint enterprise and/or partnership for his respective Truck Company Defendant, for which the Truck Company Defendant is responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and/ or the statutory employee relationship.

36. The Road Maintenance Defendants listed previously herein were contractually obligated to maintain the TEXpress lane(s) where this collision occurred. These entities were individually or collectively responsible for all activities related to the safe travels of vehicles in the lane. Those activities included those which would prevent ice formation on the roadway, de-icing, anti-icing, and physical and mechanical removal of any ice that had accumulated on the roadway. Moreover, Road Maintenance Defendants were on notice of a prior collision occurring approximately 3 hours prior and failed to close the TEXPress lane, remove any ice accumulation, or de-ice it.

37. As a proximate cause of the Defendants' negligence resulting in the collision, Plaintiff sustained serious and permanent injuries and continues to suffer serious and permanent injuries and damages from the crash all for which he sues.

V.

# CAUSES OF ACTION

## CAUSES OF ACTION AGAINST TRUCKING COMPANY DEFENDANTS

**A.** ***Vicarious Liability – Respondeat Superior, Statutory Employee, Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership***

38. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

39. Based on information and belief, on the occasion in question and at all times pertinent to this suit, Truck Driver Defendants were employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners with Trucking Company Defendants and was acting within the course and scope of such employment, agency, joint venture, joint enterprise and/or partnership in furtherance of Trucking Company Defendants' business goals and objectives.

40. Truck Driver Defendants acted negligently on the occasion in question, and directly and proximately caused the damages and bodily injuries claimed herein by Plaintiff.

41. Trucking Company Defendants are therefore responsible under the doctrines of respondeat superior, vicarious liability, agency, joint enterprise and the statutory employee relationship between the respective Trucking Company Defendant and Truck Driver Defendants.

**B.** ***Negligent Entrustment***

42. As an additional cause of action, Plaintiff would show that at the time and on the occasion in question, Trucking Company Defendants were the owners of the vehicles driven by Truck Driver Defendants. Trucking Company Defendants entrusted the vehicles to Truck Driver Defendants. The Truck Driver Defendants were incompetent, and/or reckless and the Trucking Company Defendants knew or should have known that the Truck Driver Defendants were

incompetent, and/or reckless. The Truck Driver Defendants' negligence on the occasion in question proximately caused the collision.

## C. *Negligent Hiring, Training, Retention, Supervision and Failure to Control*

43. The Trucking Company Defendants owed a duty to other motorists including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures to train, instruct, monitor, and supervise its drivers and to take actions to control their drivers to prevent collisions and injuries to other motorists, including Plaintiff, but failed to do so. The Trucking Company Defendants' negligent acts and/or omissions in this regard include, but are not limited to the following:

a. Failing to train and instruct drivers in proper techniques, including in hazardous conditions;

b. Failing to prohibit unsafe driving practices, including in hazardous conditions;

c. Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

d. Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

e. Failing to monitor drivers;

f. Negligent and reckless hiring; qualification and retention of unfit, unsafe drivers;

g. Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

h. Negligently creating or allowing a culture of non-compliance by failing to require observance and approving violations of rules and regulations for commercial motor vehicles; and

i. Aiding, abetting, and encouraging drivers to violate the rules of the road.

44. These acts and omissions described above, singularly or in combination, amount

to negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit.

## VI.

## CAUSES OF ACTION AGAINST ROAD MAINTAINENCE DEFENDANTS

**A.** ***Negligence***

45. At the time of the collision made basis of this current suit, the Road Maintenance Defendants had a contractual duty to the motorists traveling in the TEXPress lanes, including Plaintiff, breached said duty and was negligent in the following acts and/or omissions:

a. Failing to de-ice the TEXPress lanes;

b. Failing to properly pre-treat and prepate the TEXPress lanes for inclement weather conditions;

c. Failing to inspect and/or adequately inspect the TEXPress lanes;

d. Failing to spot treat the TEXPress lanes;

e. Failing to monitor the TEXPress lanes given the weather forecast and occurring weather events;

f. Failing to close the TEXPress lanes considering the weather conditions and being put on notice of a prior collision occurring near this collision scene;

g. Failing to adequately warn motorists of the icy conditions on the TEXPress lanes of which Road Maintenance Defendants should have or had actual knowledge;

h. Failing to implement proper procedures for anti-icing, de-icing, and removing accumulated iced on the TEXPress lanes;

i. Failing to discover hazards or defects that existed prior to and at the time of this collision;

j. Failing to act as a reasonably prudent road maintenance company would act under the same or similar circumstances.

46. Each of the above-listed acts and/or omissions singularly, or combined, constituted negligence on the part of the Road Maintenance Defendants, and were a proximate cause of the collision made the basis of this suit and the resulting injuries of Plaintiff.

**B. *Gross Negligence***

47. Plaintiff further alleges that the acts and/or omissions of the Road Maintenance Defendants when viewed objectively from an independent standpoint, involved an extreme degree of risk to Plaintiff. These Defendants were not only aware of the danger and put on notice of the existence of the danger, but they also chose to ignore it and proceeded with conscious indifference to safety, well-being, rights, and safety of Plaintiff and the other motorists traveling on the TEXPress lanes the morning of this collision. These acts and omissions constitute gross negligence and are a proximate cause of the collision and Plaintiff's resulting injuries.

## VII.
## CAUSES OF ACTION

### CAUSES OF ACTION AGAINST TRUCK DRIVER DEFENDANTS

**A. *Vicarious Liability – Respondeat Superior, Statutory Employee, Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership***

48. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

49. At the time the collision made the basis of this lawsuit, and at all relevant and material times, the Truck Driver Defendants owed a duty of care to other motorists, including

Plaintiff, to operate the truck in a reasonable and prudent manner, and said Defendants failed to do so. The Truck Driver Defendants' negligent acts and/or omissions include, but are not limited to, the following:

a) Driving their commercial motor vehicle in hazardous conditions;

b) Failing to use extreme caution in driving their commercial motor vehicle given the existing ice and freezing mist and freezing rain conditions;

c) Driving their commercial motor vehicle in the express lanes given the existing ice and freezing mist and freezing rain conditions;

d) Failing to operate their commercial motor vehicle at a reasonable rate of speed given the existing ice and freezing mist and freezing rain conditions;

e) Failing to control the speed of their commercial motor vehicle and/or driving at an unsafe speed;

f) Failing to safely observe hazards in the roadway;

g) Failing to maintain a proper and safe distance given the weather conditions that day;

h) Failing to pay attention to the road and driving conditions;

i) Failing to pay attention to the weather conditions;

j) Failing to monitor road and weather conditions;

k) Failing to operate their commercial motor vehicle in a reasonably safe manner;

l) Failing to properly heed the warning signs posted on the highway concerning the road and weather conditions;

m) Failing to properly heed to weather warning alerts;

n) Failing to properly and/or timely apply the brakes of their commercial motor vehicle in order to avoid the collision in question;

o) Failing to keep a proper lookout as a commercial motor driver using ordinary care would have done;

p) Failing to maintain proper control of the commercial motor vehicle as a commercial driver using ordinary care would have done under the same or similar circumstances;

q) Failing to take proper and timely evasive action; and

r) Other negligent acts and omissions to be identified as discovery is conducted.

50. The acts and omissions described above, singularly or in any combination, amount to negligence and were a proximate cause of the collision involving Plaintiff that made the basis of this suit and of the Plaintiff's injuries and damages.

## VIII.
## CAUSES OF ACTION AGAINST OLOFINKUA

**A. *Negligence***

51. Plaintiff incorporates herein by reference, as if fully set forth, the allegations set forth in all preceding paragraphs.

52. On the date of the incident in question, Defendant Olofinkua had a duty to exercise the degree of care that an ordinary person would have in operating a motor vehicle under the same or similar circumstances.

53. Defendant Olofinkua breached that duty of care by one or more of the following acts and/or omissions:

a) Failure to keep such proper lookout and attention to the roadway as a person or ordinary prudence would have kept under the same or similar circumstances;

b) Failure to use extreme caution in driving given the existing ice and freezing rain conditions;

c) Failure to monitor road and weather conditions;

d) Failure to pay attention to the weather conditions;

e) Failure to control speed;

f) Failure to keep a safe and proper following distance;

g) Failure to operate his 18-wheeler at a safe speed;

h) Failure to timely apply the brakes of his 18-wheeler in order to avoid the collision in question; and

i) Other acts of negligence.

54. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff sustained bodily injuries and other damages, which are within the jurisdictional limits of this Court.

## IX.
## RESPONDEAT SUPERIOR

55. At the time of the accident, Truck Driver Defendants were respectively the agents, servants, and employees of their Trucking Company Defendants and were acting within the scope of their authority as such agent, servant, and employee. Trucking Company Defendants are liable to Plaintiff for the negligence of their respective Truck Driver Defendants under the common law doctrine of *respondeat superior*. In addition and/or in the alternative to the foregoing, the Truck Driver Defendants were the statutory employees of their respective Trucking Company Defendants.

## X.
## DAMAGES

56. Plaintiff incorporates herein by reference the allegations set forth in all preceding paragraphs.

57. As a direct and proximate result of the above-referenced acts and omissions of Defendants, Plaintiff would show actual damages within the jurisdictional limits of this Court as follows:

a. Reasonable and necessary medical care and expenses which have been sustained from the time of the occurrence until the time of the verdict herein;

b. Reasonable and necessary medical care and expenses which will be sustained in the future;

c. Physical pain and mental anguish which has been sustained from the time of the occurrence until the time of the verdict herein;

d. Physical pain and mental anguish which will be sustained in the future;

e. Physical impairment which has been sustained from the time of the occurrence until the time of the verdict herein;

f. Physical impairment which will be sustained in the future;

g. Lost earnings or loss of earning capacity which have been sustained from the time of the occurrence until the time of the verdict herein; and

h. Loss of earning capacity or lost earnings which will be sustained in the future.

## XI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer, and this case be tried and that Plaintiff have and recover the following from Defendants:

a. Judgment against Defendants for a sum within the jurisdictional limits of this Court for all actual damages as indicated above;

b. Pre-judgment interest at the maximum amount allowed by law;

c. Post-judgment interest at the maximum rate allowed by law;

d. Costs of suit; and

e. Such other and further relief to which Plaintiff may be shown to be justly entitled.

Respectfully submitted,

**THOMPSON LAW LLP**
3300 Oak Lawn Avenue, 3rd Floor
Dallas, Texas 75219
Tel. 214/755-7777
Fax 214/716-0116

**RYAN H. ANDERSON**
State Bar No. 24059380
randerson@triallawyers.com
**RYAN L. THOMPSON**
State Bar No. 24046969
rthompson@triallawyers.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document has been served pursuant to the Texas Rules of Civil Procedure on all counsel of record on Thursday, February 9, 2023.

Ryan H. Anderson

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Associated Case Party: SHAYWELLS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Loren G.Klitsas | | klitsas@kv-law.com | 2/9/2023 3:30:56 PM | SENT |

Associated Case Party: THEFEDEX GROUND PACKAGE SYSTEM INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kimberly Chojnacki | 24068696 | kchojnacki@bakerdonelson.com | 2/9/2023 3:30:56 PM | SENT |
| Bradley E. Chambers | 24001860 | bchambers@bakerdonelson.com | 2/9/2023 3:30:56 PM | SENT |
| Bobbie Stratton | 24051394 | bstratton@bakerdonelson.com | 2/9/2023 3:30:56 PM | SENT |
| Linda Kramb | | lkramb@bakerdonelson.com | 2/9/2023 3:30:56 PM | SENT |
| Belinda A.Ellender | | bellender@bakerdonelson.com | 2/9/2023 3:30:56 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Betsy Yocum | | byocum@belaw.com | 2/9/2023 3:30:56 PM | SENT |
| Carter LFerguson | | cferguson@belaw.com | 2/9/2023 3:30:56 PM | SENT |
| Rachel EMontes | | Rachel@monteslawgroup.com | 2/9/2023 3:30:56 PM | SENT |
| William RJenkins | | wjenkins@jw.com | 2/9/2023 3:30:56 PM | SENT |
| Pat Durrwachter | | pdurrwachter@thompsoncoe.com | 2/9/2023 3:30:56 PM | SENT |
| Matthew RMumm | | mmumm@harrisonhull.com | 2/9/2023 3:30:56 PM | SENT |
| Stormi Valentine | | sdg@mcdonaldlaw.com | 2/9/2023 3:30:56 PM | SENT |
| VLS DFW Support | | VLS_DFWSupport@grsm.com | 2/9/2023 3:30:56 PM | SENT |
| Soña J.Garcia | | sjgarcia@grsm.com | 2/9/2023 3:30:56 PM | SENT |
| Darrell Wayne Calvin | 24012372 | calvin@mdjwlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Robert James Collins | 24031970 | robert.collins@gkbklaw.com | 2/9/2023 3:30:56 PM | SENT |
| Samuel Joseph Polak | 788210 | spolak@pandblaw.com | 2/9/2023 3:30:56 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Marc B. Johnson | 90001975 | mjohnson@bairhilty.com | 2/9/2023 3:30:56 PM | SENT |
| Samuel JPolak | | spolak@pandblaw.com | 2/9/2023 3:30:56 PM | SENT |
| Bryan Rutherford | | brutherford@macdonalddevin.com | 2/9/2023 3:30:56 PM | SENT |
| Angela Bobbitt | | angela@parkerlawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Robert BWagstaff | | rwagstaff@mcmahonlawtx.com | 2/9/2023 3:30:56 PM | SENT |
| Amanda Livezey | | alivezey@mcmahonlawtx.com | 2/9/2023 3:30:56 PM | SENT |
| Linda Hammon | | lhammon@feesmith.com | 2/9/2023 3:30:56 PM | SENT |
| Shonda Fields | | shonda@monteslawgroup.com | 2/9/2023 3:30:56 PM | SENT |
| Keith CCramer | | kcramer@gordonrees.com | 2/9/2023 3:30:56 PM | SENT |
| Michael Calvin Wright | 22049807 | mwright@rwtrial.com | 2/9/2023 3:30:56 PM | SENT |
| Marcus Tolliver | 24079646 | marc.tolliver@tbjbs.com | 2/9/2023 3:30:56 PM | SENT |
| Dennis Bentley | 24079654 | dbentley-svc@thomasjhenrylaw.com | 2/9/2023 3:30:56 PM | SENT |
| R. Wayne Gordon | 8206500 | wayne.gordon@tbjbs.com | 2/9/2023 3:30:56 PM | SENT |
| Bryan Gerald Rutherford | 24025628 | BRutherford@MacdonaldDevin.com | 2/9/2023 3:30:56 PM | SENT |
| Gregory Ryan Brenner | 24027052 | gbrenner@coxpllc.com | 2/9/2023 3:30:56 PM | SENT |
| Ryan Thompson | 24046969 | rthompson@triallawyers.com | 2/9/2023 3:30:56 PM | SENT |
| Jonathan Parkey Ayers | 1465900 | jayers@ayersfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Amelia Susan Harris | 9050850 | aharris@macdonalddevin.com | 2/9/2023 3:30:56 PM | SENT |
| Timothy Drew Newsom | 784677 | tnewsom@flbranson.com | 2/9/2023 3:30:56 PM | SENT |
| Michael H. Bassett | 1890500 | efile@thebassettfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Steven L. Russell | 17437040 | srussell@rwtrial.com | 2/9/2023 3:30:56 PM | SENT |
| Scott Allen Shanes | 784953 | sshanes@clarkhill.com | 2/9/2023 3:30:56 PM | SENT |
| Keith Cramer | 24051678 | kcramer@gordonrees.com | 2/9/2023 3:30:56 PM | SENT |
| Dean J. Siotos | 793018 | dsiotos@imtexaslaw.com | 2/9/2023 3:30:56 PM | SENT |
| Ann Austin | 1434150 | aaustin@stewartlawgrp.com | 2/9/2023 3:30:56 PM | SENT |
| John Holman Barr | 1798700 | jbarr@bbarr.com | 2/9/2023 3:30:56 PM | SENT |
| George Haratsis | 8941000 | gharatsis@mcdonaldlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Randall G. Walters | 20819480 | waltersedocsnotifications@wbclawfirm.com | 2/9/2023 3:30:56 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Jeffrey Thomas Roebuck | 24027812 | jeff@roebuckthomas.com | 2/9/2023 3:30:56 PM | SENT |
| Charles D.Adams, IV | | cda@bigangry.com | 2/9/2023 3:30:56 PM | SENT |
| Stewart Kimball Schmella | 24033041 | sschmella@lanzalawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Richard J. Byrne | 3566435 | rbyrne@ekvallbyrne.com | 2/9/2023 3:30:56 PM | SENT |
| Karl Wayne Koen | 11652275 | karl.koen@gkbklaw.com | 2/9/2023 3:30:56 PM | SENT |
| Lynn Layne Rada | 12066500 | espeyservice@lawespey.com | 2/9/2023 3:30:56 PM | SENT |
| Jason Brandt Stephens | 24003001 | Jason@StephensLaw.com | 2/9/2023 3:30:56 PM | SENT |
| Amie Pina Fordan | 24036580 | amie.fordan@tbjbs.com | 2/9/2023 3:30:56 PM | SENT |
| Michael Paul Sharp | 788857 | msharp@feesmith.com | 2/9/2023 3:30:56 PM | SENT |
| Samantha Rokkett | 24038924 | Samantha.Rokkett@usaa.com | 2/9/2023 3:30:56 PM | SENT |
| Gregory Peterson | 24057580 | greg@ljglaw.com | 2/9/2023 3:30:56 PM | SENT |
| Robert L. McGee | 13620720 | efile@thebassettfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Micheal Vernon Winchester | 21754350 | mwinchester@winchesterlaw.net | 2/9/2023 3:30:56 PM | SENT |
| Scott Riddle | 24059232 | sriddle@krcl.com | 2/9/2023 3:30:56 PM | SENT |
| James R.Ames | | james@texaslit.com | 2/9/2023 3:30:56 PM | SENT |
| Eric Gifford | | egifford@harrisonhull.com | 2/9/2023 3:30:56 PM | SENT |
| Malcolm G. Renwick | | mgr-firm@renwicklaw.com | 2/9/2023 3:30:56 PM | SENT |
| Gary Michael Ashmore | 793284 | gashmore@ashmorelaw.com | 2/9/2023 3:30:56 PM | SENT |
| Adam Strange | 24090763 | astrange@feesmith.com | 2/9/2023 3:30:56 PM | SENT |
| William H. Chamblee | 4086100 | whchamblee@chambleeryan.com | 2/9/2023 3:30:56 PM | SENT |
| Marcy Lynn Rothman | 17318500 | mrothman@krcl.com | 2/9/2023 3:30:56 PM | SENT |
| Geoffrey Schorr | 24029828 | Geoff@schorrfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Stuart White | 24075268 | efiling@lileswhite.com | 2/9/2023 3:30:56 PM | SENT |
| Kevin Warren Liles | 798329 | kevin@lileswhite.com | 2/9/2023 3:30:56 PM | SENT |
| Stuart R.White | | Stuart@LilesWhite.com | 2/9/2023 3:30:56 PM | SENT |
| Erik E. Ekvall | 6507022 | eekvall@ekvallbyrne.com | 2/9/2023 3:30:56 PM | SENT |
| Nicholas J. Lanza | 11941225 | eservice@lanzalawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Frank Branson | 2899000 | flbranson@flbranson.com | 2/9/2023 3:30:56 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Kevin Lamar Sewell | 789619 | sewell@mdjwlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Sona Julianna Garcia | 24045917 | sjgarcia@grsm.com | 2/9/2023 3:30:56 PM | SENT |
| David Herring Estes | 24012599 | destes@hartlinebarger.com | 2/9/2023 3:30:56 PM | SENT |
| Jana Hicks Taylor | 24012826 | jtaylor@sheehyware.com | 2/9/2023 3:30:56 PM | SENT |
| Richard M. Mosher | 14580300 | rmosher@thompsoncoe.com | 2/9/2023 3:30:56 PM | SENT |
| Thomas Ridley Stevens | 19189800 | texnewmexlegal@farmersinsurance.com | 2/9/2023 3:30:56 PM | SENT |
| Robert Chad Kimble | 24007483 | eservice@chadkimblelaw.com | 2/9/2023 3:30:56 PM | SENT |
| William W. Hancock | 8892300 | whancock@watsoncaraway.com | 2/9/2023 3:30:56 PM | SENT |
| Barry L. Hardin | 8961900 | bhardin@wslawpc.com | 2/9/2023 3:30:56 PM | SENT |
| Garland Williams | 24079580 | Garland.Williams@oag.texas.gov | 2/9/2023 3:30:56 PM | SENT |
| Wendi Ervin Powers | 6651220 | wervin@bairhilty.com | 2/9/2023 3:30:56 PM | SENT |
| Wade B. Williams | 21582900 | e-service@lewisandwilliams.com | 2/9/2023 3:30:56 PM | SENT |
| Lewis Williams | | E-service@lewisandwilliams.com | 2/9/2023 3:30:56 PM | SENT |
| Jeffrey Wolf | 21849012 | jwolf@wolflawpc.com | 2/9/2023 3:30:56 PM | SENT |
| John D. Malanga | 12853800 | jmalanga@flash.net | 2/9/2023 3:30:56 PM | SENT |
| Christopher Norcross | 24081677 | cnorcross@gordonrees.com | 2/9/2023 3:30:56 PM | SENT |
| Michael Worthington | 24082219 | worthington@mdjwlaw.com | 2/9/2023 3:30:56 PM | SENT |
| David J. Metzler | 13982550 | dmetzler@cowlesthompson.com | 2/9/2023 3:30:56 PM | SENT |
| D'juana Bellue Parks | 15519395 | dparks@pulf.com | 2/9/2023 3:30:56 PM | SENT |
| Patrick Francis Madden | 787943 | pmadden@macdonalddevin.com | 2/9/2023 3:30:56 PM | SENT |
| Stephen Lund | 24086920 | salund@tarrantcountytx.gov | 2/9/2023 3:30:56 PM | SENT |
| John Keith Hyde | 10370250 | khyde@pulf.com | 2/9/2023 3:30:56 PM | SENT |
| David Bruce Koch | 11643850 | david@oharelawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Coby L. Wooten | 797742 | coby@cobywootenlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Mattilyn Smith | 24097093 | Mattilyn@cobywootenlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Janice Coby Wooten | | Janice@CobyWootenLaw.com | 2/9/2023 3:30:56 PM | SENT |
| Gerald M. Johnson | | tjohnson@feesmith.com | 2/9/2023 3:30:56 PM | SENT |
| Donna Keaton | | dkeaton@bradley.com | 2/9/2023 3:30:56 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Patti Lampton | | plampton@bradley.com | 2/9/2023 3:30:56 PM | SENT |
| Ian Faria | | ifaria@bradley.com | 2/9/2023 3:30:56 PM | SENT |
| Kellie McGill | | kmcgill@bradley.com | 2/9/2023 3:30:56 PM | SENT |
| Stacy Lord | | slord@bradley.com | 2/9/2023 3:30:56 PM | SENT |
| Michael Cancienne | | mcancienne@jlcfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Nathan Graham | | ngraham@bradley.com | 2/9/2023 3:30:56 PM | SENT |
| Michael V.Winchester | | mwinchester@winchesterlaw.net | 2/9/2023 3:30:56 PM | SENT |
| Joyce Woodson | | jwoodson@winchesterlaw.net | 2/9/2023 3:30:56 PM | SENT |
| Daniel Troiano | 24106520 | dtroiano@clarkhill.com | 2/9/2023 3:30:56 PM | SENT |
| David Reeder | 24106728 | drr@manningllp.com | 2/9/2023 3:30:56 PM | SENT |
| Eloisa Bouche | | ebouche@harrisonhull.com | 2/9/2023 3:30:56 PM | SENT |
| Karen Morris | | Karen.Morris@gkbklaw.com | 2/9/2023 3:30:56 PM | SENT |
| Clinton Vaylord Cox | 24040738 | ccox@coxpllc.com | 2/9/2023 3:30:56 PM | SENT |
| John House | 784296 | jhouse@bbarr.com | 2/9/2023 3:30:56 PM | SENT |
| Cassandra Osterhoudt | | costerhoudt@sheehyware.com | 2/9/2023 3:30:56 PM | SENT |
| Preston Hino | 24104701 | phino@krcl.com | 2/9/2023 3:30:56 PM | SENT |
| Mark Siemer | 24110361 | mark.siemer@gkbklaw.com | 2/9/2023 3:30:56 PM | SENT |
| Jennifer Gutierrez | | jgutierrez@cowlesthompson.com | 2/9/2023 3:30:56 PM | SENT |
| Samantha Matthews | 24104520 | smatthews@ashmorelaw.com | 2/9/2023 3:30:56 PM | SENT |
| Keith Cramer | | kcramer@grsm.com | 2/9/2023 3:30:56 PM | SENT |
| Andrew Dao | 24082895 | adao@dalyblack.com | 2/9/2023 3:30:56 PM | SENT |
| Becky Hunt | | bhunt@grsm.com | 2/9/2023 3:30:56 PM | SENT |
| Connie Cobb | | ccobb@bairhilty.com | 2/9/2023 3:30:56 PM | SENT |
| Becky Johnson | | bjohnson@bairhilty.com | 2/9/2023 3:30:56 PM | SENT |
| Elva Jasso | | ejasso@thompsoncoe.com | 2/9/2023 3:30:56 PM | SENT |
| Pricilla Hernandez | | pricilla@monteslawgroup.com | 2/9/2023 3:30:56 PM | SENT |
| Connor J.Moore | | connor.moore@tbjbs.com | 2/9/2023 3:30:56 PM | SENT |
| Neely Fortinberry | | nfortinberry@ekvallbyrne.com | 2/9/2023 3:30:56 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Robyn Cruze | | rcruze@mklawpc.com | 2/9/2023 3:30:56 PM | SENT |
| Chris Cude | | ccude@mklawpc.com | 2/9/2023 3:30:56 PM | SENT |
| Michael Miller | | mmiller@mklawpc.com | 2/9/2023 3:30:56 PM | SENT |
| Jennifer White | | JWhite@hartlinebarger.com | 2/9/2023 3:30:56 PM | SENT |
| Kyle Moore | | kmoore@winchesterlaw.net | 2/9/2023 3:30:56 PM | SENT |
| Gracie Garcia | | ggarcia@jw.com | 2/9/2023 3:30:56 PM | SENT |
| Amanda Saputo | | asaputo@hartlinebarger.com | 2/9/2023 3:30:56 PM | ERROR |
| Faisal Al-Alam | | fal-alam@hartlinebarger.com | 2/9/2023 3:30:56 PM | SENT |
| Whitney Morgan | | wmorgan@cowlesthompson.com | 2/9/2023 3:30:56 PM | ERROR |
| George Haratsis | | gch@mcdonaldlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Randyl Meigs | | rsm@mcdonaldlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Ellen Sorrells | | ecs@mcdonaldlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Morgan Reinhardt | | mreinhardt@pandblaw.com | 2/9/2023 3:30:56 PM | SENT |
| John A.Landreth | | jlandreth@coxpllc.com | 2/9/2023 3:30:56 PM | SENT |
| Cindy Parnell | | cparnell@hartlinebarger.com | 2/9/2023 3:30:56 PM | SENT |
| Randall G.Walters | | Randy.walters@wbclawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Jordan C.Harrison | | jharrison@thompsoncoe.com | 2/9/2023 3:30:56 PM | SENT |
| Karen Wiley | | kwiley@cr.law | 2/9/2023 3:30:56 PM | SENT |
| Kelley Cash | | kcash@cr.law | 2/9/2023 3:30:56 PM | SENT |
| Rhonda Braun | | rbraun@cr.law | 2/9/2023 3:30:56 PM | SENT |
| Courtney Liggitt | | Courtney.Liggitt@lewisbrisbois.com | 2/9/2023 3:30:56 PM | SENT |
| Gregory Peterson | | mail@ljglaw.com | 2/9/2023 3:30:56 PM | SENT |
| Jacob RMalatek | | jmalatek@bradley.com | 2/9/2023 3:30:56 PM | SENT |
| Pam Salmon | | psalmon@thompsoncoe.com | 2/9/2023 3:30:56 PM | SENT |
| Britanie Cruze | | bcruze@mklawpc.com | 2/9/2023 3:30:56 PM | SENT |
| Dean J.Siotos | | service@thewillislawgroup.com | 2/9/2023 3:30:56 PM | SENT |
| Kaneisha Lewis | | kcl@mcdonaldlaw.com | 2/9/2023 3:30:56 PM | SENT |
| Angelica Paluch | | apaluch@harrisonhull.com | 2/9/2023 3:30:56 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Ari Morales | | ari@lileswhite.com | 2/9/2023 3:30:56 PM | SENT |
| Erika Singler | | esingler@ekvallbyrne.com | 2/9/2023 3:30:56 PM | SENT |
| Heather Vandever | | heather.vandever@tbjbs.com | 2/9/2023 3:30:56 PM | SENT |
| Thomas Stevens | | thomas.stevens@farmersinsurance.com | 2/9/2023 3:30:56 PM | SENT |
| Sylvia Marinez | | smarinez@krcl.com | 2/9/2023 3:30:56 PM | SENT |
| Dianne Davis | | diadavis@geico.com | 2/9/2023 3:30:56 PM | SENT |
| Andrea E.Cook | | acook@clarkhill.com | 2/9/2023 3:30:56 PM | ERROR |
| Lynn Rada | | lrada@lawespey.com | 2/9/2023 3:30:56 PM | SENT |
| William Chamblee | | wchamblee@cr.law | 2/9/2023 3:30:56 PM | SENT |
| Alexander Martin | | amartin@wslawpc.com | 2/9/2023 3:30:56 PM | SENT |
| Karen Spencer | | kspencer@rwtrial.com | 2/9/2023 3:30:56 PM | SENT |
| Christopher White | | Chris.White@lewisbrisbois.com | 2/9/2023 3:30:56 PM | SENT |
| Terre Meza | | Terre.Meza@lewisbrisbois.com | 2/9/2023 3:30:56 PM | SENT |
| Charles Settle | | Charles.Settle@lewisbrisbois.com | 2/9/2023 3:30:56 PM | ERROR |
| Clint Dye | | cdye@sheehyware.com | 2/9/2023 3:30:56 PM | SENT |
| Janet Avila | | javila@lyons-simmons.com | 2/9/2023 3:30:56 PM | SENT |
| Suzanne Le Blanc | | sleblanc@lyons-simmons.com | 2/9/2023 3:30:56 PM | SENT |
| Christopher Simmons | | csimmons@lyons-simmons.com | 2/9/2023 3:30:56 PM | SENT |
| Stephen Higdon | | shigdon@lyons-simmons.com | 2/9/2023 3:30:56 PM | SENT |
| Michael Lyons | | mlyons@lyons-simmons.com | 2/9/2023 3:30:56 PM | SENT |
| Rileigh Hanson | | rileigh@oharelawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Wade Barrow | | service@barrow-law.com | 2/9/2023 3:30:56 PM | SENT |
| Tim Newsom | | efiletn@flbranson.com | 2/9/2023 3:30:56 PM | SENT |
| Kurt Arnold | | eservice@arnolditkin.com | 2/9/2023 3:30:56 PM | SENT |
| Adam Lewis | | alewis@arnolditkin.com | 2/9/2023 3:30:56 PM | SENT |
| Crystal DeLeon | | cdeleon@arnolditkin.com | 2/9/2023 3:30:56 PM | SENT |
| Alda Hernandez | | ahernandez@arnolditkin.com | 2/9/2023 3:30:56 PM | SENT |
| Clinton Cox | | ccoc@coxpllc.com | 2/9/2023 3:30:56 PM | ERROR |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Bradley Dickens | | brad.dickens@wbclawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Ariana Boyd | | aboyd@wslawpc.com | 2/9/2023 3:30:56 PM | SENT |
| Bradley Dickens | | brad.dickens@wbclawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Eric DHitchcock | | edh@manningllp.com | 2/9/2023 3:30:56 PM | SENT |
| Cherie Crayton | | vanessaannsamuels45@gmail.com | 2/9/2023 3:30:56 PM | SENT |
| Paige AndersLewiecki | | paige@colanerifirm.com | 2/9/2023 3:30:56 PM | SENT |
| Debra Wisnewski | | debra@colanerifirm.com | 2/9/2023 3:30:56 PM | SENT |
| Shelly Owen | | shelly@colanerifirm.com | 2/9/2023 3:30:56 PM | SENT |
| The Bassett Firm | | eservice@thebassettfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Michelle Guillory | | mguillory@arnolditkin.com | 2/9/2023 3:30:56 PM | SENT |
| Karen Mayo | | kmayo@pulf.com | 2/9/2023 3:30:56 PM | SENT |
| Raechel Carder | | rcarder@sheehyware.com | 2/9/2023 3:30:56 PM | SENT |
| Michelle Guillory | | mguillory@arnolditkin.com | 2/9/2023 3:30:56 PM | SENT |
| Katherine Raunikar | | kraunikar@jlcfirm.com | 2/9/2023 3:30:56 PM | SENT |
| John ScottBlack | | jblack@dalyblack.com | 2/9/2023 3:30:56 PM | SENT |
| John ScottBlack | | ecfs@dalyblack.com | 2/9/2023 3:30:56 PM | SENT |
| Amber Chambers | | achambers@bushlawgrp.com | 2/9/2023 3:30:56 PM | ERROR |
| Bilaal Badat | | bilaalbadat.law@outlook.com | 2/9/2023 3:30:56 PM | SENT |
| Cherie Crayton | | vanessaannsamuels45@gmail.com | 2/9/2023 3:30:56 PM | SENT |
| Bob Meagher | | bmeagher@rwtrial.com | 2/9/2023 3:30:56 PM | SENT |
| Elsa Killebrew | | elsa.killebrew@sargentlawtx.com | 2/9/2023 3:30:56 PM | SENT |
| Teresa Reeves | | treeves@wslawpc.com | 2/9/2023 3:30:56 PM | SENT |
| William Carson | | william.carson@sargentlawtx.com | 2/9/2023 3:30:56 PM | SENT |
| Kern ALewis | | Klewis@galyen.com | 2/9/2023 3:30:56 PM | SENT |
| Jennie HTrussell | | jennie@lileswhite.com | 2/9/2023 3:30:56 PM | SENT |
| Charles Bush | 24096028 | cbush@bushlawgrp.com | 2/9/2023 3:30:56 PM | ERROR |
| Saul Castro | | scastro@pandblaw.com | 2/9/2023 3:30:56 PM | SENT |
| Michael Gorman | | mgorman@geico.com | 2/9/2023 3:30:56 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Krista Hillman | | Hillman@texasdefensecounsel.com | 2/9/2023 3:30:56 PM | SENT |
| Donna M.Ramirez | | dramirez@pandblaw.com | 2/9/2023 3:30:56 PM | SENT |
| Stefan Allen | | sallen@ekvallbyrne.com | 2/9/2023 3:30:56 PM | SENT |
| Marie Aguilar | | maguilar@ekvallbyrne.com | 2/9/2023 3:30:56 PM | SENT |
| Adam J.Strange | | astrange@feesmith.com | 2/9/2023 3:30:56 PM | SENT |
| William Hancock | | whancock@watsoncaraway.com | 2/9/2023 3:30:56 PM | SENT |
| John W.Greene | | jgreene@scopelitis.com | 2/9/2023 3:30:56 PM | SENT |
| James D.Ellman | | jellman@scopelitis.com | 2/9/2023 3:30:56 PM | SENT |
| Claire E.Fore | | claire@parkerlawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Courtney D.Kirsch | | courtney.kirsch@tbjbs.com | 2/9/2023 3:30:56 PM | SENT |
| Colleen L.McCoy | | cmccoy@scopelitis.com | 2/9/2023 3:30:56 PM | SENT |
| Valerie Whitesell | | vwhitesell@feesmith.com | 2/9/2023 3:30:56 PM | SENT |
| Lori Sarathy | | lsarathy@ekvallbyrne.com | 2/9/2023 3:30:56 PM | SENT |
| James H.Fendley | | jfendley@watsoncaraway.com | 2/9/2023 3:30:56 PM | SENT |
| eService PFM | | eservicePFM@macdonalddevin.com | 2/9/2023 3:30:56 PM | SENT |
| Henri Dussault | | hdussault@belaw.com | 2/9/2023 3:30:56 PM | SENT |
| Edward SGaytan | | gaytan@noteboom.com | 2/9/2023 3:30:56 PM | SENT |
| Tracy L.Heffner | | tracy@StephensLaw.com | 2/9/2023 3:30:56 PM | SENT |
| Dustin W. Clay | | dustin@oharelawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| James L.Williams, Jr. | | williams@texasdefensecounsel.com | 2/9/2023 3:30:56 PM | SENT |
| Marilyn Brown | | mbrown@jw.com | 2/9/2023 3:30:56 PM | SENT |
| Sabrina LGalvan | | sgalvan@pandblaw.com | 2/9/2023 3:30:56 PM | SENT |
| Christie Bunch | | cbunch@coxpllc.com | 2/9/2023 3:30:56 PM | SENT |
| Susan Royall | | sroyall@belaw.com | 2/9/2023 3:30:56 PM | SENT |
| Erica W.Hyman | | ehyman@macdonalddevin.com | 2/9/2023 3:30:56 PM | SENT |
| Liles White Efiling Notifications | | Efiling@lileswhite.com | 2/9/2023 3:30:56 PM | SENT |
| John Malanga | | jmalanga@outlook.com | 2/9/2023 3:30:56 PM | SENT |
| Dee Cesna | | dxv@manningllp.com | 2/9/2023 3:30:56 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meganne Feula on behalf of Ryan Anderson
Bar No. 24059380
mfeula@triallawyers.com
Envelope ID: 72621201
Status as of 2/9/2023 3:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Michael P.Sharp | | msharp@feesmith.com | 2/9/2023 3:30:56 PM | SENT |
| David Sargent | | david.sargent@sargentlawtx.com | 2/9/2023 3:30:56 PM | SENT |
| Sarah Schuller | | sschuller@coxpllc.com | 2/9/2023 3:30:56 PM | SENT |
| Travis Cox | | Travis.Cox@lewisbrisbois.com | 2/9/2023 3:30:56 PM | SENT |
| Steven R.Samples | | docket@tex.law | 2/9/2023 3:30:56 PM | SENT |
| Samantha Palma | | spalma@belaw.com | 2/9/2023 3:30:56 PM | SENT |
| Taylor Accountius | | taccountius@hartlinebarger.com | 2/9/2023 3:30:56 PM | SENT |
| Sherri Gallant | | gallant@texasdefensecounsel.com | 2/9/2023 3:30:56 PM | SENT |
| Morgan Trenary | | mrt@manningllp.com | 2/9/2023 3:30:56 PM | SENT |
| Gwen Purdom | | gpurdom@macdonalddevin.com | 2/9/2023 3:30:56 PM | SENT |
| Trudy Vernon | | tvernon@clarkhill.com | 2/9/2023 3:30:56 PM | SENT |
| Audrea S.Moore | | asm@manningllp.com | 2/9/2023 3:30:56 PM | SENT |
| Richard B.Waterhouse, Jr. | | Rick@oharelawfirm.com | 2/9/2023 3:30:56 PM | SENT |
| Katherine Anthony | | kanthony@watsoncaraway.com | 2/9/2023 3:30:56 PM | SENT |
| Justin Williams | | service@williamstrial.com | 2/9/2023 3:30:56 PM | SENT |
| Ross Darville | | rdarville@bradley.com | 2/9/2023 3:30:56 PM | SENT |
| Marlene Merritt | | mmerritt@cowlesthompson.com | 2/9/2023 3:30:56 PM | SENT |
| Barbara Vest | | Barbara.Vest@sargentlawtx.com | 2/9/2023 3:30:56 PM | SENT |
| Sunayana Thukral | | Sunayana.Thukral@lewisbrisbois.com | 2/9/2023 3:30:56 PM | SENT |
| Debra K.Zahalsky | | dzahalsky@wolflawpc.com | 2/9/2023 3:30:56 PM | SENT |
| Clint BLee | | clee@galyen.com | 2/9/2023 3:30:56 PM | SENT |
| Ryan HAnderson | | randerson@triallawyers.com | 2/9/2023 3:30:56 PM | SENT |

# EXHIBIT B-10

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/17/2023
CT Log Number 543250811

## Service of Process Transmittal Summary

**TO:** Bryan W. Tate, General Counsel
Webber, LLC
1725 HUGHES LANDING BLVD STE 1200
THE WOODLANDS, TX 77380-3875

**RE:** **Process Served in Texas**

**FOR:** Webber, LLC (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: PAUL RICHARD GENUALDO // To: Webber, LLC |
| **CASE #:** | 23634016223 |
| **NATURE OF ACTION:** | Personal Injury - Vehicle Collision |
| **PROCESS SERVED ON:** | C T Corporation System, Dallas, TX |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/17/2023 at 15:50 |
| **JURISDICTION SERVED:** | Texas |
| **ACTION ITEMS:** | CT will retain the current log<br>Image SOP<br>Email Notification, Bryan W. Tate btate@wwebber.com<br>Email Notification, Mark Williams mark.williams@ferrovialservices.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>866-665-5799<br>SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Fri, Feb 17, 2023
**Server Name:** Heather Bork

| | |
|---|---|
| Entity Served | WEBBER, LLC |
| Case Number | 236-340162-23 |
| Jurisdiction | TX |

Inserts

2/17/23

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 236-340162-23*

PAUL RICHARD GENUALDO
VS.
NTE MOBILITY PARTNERS, LLC, ET AL

TO: WEBBER LLC

B/S REG AGT-CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS, TX 75201-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 236th District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

PAUL RICHARD GENUALDO

Filed in said Court on February 10th, 2023 Against
NTE MOBILITY PARTNERS LLC, NTE MOBILITY PARTNERS SEGMENTS 3 LLC, CINTRA US SERVICES LLC, NORTH TARRANT INFRASTRUCTURE LLC, WEBBER LLC, FERROVIAL AGROMAN US CORP, TEXAS DEPARTMENT OF TRANSPORTATION, JB HUNT TRANSPORT INC, VAL ERNST, GGS PRO For suit, said suit being numbered 236-340162-23 the nature of which demand is as shown on said PLAINTIFF'S ORIGINAL PETITION a copy of which accompanies this citation.

JOHN M GROCE, JR
Attorney for PAUL RICHARD GENUALDO Phone No. (817)294-1900
Address 1310 W EL PASO ST FORT WORTH, TX 76102

Thomas A. Wilder , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 15th day of February, 2023.

By [signature] AMANDA PFISTERER

A CERTIFIED COPY
ATTEST: 02/15/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Pfisterer

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *23634016223000009*

Received this Citation on the _______ day of _______________ , _____ at ______ o'clock ___M; and executed at ______________________________ within the county of ________________, State of ________ at _______ o'clock ___M on the _______ day of _________________, _____ by delivering to the within named (Def.): defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION , having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff:
County of _________________________ State of_________ By ______________________________ Deputy

Fees $_________

State of ______________ County of (Must be verified if served outside the State of Texas)

Signed and sworn to by the said ______________________________ before me this _____ day of _________, ____

to certify which witness my hand and seal of office

(Seal)

County of ___________________, State of ________________

A CERTIFIED COPY
ATTEST: 02/15/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Pfisterer

*CITATION*

Cause No. 236-340162-23

PAUL RICHARD GENUALDO

VS.

NTE MOBILITY PARTNERS, LLC,
ET AL

ISSUED

This 15th day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By AMANDA PFISTERER Deputy

JOHN M GROCE, JR
Attorney for: PAUL RICHARD GENUALDO
Phone No. (817)294-1900
ADDRESS: 1310 W EL PASO ST

FORT WORTH, TX 76102

*CIVIL LAW*

*23634016223000009*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

236-340162-23

FILED
TARRANT COUNTY
2/10/2023 9:25 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. ________________

| | | |
|---|---|---|
| PAUL RICHARD GENUALDO<br><br>Plaintiff,<br><br>vs.<br><br>NTE MOBILITY PARTNERS LLC; NTE MOBILITY PARTNERS SEGMENTS 3 LLC; CINTRA US SERVICES LLC; NORTH TARRANT INFRASTRUCTURE LLC; WEBBER LLC; FERROVIAL AGROMAN US CORP; TEXAS DEPARTMENT OF TRANSPORTATION; VAL ERNST; J.B. HUNT TRANSPORT, INC; GG'S PRODUCE TRANSPORT LLC; JOSE BRENT DURAN; RICH TRANSPORT, LLC; HECTOR FERNANDO GARCIA RODRIGUEZ; SUN VALLEY, INC.; CHARLES GRANT BOWMAN; CODY WILLIAMS; GO TO LOGISTICS, INC.; DEVIN MEEK; THELIN RECYCLING COMPANY LLC; NEW PRIME, INC.; STEVEN ANTHONY RIDDER; MEGHAN MIKAYLA MATTINGLY; and DWIGHT KERN MCDANIEL,<br><br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br>TARRANT COUNTY, TEXAS<br><br>________ JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** PAUL RICHARD GENUALDO, an individual (hereinafter referred to as "Plaintiff"), files this Petition against the following entities, collectively referred to as "Defendants" herein:

**I-35 TOLLWAY OWNERS, OPERATIONS AND MAINTENANCE DEFENDANTS:**

1. NTE MOBILITY PARTNERS LLC;

2. NTE MOBILITY PARTNERS SEGMENTS 3 LLC;

3. CINTRA US SERVICES LLC;

4. NORTH TARRANT INFRASTRUCTURE LLC;

5. WEBBER LLC;

6. FERROVIAL AGROMAN US CORP;

7. TEXAS DEPARTMENT OF TRANSPORTATION;

**TRACTOR TRAILER AND/OR MULTI VEHICLE DEFENDANTS**

**("Unit" numbers of vehicles provided below are unit numbers assigned on the Fort Worth Police Department report of this incident dated March 1, 2021)**

8. J.B. HUNT TRANSPORT, INC., driven by VAL ERNST (Units 39-40);

9. VAL ERNST, driver of Units 39-40;

10. GG'S PRODUCE TRANSPORT, LLC, driven by JOSE BRENT DURAN (Units 41-42);

11. JOSE BRENT DURAN, driver of Units 41-42;

12. RICH TRANSPORT, LLC, driven by HECTOR FERNANDO GARCIA RODRIGUEZ (Units 49-50);

13. HECTOR FERNANDO GARCIA RODRIGUEZ, driver of Units 49-50;

14. SUN VALLEY, INC., driven by CHARLES GRANT BOWMAN (Units 51-52);

15. CHARLES GRANT BOWMAN, driver of Units 51-52.

16. GO TO LOGISTICS, INC., driven by CODY WILLIAMS (Units 57-58);

17. CODY WILLIAMS, driver of Units 57-58;

18. THELIN RECYCLING COMPANY LLC, driven by DEVIN MEEK (Unit 59);

19. DEVIN MEEK, driver of Unit 59;

20. NEW PRIME, INC., driven by STEVEN ANTHONY RIDDER (Units 67-68);

21. STEVEN ANTHONY RIDDER, driver of Units 67-68;

**SINGLE VEHICLE UNITS**

**("Unit" numbers of vehicles provided below are unit numbers assigned on the Fort Worth Police Department report of this incident dated March 1, 2021)**

22. MEGHAN MIKAYLA MATTINGLY, driver of Unit 53

23. DWIGHT KERN MCDANIEL, driver of Unit 54.

Plaintiff would respectfully show the Court as follows:

**1. DISCOVERY CONTROL PLAN**

1.01 Pursuant to Texas Rule of Civil Procedure Rule 190.4, discovery under this cause is intended to be conducted under Level 3.

**2. PLAINTIFF**

2.01 Plaintiff PAUL RICHARD GENUALDO is an adult citizen of the State of Texas. The last three digits of Plaintiff's Social Security number are 375 and the last three digits of Plaintiff's driver's license are 917.

**3. DEFENDANTS**

**I-35 TOLLWAY OWNERS, OPERATIONS AND MAINTENANCE DEFENDANTS**

3.01 **DEFENDANT NTE MOBILITY PARTNERS, LLC**, is a Delaware corporation, qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, through CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.02 **DEFENDANT NTE MOBILITY PARTNERS SEGMENTS 3 LLC**, is a Delaware corporation, qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, through CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.03 **DEFENDANT CINTRA US SERVICES LLC,** is a limited liability company organized and existing under the laws of the State of Texas and may be served through its registered agent for service of process in Texas, Guillermo Sanguesa at 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

3.04 **DEFENDANT NORTH TARRANT INFRASTRUCTURE LLC**, is a limited liability company organized and existing under the laws of the State of Texas and may be served through its registered agent for service of process in Texas, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.05 **DEFENDANT WEBBER LLC,** is a limited liability company organized and existing under the laws of the State of Texas and may be served through its registered agent for service of process in Texas, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.06 **DEFENDANT FERROVIAL AGROMAN US CORP** is a Delaware corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, Fernando Martinez Caro at 700 Chevy Chase Blvd., Suite 500, Austin, Texas 78752.

3.07 **DEFENDANT TEXAS DEPARTMENT OF TRANSPORTATION** is a government agency of the State of Texas and may be served at 125 East 11th Street, Austin, Texas 78701-2483.

**TRACTOR/TRAILER AND/OR MULTI VEHICLE DEFENDANTS**

3.08 **DEFENDANT J.B. HUNT TRANSPORT, INC.,** (Units 39-40) is a foreign corporation who is operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries and losses. Defendant J.B. Hunt does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas.

This Defendant may be served with process through its registered agent, Corporation Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701.

3.09 **DEFENDANT VAL ERNST** (driver of Units 39 & 40 – J.B. Hunt Transport, Inc.), is a resident of Mansfield, Tarrant County, Texas, and can be served with process at 1704 Griffin Lane, Mansfield, Texas 76063.

3.10 **DEFENDANT GG'S PRODUCE TRANSPORT, LLC** (Units 41 & 42), is a limited liability company, organized and existing under the laws of the State of Texas, with a principal place of business in Hidalgo County, Texas. This Defendant may be served with process through its registered agent, George David Durham, III at 517 W. Nolana Avenue, McAllen, Texas 78504.

3.11 **DEFENDANT JOSE BRENT DURAN** (driver of Units 41 & 42 – GG's Produce Transport, LLC) is a resident of Mission, Hidalgo County, Texas. This Defendant may be served with process at 3304 San Esteban St., Mission, Texas 75572.

3.12 **DEFENDANT RICH TRANSPORT, LLC** (Units 49-50) is a foreign limited liability company with a principal place of business in Little Rock, Arkansas. This Defendant may be served with process through its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.13 **DEFENDANT HECTOR FERNANDO GARCIA RODRIGUEZ** (driver of Units 49-50 – Rich Transport, LLC) is a resident of Garcia, Nuevo Leon, Mexico. This Defendant may be served at Hacienda Raldea 131, Garcia, Nuevo Leon, Mexico 66000.

3.14 **DEFENDANT SUN VALLEY, INC.** (Units 51 & 51), is a foreign corporation with a principal place of business in Hutchinson, Kansas. This Defendant may be served with process through its registered agent, Keith Bauer at 1601 E. Blanchard Avenue, Hutchinson, Kansas 67501.

3.15 **DEFENDANT CHARLES GRANT BOWMAN** (driver of Units 51 & 52) is a resident of Hutchinson, Reno County, Kansas. This Defendant may be served with process at 1817 East 24th Avenue #7, Hutchinson, Kansas 67502.

3.16 **DEFENDANT GO TO LOGISTICS, INC.** (Units 57-58), is a foreign corporation who is operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries and losses. Defendant Go To Logistics, Inc. does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. This Defendant may be served with process through its registered agent, Tomasz Rzedaian at 2233 West Street, River Grove, Illinois 60171.

3.17 **DEFENDANT CODY WILLIAMS** (driver of Units 57 & 58 – Go To Logistics, Inc.), is a resident of Fort Worth, Tarrant County, Texas and can be served with process at 6078 Copperfield Drive, Unit #411, Fort Worth, Texas 76132.

3.18 **DEFENDANT THELIN RECYCLING COMPANY LLC** (Unit 59) is a limited liability company, organized and existing under the laws of the State of Texas, and may be served with process through its registered agent for service, Thelin GP, LLC, 3875 W. Whitestone Boulevard, Cedar Park, Texas 78613.

3.19 **DEFENDANT DEVIN MEEK** (driver of Unit 59), is a resident of Fort Worth, Tarrant County, Texas and can be served with process at 8120 Horseman Road, Fort Worth, Texas 76131.

3.20 **DEFENDANT NEW PRIME, INC.** (Units 67 & 68) is a foreign corporation with a principal place of business in Springfield, Missouri. This Defendant may be served with process through its registered agent, INCORP SERVICES, Inc. at 815 Brazos, Suite 500, Austin, Texas 78701.

3.21 **DEFENDANT STEVEN ANTHONY RIDDER** (driver of Units 67 & 68) is a resident of Olsburg, Pottawatomie County, Kansas. This Defendant may be served at 6125 Otter Creek Road, Olsburg, Kansas 66520.

**SINGLE VEHICLE DEFENDANTS**

3.22 **DEFENDANT MEGHAN MIKAYLA MATTINGLY** (Unit 53) is a resident of Fort Worth, Tarrant County, Texas and may be served with process at 2064 Bliss Road, Fort Worth, Texas 76177.

3.23 **DEFENDANT DWIGHT KERN MCDANIEL** (Unit 54) is a resident of Colleyville, Tarrant County, Texas and may be served with process at 6006 Montford Drive, Colleyville, TX 76034.

**4. MISNOMER/ALTER-EGO**

4.01 In the event that any parties are misnamed or not included herein, it is the contention of Plaintiff that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein. Pursuant to Rule 28 of the Texas Rules of Civil Procedure, if some other individual(s), partnership(s), corporation(s), association(s), or business entity(ies) of any type are owned and/or operated under the name or names of the above Defendants, Plaintiff hereby demands that the appropriate entity be substituted.

**5. VENUE AND JURISDICTION**

5.01 Venue is proper in this Court, pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1), because Tarrant County is where all or a substantial part of the events or omissions giving rise to these claims occurred.

5.02 Venue is also proper in this Court, pursuant to Texas Civil Practice & Remedies Code §15.002(a)(3) because Tarrant County is the principal place of business for Defendants NTE Mobility Partners LLC and NTE Mobility Partners Segments 3 LLC.

5.03 This Court has jurisdiction over this matter as Plaintiff seeks damages in excess of the minimal jurisdictional limits of this Court.

5.04 Additionally, Plaintiff and Defendant NTE Mobility Partners LLC and Defendant NTE Mobility Partners Segments 3 LLC are citizens of Texas, and hence there is no complete diversity of citizenship.

5.05 The remaining Defendants who are non-citizens of Texas all have consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers, and designating an agent for service of process in Texas. Designation of such an agent operates as an express consent to personal jurisdiction.

5.06 Furthermore, the remaining Defendant who are non-citizens of Texas have established minimum contacts in Texas by driving, shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Further, such Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas.

5.07 All Defendants who are non-citizens of Texas have had continuous and systematic contacts with Texas invoking general personal jurisdiction over them.

5.08 Thus, this Court has specific personal jurisdiction over all Defendants. Accordingly, removal to federal court would be improper and sanctionable because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

## 6. FACTS

6.01 On or about February 11, 2021, Paul Richard Genualdo was injured as a result of Defendants' negligence and/or gross negligence. On this date, Paul Richard Genualdo was driving on the expressway of Interstate I-35 in Fort Worth, Texas. This roadway was negligently and/or grossly negligently operated and/or maintained by one of more of the I-35 TOLLWAY OWNERS, OPERATIONS AND/OR MAINTENANCE DEFENDANTS named in this lawsuit.

6.02 In addition, at the time of this incident, various tractor trailer/ multi-vehicle and single unit vehicles that various defendants were driving on the I-35 expressway and/or the I-35 highway, committed various acts of negligence and/or gross negligence which contributed to cause a catastrophic vehicular chain reaction. These events resulted in multiple vehicular collisions causing bodily injuries to Paul Richard Genualdo.

6.03 Based upon currently available information and investigation, Plaintiff asserts the following causes of action against the I-35 TOLL WAY OPERATIONS AND MAINTENANCE DEFENDANTS, the TRACTOR TRAILER AND/OR MULTI-VEHICLE DEFENDANTS and the SINGLE VEHICLE UNITS DEFENDANTS that Plaintiff has specifically identified previously herein.

## 7. CAUSES OF ACTION

**Negligence and/or Gross Negligence**

7.01 Plaintiff incorporates all allegations contained above. Plaintiff further asserts that his injuries were caused by one or more acts of negligence and/or gross negligence on the part of Defendants. These include, but are not limited to the following:

7.02 **I-35 TOLLWAY OPERATIONS AND MAINTENANCE DEFENDANTS**

a. Failing to properly operate and/or maintain the I-35 roadway where this incident occurred;

b. Failing to properly maintain the roadway in order to discover any defects as they existed at the time of this incident;

c. Failing to discover any hazards or defects which existed at this time of incident;

d. Failing to inspect, or adequately and/or properly inspect, the roadway;

e. Failing to monitor, and/or timely monitor, the weather conditions that existed at the time of this incident;

f. Failing to adequately repair any defect which existed at the time of this incident;

g. Failing to post adequate warning signs on the roadway to warn of any hazards or defects of which the defendants had, or should have had, knowledge;

h. Failing to provide barriers that would have prevented this type of incident;

i. Failing to provide safeguards that would have prevented this type of incident;

j. Failing to de-ice the I-35 tollway prior to the time of the incident made the basis of this suit;

k. Failing to close the I-35 tollway because of the presence of ice on the tollway; and

l. Committing various acts and/or omissions of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

7.03 Specifically, the NTSB (National Transportation Safety Board) issued its preliminary report note that four hours before the crash, the weather station at Fort Worth Meacham International Airport had reported freezing rain and freezing mist. This airport is approximately three miles northwest of the crash site. Further, the report noted that more than two hours before the occurrence made the basis of this suit, NTE Mobility Partners Segments 3 had posted a message on a dynamic message sign that displayed the message "ICY CONDITIONS EXIST/PLEASE USE CAUTION" noting that this message was based on information from another earlier crash at

7.04 This evidence, along with other available evidence indicates that **ALL OPERATIONS AND MAINTENANCE DEFENDANTS** were aware of the icy and hazardous conditions hours before the collisions occurred and yet negligently and/or grossly negligently failed to prevent this foreseeable hazardous event.

**7.05 TRACTOR TRAILER AND/OR MULTI-VEHICLE DEFENDANTS**

a. Failing to maintain a safe speed;

b. Failing to maintain a proper and safe distance;

c. Failing to pay attention to the road and driving conditions;

d. Failing to monitor road and driving conditions;

e. Failing to operate their vehicle in a safe manner;

f. Failing to properly train driver employees;

g. Failing to properly supervise driver employees;

h. Failing to properly follow Federal Motor Safety Carrier Regulations; and

i. Committing various other acts of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

7.06 In addition, Plaintiff asserts the doctrine of ***Respondent Superior*** against the Tractor and/or Multi-Vehicle Defendants and would state that at the time of the occurrence of the act in question and immediately prior thereto, Defendants' drivers, Val Ernst, Joe Brent Duran, Hector Fernando Garcia Rodriguez, Charles Grant Bowman, Cody Williams, Devin Meek, and Steven Anthony Ridder were in the course and scope of their employment (as identified above) with Defendants J.B. HUNT TRANSPORT, INC., GG'S PRODUCE TRANSPORT, LLC, RICH TRANSPORT, LLC, SUN VALLEY, INC., GO TO LOGISTICS INC., THELIN RECYCLING COMPANY, LLC, and NEW PRIME, INC.

7.07 In addition and/or in the alternative, at the time of the occurrence of the act in question and immediately prior thereto, Defendants' drivers, Val Ernst, Joe Brent Duran, Hector Fernando Garcia Rodriguez, Charles Grant Bowman, Cody Williams, Devin Meek, and Steven Anthony Ridder were engaged in the furtherance of business for their various employer defendants: J.B. HUNT TRANSPORT, INC., GG'S PRODUCE TRANSPORT, LLC, RICH TRANSPORT, LLC, SUN VALLEY, INC., GO TO LOGISTICS, INC., THELIN RECYCLING COMPANY, LLC, and NEW PRIME, INC.

7.08 Also, in addition and/or in the alternative, at the time of the occurrence of the act in question and immediately prior thereto, Defendants' drivers, Val Ernst, Joe Brent Duran, Hector Fernando Garcia Rodriguez, Charles Grant Bowman, Cody Williams, Devin Meek, and Steven Anthony Ridder were engaged in accomplishing a task for which Defendants' J.B. HUNT TRANSPORT, INC., GG'S PRODUCE TRANSPORT, LLC, RICH TRANSPORT, LLC, SUN VALLEY, INC., GO TO LOGISTICS, INC., THELIN RECYCLING COMPANY, LLC, and NEW PRIME, INC. employed them.

The above and foregoing acts and/or omissions were a proximate cause of Plaintiff's damages and were committed by these Defendants.

**7.09 SINGLE VEHICLE UNITS**

a. Failing to maintain a safe speed;

b. Failing to maintain a proper and safe distance;

c. Failing to pay attention to the road and driving conditions;

d. Failing to monitor road and driving conditions;

e. Failing to operate their vehicle in a safe manner;

f. Failing to properly follow the Texas Transportation Code; and

g. Committing various other acts of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

7.10 The incident described above and the injuries sustained by the Plaintiff were also proximately caused by various acts, wrongs and/or omissions on the part of Defendants named above and each and all of these acts, wrongs and/or omissions amounted to the negligence and/or gross negligence on the part of Defendants.

**8. DAMAGES**

8.01 As a direct and proximate result of this occurrence, Plaintiff Paul Richard Genualdo has suffered severe and debilitating personal injuries, bodily injury, physical impairment, pain, suffering, and mental anguish. Plaintiff has suffered and seeks the following damages:

a. Medical Expenses: Plaintiff has incurred medical expenses in the past. These expenses were incurred for reasonable and necessary care and treatment of his injuries. The charges incurred for reasonable and were the usual and customary charges for the same or similar services at the time and place rendered. Plaintiff also expects to incur medical expenses in the future in an amount within the Jurisdictional limits of this court;

b. Loss wages and Loss of Earning of capacity: Plaintiff has suffered lost wages in the past. Plaintiff will also suffer a loss of earning capacity in the future;

c. Physical Pain and Suffering: Plaintiff has endured severe physical pain and suffering in the past and will continue to endure severe physical pain and suffering in the future;

d. Mental anguish: Plaintiff has endured severe mental anguish in the past and will continue to endure severe mental anguish in the future; and

e. Physical impairment: Plaintiff has suffered physical impairment in the past and will suffer physical impairment in the future.

By reason of the above and foregoing, Plaintiff has been damaged in a sum within the jurisdictional limits of this Court, for which Plaintiff hereby sues.

**9. INTEREST**

9.01 Plaintiff further pleads that he is entitled to pre-judgment interest and post-judgment interest at the highest rate allowed by law.

**10. JURY DEMAND**

10.01 Pursuant to Rule 216, TEXAS RULES OF CIVIL PROCEDURE, Plaintiff requests a trial by jury.

**11. PRAYER**

11.01 Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final determination of these causes of action, Plaintiff receive judgment against Defendants, jointly and severally, awarding Plaintiff as follows:

a. Actual damages as alleged herein, in an amount within the jurisdictional limits of this Court;

b. Punitive and/or exemplary damages as alleged in this pleading;

c. Pre-judgment interest at the maximum amount allowed by law;

d. Post-judgment interest at the maximum rate allowed by law;

e. Costs of court; and

f. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*__/s/ John M. Groce, Jr.__*
**JOHN M. GROCE, JR.**
State Bar No. 00793860
Email: JGroce@AndersonInjuryLaw.com
**COLE D. MCNIEL**
State Bar No. 24116752
Email: Cole@AndersonInjuryLaw.com
**ANDERSON INJURY LAWYERS**
1310 W. El Paso Street, Fort Worth, TX 76102
Tel: (817) 294-1900 Fax: (817) 294-3113
**ATTORNEYS FOR PLAINTIFF**
**PAUL RICHARD GENUALDO**

# EXHIBIT B-11

**MASTER CAUSE NO. 153-000000-22**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH 35W** | § § § § § | **IN THE DISTRICT COURT** <br> **TARRANT COUNTY, TEXAS** <br> **153RD JUDICIAL DISTRICT** |

**"NOT APPLICABLE TO ALL ACTIONS"**

**CAUSE NO. 352-327055-21**

| | | |
|---|---|---|
| **JUAN GERRED and CINDY GERRED, Individually, as Representatives of the Estate of TIFFANY GERRED, Deceased, and as Next of Friends of E.C., A Minor Child, and DIEGO CONTRERAS, As Next of Friend of E.C., A Minor Child,** <br><br> ***Plaintiffs*,** | § | **IN THE DISTRICT COURT** |
| **vs.** | § | **TARRANT COUNTY, TEXAS** |
| **FEDEX GROUND PACKAGE SYSTEM INC., NOLAN TRANSPORTATION GROUP LLC, ISO RIZO INC., SIMON EXPRESS LLC, ENERGY TRUCKING LLC, JEAN MARIE SAINT LOT, FRANTZ CLEMENT, NTE MOBILITY PARTNERS LLC, NTE MOBILITY PARTNERS SEGMENTS 3 LLC, CINTRA US SERVICES LLC, CINTRA HOLDING US CORP D/B/A CINTRA US CORP, NORTH TARRANT INFRASTRUCTURE, LLC, WEBBER, LLC, FERROVIAL CONSTRUCTION US CORP., FERROVIAL HOLDING US CORP., NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC, NTE MOBILITY PARTNERS HOLDING, LLC, CINTRA NTE LLC, CINTRA TEXAS CORP., CINTRA NTE MOBILITY PARTNERS SEGMENTS 3 LLC, CINTRA TOLL SERVICES, LLC** | § | |

| | | |
|---|---|---|
| **RYDER TRUCK RENTAL, INC., RYDER SYSTEM, INC., REDMOND MINERALS, INC., REDMOND, INCORPORATED, ENVIROTECH SERVICES, INC., AND SOUTHWEST ENVIROTX PARTNERS, LLC,** | § § § § § § § | |
| ***Defendants.*** | § | **352ND JUDICIAL DISTRICT** |

**GERRED FAMILY PLAINTIFFS' FIFTH AMENDED PETITION**

Plaintiffs Juan Gerred and Cindy Gerred, Individually, as Representatives of the Estate of Tiffany Gerred, Deceased, and as Next Friends of E.C., a Minor Child, and Diego Contreras As Next Friend of E.C., a Minor Child (hereinafter collectively referred to as the "Gerred Family"), file this civil suit against FEDEX GROUND PACKAGE SYSTEM INC., NOLAN TRANSPORTATION GROUP LLC, ISO RIZO INC., SIMON EXPRESS LLC, ENERGY TRUCKING LLC, JEAN MARIE SAINT LOT, FRANTZ CLEMENT, NTE MOBILITY PARTNERS LLC, NTE MOBILITY PARTNERS SEGMENTS 3, LLC, CINTRA US SERVICES LLC, CINTRA HOLDING US CORP D/B/A CINTRA US CORP, NORTH TARRANT INFRASTRUCTURE, LLC, WEBBER, LLC, FERROVIAL CONSTRUCTION US CORP., FERROVIAL HOLDING US CORP., NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC, NTE MOBILITY PARTNERS HOLDING, LLC, CINTRA NTE LLC, CINTRA TEXAS CORP., CINTRA NTE MOBILITY PARTNERS SEGMENTS 3 LLC, CINTRA TOLL SERVICES, LLC, RYDER TRUCK RENTAL, INC., RYDER SYSTEM, INC., REDMOND MINERALS, INC., REDMOND, INCORPORATED, ENVIROTECH SERVICES, INC., AND SOUTHWEST ENVIROTX PARTNERS, LLC for injuries and damages arising out

of the catastrophic motor vehicle crash that occurred on February 11, 2021, tragically killing Tiffany Gerred.

## I. SUMMARY

1. On February 11, 2021, private for-profit corporations who were legally and contractually responsible for the operation and maintenance of the Toll Lanes of Interstate 35W kept the toll gates open beckoning toll paying drivers to travel on the icy roadway which Defendants knew went untreated for the previous 44 hours, with below freezing temperatures for the prior 36 hours and during one of the worst winter ice storms to ever hit the D/FW area. In lockstep, trucking companies and their professional drivers kept the wheels rolling and ignored federal regulations and industry standards instructing them to park or slow to a crawl. A classic case of profits over safety. The result was one of the worst tragedies in D/FW history—a 130+ car pileup, six fatalities and a litany of injured victims.

**Tiffany's Vehicle**

2. It took several hours of clearing away all the other crushed vehicles before the First Responders were finally able to locate Tiffany Gerred and extract her body and vehicle from the carnage. Tiffany was a wonderful mother to her 11-year-old daughter and was the beloved daughter to Plaintiffs Juan and Cindy Gerred. She was an amazing person, friend and co-worker to all that knew her. Not a day goes by that the Gerred Family does not think of Tiffany and the utterly devastating loss their family suffered on that fateful day.

## II. DISCOVERY CONTROL PLAN

3. Discovery shall be conducted according to the MDL Court's Case Management Orders (Level 3).

## III. PARTIES

### A. GERRED FAMILY PLAINTIFFS

4. Plaintiffs Juan Gerred and Cindy Gerred are the surviving parents of Tiffany Gerred and are the grandparents and partial custodians of Tiffany Gerred's now 14-year-old daughter, E.C., a minor child. Juan and Cindy Gerred are residents and citizens of Texas. The last three digits of Juan Gerred's Texas Driver's License Number are 143 and the last three digits of his Social Security Number are 969. The last three digits of Cindy Gerred's Texas Driver's License Number are 419 and the last three digits of her Social Security Number are 011.

5. Plaintiff Diego Contreras is the natural biological father and partial custodian of E.C., a minor child, and is a resident and citizen of Texas. The last three digits of Diego Contreras' Texas Driver's License Number are 883 and the last three digits of his Social Security Number are 394.

**B. FEDEX TRUCK DEFENDANTS**

6. **Defendant FedEx Ground Package System Inc.** (hereinafter "FedEx") is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of Tiffany Gerred. Defendant FedEx does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant FedEx operates under USDOT number 265752 and under Motor Carrier number 179059. This Defendant may be served with process through its registered agent, CT Corporation system at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. This Defendant has entered an appearance herein.

7. **Defendant Nolan Transportation Group LLC** (hereinafter "Nolan" or "Nolan Transportation") is foreign limited liability company who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of Tiffany Gerred. Defendant Nolan does substantial business in the State of Texas, including shipping, brokering, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Nolan Transportation operates under USDOT number 2236769 and under Motor Carrier number 567093. As a condition to operate under its USDOT number, Nolan Transportation has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. Pursuant to its BOC-3 filing, Nolan Transportation has designated Interstate Commerce Authority Inc. as its blanket agent for service of process and in Texas may be served with this lawsuit by serving its agent, Jeffrey P. Fultz, 5625 Cypress Creek Pkwy, 6th Floor, Houston, Texas 77069. This Defendant has entered an appearance herein.

8. **Defendant Iso Rizo Inc**. (hereinafter "Iso Rizo") is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of Tiffany Gerred. Defendant Iso Rizo does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Iso Rizo operates under USDOT number 3182525 and under Motor Carrier number 1053943. As a condition to operate under its USDOT number, Iso Rizo has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. Pursuant to its BOC-3 filing, Iso Rizo has designated #1 A+ Agents of Process Inc. as its blanket agent for service of process and in Texas may be served with this lawsuit by serving its agent John C. Sims, 1205 Broadway, Lubbock, Texas 79408. This Defendant has entered an appearance herein.

9. **Defendant Simon Express LLC** (hereinafter "Simon Express") is a foreign limited liability company who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of Tiffany Gerred. Defendant Simon Express does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Simon Express operates under USDOT number 2936569 and under Motor Carrier number 992361. As a condition to operate under its USDOT number, Simon Express has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. Pursuant to its BOC-3 filing, Simon Express has designated #1 A+ Agents of Process Inc. as its blanket agent for service of process and in Texas may be served with this lawsuit by serving its agent John C. Sims, 1205 Broadway, Lubbock, Texas 79408. This Defendant has entered an appearance herein.

10. **Defendant Energy Trucking LLC** (hereinafter "Energy Trucking") is a foreign limited liability company who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of Tiffany Gerred. Defendant Energy Trucking does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Energy Trucking operates under USDOT number 2822651 and under Motor Carrier number 942014. As a condition to operate under its USDOT number, Energy Trucking has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. Pursuant to its BOC-3 filing, Energy Trucking has designated #1 A+ Agents of Process Inc. as its blanket agent for service of process and in Texas may be served with this lawsuit by serving its agent John C. Sims, 1205 Broadway, Lubbock, Texas 79408. This Defendant has entered an appearance herein.

11. **Defendant Jean Marie Saint Lot** (hereinafter "Saint Lot") is an individual who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of Tiffany Gerred. Said Defendant currently resides in the State of Florida. This Defendant is believed to be staying and/or residing at 1271 Woodman Way, Orlando, FL 32818-6662. Hence, pursuant to Tex. Civ. Prac. & Rem. Code § 17.061, et. seq., service of process on Defendant Jean Marie Saint Lot may be achieved by serving process on his agent for service of process, the chairman of the Texas Transportation Commission, 125 E 11th St., Austin, Texas 78701, who, after being served, shall mail a copy of the process, and notice that the process has been served on the chairman, to Defendant at his residence: 1271 Woodman Way, Orlando, FL 32818-6662. This Defendant has entered an appearance herein.

12. **Defendant Frantz Clement** (hereinafter "Clement") is an individual who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of Tiffany Gerred. Said Defendant currently resides in the State of Florida. This Defendant is believed to be staying and/or residing at 1957 Ibis Bay Ct., Ocoee, FL 34761-9119. Hence, pursuant to Tex. Civ. Prac. & Rem. Code § 17.061, et. seq., service of process on Defendant Frantz Clement may be achieved by serving process on his agent for service of process, the chairman of the Texas Transportation Commission, 125 E 11th St., Austin, Texas 78701, who, after being served, shall mail a copy of the process, and notice that the process has been served on the chairman, to Defendant at his residence: 1957 Ibis Bay Ct., Ocoee, FL 34761-9119. This Defendant has entered an appearance herein.

13. **Defendant Ryder Truck Rental, Inc.** (herein after "Ryder Truck Rental") is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of Tiffany Gerred. Defendant Ryder Truck Rental, Inc. does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Ryder Truck Rental, Inc. operates under USDOT number 16130. Ryder Truck Rental, Inc. has designated Corporate Creations Network, Inc. as its registered agent for service of process and in Texas may be served with this lawsuit by serving Corporate Creations Network, Inc. at 5444 Westheimer #1000, Houston, TX 77056. This Defendant has entered an appearance herein.

14. **Defendant Ryder System, Inc**. (herein after "Ryder System") is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that violently rear-ended the vehicle of

Tiffany Gerred. Defendant Ryder System, Inc. does substantial business in the State of Texas, including shipping, brokering, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Ryder System, Inc. operates under USDOT number 221785. Defendant Ryder System, Inc. has designated Corporate Creations Network, Inc. as its registered agent for service of process and in Texas may be served with this lawsuit by serving Corporate Creations Network, Inc. at 5444 Westheimer #1000, Houston, TX 77056. This Defendant has entered an appearance herein.

## C. Roadway Defendants

15. **Defendant NTE Mobility Partners LLC** is a limited liability company with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. Indeed, this Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and hence said Defendant is deemed to be a citizen of Texas. This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. This Defendant has entered an appearance herein.

16. **Defendant NTE Mobility Partners Segments 3 LLC** is a limited liability company with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. Indeed, this Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and hence said Defendant is deemed to be a citizen of Texas. This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. This Defendant has entered an appearance herein.

17. **Defendant Cintra US Services LLC** is a Texas limited liability company with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service, Guillermo Sanguesa, 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759. This Defendant has entered an appearance herein.

18. **Defendant Cintra Holding US Corp d/b/a Cintra US Corp**. is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. This Defendant has entered an appearance herein.

19. **Defendant North Tarrant Infrastructure, LLC,** is a Texas limited liability company with its principal office and principal place of business located in Tarrant County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. This Defendant has entered an appearance herein.

20. **Defendant Webber, LLC** is a Texas limited liability company with its principal office and principal place of business located in Montgomery County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. This Defendant has entered an appearance herein.

21. **Defendant Ferrovial Agroman US Corp a/k/a Ferrovial Construction US Corp.** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered

agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.** This Defendant has entered an appearance herein.

22. Defendant Ferrovial Agroman US Corp a/k/a Ferrovial Construction US Corp is corrected to Ferrovial Construction US Corp.

23. **Defendant Ferrovial Holding US Corp**. is a Delaware corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.** This Defendant has entered an appearance herein.

24. **Defendant NTE Mobility Partners Segments 3 Holding, LLC** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. This Defendant has entered an appearance herein.

25. **Defendant NTE Mobility Partners Holding, LLC** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. This Defendant has entered an appearance herein.

26. **Defendant Cintra NTE LLC** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of

Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. This Defendant has entered an appearance herein.

27. **Defendant Cintra Texas Corp** is a Delaware corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas through C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. This Defendant has entered an appearance herein.

28. **Defendant Cintra NTE Mobility Partners Segments 3 LLC** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, TX 78759. This Defendant has entered an appearance herein.

29. **Defendant Cintra Toll Services, LLC** is a foreign limited liability company with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. This Defendant has entered an appearance herein.

**D. DE-ICING MANUFACTURER DEFENDANTS**

30. **Defendant Redmond Minerals, Inc**. is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 475 W. 910

S., Heber City, UT 84032. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C., at 322 E. Gateway Drive, Suite 201, Heber City, UT 84032. This Defendant has entered an appearance herein.

31. **Defendant Redmond, Incorporated** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant is qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs' understanding that their home office address is 475 W. 910 S., Heber City, UT 84032. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C., at 322 E. Gateway Drive, Suite 201, Heber City, UT 84032. This Defendant has entered an appearance herein.

32. **Defendant EnviroTech Services, Inc**. is a foreign corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, TX 78701. This Defendant has entered an appearance herein.

33. **Defendant Southwest Envirotx Partners, LLC** is a domestic limited liability company with its principal place of business located in Travis County, Texas. This Defendant may be served with process through its registered agent, Clay C. Speer, 10899 Deer Canyon Rd., Jonestown, TX 78645. This Defendant has entered an appearance herein.

34. Plaintiffs specifically invoke Rule 28 of the Texas Rules of Civil Procedure and assert this lawsuit against whatever person, business or entity that was doing business under the assumed or common name "Ice Slicer NM" and/or whatever person business or entity that manufactured, sold, marketed and/or distributed the "ice slicer" product that was used by the

Roadway Operations and Maintenance Defendants to allegedly pre-treat the roadway where this collision occurred. Plaintiffs further assert this lawsuit against whatever person, business or entity that was doing business under the assumed or common name “Redmond,” “Envirotech,” “Envirotx” and/or whatever person business or entity that manufactured, sold, marketed and/or distributed the “ice slicer” product that was allegedly used by the Roadway Operations and Maintenance Defendants to pre-treat the roadway where this collision occurred. Additionally, Plaintiffs assert this lawsuit against whatever person, business or entity that was doing business under the assumed or common name “NTE,” “Cintra,” “Webber,” “Ferrovial,” “North Tarrant Infrastructure” and/or whatever person business or entity that was responsible, in whole or in part, directly or indirectly, for the operations and maintenance (including de-icing and pretreatment) of the roadway where this collision occurred.

35. In the event that any of the parties identified above are misnamed or misspelled or not included herein, it is the contention of Plaintiffs that such was a “misnomer” and/or such parties are/were “alter egos” of parties named herein.

## IV. Venue & Jurisdiction

36. Venue is proper with this Court, pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1), as Tarrant County is the county where all or a substantial part of the events or omissions giving rise to the claims occurred. Venue is also proper with this Court, pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(3), as Tarrant County is the principal place of business for Defendant NTE Mobility Partners LLC and Defendant NTE Mobility Partners Segments 3 LLC.

37. This Court has jurisdiction over this matter as Plaintiffs seek damages well in excess of the minimal jurisdictional limits of this Court. Additionally, Plaintiffs and Defendants NTE Mobility Partners LLC and Defendant NTE Mobility Partners Segments 3 LLC are citizens of Texas, and hence there is no complete diversity of citizenship. The non-natural FedEx Truck Defendants who are non-citizens of Texas all have consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers and designating an agent for service of process in Texas. Designation of such an agent operates as an express consent to personal jurisdiction. *Knowlton v. Allied Van Lines*, 8th Cir., 900 F.2d 1196, 1200 (1989)("This designation of an agent, in accordance with federal law, also operates as consent to the personal jurisdiction of the [forum] courts."); *see also Paz v. Castellini Co., LLC*, No. B-07-036, 2007 U.S. Dist. LEXIS 83028, at *19 (S.D. Tex. 2007)(Approving of Knowlton but limiting its designation jurisdiction to causes of action that, as here, arose in Texas). Moreover, said Defendants have established minimum contacts in Texas by driving, shipping, brokering carrying, transporting, traversing, and/or delivering goods in and through the State of Texas. Further, all Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas. Therefore, this Court has specific personal jurisdiction over all Defendants. In addition, all Defendants have had continuous and systematic contacts with Texas by their physical presence in Texas, marketing or shipping to Texas residents, recruiting Texans as employees or contractors and in fact utilizing Texans to conduct their business, maintaining financial ties to Texas, and conducting business with Texans through an interactive website, thus making them at home in Texas and invoking general personal jurisdiction over them. Accordingly, removal to federal court would be improper and

sanctionable because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

## V. Additional Jurisdictional Facts As To Defendant FedEx

38. FedEx Ground operates alongside its affiliated and joint venturing company, FedEx Express, maintaining joint facilities for recruiting, hiring, and training employees, receiving and dispatching packages, joint use of an interactive website, and joint marketing efforts targeted at residents of Texas all geared toward and intended to continuously and systematically avail itself of the benefits of the Texas market and to generate substantial revenues from the Texas market. On a daily basis, FedEx enters into thousands and thousands of contracts in the state of Texas with Texas citizens both private and corporate. Indeed, each and every day, thousands upon thousands of Texans complete a shipping label electing to ship a package via FedEx, whereby FedEx is contracting to ship and deliver that package for profit. FedEx maintains an extensive physical presence in Texas with millions of square feet of operational real estate, worth millions and millions of dollars, if not hundreds of millions of dollars, blanketing Texas such that FedEx engages in activities in Texas similar in frequency and nature to the activities of local businesses. Indeed, FedEx owns, operates and/or occupies a vast network of operational real estate facilities throughout Texas, including 3 major hubs in Texas along with at least 35 other vast stations and substations, occupying millions and millions of square feet in Texas and valued at tens of millions of dollars. Beyond its hubs, stations and substation, FedEx maintains thousands of locations throughout Texas servicing the Texas market. FedEx also uses partnerships with retail outlets to serve as collection and distribution points for FedEx to serve the Texas market. Over twenty collection and distribution points may be found within a one-mile radius of the Tarrant County

courthouse. At and through its operational real estate facilities in Texas, FedEx likewise employs tens of thousands of Texans and is actively recruiting Texans for employment on a daily basis. Similarly, at any given time, FedEx has hundreds and hundreds, if not thousands, of vehicles and trailers situated in Texas and/or on the public roads in Texas. FedEx uses this broad network to solicit package shipping business to and from Texas residents and in fact engages in such shipping business, garnering hundreds of millions of dollars in revenue from serving the Texas market.

39. FedEx maintains an interactive website dedicated to the recruitment of Texas residents as employees and has thousands of employees throughout Texas. FedEx also aggressively recruits contractors to drive its FedEx Ground delivery trucks and trailers. Separate from the recruiting website, FedEx maintains an interactive website through which shipping customers can evaluate, select, and hire FedEx as a shipper for a package. The entire consumer transaction can be completed online by a Texas resident, who can print a shipping label, and either deposit the package at one of the 1,000-plus collection points in Texas or merely leave it at a business or residence for retrieval. Further, through FedEx's interactive website, Texans can track in real-time their outbound and incoming FedEx shipments. FedEx utilizes its interactive website to engage with, target and market to Texas citizens, both private and corporate. Additionally, FedEx has an online presence on social media in the state of Texas through which it engages with, targets and markets to Texas citizens, both private and corporate.

40. FedEx's huge investment in operational real estate facilities to serve Texas results in FedEx paying substantial real estate property taxes as well as personal property taxes. It has also given FedEx reasons to frequently avail itself of the Texas Court system with property tax litigation. Beyond tax lawsuits, FedEx has consented to and/or been found subject to Texas jurisdiction and defended itself in thousands of cases in Texas over the past decade. Nearly 100

such lawsuits are ongoing defended by a small collection of Texas law firms, including many defended by FedEx's same counsel herein based in Texas.

41. Defendant FedEx distributes, via their trucks and trailers, all over the United States, including a massive amount of ground packages per day with their trucks and trailers operating on the streets and highways of the state of Texas. Indeed, Defendant FedEx distributes in Texas nearly as many or more ground packages than any other company and certainly well more than any other Texas based company. Defendant FedEx does extensive marketing of its ground package transport for-profit business to Texas consumers and citizens, including to private citizens and corporate citizens through its marketing materials, print advertisements, billboards along the streets and highways in Texas, electronic and online, on television in the living rooms of Texas citizens, and direct marketing to Texas corporate citizens to use their ground packaging system trucks and trailers to move packages around the state of Texas and across state lines as well. FedEx markets its ground transportation service all over the state of Texas, distributes packages via its ground transportation on the streets and highways of the state of Texas in tens of thousands of homes and corporate businesses in the state of Texas. FedEx conducts substantial business in the state of Texas, and moreover, FedEx has an intent, both present and past, to serve the ground transportation market in Texas regarding the shipping of goods and packages all over the state and across state lines. In fact, FedEx is in the business of shipping goods and packages over the streets and highways across the state of Texas with the ultimate goal of packages and goods reaching and/or servicing Texas consumers.

42. At all times relevant hereto, Defendant FedEx distributes goods and packages across the state of Texas, but first the trucks and trailers transferring same from out of state stop in one of its many Texas business hubs—including its hub here in Fort Worth, Texas. As previously

noted, FedEx maintains expansive and extensive operational real estate in the state of Texas, including at least twenty (20) business centers located in and around the DFW Metroplex alone. FedEx operates major business centers in Fort Worth (5 locations), Arlington (2 locations), Dallas (2 locations), Mesquite, Irving (4 locations), Addison, Grand Prairie, Garland, Lancaster, Plano (2 locations), Tyler, Hurst, and many, many more outside of the DFW Metroplex. FedEx even operates out of Walgreens, Wal-Mart, Office Depot, Albertsons and Dollar General stores in the state of Texas to serve Texas citizens and consumers.

43. FedEx maintains an "Office Corporate Headquarters" in the DFW area in Plano, at 7900 Legacy Drive which features a 4-story Mosaic by Dallas' own award-winning artist Sonia King, and FedEx welcomed approximately 1200 FedEx employees to its new extensive campus in the fall of 2015. FedEx owns, operates and maintains another huge corporate campus headquarters in the city of Houston. Each of these huge campuses operates FedEx's business, employs Texas citizens, pays Texas taxes, occupies Texas land, buys and sells to Texas consumers, and is a hub for the trucks and trailers it puts on the streets and highways of the state of Texas.

44. At all times relevant hereto, FedEx maintains constant contacts with the state of Texas by marketing, delivering and selling its services and products to the citizens of Texas in various outlets through various distributors. Its deliveries of goods and packages through its own Texas facilities and offices are delivered via the stream of commerce in FedEx delivery trucks and via their FedEx trailers.

45. At all times relevant hereto, Plaintiffs' injuries, harms and losses, and this lawsuit arose from and were related to FedEx's many, many extensive contacts with Texas, FedEx's business hubs, stations, substations, and facilities in Texas, particularly in Fort Worth, as the incident giving rise to this suit was the result of Defendant FedEx's specific contacts in Tarrant

County, Texas and surrounding areas. Defendant FedEx has continuous and systematic contacts with the state of Texas; therefore, this court has general jurisdiction over Defendant FedEx.

46. At all times relevant hereto, Defendant FedEx conducts expansive and extensive business in the state of Texas. The court's assumption of jurisdiction over Defendant FedEx will not offend traditional notions of fair play and substantial justice and will be consistent with the constitutional requirements of due process.

47. At all times relevant hereto, Defendant FedEx has done extensive and expansive business in the state of Texas for the purposes of making the company massive amounts of profit. FedEx does this business in Texas every day, every week, all year long and has for decades. FedEx intends to serve the Texas market with shipping services by ground through its extensive and expansive corporate headquarters, offices, outlets, hubs and operational real estate. FedEx has established ways and means of communicating by and between FedEx and the ultimate Texas consumer citizens of Texas. FedEx takes complaints, questions, status requests, texts, phone calls, emails and updates through its vast offices, outlets, hubs and operational real estate in Texas. All of the trailers shipping goods throughout the state of Texas are emblazoned with the FedEx logo, so citizens of Texas who are driving on the roads and highways of Texas are exposed to what they would reasonably believe to be a Texas business. The FedEx logo displayed on its trailers and delivery vehicles further serve to market and promote FedEx's brand and services to Texans and the Texas market while likewise furthering FedEx's revenues from the Texas market.

48. By virtue of its extensive and expansive business ties with Texas, directly targeting private citizens and corporate citizens in Texas, distributing goods and packages all over the state of Texas, through their own business hubs and campuses, maintaining an extensive customer base in Texas, soliciting business in Texas through their online platforms and social media presence,

sending representatives to Texas for purposes of doing business and making a profit, FedEx has purposefully availed themselves of the privilege of conducting activities in Texas, and such contacts have been, and still are, more than sufficient to establish minimum contacts and give this court personal jurisdiction over Defendants. Without doubt, FedEx enjoys substantial economic benefits in the state of Texas.

49. The Court has personal jurisdiction over FedEx as they are engaged in business in Texas and have purposefully availed themselves of the privilege of conducting business in Texas, and more specifically the Dallas-Fort Worth area, including having their trucks and trailers all over the roads in Texas, through their Texas business hubs, offices, and campuses, with their logo on the trucks and trailers and business hubs, offices and campuses, their marketing materials such as photographs, billboards, print materials etc. FedEx has entered into contracts in Texas with Texas businesses, they have paid taxes to the Texas State Comptroller's office, they have secured insurance in the state of Texas. Continuously and systematically since the inception of their business in Texas, FedEx has targeted and marketed their services to Texas citizens, private and corporate. Continuously and systematically, FedEx has contracted with Texas businesses for the purpose of advertising, marketing, promoting and selling their services to Texas citizens. Continuously and systematically, they have contracted with residents and businesses of Texas who seek, buy and receive their services that are marketed, advertised and sold in and around all major cities in the state of Texas. These continuous and systematic contacts with Texas are so substantial that FedEx actually has put Texas business's logos on their own promotional materials in Texas. Further, the potential claims in this case arise from or relate to the FedEx contacts with Texas such that those contacts with Texas are substantially connected to the operative facts of this proceeding.

50. By virtue of these acts, among others, and the fact that FedEx committed a tort in the state of Texas by virtue of its trucks and trailers on the roads of Texas, Defendant FedEx has purposely availed itself and purposely establishing minimum contacts with Texas and the Texas Long Arm statute applies as to both specific jurisdiction, as it put goods and services and products into the stream of commerce in Texas for profit to the company, as well as systematic and continuous contacts to invoke general jurisdiction.

51. In support of the Court's jurisdiction over Defendant FedEx, Plaintiffs further incorporate by reference, as if fully set forth here, all factual allegations asserted and set forth below and within Plaintiffs' Petition herein.

## VI. Additional Jurisdictional Facts As To Redmond Defendants

52. Defendant Redmond Minerals, Inc. and Defendant Redmond, Inc., are sometimes referred to collectively as the "**REDMOND DEFENDANTS**." The REDMOND DEFENDANTS are subject to personal jurisdiction in Texas courts. The REDMOND DEFENDANTS sold thousands of tons of de-icing and/or anti-icing products, including but not limited to its "Ice Slicer Elite" product with the expectation that the products would be purchased and used in Texas.

53. The REDMOND DEFENDANTS purposely directed their activities towards residents of Texas by delivering its products to the ultimate consumers in Texas either directly or through a Texas distributor with the REDMOND DEFENDANTS' knowledge and intent that the products would be used in Texas. Plaintiffs' claims arise out of or relate to the use of the REDMOND DEFENDANTS de-icing and/or anti-icing products, including but not limited to its "Ice Slicer Elite" product sold to Texas customers for use in Texas.

54. The REDMOND DEFENDANTS' activities in Texas amount to doing business in Texas under the Texas Long-Arm Statute, including by (1) contracting by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in the state; and (2) committing a tort in whole or in part in this state. See Tex. Civ. Prac, & Rem. Code §17.042.

55. The REDMOND DEFENDANTS partner with EnviroTech, who has their principal place of business located in Travis County, Texas to serve the Texas market. The REDMOND DEFENDANTS' Chief Financial Officer and Secretary, Kenneth Taylor, testified under oath that he did not disagree with representations of EnviroTech's website that EnviroTech and REDMOND DEFENDANTS came together for a "partnership," and "for the last 20 years, ESI EnviroTech has taken the Ice Slicer line of products throughout the country, raising the standard for road salt for the entire industry."

56. Taylor admitted that between 2019 and 2021, the REDMOND DEFENDANTS' records showed it sold more than 3000 tons of its Ice Slicer product for delivery to Texas customers. Taylor was aware that the REDMOND DEFENDANTS sold Ice Slicer Elite to EnviroTech for shipment to Texas through REDMOND DEFENDANTS' sales records that showed where the product was shipped. Taylor acknowledged that the REDMOND DEFENDANTS expected to make money off these shipments to Texas.

57. The REDMOND DEFENDANTS produced invoices that show multiple shipments of "Ice Slicer Elite" to Envirotx. Indeed, the REDMOND DEFENDANTS produced 89 invoices showing at least 87 sales to Envirotx from July of 2019 through December of 2021. Forty-seven of those invoices listed reflected that the orders were to "Ship to" Southwest Envirotx' Scott Speer. Another 39 just listed "Envirotx" as the "ship to." One listed Envirotx, but gave EnviroTech's Greely, Colorado, "bill to" address. While those invoices generally do not include the ship to address, emails

between Redmond and EnviroTech show the "Delivery Contact" usually as "Scott Speer – 512-779-4055," and occasionally (but rarely) as Troy Geyer - 512-845-7982 or Clay Speer - 972-998-7315. Given the fact that 512 is an Austin area code, and 972 is Dallas, and Scott Speer is listed on Southwest Envirotx's website as "CEO Texas Sales," these invoices and emails show that the REDMOND DEFENDANTS were fully aware that they were serving the Texas market through EnviroTech.

58. The REDMOND DEFENDANTS not only could have foreseen its product would end up in Texas, they knew its product was actually serving the Texas market.

## VII. Claim for Monetary Relief

59. Plaintiffs' actual damages are catastrophic and far in excess of the jurisdictional minimums of this Court. The monetary amounts which represent fair and reasonable compensation for Plaintiffs' damages are for the jury to decide; however, as required by Texas Rule of Civil Procedure 47(c), Plaintiffs state that they will ask the jury to consider monetary relief well in excess of $100,000,000 to ensure that a loud and clear message is sent to the Defendants that Tarrant County will not tolerate corporate giants placing profits over our people.

## VIII. Categories of Defendants

60. The terms **"FedEx Truck"** and "**FedEx Truck Defendants**" collectively refers to Defendants FedEx, Nolan, Iso Rizo, Simon Express, Energy Trucking, Jean Marie Saint Lot, Frantz Clement, Ryder Truck Rental, Inc. and Ryder System, Inc. At all relevant times, the FedEx Truck Defendants were collectively operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicles involved in this collision and were required to observe all commercial motor carrier safety rules and regulations.

61. The term "**Roadway Defendants**" (or sometimes **"NTE Defendants"**) collectively refers to Defendants NTE Mobility Partners LLC, NTE Mobility Partners Segment 3 LLC, NTE Mobility Partners Segments 3 Holding, LLC, NTE Mobility Partners Holding, LLC, Cintra US Services, LLC, Cintra Holding US Corp. d/b/a Cintra Us Corp., Cintra NTE LLC, Cintra Texas Corp., Cintra NTE Mobility Partners Segments 3, LLC, Cintra Toll Services, LLC, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp., and Ferrovial Holding US Corp. At all relevant times, the Roadway Defendants, were responsible for operating and maintaining the toll lanes where this collision occurred.

62. The term "**De-Icing Manufacturer Defendants**" collectively refers to Redmond Minerals, Inc., Redmond, Incorporated, EnviroTech Services, Inc., and Southwest Envirotx Partners, LLC. At all relevant times, the De-Icing Manufacturer Defendants were responsible for the design, manufacture, marketing, sale and/or distribution of the de-icing products used by the Roadway Defendants to treat the toll lanes where this collision occurred.

## IX. Facts

### A. Summary of Facts

63. The Gerred Family Plaintiffs bring this civil action to recover the significant harms, substantial losses and catastrophic damages proximately caused by the Defendants' negligence, negligent undertaking, negligence per se, gross negligence and other actions which resulted in the wrongful death of Tiffany Gerred.

64. On Thursday, February 11, 2021, at approximately 6:24a.m., Tiffany Gerred was tragically killed in a horrific crash as a direct and proximate result of the Defendants' negligence, negligent undertaking, negligence per se, gross negligence and other wrongful actions. That

fateful morning, Tiffany was driving to work and was travelling in the southbound Toll Lanes of I35 West in Fort Worth, Tarrant County, Texas. A multi-vehicle pileup occurred in front of Tiffany near downtown Fort Worth as a result of the Roadway Defendants utter failure to properly pretreat the roads, to properly monitor the roadway and weather conditions, to properly and promptly deploy the resources to ensure the Toll Lanes were safe and free from ice, and their decision to place profits over people by keeping the Toll Lanes open when they knew or should have known it was unsafe to do so.

65. After Tiffany's vehicle came to a stop and as she was sitting there helpless attempting to escape from her vehicle, a commercial 18-wheeler operated, directly and/or indirectly, by the FedEx Truck Defendants violently rear-ended Tiffany's vehicle and the FedEx Truck literally ran over the top of Tiffany and her vehicle.

**Tiffany's Vehicle**

66. The FedEx Truck Defendants should not have been on the roadway, certainly should not have been driving in the Toll Lanes, and clearly were driving too fast given the weather and hazardous road conditions. Additionally, the FedEx Truck Defendants failed to pay proper attention to the traffic, weather, and road conditions and/or consciously chose to ignore the same.

## B. ROADWAY DEFENDANTS MAKING HUNDREDS OF MILLIONS OF DOLLARS AT EXPENSE OF TEXANS

67. This 130+ vehicle pileup was initiated by the Roadway Defendants' conscious decision to place profits over the safety of the people who had relied upon and trusted that the Toll Road was safe that fateful morning. The Roadway Defendants, also referred to as the NTE Defendants, all operate under the corporate umbrella of Ferrovial SE, a multinational transportation conglomerate based in Europe.[1] Ferrovial is publicly traded on Spain's Bolsas y

[1] In June 2023, Ferrovial SA merged with Ferrovial International SE, thereby creating a single global conglomerate company named Ferrovial SE. This company recently moved its headquarters from Madrid to The Netherlands.

Mercados Españoles (BME) and, as of this filing, has a market capitalization of almost 21 Billion Euros.[2] Ferrovial is therefore one of the largest companies in Spain,[3] Europe, and the world.

68. Ferrovial is vertically integrated in the roadway business. That is, it owns both firms that bid for and build the transportation projects and firms that operate and manage the transportation projects once construction is complete.

69. Ferrovial has thousands of employees and transportation projects strewn across the world. For example, it owns a stake in London's Heathrow Airport, operates airports throughout Scotland, and manages a terminal at John F. Kennedy Airport in New York City. However, according to the *Financial Times*, "the most valuable part of its business is its toll road division, which includes projects in the US, Canada, UK, Ireland, Slovakia and Australia."[4]

70. Through its domestic subsidiaries and affiliates, Ferrovial constructs and operates toll roads across the U.S. As part of its core business model—which it couches as a "public-private partnership" or "P3"—Ferrovial routinely uses taxpayer money to fund initial construction of the toll roads and then charge taxpayers steep tolls to get paid significant returns on their investment.

[2] https://www.bloomberg.com/quote/FER:SM#xj4y7vzkg
[3] https://www.statista.com/statistics/764999/leading-companies-based-on-market-capitalization-in-spain/
[4] https://www.ft.com/content/ccbda0c4-7dd2-4885-8733-525045005dca

71. Tellingly, Ferrovial's global website proudly depicts the "TEXpress" lanes in DFW (part of which include the subject Toll Road involved in this crash) as one of its signature projects in its highway business portfolio:

72. Through the Roadway Defendants, Ferrovial constructs and operates toll roads throughout the State of Texas, including DFW, San Antonio, Austin, and Houston. Based in Austin, Defendant Cintra U.S. is the primary subsidiary through which Ferrovial operates all of its toll road assets globally, including the NTE I-35W Toll Road in Fort Worth where this horrific wreck occurred.[5]

73. Ferrovial's website also describes Cintra U.S. as follows, boasting about its experience with projects on four continents:

[5] https://newsroom.ferrovial.com/en/press_releases/new-cintra-ceo/

Similarly, Ferrovial's 2022 integrated annual report states:[6]

[6] https://informeanualintegrado2022.ferrovial.com/en/ (at page 72)

74. In or around 2009, the NTE Defendants secured a contract to construct the North Tarrant Express Toll Road System using taxpayer funds. "Segment 3" of the project, which was opened in 2018 and includes the I-35W Toll Road where this crash occurred:

75. Ferrovial (through Cintra and the other NTE Defendants) owns a majority stake in the I-35W Toll Road and receives revenue from tolls totaling in the hundreds of millions of dollars per year. The NTE Defendants have a contract to continue collecting those hefty tolls through at least the year 2061.

76. In 2021, from the I-35W Toll Road alone, the NTE Defendants generated 35.5 million transactions resulting in revenues of **$142 million** (an increase of 45.3% from 2020) which was "helped by more heavy traffic weight [i.e. 18-wheelers] and higher toll rates [via its variable toll technology]."

*See* Ferrovial Annual Report 2021.

77. Indeed, the NTE Defendants implemented state-of-the-art technology that increases the toll rates they charge the travelling public based on road congestion, which the NTE Defendants tout as substantially increasing their revenue in their annual report. Moreover, on their own website, they tout that this technology allows them to ensure that toll lanes are moving at least 50 mph or faster.

*See* https://www.texpresslanes.com/current-projects/nte-35w-texpress-lanes/.

*See* https://www.texpresslanes.com/pricing/how-dynamic-pricing-works/.

78. On the surface, the NTE Defendants claim to take their duty to provide a safe roadway on the NTE I-35W Toll Road seriously. The 2022 Ferrovial annual integrated report brags that Cintra-managed toll roads are purportedly far safer than alternatives:[7]

79. Unfortunately for those traveling on the Toll Road on February 11, 2021, including the Gerred Family's beloved daughter and mother, Tiffany Gerred, the NTE Defendants are all talk when it comes to roadway safety and proper winter weather maintenance of the Toll Road.

[7] https://informeanualintegrado2022.ferrovial.com/en/ (at page 78)

## C. THE NTE DEFENDANTS' PARADE OF SAFETY FAILURES:

80. The NTE Defendants entered into a contract with the State of Texas undertaking, agreeing and promising to ensure that the Toll Road was safe for the motoring public. Indeed, the NTE Defendants **contractually undertook the duty and obligation** to ensure the roadways were safe, including the southbound Toll Road where this catastrophic collision occurred, and in exchange they are collecting hundreds of millions of dollars in toll revenue annually from the citizens of Texas which is funneled up stream and overseas to Ferrovial—a foreign company. This undertaking admittedly required the NTE Defendants to provide a "safe and reliable transportation system," to "monitor and observe weather and weather forecasts to proactively deploy resources to minimize delays and safety hazards due to …ice…," to properly prepare for oncoming winter weather and deploy all the resources necessary to accomplish that, to properly pretreat the roadways, constantly monitor the roadways, and to treat and de-ice the roadways. These are agreements and undertakings that the NTE Defendants promised and agreed to with the State of Texas and that the People of Texas, including Tiffany Gerred, relied upon.

81. Indeed, the Amended and Restated Facility Agreement and other relevant documents signed by the NTE Defendants provide that:

*See* Amended and Restated Facility Agreement (North Tarrant Express Project), Section 19.1.

*See* Amended and Restated Facility Agreement (North Tarrant Express Project), Section 19.2.6.

82. Despite this contractual obligation and undertaking, in his deposition on November 9, 2023, **the Chief Operating Officer for NTE Defendants, shockingly testified under oath that NTE had no winter weather maintenance plan in effect at the time of the 2021 winter storm**:

> Q. So before -- before the wreck though,
> Exhibit 35 you're again still telling us wasn't
> approved, wasn't being used?
>
> A. Right.
>
> Q. And what's the title of it again?
>
> A. "Winter Maintenance Plan."
>
> Q. Did y'all have a Winter Maintenance Plan?
>
> A. No.

*See* Deposition of COO, p.272 ln.13-20.

83. While the corporate NTE Defendants had circulated a "draft" plan over the course of several years, it had never been implemented. The Toll Road opened in 2018—some 3+ years prior to the wreck, the NTE Defendants won the contract in 2009—some 12+ years prior to the wreck, the NTE Defendants allegedly have been in the toll road business for decades, their #1 job was to keep the roadways safe for the citizens of Tarrant County—and specifically from being subjected to icy conditions such as those present on February 11, 2021—and yet their highest-ranking operational officer now admits they literally had no formal winter maintenance plan in place. Indeed, the NTE Defendants waited until 6 souls were tragically killed and dozens were injured before they got around to formalizing and implementing a comprehensive winter maintenance plan.

84. Moreover, per their contract with the State of Texas, the Roadway Defendants were required to use "Good Industry Practices" to accomplish and fulfill their duties and obligations of ensuring the safety of motorists.

*See* Amended and Restated Facility Agreement (North Tarrant Express Project), Section 8.1.1.

*See* Amended and Restated Facility Agreement (North Tarrant Express Project), Exhibit 1 (Definitions) p.37.

85. However, what the NTE Defendants did was far from the use of Good Industry Practices. In fact, the NTE Defendants engaged in a **cluster-wit operation** whereby they used a single $20 laser thermometer gun to monitor the roadway temperatures[8] for 350+ miles of

[8] Roadway temperature, dew point and humidity are the key ingredients to monitoring for black ice as admitted by the NTE Defendants' Chief Operating Officer. The roadway temperature documented by NTE in the hours before the crash was 17 degrees, and local data near the wreck demonstrates the dew point was 24 degrees and humidity was 92%—a well-known recipe of disastrous black ice.

roadway, had employees haphazardly running around in pickup trucks "brake checking" for ice, had 2 people allegedly "continuously monitoring" 214 cameras although those operators were not trained on how to detect the moisture and precipitation in the air from the halos around the street lights, and the weather and weather forecasts were "continuously monitored" via a Manager who was off duty due to already working a full shift as she occasionally rolled over in bed that night from her sleep to glance at whatever weather might be displayed on the local TV channel. The corporate decision-makers for the NTE Defendants absolutely set all of their own employees up for failure by skimping on expenditures, cutting corners and failing to provide them with the necessary training, manpower, equipment, and technology to ensure the roads were safe.

86. Further, the evidence unequivocally demonstrates that the NTE Defendants had actual knowledge of a litany of reports of precipitation and icy roads on the evening of February 10 and up through the time of this wreck throughout the roadways they managed—from the north end, to the south end, and to the east end of their roadways. Yet, the NTE Defendants never treated the area in-between where this wreck occurred with any form of salt, sand or other abrasives. This wreck occurred on the longest (or nearly the longest) elevated stretch of roadway under the management and responsibility of the NTE Defendants. With all these reports of precipitation and ice, including a "major accident" at approximately 2am-3am caused by ice and involving multiple vehicles on the north end of Segment 3 near Basswood requiring the road to be shut down and salted—yet the NTE Defendants did absolutely nothing to treat the longest stretch of elevated roadway under their management—knowing that thousands of motorists would be using this roadway that morning to commute to downtown Fort Worth.

87. While the NTE Defendants will contend that they pretreated the roadways with a brine solution—that was a single treatment only and was applied 40+ hours prior to the wreck.

The NTE Defendants had significant advance warning that this was a major winter storm approaching Fort Worth and the North Texas area, and the NTE Defendants had ample time and opportunity to apply additional pretreatment applications, especially to areas such as the bridge where this wreck occurred which was well known to be prone to icing over. Moreover, by late evening on February 10th and into the early morning hours of February 11th prior to this catastrophic pileup, the NTE Defendants knew for a fact that their single pretreatment of brine was not working given that many areas that had been pretreated were nevertheless icing over.

88. Adding to this entire colossal cluster, the corporate decision-makers for the NTE Defendants decided to conduct a shift change at 6am right as rush hour traffic was beginning. Based on the testimony provided by an on-duty supervisor and others, the NTE employees had wrapped up operations on the road at 5:20am, the close out process at the NTE shop generally took 30 minutes and everyone on the night shift has testified they were off and headed home at 6am. The day shift did not arrive until 6am and likewise generally took 30 minutes to check-in, get briefed and to inspect their equipment. Hence, NTE Defendants' corporate decision to move the shift change to 6am (from the normal 3am) during snow & ice mode resulted in not a single NTE employee on the roadways between approximately 5:30am – 6:30 am as rush hour was beginning and when this entire tragedy was unfolding!

89. The deck of witnesses is entirely stacked against the NTE Defendants. All the police officers, fire fighters and first responders have lined up against the NTE Defendants—testifying that there was ice everywhere, it was a thick sheet of ice, it was like an ice rink, there was no salt, no sand and no other abrasive on the roadway, that this is a known area for wrecks, that this area is known for accumulation of precipitation on the roadway, etc. Two Police Officers, who were stationed right by NTE's shop near 820 and I-35, further confirmed it was drizzling as

they drove in that morning and when they had their 5:30am roll call. Contrasting this testimony from upstanding law enforcement and first responders with the NTE employees' continued denial of the obvious basic facts—a Tarrant County jury is certain to be angered.

90. But, what is certain to absolutely enrage the jury and Texans at large is the fact that the NTE Defendants spent millions and millions of dollars implementing state-of-the-art technology to have variable toll rates that they tout as increasing their revenue in their annual report, yet the NTE Defendants did not implement any such state-of-the-art technology to ensure the safety of the toll road and to monitor the winter weather conditions on any of their roadways—a clear violation of their contractual obligation and undertaking to implement "Good Industry Practices." Indeed, it was only after this horrific tragedy that the NTE Defendants actually installed and implemented basic technology to ensure the safety of the roadway—all of which has been readily available and utilized in the industry for well over a decade. To this end, the NTE Defendants have since installed 18 weather sensors that capture real time weather data, including air temperature, roadway temperature, humidity and dew point—all factors in the formation of black ice. These sensors were all installed on elevated structures where freezing is more prone, including the bridge where this wreck occurred. Similar technology has likewise now been installed on maintenance vehicles and linked to GPS technology to further provide real-time weather conditions on the roads and to track and capture operational data. Additionally, the NTE Defendants now have designated routes that detail where and how the crews are to patrol the roads to ensure that all areas, especially those prone to icing, are continuously and systematically monitored. The NTE Defendants have also increased their manpower and equipment and revamped their training programs. They also now utilize a weather forecast vendor who provides customized localized forecasts and alerts and continuous access to metrological and pavement

temperature forecasting. But, all of this is too little, too late for so many—including Tiffany Gerred and her family.

91. It is absolutely egregious and unconscionable that 6 people had to die, families had to be torn apart and forever ruined, and dozens and dozens had to be injured before these corporate defendants actually implemented what they promised to do in exchange for the hundreds of millions of dollars in tolls that they are collecting each and every year—use Good Industry Practices! The NTE Defendants spent money on technology that would collect more tolls and make them more money off the traveling public while skimping on money and cutting corners on the basic technology that would keep the traveling public safe.

92. And ultimately, if the NTE Defendants could not keep the Toll Road safe given the circumstances, they had the power and the obligation to simply close the Toll Road to traffic—but of course that would have been at the expense of all that toll revenue!

**"Profits over people" has never been truer than it is here.**

### D. TIFFANY GERRED NEVER STOOD A CHANCE AGAINST THE FEDEX TRUCK DEFENDANTS

93. While the NTE Defendants set the stage for a massive pileup of vehicles on the icy Toll Road, it was the commercial 18-wheelers, like the FedEx Truck Defendants, who were traveling too fast for the hazardous weather conditions that turned this pileup into a dreadful deadly disaster.

94. Despite the icy road conditions on the Toll Road, Tiffany Gerred managed to bring her vehicle to a sliding stop and had a minor fender bender with the vehicle immediately in front of her. From bystander videos, Tiffany can be seen applying her brakes (brake lights on) as she slides into the vehicle in front of her.

95. Following the minor impact with the vehicle in front of her, Tiffany can be seen releasing her brakes (brake lights off).

96. Then, as the FedEx Truck Defendants come barreling towards Tiffany, she can be seen applying her brakes yet again bracing for the impact.

97. The dash camera from the FedEx Truck Defendants likewise documents that Tiffany was rearended and killed as a direct and proximate result of the FedEx Truck Defendants.

98. The evidence demonstrates that Defendant FedEx entrusted its trailer to an unsafe motor carrier—Simon Express—who likewise was not even an approved motor carrier for FedEx—yet FedEx handed its trailer over the motor carrier and permitted them to drive across the country through a winter storm carrying out FedEx's business. In the months prior to this horrific crash, the Federal Motor Carrier Safety Administration placed this motor carrier on high alert for significant safety performance problems for **UNSAFE DRIVING**:

And, following the crash, the Federal Motor Carrier Safety Administration conducted an on-site safety audit and determined that the motor carrier's safety rating was **UNSATISFACTORY**:

Given the significant safety issues with this motor carrier, it is likewise not surprising that the driver of commercial truck hauling the FedEx load was likewise unsafe and inexperienced.

## E. The Dark Shadows of The Trucking World Exposed–Double Brokering and FedEx's See No Evil-Hear No Evil-Speak No Evil Business Model

99. Given FedEx's corporate business practices, this tragedy was painfully predictable and preventable and the significant safety concerns for the travelling public extend well beyond this case to the public roadways all across the United States. Indeed, the evidence already developed in this case shines a bright light on the very dark shadows of the trucking world—the dark shadows from which the corporate giant FedEx Ground profits greatly.

100. As one of the largest transportation companies in the United States and Texas, Defendant FedEx is well aware of the significant dangers and hazards that an unsafe 18-wheeler can pose to our community and the traveling public. These big rigs can weigh over 80,000 pounds, compared to approximately 4,000 pounds for an average passenger vehicle like Tiffany's car. This 20-fold mass differential means an 18-wheeler collision with a passenger car causes exponentially more damage than a collision between two similarly sized cars. Clearly, when an 18-wheeler rearends a passenger car at nearly 50 mph, as happened here, the results are almost certain to be deadly. For these reasons, commercial motor vehicle drivers are required to undergo different schooling, different training, and different testing to secure the privilege of holding a commercial motor vehicle license. Moreover, these commercial motor vehicle drivers must adhere to a different set of rules of the road as outlined in the Federal Motor Carrier Safety Regulations and in each state's Commercial Motor Vehicle Handbook—these regulations and rules of the road are designed to keep the traveling public safe.

101. FedEx is similarly aware of the shady and unlawful practice within the trucking and transportation industry known as "double brokering." Double brokering occurs where one motor carrier accepts the load at full rate but then assigns or hands the load off to a different motor carrier while typically skimming a portion of the profit. This often results in the load being hauled by a

motor carrier that has not been properly vetted and that has not undergone proper safety precautions. It likewise often results in the load being hauled for a cheaper rate, and of course motor carriers who are willing to haul the load for a cheaper rate are naturally cutting safety corners.

102. FedEx's Corporate Manager of Business Development and Solutions has testified that FedEx is well aware that double brokering is an issue within the trucking and transportation industry:

> Q. So it's assigned to one motor carrier's DOT number, and that motor carrier then brokers it out or passes the load off to a separate motor carrier, when that broker didn't have motor authority. **That's called double brokering in your world, right?**
>
> A. **If the unload is ran under that new carrier's DOT number, yes, that is double brokering. Correct.**
>
> Q. Okay. **And you understand -- FedEx under- -- well, you understand that's an issue and a problem and has been a problem within the trucking -- commercial trucking industry for many years, right?**
>
> **A. I am aware of double brokering, yes.**
>
> Q. (BY MR. STEPHENS) Okay. **And you're aware that that is a problem within the industry, the trucking transportation industry?**
>
> **A. I understand, yes.**

*See* Deposition of FedEx's Corporate Manager of Business Development and Solutions, p.41 ln.7-25.

103. And, of course, FedEx should be well aware of double brokering because it is a prohibited and unlawful activity within the industry:

> **49 U.S. Code § 14916 - Unlawful brokerage activities**
>
> **a)Prohibited Activities.—**A person may provide interstate brokerage services as a broker only if that person—
>
> (1)is registered under, and in compliance with, section 13904; and
>
> (2)has satisfied the financial security requirements under section 13906.

104. Further, the law provides a private cause of action for anyone who participates, directly or indirectly, in the double brokering and provides that they are subject to joint and several liability without regard to the amount of damages:

> **49 U.S. Code § 14916 - Unlawful brokerage activities**
>
> **(c)**Civil Penalties and **Private Cause of Action.—**Any person who knowingly authorizes, consents to, or permits, *directly or indirectly*, either alone or in conjunction with any other person, a violation of subsection **(a) is liable—**
>
> (1)to the United States Government for a civil penalty in an amount not to exceed $10,000 for each violation; and
>
> **(2)to the injured party for all valid claims incurred without regard to amount.**

105. But, while FedEx knows that double brokering is prohibited and a safety problem within its industry, the fact is that **FedEx engages in a "See No Evil—Hear No Evil—Speak No Evil" business model whereby FedEx consciously turns a blind eye to double brokering across the country**. Indeed, when it comes to FedEx's "Purchased Carrier" loads that are being

hauled all across the United States on behalf of FedEx, FedEx does absolutely nothing to verify that the outside motor carriers entering and exiting FedEx's premises with these loads are indeed assigned to these loads or even approved by FedEx to haul the loads. Literally, anyone with a commercial big rig and a confirmation number could drive onto any of the hundreds of FedEx Hubs and terminals across the United States and pick up a fully loaded FedEx trailer to be hauled across thousands of miles of public highway and FedEx has zero safety checks in place to validate that that the motor carrier has active operating authority from the Federal Motor Carrier Safety Administration, that the motor carrier is assigned to the load, that the motor carrier is even approved to haul for FedEx, that the motor carrier has a safe history, or that the driver has a commercial driver license and is a safe driver—nothing!

Q. (BY MR. STEPHENS) And the reason you don't do anything to verify the carrier name is **because nobody at FedEx has ever trained you or instructed you that you need to verify the carrier name**. True?

A. I don't know how to answer that.

Q. (BY MR. STEPHENS) Well, it's the truth, isn't it?

Q. (BY MR. STEPHENS) Has -- **has somebody at FedEx ever told you, you need to verify the carrier's name** that they put on the check-in form? Has anybody at --

A. **No**.

Q. -- at FedEx ever told you that?

A. **No**.

Q. **Nobody has ever trained you to do that, right**? They [FedEx] haven't instructed you; they haven't trained you to do it. Right?

A. **No**.

*See* Deposition of FedEx Ground's Linehaul Coordinator, p.155 ln.12 – p.160 ln. 14.

106. As such, motor carriers hauling "Purchased Carrier" loads can freely come and go from FedEx's facilities across the country essentially without any verification. If the motor carrier has a confirmation number, then FedEx does nothing to verify that the motor carrier is indeed assigned to haul that load and likewise FedEx does absolutely nothing to even verify that the motor carrier is approved by FedEx—information that is all within FedEx's fingertips.

107. Conversely, FedEx goes to great strides to secure its massive Hubs and terminals from the general public or unwanted visitors. The entire perimeter of FedEx's Hubs and terminals are secured with an approximately 15 feet tall chain link fence topped with razor wire and an additional 7,000-volt electrical fence with a guarded entry and exit gate—aside from the "FedEx" signs one might confuse the fortified perimeter with a local prison given the appearance of high security.

108. FedEx's own employees and visitors are required to enter the secure premises through a high security access point that rivals Fort Knox and is well beyond the TSA at most

airports. Employees have an ID badge that they must scan to enter the security screening, they must empty all pockets, place all belongings through an x-ray machine and then they themselves must pass through a metal detector and controlled access monitored by security personnel.

109. Commercial drivers who are directly contracted or employed with FedEx to routinely make hauls on a daily or weekly basis are likewise required to jump through significant security hoops to gain access to FedEx's massive Hubs and terminals. They too are issued security ID badges that they must scan in order to open and enter through the guarded gates of each Hub or terminal. Additionally, FedEx has issued them App based technology that they must securely login to and through which FedEx confirms their identity and their permission to be at that specific location to pick up or drop off an assigned load.

110. Yet, FedEx has consciously chosen to implement no security checks or verifications when it comes to letting outside "Purchased Carriers"—like Iso Rizo, Energy Trucking, and Simon Express—freely come and go with FedEx trailers when they are hauling "purchased" loads—loads for which FedEx is using a middleman "broker" to clearly distance itself from the transaction. While FedEx must still initially approve the motor carrier that the broker wants to use, FedEx then puts it head deep in the sand and does nothing to ensure that the motor carrier who shows up at any of FedEx's Hubs or terminals across the United States is indeed the motor carrier assigned to that load or that FedEx has even approved that motor carrier. If the motor carrier has a confirmation number for a load—which any motor carrier engaged in double brokering will of course have—FedEx buries its head in the sand and chooses to take no verification action because it does not want to know if the load is double brokered or if the motor carrier is an unsafe motor carrier—they want plausible deniability. FedEx just wants the goods moved and delivered—regardless of whether the motor carrier poses a threat to the traveling public.

Q. Okay. **They've never talked to you at the linehaul department about, hey, we need to ensure that the proper carrier who is authorized to haul for this purchased carrier, Nolan Transportation [the broker], is, indeed, approved by FedEx, has it?**

A. **No**.

* * *

Q. My question is **has FedEx ever trained you or given you any instructions or any guidance that you, as a linehaul coordinator, somehow need to verify that the person that has walked in the door with this reference number, and you pull it up and see that, hey, this is associated with Nolan Transportation [the broker], have you been given any kind of guidance, instructions or any policies or procedures that you've been taught that you're somehow supposed to verify that the person that has that reference number is, indeed, associated with Nolan Transportation or has been authorized by Nolan Transportation to haul that load?**

A. **No**.

*See* Deposition of FedEx Ground's Linehaul Coordinator, p.164 ln.21 – p.165 ln.1, p.60 ln.23 – p.62 ln.16.

111. Knowing that double brokering is unlawful under the Federal Motor Carrier Safety Regulations and knowing that it poses a significant safety hazard to the traveling public, FedEx purports to exercise due care in its selection of the motor carriers it hires, entrusts and/or permits to haul FedEx's trailers and to carry out Fedex's business across the United States and throughout the state of Texas. FedEx purports to restrict the motor carriers it hires, entrusts and/or permits to haul FedEx's trailers to only those on its "approved list." While FedEx contends herein that Defendant Nolan Transportation, a freight broker (a middleman), had a contractual obligation and was responsible for ensuring that a motor carrier from FedEx's "approved" list hauled the loads at issue, the facts demonstrate that FedEx retained and exercised the ultimate control over the actual

motor carrier who was allowed onto its premises and who was allowed to haul the loads. Moreover, the facts demonstrate that **FedEx consciously turns a blind eye to "double brokering"** and here entrusted its FedEx trailers to an unapproved, unsafe motor carrier who was blatantly engaged in double brokering.

112. The trip that resulted in the death of Tiffany Gerred was a "roundtrip" that began in Texas, continued to Oregon, and then continued back to Texas. The roundtrip loads at issue were initially assigned to a motor carrier known as Iso Rizo who had been approved by FedEx. However, the President of Iso Rizo, Umidjon Kadirov, has **testified and admitted that his company double brokered the loads to another set of motor carriers**—Energy Trucking and its sister company Simon Express—both of which were owned by Timur Mirzaev on the date of the collision.

Q. Okay. So just so we're clear again, whatever
the motive was, **Iso Rizo double brokered the load that
we're here about. True?**

A. **Yes**.

* * *

Q. And **you know that double brokering is a big
issue within the trucking industry. It's a topic that
is discussed at length in the industry, right?**

**A. I do, sir.**

Q. (BY MR STEPHENS) * * * but
you understand that that is a concern and an issue of
double brokering, right?

A. Correct.

Q. Okay. And that issue and concern, one of
those is, is that **you can end up with an unsafe motor
carrier or an unsafe driver hauling the load, right?**

A. **You might**.

Q. (BY MR STEPHENS) All right. Now let's be
clear, though. Iso Rizo never picked up this load from
FedEx, did you?

A. No, sir.

* * *

Q. Okay. **What happened was is that Simon Express
picked up the load directly from FedEx. True?**

**A. True.**

Q. Okay. And when the load was then taken from
the FedEx facility in Hutchins, Texas, it was taken to
Troutdale, Oregon, as you understand, right?

A. Yes.

Q. And when it was delivered there in Troutdale,
Oregon, again, it wasn't Iso Rizo that pulled onto the
premises there at FedEx in Troutdale. It wasn't Iso,
was it?

A. It was not.

Q. **It was Simon Express that pulled into the
FedEx facility in Troutdale, right?**

**A. Correct.**

Q. And then when Simon -- or the return trip --
This was a roundtrip to go back from Troutdale back to
Texas, right?

A. Yes.

Q. Again, for that roundtrip coming back, again,
Iso Rizo didn't drive onto the lot of FedEx, did they?

A. No, sir.

Q. **That was Simon Express that drove onto the
lot, right?**

**A. Correct.**

Q. **And however it came to be, Simon Express was given that trailer by FedEx. True?**

**A. True.**

Q. (BY MR. STEPHENS) **And then it was driven off of FedEx's lot by Simon Express, correct?**

**A. Correct.**

Q. And was being transported back to Texas where this wreck occurred?

A. Correct.

Q. Okay. And just in the three and a half years that you've been involved in running a motor carrier, you're certainly very aware of the issues associated with -- and the problems associated with double brokering, right? You've told us some about that.

A. Right.

Q. And you simply understand as a -- **as a motor carrier that's been involved in this for three and a half years, you're aware that double brokering is a problem within the industry.** You understand that?

*See* Deposition of Iso Rizo President, p.114, ln.10-13, p.148 ln.15 – p. 152 ln.21.

113. Additionally, the President of Iso Rizo has testified that the other motor carriers—both Simon Express and Energy Trucking—obviously knew the load was double brokered. Indeed, the President of Iso Rizo produced "Telegram" App messages demonstrating that all three motor carriers were communicating with each other about the double brokered loads and were likewise in contact with the drivers. All three motor carriers communicated with each other on the encrypted Telegram App through their respective dispatchers who are all based

overseas in Uzbekistan and who used **fake names** like "Nick Jonas" from the Jonas Brothers band and "Billy Hope" the professional boxer upon which the movie Southpaw starring actor Jake Gyllenhaal. The motor carriers' dispatchers even signed legal documents using fake names. The Telegram App messages unequivocally demonstrate that all three motor carriers were involved and knew the loads were double brokered as admitted by the President of Iso Rizo:

Q. Okay. Clearly, from what we saw earlier,

where it says check in as State Runner -- are you back
with me on that? I wanted to hit something on that.
Clearly, when it says check in as State
Runner, I mean, **Simon Express and Energy Trucking know**
**that this is a load that's been brokered to you, to Iso**
**Rizo, right?**

**A. Correct.**

* * *

Q. But you certainly are here to tell us that,
yes, **Simon Express would likewise know that it was a**
**double brokered load. True?**

**A. Correct.**

Q. **And likewise, Energy Trucking would know that**
**it was a double brokered load?**

**A. Correct.**

Q. Okay.

* * *

Q. (BY MR. STEPHENS) And -- and **we saw**
**communication that the drivers should check in as State**
**Runner, right**?

A. **Yes**.

Q. And that they are smart guys, right?

A. Yes.

Q. Okay. **And so presumably if that was communicated to the drivers to check in as State Runner and use their head, they would know that it's a double brokered load as well, right?**

A. The drivers?

Q. Yes.

A. **Yes.**

*See* Deposition of Iso Rizo President, p.270 ln.24 – p.271 ln.19, p.292 ln. 19 – p.294 ln.3.

114. The President of Iso Rizo further admitted he absolutely understands that double brokering is a safety issue within the industry, he certainly expects that FedEx would know this as well, double brokering is a violation of safety rules, and it is dangerous:

Q. (BY MR. STEPHENS) **My question is simply you understand it's an issue within the trucking industry. You understand that, right?**

**A. I understand that, absolutely.**

Q. (BY MR. STEPHENS) And you understand that just as somebody that's been involved in it for just merely three and a half years running a motor carrier, right?

A. Yes.

Q. Okay. **You would certainly expect the largest transportation company in the United States essentially, FedEx, you would certainly expect them to understand the problem of double brokering in the industry, right?**

**A. They do.**

* * *

Q. Right. **If you double broker, you're violating the safety rules, aren't you**?

A. **Correct**.

Q. All right. **And violating**
**safety rules in the trucking industry is dangerous,**
**isn't it?**

A. **Correct**.

* * *

Q. I thought you said "correct."
MR. STEPHENS: You said "correct."

A. **Correct, dangerous**.

*See* Deposition of Iso Rizo President, p.242 ln.3 – p.243 ln.10, p.347 ln.22 – p.348 ln.20.

115. But, most telling and concerning is the fact that **this double brokering was not an isolated event**. With regard to the loads at issue in this case, it occurred at major FedEx Hubs in both Dallas/Hutchins, Texas and then again in Troutdale, Orgon. Moreover, **the President of Iso Rizo testified and admitted that these are not the only FedEx loads he has double brokered**!

Q. (BY MR. STEPHENS) So according to -- to what
you were telling us, this is not -- the load that we're
here about today, the wreck we're here about today,
according to the documents you have produced, **was not**
**the first time that a load had been double brokered by**
**Iso Rizo to Energy Trucking. It was not the first time.**
**It was actually the second time, right?**

A. **According to the document, sir**.

Q. **And it was not the first time that a double**
**brokered load that Energy Trucking and/or Simon had --**
**had gotten from FedEx. It was indeed -- the wreck that**
**we're here about involved the second time that a double**
**brokered load was gotten off the premises of FedEx,**
**according to the documents we --**

A. **According to the documents**.

Q. (BY MR. STEPHENS) Okay. And you're just
one -- you're one motor carrier, right?

A. Yes.

Q. Okay. You understand and you -- I know you --
I don't expect you to know, **but FedEx is doing business with thousands of motor carriers across the country, right?**

A. According to their capacity, yes.

Q. (BY MR. STEPHENS) Okay. **And what we are seeing is just with this one smaller motor carrier, Iso Rizo, that y'all have had two double brokered loads, where y'all got on -- somebody else that wasn't supposed to haul them, got on to the facilities of FedEx in a matter of a month and a week or a month and ten days, and it happened twice just with your little motor carrier. Right?**

A. **According to documents**.

*See* Deposition of Iso Rizo President, p.438 ln.6 – p.439 ln.15.

116. The documents the President of Iso Rizo produced and referenced demonstrated that the additional double brokered FedEx loads were picked up and delivered in early January 2021from major FedEx Hubs in Kansas City, Missouri, Raleigh, North Carolina, and again in Kansas City, Missouri.

117. Thus, in just a matter of five weeks, a single small motor carrier double brokered loads involving five major FedEx Hubs from coast to coast around the United States. **Thus, this is clearly a systemic problem resulting of FedEx's conscious decision to See No Evil-Hear No Evil-Speak No Evil when it comes to double brokering.** Indeed, it is an unsafe business practice that results in unsafe motor carriers hauling loads on our public roadways from which FedEx turns a conscious blind eye to in order to keep its packages moving and from which it greatly profits. And tragically, in this case, it cost the Gerred Family everything.

118. As a proximate result of the acts and omissions of the FedEx Truck Defendants, the Roadway Defendants and the De-Icing Manufacturer Defendants, Tiffany Gerred suffered fatal injuries and the Gerred Family has been devastated and forever harmed. Tiffany was just 34 years old. She was a wonderful mom, daughter, sister, aunt, friend, and co-worker, and she was dearly beloved by all who were blessed to know her.

Tiffany Gerred

## X. CAUSES OF ACTION

**ROADWAY DEFENDANTS:**

### A. NEGLIGENCE & NEGLIGENT UNDERTAKING

119. Incorporating all allegations and facts stated herein, at the time of the collision made the basis of this lawsuit and at all relevant and material times, the Roadway Defendants owed a duty to traveling motorists on the toll lanes, including Tiffany Gerred, and were contractually responsible for maintaining and keeping safe the toll lanes where this collision occurred. The

Roadway Defendants' negligent acts and/or omissions include, but are not limited to, the following:

(a) Failing to properly and safely operate and maintain the toll lanes where this collision occurred;

(b) Failing to adequately, properly and timely treat the toll lanes to prevent the formation of ice on the toll lanes;

(c) Failing to adequately, properly and timely monitor the weather and road conditions;

(d) Failing to adequately, properly and timely inspect the toll lanes;

(e) Failing to adequately, properly and timely de-ice and remove ice from the toll lanes;

(f) Failing to close the toll lanes to all traffic;

(g) Failing to close the toll lanes to all commercial 18-wheeler vehicles;

(h) Failing to adequately, properly and timely warn motorists of the icy road conditions on the toll lanes and/or the of the major wreck ahead;

(i) Failing to adequately and properly train personnel, including but not limited on the proper and timely treatments required to prevent the formation of ice on the toll lanes;

(j) Failing to adequately and properly train personnel, including but not limited on the proper and timely de-icing and removal of ice required to prevent collisions on the toll lanes;

(k) Failing to implement proper policies and procedures, including but not limited for the prevention of ice formation, pretreatment, detection, de-icing and the removal of ice from the toll lanes;

(l) Failing to take other actions to prevent hazardous road conditions on the toll lanes;

(m) Failing to act as a reasonable and prudent roadway operations and maintenance company;

(n) Failing to develop, implement, and enforce policies and procedures, including but not limited for roadway winter weather maintenance and safety procedures and industry best practices;

(o) Failing to recognize and remediate safety hazards;

(p) Failing to provide proper, safe equipment and competent personnel;

(q) Violating industry standards and best practices, including but not limited to implementing all of the technology and taking all of the proper steps outlined throughout Plaintiffs' petition and that were feasible and available long before this wreck occurred;

(r) Failing to adequately warn or make safe dangers, conditions, and activities of which Defendants had actual and/or constructive knowledge;

(s) Failing to use ordinary care as a reasonable company would under the same or similar circumstances;

(t) Failing to comply with its obligations to operate and maintain the toll lanes in a safe condition for motorists and the travelling public, including all contractual and/or voluntary undertakings or obligations alleged or reasonably inferred herein;

(u). Undertaking duties to develop, implement, and enforce policies and procedures for roadway winter weather maintenance and safety and negligently executing such duties, to the detrimental reliance of decedent and those similarly situated;

(v) Undertaking duties to conduct inspections and audits to ensure compliance with roadway winter weather maintenance and safety procedures and industry best practices and negligently executing such duties, to the detrimental reliance of decedent and those similarly situated;

(w) Undertaking and assuming a duty to prevent, warn and make safe dangerous conditions on the premises, including naturally forming ice, and failing to use reasonable care in doing so to the detrimental reliance of decedent and those similarly situated;

(x) Undertaking and assuming a duty to use Good Industry Practices to keep the roadways safe, including free and clear from naturally forming ice, and failing to do so to the detrimental reliance of decedent and those similarly situated;

(y) Creating a dangerous condition and failing to prevent injury to others, where it reasonably appeared or should have appeared to Defendant that decedent, in exercise of lawful rights, were likely to have been injured by creation of such dangerous situation, and failing to correct, make safe, or adequately warn about this condition; and

(z) Other negligent acts and omissions to be identified as discovery is conducted.

120. Specifically, the NTSB (National Transportation Safety Board) issued its preliminary report noting that four hours before the crash, the weather station at Fort Worth

Meacham International Airport had reported freezing rain and freezing mist. This airport is approximately three miles northwest of the crash site. Further, the report noted that more than two hours before the occurrence made the basis of this suit, NTE Mobility Partners Segments 3 had posted a message, albeit an inadequate warning, on a dynamic message sign that displayed the message "ICY CONDITIONS EXIST / PLEASE USE CAUTION" noting that this message was based on information from another earlier crash at 3:08. This evidence, along with other available evidence indicates that **ALL ROADWAY DEFENDANTS** were aware of the icy and hazardous conditions hours before these collisions occurred and yet negligently and/or grossly negligently failed to prevent this foreseeable hazardous event.

121. The acts and omissions described above, singularly or in any combination, amount to negligence and/or negligent undertaking and were a proximate cause of the collision involving Tiffany Gerred made the basis of this suit and of the Gerred Family Plaintiffs' injuries and damages.

**B. PREMISES LIABILITY**

122. Additionally, or in the alternative, incorporating all allegations and facts stated herein, the Gerred Family Plaintiffs allege that the Roadway Defendants are liable under premises liability. At all times material, the Roadway Defendants owned and/or controlled the I-35 toll lanes and premises where this collision occurred and where Decedent Tiffany Gerred was killed. The condition of the toll lanes at the time of the collision and Tiffany's death posed an unreasonable risk of harm and the Roadway Defendants had actual knowledge, or reasonably should have known of the unreasonably dangerous condition, which included the icy road conditions, and the Roadway Defendants' failure to adequately prepare and plan for this known icy emergency. Moreover, Tiffany Gerred did not have actual knowledge of the unreasonably

dangerous condition. Decedent Tiffany Gerred was a business invitee who entered the Roadway Defendants' premises with their knowledge and for their benefit. The Roadway Defendants had a duty to keep the premises safe and they breached this duty by failing to adequately warn Decedent Tiffany Gerred, and other motorists, of the known unreasonably dangerous condition on the roadway and by failing to make this known unreasonably dangerous condition reasonably safe.

123. The Roadway Defendants' breach of these duties, either taken singularly or in combination, proximately caused the death Decedent Tiffany Gerred and the Gerred Plaintiffs' injuries and damages described more fully below.

**C. GROSS NEGLIGENCE**

124. Incorporating all allegations and facts stated herein, the Roadway Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the Roadway Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Tiffany Gerred. This amounts to gross negligence; such gross negligence was a proximate case of the collision, the death of Tiffany Gerred and the resulting injuries and damages suffered by Plaintiffs; and as such the jury should consider assessing punitive or exemplary damages.

**DE-ICING MANUFACTURER DEFENDANTS:**

**A. NEGLIGENCE**

125. Based upon the allegations and designations of potential responsible third parties made by certain defendants in this litigation, Plaintiffs hereby assert that the de-icing products and procedure(s) performed on the toll lanes where this incident occurred was/were ineffective,

defective and/or failed. Plaintiffs contend that this failure was caused in whole or in part by one or more of the following:

(a) The "de-icing material" was ineffective, inadequate and/or defective;

(b) The "de-icing material" was negligently designed, manufactured and/or marketed;

(c) The "de-icing material" was not the appropriate "de-icing material" for the specific conditions that existed on the toll lanes at the time of the collision;

(d) The "de-icing material" lacked adequate instructions for the proper application of the deicing material; and

(e) The manufacturer of the "de-icing material" failed to provide warnings, instructions, and/or training and/or failed to provide adequate and/or sufficient warnings, instructions and/or training regarding the proper application of the "de-icing material."

126. Upon information and belief, at all relevant times the De-Icing Manufacturer Defendants named herein were responsible for the design, manufacture, marketing, sale and/or distribution of the "de-icing material" used by the Roadway Defendants to treat the toll lanes where this collision occurred. And, said acts and omissions described above, singularly or in any combination, amount to negligence and/or gross negligence and were a proximate cause of the collision involving Tiffany Gerred made the basis of this suit and of the Plaintiffs' injuries and damages.

**FedEx Truck Defendants:**

**A. Negligence**

127. Incorporating all allegations and facts stated herein, at the time of the collision made the basis of this lawsuit and at all relevant and material times, the FedEx Truck Defendants owed a duty of care to other motorists, including Tiffany Gerred, to operate the truck in a reasonable and prudent manner and said Defendants failed to do so. The FedEx Truck Defendants' negligent acts and/or omissions include, but are not limited to, the following:

(a) Driving their commercial motor vehicle in hazardous conditions;

(b) Failing to use extreme caution in driving their commercial motor vehicle given the existing ice and freezing mist and freezing rain conditions;

(c) Driving their commercial motor vehicle in the toll lanes given the existing ice and freezing mist and freezing rain conditions;

(d) Failing to operate their commercial motor vehicle at a reasonable rate of speed given the existing ice and freezing mist and freezing rain conditions;

(e) Failing to control the speed of their commercial motor vehicle and/or driving at an unsafe speed;

(f) Failing to safely observe hazards in the roadway;

(g) Failing to maintain a proper and safe distance given the weather conditions that day;

(h) Failing to pay attention to the road and driving conditions;

(i) Failing to pay attention to the weather conditions;

(j) Failing to monitor road and weather conditions;

(k) Failing to operate their commercial motor vehicle in a reasonably safe manner;

(l) Failing to properly monitor and/or heed weather warning alerts;

(m) Failing to properly and/or timely apply the brakes of their commercial motor vehicle in order to avoid the collision in question;

(n) Failing to keep a proper lookout as a commercial motor driver using ordinary care would have done;

(o) Failing to maintain proper control of the commercial motor vehicle as a commercial driver using ordinary care would have done under the same or similar circumstances;

(p) Failing to take proper and timely evasive action;

(q) Violently striking Tiffany Gerred's vehicle and literally running over the top of her and her vehicle; and

(r) Other negligent acts and omissions to be identified as discovery is conducted.

128. The acts and omissions described above, singularly or in any combination, amount to negligence and were a proximate cause of the collision involving Tiffany Gerred made the basis of this suit and of the Plaintiffs' injuries and damages.

**B. NEGLIGENCE PER SE**

129. Incorporating all allegations and facts stated herein, the FedEx Truck Defendants were negligent per se in committing acts that violated various statutes intended to protect the safety of persons traveling on the roadways, including but not limited to:

(a) Driving in hazardous conditions in violation of 49 CFR § 392.14 and Section 2.13 of the Texas Commercial Motor Vehicle Driver's Handbook;

(b) Failing to use extreme caution given the existing ice and freezing mist and rain conditions in violation of 49 CFR § 392.14;

(c) Failing to operate at a reasonable rate of speed given the existing ice and freezing mist and rain conditions in violation of Section 545.351 of the Texas Transportation Code and Section 2.6 of the Texas Commercial Motor;

(d) Failing to control the speed of the truck and/or driving at an unsafe speed, in violation of §545.352 of the TEXAS TRANSPORTATION CODE;

(e) Failing to safely observe hazards in the roadway in violation of Section 2.8 of the Texas Commercial Motor Vehicle Driver's Handbook;

(f) Engaging in reckless driving in violation of Texas Transportation Code §545.401(a); and

(g) Engaging, authorizing, consenting, and/or permitting, directly or indirectly, in double brokering and/or unlawful brokerage activities in violation of 49 U.S. Code § 14916.

130. The acts and omissions described above, singularly or in any combination, amount to negligence per se and were a proximate cause of the collision involving Tiffany Gerred made the basis of this suit and of the Plaintiffs' injuries and damages.

## C. Vicarious Liability – Respondeat Superior, Statutory Employee, Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership

131. Incorporating all allegations and facts stated herein, at the time of the collision and at all relevant and material times, Defendants Saint Lot and Clement were driving the commercial motor vehicle in question on behalf of the FedEx Truck Defendants and Defendants Saint Lot and Clement were operating the FedEx Truck in their capacity as employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners with the remaining FedEx Truck Defendants. Further, upon information and belief, the FedEx Truck Defendants exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery, and manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement. Additionally, the FedEx Truck Defendants monitored and/or had the ability to monitor the routes, timing, dispatching, location, delivery, and manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement.

132. Additionally and/or alternatively, upon information and belief, Defendant FedEx exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery and manner of operations associated with the FedEx Truck, the drivers Defendants Saint Lot and Clement and/or the driver's motor carrier(s) Defendants Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc. subjecting FedEx to vicarious liability for this collision and/or making the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers and/or partners of FedEx and/or making Defendants Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc. the agents, borrowed servants, joint venturers, joint enterprisers and/or partners of FedEx.

133. Additionally and/or alternatively, upon information and belief, Defendant Nolan exercised control and/or had the right to exercise control over the routes, timing, dispatching, location, delivery and manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement and/or the driver's motor carrier(s) Defendants Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc. subjecting Defendant Nolan to vicarious liability for this collision and/or making the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Nolan and/or making Defendants Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc. the agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Nolan.

134. Additionally, and/or alternatively, upon information and belief, Defendants FedEx, Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc. are each and/or in concert acting as the motor carrier of record subjecting them each and/or collectively to vicarious liability for this collision. Further, Defendants FedEx, Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc. exercised control and/or had the right to exercise control over the routes, timing, dispatching, location, delivery and manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement subjecting them each and/or collectively to vicarious liability for this collision and/or making the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Defendants Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc.

135. Additionally, and/or alternatively, upon information and belief, Defendant FedEx and Defendant Nolan were engaged in a partnership, joint venture, and/or joint enterprise and/or

Nolan was acting as the agent of FedEx making FedEx vicariously liable for the acts and omissions of Nolan.

136. Additionally, and/or alternatively, upon information and belief, Defendant Nolan and Defendants Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc. were engaged in a partnership, joint venture, and/or joint enterprise and/or Defendants Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc. were acting as the agent(s) of Nolan making Nolan vicariously liable for the acts and omissions of Defendants Iso Rizo, Simon Express, Energy Trucking, Ryder Truck Rentals, Inc, and/or Ryder System, Inc.

137. Additionally, and/or alternatively, upon information and belief, Defendant Simon Express and Defendant Energy Trucking were engaged in a partnership, joint venture, and/or joint enterprise and/or Defendant Simon Express and Defendant Energy Trucking were acting as the agent of one another making each vicariously liable for the acts and omissions the other.

138. Defendants Saint Lot and Clement were engaged in an agency relationship, joint venture, joint enterprise and/or partnership between themselves as they were driving the FedEx Truck as a team sharing driving duties and responsibilities along with sharing the profits and expenses.

139. Additionally, and/or alternatively, upon information and belief, the FedEx Truck Defendants collectively and/or a combination thereof were engaged in an agency relationship with one another, a partnership, joint venture and/or joint enterprise.

## D. Negligent Entrustment

140. Incorporating all allegations and facts stated herein, the FedEx Truck Defendants are responsible for this collision under negligent entrustment, because (a) the FedEx Truck

Defendants supervised and controlled the commercial tractor and trailer driven by Defendants Saint Lot and Clement at the time of the collision, (b) Defendants Saint Lot and Clement were incompetent and/or unsafe drivers, (c) the FedEx Truck Defendants either knew or should have known Defendants Saint Lot and Clement were incompetent and/or unsafe drivers, and (d) the negligence of Defendants' Saint Lot and Clement on the occasion in question proximately caused the collision. The negligence of the FedEx Truck Defendants in negligently entrusting Defendants Saint Lot and Clement to drive proximately caused the collision giving rise to this case and the injuries and damages suffered by Plaintiffs arising from the death of Tiffany Gerred.

141. Plaintiffs further and specifically assert that Defendant FedEx was negligent in entrusting its trailer and the loads at issue to Simon Express, Energy Trucking, Iso Rizo and/or the drivers who were unsafe and who proximately caused this collision. Plaintiffs specifically incorporate the detailed allegations and facts set forth throughout this petition, and others that will be proven at trial.

142. Plaintiffs further and specifically assert that Defendants Simon Express, Energy Trucking and/or Iso Rizo FedEx were negligent in entrusting the commercial motor vehicle and the loads at issue to Jean Marie Saint Lot and/or Frantz Clement who were unsafe and who proximately caused this collision. Plaintiffs specifically incorporate the detailed allegations and facts set forth throughout this petition, and others that will be proven at trial.

### E. Negligent Hiring, Training, Retention, Supervision and Failure to Control

143. Incorporating all allegations and facts stated herein, the FedEx Truck Defendants owed a duty to other motorists, including Tiffany Gerred, to hire safe, competent drivers, to implement and enforce safety policies and procedures, to train, instruct, monitor and supervise its drivers, and to take actions to control their drivers to prevent collisions and injuries to other

motorists, including Tiffany Gerred, but failed to do so. The FedEx Truck Defendants negligent acts and/or omissions in this regard include, but are not limited to, the following:

(a) Failing to train and instruct drivers in proper driving techniques, including in hazardous conditions;

(b) Failing to prohibit unsafe driving practices, including in hazardous conditions;

(c) Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

(d) Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

(e) Failing to monitor drivers;

(f) Negligent and reckless hiring, qualification and retention of unfit, unsafe drivers;

(g) Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

(h) Negligently creating or allowing a culture of non-compliance by failing to require observance of, and approving violations of, rules and regulations for commercial motor vehicles; and

(i) Aiding, abetting and encouraging drivers to violate the rules of the road.

144. The acts and omissions described above, singularly or in any combination, amount to negligence and/or negligence *per se*, and were a proximate cause of the collision involving Tiffany Gerred made the basis of this suit and of the Plaintiffs' injuries and damages.

## F. Negligent Hiring, Selecting, Retaining as to Defendants FedEx, Nolan, Ryder Truck and/or Ryder System

145. Additionally, and/or alternatively, incorporating all allegations and facts stated herein, Defendants FedEx, Nolan, Ryder Truck and/or Ryder System owed a legal duty to Tiffany Gerred and Plaintiffs to exercise reasonable care in selecting, hiring and retaining a qualified and competent motor carrier. Defendants FedEx, Nolan, Ryder Truck and/or Ryder System breached

this duty and negligently selected, hired, retained, and/or entrusted the motor carriers Defendants Iso Rizo, Simon Express and/or Energy Trucking.

146. Section 411 of the Second Restatement of Torts addresses Defendants FedEx's, Nolan's, Ryder Truck's and/or Ryder System's liability associated with their negligent selection of Defendants Iso Rizo, Simon Express and/or Energy Trucking. Specifically, Section 411 states as follows:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

Restatement (Second) of Torts § 411 (Am. Law Inst. 1965).

147. Operating a commercial motor vehicle on the public highways involves risks of physical harm unless it is skillfully and carefully done. Defendants FedEx, Nolan, Ryder Truck and/or Ryder System failed to make a sufficient inquiry as to the competence of Defendants Iso Rizo, Simon Express and/or Energy Trucking under Section 411.

148. Defendants FedEx, Nolan, Ryder Truck and/or Ryder System knew or should have known that Defendants Iso Rizo, Simon Express and/or Energy Trucking to whom they entrusted transporting and delivering the load at issue was an unsafe trucking company. Indeed, FedEx acknowledges and admits that the load was entrusted to a motor carrier who was not approved by FedEx and who should never have been entrusted with hauling this load, yet FedEx ultimately allowed said unapproved motor carrier into its premises, directed the unapproved carrier to the trailer FedEx wanted hauled, granted said motor carrier permissive use of FedEx's trailer, and directed said unapproved motor carrier out FedEx's secure gates knowing the unapproved motor carrier was hauling FedEx's trailer destined for Texas. Defendants FedEx, Nolan, Ryder Truck

and/or Ryder System failed to investigate the background of Defendants Iso Rizo, Simon Express and/or Energy Trucking to determine whether Defendants Iso Rizo, Simon Express and/or Energy Trucking were safe, competent, and fit for the job. If Defendants FedEx, Nolan, Ryder Truck and/or Ryder System would have conducted a proper investigation, it would have revealed Defendants Iso Rizo, Simon Express and/or Energy Trucking were not reasonably competent and safe motor carriers. Thus, the negligence of Defendants FedEx, Nolan, Ryder Truck and/or Ryder System in selecting Defendants Iso Rizo, Simon Express and/or Energy Trucking was a proximate cause of Plaintiffs' injuries.

## G. Double Brokering, Unlawful Brokerage Activities, and/or Further Negligence

149. Incorporating all allegations and facts stated herein, Defendants FedEx, Nolan, Iso Rizo, Simon Express, Energy Trucking and/or the drivers Saint Lot and Clement, directly and indirectly, engaged in, authorized, consented to and/or permitted double brokering and/or unlawful brokerage activities in violation of 49 U.S. Code § 14916 and/or aided and abetted one another in violating that statute. These acts and omissions of each of these Defendants, as alleged throughout Plaintiffs' Petition and incorporated by reference herein, subject said Defendants—along with each of their officers, directors, and principals—to joint and several liability to Plaintiffs for all claims and damages without regard to amount.

150. Additionally and/or alternatively, Defendants FedEx, Nolan, Iso Rizo, Simon Express, and Energy Trucking, directly and indirectly, committed acts of negligence that resulted in the load at issue being hauled by an unapproved, unsafe motor carrier which said Defendants knew or should have known posed an unreasonable risk of harm to the travelling public, including Tiffany Gerred and others travelling on the roads in Texas where the load at issue was destined. Said acts and omissions were a proximate cause of Plaintiffs' injuries.

### H. Gross Negligence

151. Incorporating all allegations and facts stated herein, the FedEx Truck Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the FedEx Truck Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Tiffany Gerred. This amounts to gross negligence; such gross negligence was a proximate case of the collision, the death of Tiffany Gerred and the resulting injuries and damages suffered by Plaintiffs; and as such the jury should consider assessing punitive or exemplary damages.

### I. Permissive Use and Coverage Under FedEx's Tower of Insurance

152. The facts demonstrate that Simon Express/Energy Trucking and its drivers Saint Lot and Clement were granted permissive use by FedEx of FedEx's trailers to haul the loads at issue. Indeed, FedEx granted them access to its premises, FedEx personnel engaged with them, FedEx personnel directed them when and where on its premises to pick up the respective trailers, FedEx gave them paper work on the trailers and the destination for each trailer, FedEx personnel again engaged with them to ensure the proper trailer was connected and had the corrected seal number, FedEx ensured they knew where they were destined with the trailer and the requisite delivery time, FedEx provided them with a route and map to reach the destination, and FedEx allowed them to exit FedEx's premises with the trailer attached to the Simon Express/Energy Trucking tractor. As such, there can be no genuine dispute that FedEx gave Simon Express/Energy Trucking and its drivers Saint Lot and Clement permissive use of the trailers at issue. Moreover, they were carrying out and fulfilling FedEx's business in transporting FedEx's trailers.

153. FedEx trailers are defined as "autos" under FedEx's tower of insurance and the endorsements attached thereto provide that permissive users are "additional insureds" under FedEx's tower of insurance. Thus, Simon Express/Energy Trucking and its drivers Saint Lot and Clement are additional insured and are entitled to the duty of defense and the duty of indemnity under FedEx's tower of insurance. Further, given the totality of the facts and circumstances, the fact that Iso Rizo was an approved motor carrier for FedEx and that Iso Rizo accepted the loads at issue and thus continued as a motor carrier of record, Iso Rizo is likewise a permissive user of the trailers and is an additional insured entitled to the duty of defense and the duty of indemnity under FedEx's tower of insurance. Moreover, the Gerred Family Plaintiffs' claims are covered claims under FedEx's tower of insurance. Accordingly, the Gerred Family Plaintiffs seek a declaratory judgment that Simon Express/Energy Trucking, its drivers Saint Lot and Clement, and Iso Rizo are permissive users of FedEx's trailers at issue, that the FedEx trailers are "autos" under FedEx's tower of insurance, that Simon Express/Energy Trucking, its drivers Saint Lot and Clement, and Iso Rizo are "additional insureds" under FedEx's tower of insurance, that the Gerred Family Plaintiffs' claims are covered claims under FedEx's tower of insurance, and that upon verdict and judgment in this case the Gerred Family Plaintiffs are entitled to recover under FedEx's tower of insurance.

## XI. DAMAGES

### A. PLAINTIFFS JUAN AND CINDY GERRED ALONG WITH DIEGO CONTRERAS, AS NEXT FRIENDS OF E.C., A MINOR CHILD

154. Plaintiffs Juan and Cindy Gerred along with Diego Contreras, collectively, bring these claims as next of friends and on behalf of E.C., a minor child. E.C. is the now 13 year-old daughter of Tiffany Gerred. Plaintiffs Juan and Cindy Gerred are the grandparents and partial

custodians of E.C., and Plaintiff Diego Contreras is the natural biological father and partial custodian of E.C. As a proximate cause of Defendants' negligence, negligence per se, gross negligence and other wrongful conduct, Plaintiffs request that the jury determine the sum of money for each element of damages that will fairly and reasonably compensate E.C., Tiffany's minor daughter, for her harms and losses suffered in the past and those which will, in reasonable probability, be suffered in the future as a result of the wrongful death of her beloved and wonderful mom, Tiffany Gerred. These damages for E.C. – those incurred up to the time of trial and those to be incurred beyond the time of trial – include:

(a) Pecuniary loss sustained in the past;

(b) Pecuniary loss that, in reasonable probability, will be sustain in the future;

(c) Loss of companionship and society sustained in the past;

(d) Loss of companionship and society that, in reasonable probability, will be sustained in the future;

(e) Mental anguish sustained in the past;

(f) Mental anguish that, in reasonable probability, will be sustained in the future; and

(g) Loss of inheritance.

155. Additionally, as next of friends and on behalf of E.C., the Plaintiffs request that the jury assess exemplary damages separately and individually as to each Defendant for their respective gross negligence.

**B. PLAINTIFFS JUAN AND CINDY GERRED, INDIVIDUALLY**

156. As a proximate cause of Defendants' negligence, negligence per se, gross negligence and other wrongful conduct, Plaintiffs Juan and Cindy Gerred, individually, request that the jury determine the sum of money for each element of damages that will fairly and reasonably compensate them, as the parents of Tiffany Gerred, for their harms and losses suffered

in the past and those which will, in reasonable probability, be suffered in the future as a result of the wrongful death of their daughter, Tiffany Gerred with whom they collectively lived as a single household and whom they dearly loved. These damages for Plaintiffs Juan and Cindy Gerred, individually – those incurred up to the time of trial and those to be incurred beyond the time of trial – include:

(a) Pecuniary loss sustained in the past;

(b) Pecuniary loss that, in reasonable probability, will be sustain in the future;

(c) Loss of companionship and society sustained in the past;

(d) Loss of companionship and society that, in reasonable probability, will be sustained in the future;

(e) Mental anguish sustained in the past; and

(f) Mental anguish that, in reasonable probability, will be sustained in the future.

## C. Plaintiffs Juan and Cindy Gerred, As Representatives of the Estate of Tiffany Gerred, Deceased

157. As a proximate cause of Defendants' negligence, negligence per se, gross negligence and other wrongful conduct, Plaintiffs Juan and Cindy Gerred, as representatives of the Estate of Tiffany Gerred, request that the jury determine the sum of money for each of the following elements of damages that will fairly and reasonably compensate the Estate of Tiffany Gerred:

(a) Physical pain and mental anguish suffered and experienced by Tiffany Gerred before her death, including but not limited to the pre-impact fear she sustained in all reasonable probability; and

(b) Funeral and burial expenses.

158. Additionally, as representatives of the Estate of Tiffany Gerred, Plaintiffs Juan and Cindy request that the jury assess exemplary damages separately and individually as to each Defendant for their respective gross negligence.

## XII. Rule 193.7 Notice

159. Pursuant to Tex. R. Civ. P. 193.7, Plaintiffs reserve the right to utilize any documents produced during the course of discovery in this case as evidence at the time of trial.

## XIII. Plaintiffs' Jury Demand

160. Plaintiffs demand a trial by Jury.

## XIV. Prayer

161. WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final trial before a jury, Plaintiffs have and recover judgment against Defendants, jointly and severally, for all actual damages as alleged herein, punitive and/or exemplary damages, costs of court, pre-judgment and post-judgment interest at the highest legal rate thereon for all damages, and for all such other and further relief to which Plaintiffs may be justly entitled, at law or in equity, special or general.

Respectfully submitted,

STEPHENS LAW FIRM, PLLC

/s/ *JASON B. STEPHENS*
JASON B. STEPHENS
Jason@stephenslaw.com
Texas Bar No. 24003001

R. RIEKER CARSEY
Texas Bar No. 24075665
Rieker@stephenslaw.com

1300 S. University Drive, Suite 300
Fort Worth, Texas 76107
(817)420-7000 – Telephone
(817)420-7777 – Facsimile

**COUNSEL FOR GERRED PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically filed and served pursuant to the Texas Rules of Civil Procedure on this 15TH day of March 2024, upon each attorney of record.

/s/ *JASON B. STEPHENS*
Jason B. Stephens

# EXHIBIT B-12

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/16/2023
CT Log Number 543238523

## Service of Process Transmittal Summary

**TO:** Catherine David, General Counsel
FERROVIAL CONSTRUCTION US CORP.
9600 Great Hills Trl Ste 200E
Austin, TX 78759-5680

**RE:** **Process Served in Texas**

**FOR:** North Tarrant Infrastructure, LLC (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | KERRY QUINN GOBER vs. NTE MOBILITY PARTNERS LLC |
| **CASE #:** | 34234016023 |
| **PROCESS SERVED ON:** | C T Corporation System, Dallas, TX |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/16/2023 at 12:54 |
| **JURISDICTION SERVED:** | Texas |
| **ACTION ITEMS:** | CT will retain the current log<br>Image SOP<br>Email Notification, Catherine David catherine.david@ferrovial.us<br>Email Notification, Bryan W. Tate btate@wwebber.com<br>Email Notification, Juli Simoneaux jstibbe@gpi-99.com<br>Email Notification, LEAH SWAIM lswaim@ferrovial.us<br>Email Notification, Eric Etheridge eetheridge@ferrovial.us |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>866-665-5799<br>SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Thu, Feb 16, 2023
**Server Name:** Cheryl Albert

| | |
|---|---|
| Entity Served | NORTH TARRANT INFRASTRUCTURE, LLC |
| Case Number | 342-340160-23 |
| Jurisdiction | TX |

| Inserts | | |
|---|---|---|
| | | |

# THE STATE OF TEXAS
# DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 342-340160-23*

KERRY QUINN GOBER
VS.
NTE MOBILITY PARTNERS LLC, ET AL

TO: NORTH TARRANT INFRASTRUCTURE LLC

B/S REG AGT-CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS TX 75201-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 342nd District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

KERRY QUINN GOBER

Filed in said Court on February 9th, 2023 Against
NTE MOBILITY PARTNERS LLC, NTE MOBILITY PARTNERS SEGMENTS 3 LLC, CINTRA US SERVICES LLC, NORTH TARRANT INFRASTRUCTURE LLC, WEBBER LLC, FERROVIAL AGROMAN US CORP, TEXAS DEPARTMENT OF TRANSPORTATION, SONIC LOGISTICS LLC, SINGH SUKHWINDER, BA
For suit, said suit being numbered 342-340160-23 the nature of which demand is as shown on said PLAINTIFF'S ORIGINAL PETITION a copy of which accompanies this citation.

JOHN M GROCE, JR
Attorney for KERRY QUINN GOBER Phone No. (817)294-1900
Address 1310 W EL PASO ST FORT WORTH, TX 76102

Thomas A. Wilder , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 14th day of February, 2023.

By ______ AMANDA PFISTERER

A CERTIFIED COPY
ATTEST: 02/14/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Pfisterer

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *34234016023000010*

Received this Citation on the _____ day of ______________________, _____ at _____ o'clock ___M; and executed at ______________________ within the county of ______________, State of ________ at ______ o'clock ___M on the _______ day of ______________, ____ by delivering to the within named (Def.): _ defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION , having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff: ______________________________

County of ______________________ State of________ By ______________________ Deputy

Fees $________ ______________________

State of ____________ County of ______________ (Must be verified if served outside the State of Texas)

Signed and sworn to by the said ______________________ before me this ____ day of ________, ____

to certify which witness my hand and seal of office

(Seal) ______________________

County of , State of ______________

A CERTIFIED COPY
ATTEST: 02/14/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Pfisterer

*CITATION*

Cause No. 342-340160-23

KERRY QUINN GOBER

VS.

NTE MOBILITY PARTNERS LLC,
ET AL

ISSUED

This 14th day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By AMANDA PFISTERER Deputy

JOHN M GROCE, JR
Attorney for: KERRY QUINN GOBER
Phone No. (817)294-1900
ADDRESS: 1310 W EL PASO ST

FORT WORTH, TX 76102

*CIVIL LAW*

*34234016023000010*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

FILED
TARRANT COUNTY
2/9/2023 6:29 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 342-340160-23

| | | |
|---|---|---|
| KERRY QUINN GOBER | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| NTE MOBILITY PARTNERS LLC; | § | |
| NTE MOBILITY PARTNERS SEGMENTS 3 | § | |
| LLC; CINTRA US SERVICES LLC; | § | |
| NORTH TARRANT INFRASTRUCTURE LLC; | § | |
| WEBBER LLC; | § | |
| FERROVIAL AGROMAN US CORP; | § | TARRANT COUNTY, TEXAS |
| TEXAS DEPARTMENT OF | § | |
| TRANSPORTATION; | § | |
| SONIC LOGISTICS, LLC; | § | |
| SINGH SUKHWINDER; | § | |
| BARR & HOFFMAN LEASING, INC. d/b/a CE- | § | |
| DFW WAREHOUSE SOLUTIONS; | § | |
| BARR & HOFFMAN INVESTMENTS, INC.; | § | |
| DEREK MICHAEL FRANK; | § | |
| SIERRA MOUNTAIN EXPRESS, INC.; | § | |
| ARTURO MONTES; | § | |
| COCA-COLA SOUTHWEST BEVERAGES, | § | |
| LLC; | § | |
| JALEN MCENLEY; VAL ERNST; | § | |
| J.B. HUNT TRANSPORT, INC.; CODY | § | |
| WILLIAMS; GO TO LOGISTICS, INC.; DEVIN | § | |
| MEEK; THELIN RECYCLING COMPANY | § | |
| LLC; REBECCA ANN BENSON; ANGIE | § | |
| DENISE LIVESAY; AND MICHAEL PAARUP | § | _______ JUDICIAL DISTRICT |

Defendants

## PLAINTIFF'S ORIGINAL PETITION

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Kerry Quinn Gober, an individual (hereinafter referred to as "Plaintiff"), files this Petition against the following entities, collectively referred to as "Defendants" herein:

**I-35 TOLLWAY OWNERS, OPERATIONS AND MAINTENANCE DEFENDANTS:**

1. NTE MOBILITY PARTNERS LLC;

2. NTE MOBILITY PARTNERS SEGMENTS 3 LLC;

3. CINTRA US SERVICES LLC;

4. NORTH TARRANT INFRASTRUCTURE LLC;

5. WEBBER LLC;

6. FERROVIAL AGROMAN US CORP;

7. TEXAS DEPARTMENT OF TRANSPORTATION;

**TRACTOR TRAILER AND/OR MULTI VEHICLE DEFENDANTS**

**("Unit" numbers of vehicles provided below are unit numbers assigned on the Fort Worth Police Department report of this incident dated March 1, 2021)**

8. SONIC LOGISTICS LLC, driven by SINGH SUKHWINDER (Units 6 & 7)

9. SINGH SUKHWINDER, driver of Units 6 & 7

10. BARR & HOFFMAN LEASING, INC. d/b/a CE-DFW WAREHOUSE SOLUTIONS (vehicle owned by ENTERPRISE, FM TRUST), driven by DEREK MICHAEL FRANK (Unit 17);

11. BARR & HOFFMAN INVESTMENTS, INC. driven by DEREK MICHAEL FRANK (Unit 17);

12. DEREK MICHAEL FRANK, driver of Unit 17;

13. SIERRA MOUNTAIN EXPRESS, INC. driven by ARTURO MONTES (Units 19 & 20);

14. ARTURO MONTES, driver of Units 19 & 20;

15. COCA-COLA SOUTHWEST BEVERAGES, LLC, driven by JALEN MCENLEY (Units 23 & 24);

16. JALEN MCENLEY, driver of Units 23 & 24;

17. J.B. HUNT TRANSPORT, INC., driven by VAL ERNST (Units 39-40);

18. VAL ERNST, driver of Units 39-40;

19. GO TO LOGISTICS, INC., driven by CODY WILLIAMS (Units 57-58);

20. CODY WILLIAMS, driver of Units 57-58;

21. THELIN RECYCLING COMPANY LLC, driven by DEVIN MEEK (Unit 59);

22. DEVIN MEEK, driver of Unit 59;

**SINGLE VEHICLE UNITS**

**("Unit" numbers of vehicles provided below are unit numbers assigned on the Fort Worth Police Department report of this incident dated March 1, 2021)**

23. REBECCA ANN BENSON, driver of Unit 30;

24. ANGIE DENISE LIVESAY, driver of Unit 31;

25. MICHAEL PAARUP, driver of Unit 32.

Plaintiff would respectfully show the Court as follows:

## 1. DISCOVERY CONTROL PLAN

1.01 Pursuant to Texas Rule of Civil Procedure Rule 190.4, discovery under this cause is intended to be conducted under Level 3.

## 2. PLAINTIFF

2.01 Plaintiff KERRY QUINN GOBER is an adult citizen of the State of Texas. The last three digits of Plaintiff's Social Security number are 122 and the last three digits of Plaintiff's driver's license are 576.

## 3. DEFENDANTS

### I-35 TOLLWAY OWNERS, OPERATIONS AND MAINTENANCE DEFENDANTS

3.01 **DEFENDANT NTE MOBILITY PARTNERS, LLC**, is a Delaware corporation, qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, through CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.02 **DEFENDANT NTE MOBILITY PARTNERS SEGMENTS 3 LLC**, is a Delaware corporation, qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, through CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.03 **DEFENDANT CINTRA US SERVICES LLC,** is a limited liability company organized and existing under the laws of the State of Texas and may be served through its registered agent for service of process in Texas, Guillermo Sanguesa at 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

3.04 **DEFENDANT NORTH TARRANT INFRASTRUCTURE LLC**, is a limited liability company organized and existing under the laws of the State of Texas and may be served through its registered agent for service of process in Texas, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.05 **DEFENDANT WEBBER LLC,** is a limited liability company organized and existing under the laws of the State of Texas and may be served through its registered agent for service of process in Texas, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.06 **DEFENDANT FERROVIAL AGROMAN US CORP** is a Delaware corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, Fernando Martinez Caro at 700 Chevy Chase Blvd., Suite 500, Austin, Texas 78752.

3.07 **DEFENDANT TEXAS DEPARTMENT OF TRANSPORTATION** is a government agency of the State of Texas and may be served at 125 East 11th Street, Austin, Texas 78701-2483.

**TRACTOR/TRAILER AND/OR MULTI VEHICLE DEFENDANTS**

3.08 **DEFENDANT SONIC LOGISTICS LLC,** (Units 6 & 7), owner of vehicle driven by DEFENDANT SINGH SUKHWINDER, is a foreign limited liability company organized and existing under the laws of the State of Washington, with its principal place of business in Ferndale, Whatcom County, Washington. This Defendant may be served with process by serving its registered agent for service, Elite Registration Services, 1901 Front Street, Lynden, Washington 98264-1707.

3.09 **DEFENDANT SINGH SUKHWINDER**, (driver of Units 6 & 7 – Sonic Logistics LLC), is a resident of Billingham, Whatcom County, Washington. This Defendant may be served through J. Bruce Bugg, Jr., Chairman Texas Transportation Commission at 125 E. 11th Street, Austin, Texas 78701-2483 or at his home address of 4243 Stone Crest Court, Bellingham, Washington 98226.

3.10 **DEFENDANT BARR & HOFFMAN LEASING, INC. d/b/a CE-DFW WAREHOUSE SOLUTIONS** (Unit 17), owners/leases of the vehicle driven by DEFENDANT DEREK MICHAEL FRANK, is a Texas corporation, organized and existing under the laws of the State of Texas. This Defendant may be served by serving any principal or officer authorized to accept service, through Brian Hoffman at 1005 Tinker Road, Colleyville, Texas 76034.

3.11 **DEFENDANT BARR & HOFFMAN INVESTMENTS, INC.** (Unit 17), owners/lessees of the vehicle driven by DEFENDANT DEREK MICHAEL FRANK, is a Texas corporation, organized and existing under the laws of the State of Texas. This Defendant may be served by serving any principal or officer authorized to accept service, through Brian Hoffman at 1005 Tinker Road, Colleyville, Texas 76034.

3.12 **DEFENDANT DEREK MICHAEL FRANK** (driver of Unit 17 – Barr & Hoffman Leasing, Inc.) is a resident of Rhome, Wise County, Texas. This Defendant may be served at 139 Creasser Lane, Rhome, Texas 76078.

3.13 **DEFENDANT SIERRA MOUNTAIN EXPRESS INC.** (Units 19 & 20) is a Nevada corporation, organized and existing under the laws of the State of Nevada. This Defendant may be served by serving any principal or officer authorized to accept service, through their registered agent, William Scanlon at 1814 Westfield Loop, Houston, Texas 77073.

3.14 **DEFENDANT ARTURO MONTES** (driver of Units 19 & 20 – Sierra Mountain Express, Inc.), is a resident of Houston, Harris County, Texas. This Defendant may be served at 16111 Marcelia Drive, Houston, Texas 77049.

3.15 **DEFENDANT COCA-COLA SOUTHWEST BEVERAGES LLC** (Units 23 & 24) is a Delaware corporation, authorized to do business in the State of Texas. This Defendant may be served with process by serving any principal or officer authorized to accept service, including its registered agent for service, Corporation Service Company d/b/a CSC – Lawyers Inc. at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.16 **DEFENDANT JALEN MCENLEY** (driver of units 23 & 24 – Coca-Cola Southwest Beverages), is a resident of Irving, Dallas County, Texas, and may be served with process at 3974 N. Story Road, #925, Irving, Texas 75038.

3.17 **DEFENDANT J.B. HUNT TRANSPORT, INC.,** (Units 39-40) is a foreign corporation who is operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries and losses. Defendant J.B. Hunt does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas.

This Defendant may be served with process through its registered agent, Corporation Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701.

3.18 **DEFENDANT VAL ERNST** (driver of Units 39 & 40 – J.B. Hunt Transport, Inc.), is a resident of Mansfield, Tarrant County, Texas, and can be served with process at 1704 Griffin Lane, Mansfield, Texas 76063.

3.19 **DEFENDANT GO TO LOGISTICS, INC.** (Units 57-58), is a foreign corporation who is operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries and losses. Defendant Go To Logistics does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. This Defendant may be served with process through its registered agent, Tomasz Rzedaian at 2233 West Street, River Grove, Illinois 60171.

3.20 **DEFENDANT CODY WILLIAMS** (driver of Units 57 & 58 – Go To Logistics), is a resident of Fort Worth, Tarrant County, Texas and can be served with process at 6078 Copperfield Drive, Unit #411, Fort Worth, Texas 76132.

3.21 **DEFENDANT THELIN RECYCLING COMPANY LLC** (Unit 59) is a limited liability company, organized and existing under the laws of the State of Texas, and may be served with process through its registered agent for service, Thelin GP, LLC, 3875 W. Whitestone Boulevard, Cedar Park, Texas 78613.

3.22 **DEFENDANT DEVIN MEEK** (driver of Unit 59), is a resident of Fort Worth, Tarrant County, Texas and can be served with process at 8120 Horseman Road, Fort Worth, Texas 76131.

**SINGLE VEHICLE DEFENDANTS**

3.23 **DEFENDANT REBECCA ANN BENSON** (Unit 30) is a resident of Fort Worth, Tarrant County, Texas and may be served with process at 12928 Parade Grounds Lane, Fort Worth, Texas 76244.

3.24 **DEFENDANT ANGIE DENISE LIVESAY** (Unit 31) is a resident of Fort Worth, Tarrant County, Texas and may be served with process at 12240 Walden Wood Drive, Fort Worth, Texas 76244.

3.25 **DEFENDANT MICHAEL PAARUP** (Unit 32) is a resident of Fort Worth, Tarrant County, Texas and may be served with process at 7791 Arcadia Trail, Fort Worth, Texas 76137.

**4. MISNOMER/ALTER-EGO**

4.01 In the event that any parties are misnamed or not included herein, it is the contention of Plaintiff that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein. Pursuant to Rule 28 of the Texas Rules of Civil Procedure, if some other individual(s), partnership(s), corporation(s), association(s), or business entity(ies) of any type are owned and/or operated under the name or names of the above Defendants, Plaintiff hereby demands that the appropriate entity be substituted.

**5. VENUE AND JURISDICTION**

5.01 Venue is proper in this Court, pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1), because Tarrant County is where all or a substantial part of the events or omissions giving rise to these claims occurred.

5.02 Venue is also proper in this Court, pursuant to Texas Civil Practice & Remedies Code §15.002(a)(3) because Tarrant County is the principal place of business for Defendants NTE Mobility Partners LLC and NTE Mobility Partners Segments 3 LLC.

5.03 This Court has jurisdiction over this matter as Plaintiff seeks damages in excess of the minimal jurisdictional limits of this Court.

5.04 Additionally, Plaintiff and Defendant NTE Mobility Partners LLC and Defendant NTE Mobility Partners Segments 3 LLC are citizens of Texas, and hence there is no complete diversity of citizenship.

5.05 The remaining Defendants who are non-citizens of Texas all have consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers, and designating an agent for service of process in Texas. Designation of such an agent operates as an express consent to personal jurisdiction.

5.06 Furthermore, the remaining Defendant who are non-citizens of Texas have established minimum contacts in Texas by driving, shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Further, such Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas.

5.07 All Defendants who are non-citizens of Texas have had continuous and systematic contacts with Texas invoking general personal jurisdiction over them.

5.08 Thus, this Court has specific personal jurisdiction over all Defendants. Accordingly, removal to federal court would be improper and sanctionable because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

**6. FACTS**

6.01 On or about February 11, 2021, Kerry Quinn Gober was injured as a result of Defendants' negligence and/or gross negligence. On this date, Kerry Quinn Gober was driving on the

expressway of Interstate I-35 in Fort Worth, Texas. This roadway was negligently and/or grossly negligently operated and/or maintained by one of more of the I-35 TOLLWAY OWNERS, OPERATIONS AND/OR MAINTENANCE DEFENDANTS named in this lawsuit.

6.02 In addition, at the time of this incident, various tractor trailer/ multi-vehicle and single unit vehicles that various defendants were driving on the I-35 expressway and/or the I-35 highway, committed various acts of negligence and/or gross negligence which contributed to cause a catastrophic vehicular chain reaction. These events resulted in multiple vehicular collisions causing bodily injuries to Kerry Quinn Gober.

6.03 Based upon currently available information and investigation, Plaintiff asserts the following causes of action against the I-35 TOLL WAY OPERATIONS AND MAINTENANCE DEFENDANTS, the TRACTOR TRAILER AND/OR MULTI-VEHICLE DEFENDANTS and the SINGLE VEHICLE UNIT DEFENDANTS that Plaintiff has specifically identified previously herein.

## 7. CAUSES OF ACTION

**Negligence and/or Gross Negligence**

7.01 Plaintiff incorporates all allegations contained above. Plaintiff further asserts that his injuries were caused by one or more acts of negligence and/or gross negligence on the part of Defendants. These include, but are not limited to the following:

7.02 **I-35 TOLLWAY OPERATIONS AND MAINTENANCE DEFENDANTS**

a. Failing to properly operate and/or maintain the I-35 roadway where this incident occurred;

b. Failing to properly maintain the roadway in order to discover any defects as they existed at the time of this incident;

c. Failing to discover any hazards or defects which existed at this time of incident;

d. Failing to inspect, or adequately and/or properly inspect, the roadway;

e. Failing to monitor, and/or timely monitor, the weather conditions that existed at the time of this incident;

f. Failing to adequately repair any defect which existed at the time of this incident;

g. Failing to post adequate warning signs on the roadway to warn of any hazards or defects of which the defendants had, or should have had, knowledge;

h. Failing to provide barriers that would have prevented this type of incident;

i. Failing to provide safeguards that would have prevented this type of incident;

j. Failing to de-ice the I-35 tollway prior to the time of the incident made the basis of this suit;

k. Failing to close the I-35 tollway because of the presence of ice on the tollway; and

l. Committing various acts and/or omissions of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

7.03 Specifically, the NTSB (National Transportation Safety Board) issued its preliminary report note that four hours before the crash, the weather station at Fort Worth Meacham International Airport had reported freezing rain and freezing mist. This airport is approximately three miles northwest of the crash site. Further, the report noted that more than two hours before the occurrence made the basis of this suit, NTE Mobility Partners Segments 3 had posted a message on a dynamic message sign that displayed the message "ICY CONDITIONS EXIST/PLEASE USE CAUTION" noting that this message was based on information from another earlier crash at 3:08. This evidence, along with other available evidence indicates that **ALL OPERATIONS AND MAINTENANCE DEFENDANTS** were aware of the icy and hazardous conditions hours before

the collisions occurred and yet negligently and/or grossly negligently failed to prevent this foreseeable hazardous event.

**7.04 TRACTOR TRAILER AND/OR MULTI-VEHICLE DEFENDANTS**

a. Failing to maintain a safe speed;

b. Failing to maintain a proper and safe distance;

c. Failing to pay attention to the road and driving conditions;

d. Failing to monitor road and driving conditions;

e. Failing to operate their vehicle in a safe manner;

f. Failing to properly train driver employees;

g. Failing to properly supervise driver employees;

h. Failing to properly follow Federal Motor Safety Carrier Regulations; and

i. Committing various other acts of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

7.05 In addition, Plaintiff asserts the doctrine of ***Respondent Superior*** against the Tractor and/or Multi-Vehicle Defendants and would state that at the time of the occurrence of the act in question and immediately prior thereto, Defendants' drivers, Singh Sukhwinder, Derek Michael Frank, Arturo Montes, Jalen McEnley, Val Ernst, Cody Williams and Devin Meek were in the course and scope of their employment (as identified above) with Defendants SONIC LOGISTICS LLC, BARR & HOFFMAN LEASING, INC. d/b/a CE-DFW WAREHOUSE SOLUTIONS, SIERRA MOUNTAIN EXPRESS, INC., COCA-COLA SOUTHWEST BEVERAGES LLC, J.B. HUNT TRANSPORT, INC., GO TO LOGISTICS, and THELIN RECYCLING COMPANY, LLC.

7.06 In addition and/or in the alternative, at the time of the occurrence of the act in question and immediately prior thereto, Defendants' drivers, Singh Sukhwinder, Derek Michael Frank, Arturo

Montes, Jalen McEnley, Val Ernst, Cody Williams and Devin Meek were engaged in the furtherance of business for their various employer defendants: SONIC LOGISTICS LLC, BARR & HOFFMAN LEASING, INC. d/b/a CE-DFW WAREHOUSE SOLUTIONS, SIERRA MOUNTAIN EXPRESS, INC., COCA-COLA SOUTHWEST BEVERAGES LLC, J.B. HUNT TRANSPORT, INC., GO TO LOGISTICS, and THELIN RECYCLING COMPANY, LLC.

7.07 Also, in addition and/or in the alternative, at the time of the occurrence of the act in question and immediately prior thereto, Defendants' drivers, Singh Sukhwinder, Derek Michael Frank, Arturo Montes, Jalen McEnley, Val Ernst, Cody Williams and Devin Meek were engaged in accomplishing a task for which Defendants' SONIC LOGISTICS LLC, BARR & HOFFMAN LEASING, INC. d/b/a CE-DFW WAREHOUSE SOLUTIONS, SIERRA MOUNTAIN EXPRESS, INC., COCA-COLA SOUTHWEST BEVERAGES LLC, J.B. HUNT TRANSPORT, INC., GO TO LOGISTICS, and THELIN RECYCLING COMPANY, LLC employed them.

The above and foregoing acts and/or omissions were a proximate cause of Plaintiff's damages and were committed by these Defendants.

**7.08 SINGLE VEHICLE UNITS**

a. Failing to maintain a safe speed;

b. Failing to maintain a proper and safe distance;

c. Failing to pay attention to the road and driving conditions;

d. Failing to monitor road and driving conditions;

e. Failing to operate their vehicle in a safe manner;

f. Failing to properly follow the Texas Transportation Code; and

g. Committing various other acts of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

7.09 The incident described above and the injuries sustained by the Plaintiff were also proximately caused by various acts, wrongs and/or omissions on the part of Defendants named above and each and all of these acts, wrongs and/or omissions amounted to the negligence and/or gross negligence on the part of Defendants.

**8. DAMAGES**

8.01 As a direct and proximate result of this occurrence, Plaintiff Kerry Gober has suffered severe and debilitating personal injuries, bodily injury, physical impairment, pain, suffering, and mental anguish. Plaintiff has suffered and seeks the following damages:

a. Medical Expenses: Plaintiff has incurred medical expenses in the past. These expenses were incurred for reasonable and necessary care and treatment of his injuries. The charges incurred for reasonable and were the usual and customary charges for the same or similar services at the time and place rendered. Plaintiff also expects to incur medical expenses in the future in an amount within the Jurisdictional limits of this court;

b. Loss wages and Loss of Earning of capacity: Plaintiff has suffered lost wages in the past. Plaintiff will also suffer a loss of earning capacity in the future;

c. Physical Pain and Suffering: Plaintiff has endured severe physical pain and suffering in the past and will continue to endure severe physical pain and suffering in the future;

d. Mental anguish: Plaintiff has endured severe mental anguish in the past and will continue to endure severe mental anguish in the future; and

e. Physical impairment: Plaintiff has suffered physical impairment in the past and will suffer physical impairment in the future.

By reason of the above and foregoing, Plaintiff has been damaged in a sum within the jurisdictional limits of this Court, for which Plaintiff hereby sues.

**9. INTEREST**

9.01 Plaintiff further pleads that he is entitled to pre-judgment interest and post-judgment interest at the highest rate allowed by law.

## 10. JURY DEMAND

10.01 Pursuant to Rule 216, TEXAS RULES OF CIVIL PROCEDURE, Plaintiff requests a trial by jury.

## 11. PRAYER

11.01 Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final determination of these causes of action, Plaintiff receive judgment against Defendants, jointly and severally, awarding Plaintiff as follows:

a. Actual damages as alleged herein, in an amount within the jurisdictional limits of this Court;

b. Punitive and/or exemplary damages as alleged in this pleading;

c. Pre-judgment interest at the maximum amount allowed by law;

d. Post-judgment interest at the maximum rate allowed by law;

e. Costs of court; and

f. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *John M. Groce, Jr.*
**JOHN M. GROCE, JR.**
State Bar No. 00793860
Email: JGroce@AndersonInjuryLaw.com
**COLE D. MCNIEL**
State Bar No. 24116752
Email: Cole@AndersonInjuryLaw.com

**ANDERSON INJURY LAWYERS**
1310 W. El Paso Street, Fort Worth, TX 76102
Tel: (817) 294-1900 Fax: (817) 294-3113
**ATTORNEYS FOR PLAINTIFF**
**KERRY QUINN GOBER**

# EXHIBIT B-13

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/15/2023
CT Log Number 543232319

## Service of Process Transmittal Summary

**TO:** Catherine David, General Counsel
FERROVIAL CONSTRUCTION US CORP.
9600 Great Hills Trl Ste 200E
Austin, TX 78759-5680

**RE:** **Process Served in Texas**

**FOR:** Ferrovial Construction US Corp. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: NANCY HERRERA // To: Ferrovial Construction US Corp. |
| **CASE #:** | 06732821021 |
| **NATURE OF ACTION:** | Personal Injury - Vehicle Collision |
| **PROCESS SERVED ON:** | C T Corporation System, Dallas, TX |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/15/2023 at 13:47 |
| **JURISDICTION SERVED:** | Texas |
| **ACTION ITEMS:** | CT will retain the current log<br><br>Image SOP<br><br>Email Notification, Catherine David catherine.david@ferrovial.us<br><br>Email Notification, LEAH SWAIM lswaim@ferrovial.us |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>866-665-5799<br>SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Wed, Feb 15, 2023
**Server Name:** Douglas Patterson

| | |
|---|---|
| Entity Served | FERROVIAL CONSTRUCTION US CORP. |
| Case Number | 153-000000-22 |
| Jurisdiction | TX |

| Inserts | | |
|---|---|---|
| | | |

2-15-2023
12:50PM

# THE STATE OF TEXAS
# DISTRICT COURT, TARRANT COUNTY

## *CITATION*

*Cause No. 153-000000-22*

PSC 9027
Exp: 8-31-2024

IN RE: FEBRUARY 11, 2021 INCIDENT ON IH35W
VS.

TO: FERROVIAL CONSTRUCTION US CORP

F/K/A FERROVIAL AGROMAN US CORP

B/S REG AGT-CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS, TX 75201-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S FIRST AMENDED PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 153rd District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

NANCY HERRERA

Filed in said Court on February 7th, 2023 Against
CINTRA US SERVICES LLC, NORTH TARRANT INFRASTRUCTURE LLC, WEBBER LLC, FERROVIAL CONSTRUCTION US CORP, CINTRA HOLDING US CORP, RYDER TRUCK RENTAL INC, CINTRA TEXAS CORP, NTE MOBILITY PARTNERS HOLDING LLC, CINTRA NTE LLC, REDMOND MINERALS INC
For suit, said suit being numbered 153-000000-22 the nature of which demand is as shown on said PLAINTIFF'S FIRST AMENDED PETITION a copy of which accompanies this citation.

RACHEL E MONTES
Attorney for NANCY HERRERA Phone No. (214)522-9401
Address 1121 KINWEST PKWY STE 100 IRVING, TX 75063

______Thomas A. Wilder______ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 14th day of February, 2023.

By ______________________ Deputy
NATALIE THIGPEN

A CERTIFIED COPY
ATTEST: 02/14/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Natalie Thigpen

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *15300000022001271*

Received this Citation on the ______ day of ______________________, _____ at _____ o'clock ___M; and executed at ______________________________ within the county of ______________, State of ________ at _______ o'clock ___M on the _______ day of _______________, _____ by delivering to the within named (Def.): defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S FIRST AMENDED PETITION , having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff:
County of ______________________ State of_________ By ____________________________ Deputy

Fees $________

State of ______________ County of (Must be verified if served outside the State of Texas)
Signed and sworn to by the said ______________________________ before me this ____ day of ________, ___
to certify which witness my hand and seal of office
(Seal)

County of ________________, State of _______________

*CITATION*

A CERTIFIED COPY
ATTEST: 02/14/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Natalie Thigpen

Cause No. 153-000000-22

IN RE: FEBRUARY 11, 2021
INCIDENT ON IH35W

VS.

ISSUED

This 14th day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By NATALIE THIGPEN Deputy

RACHEL E MONTES
Attorney for: NANCY HERRERA
Phone No. (214)522-9401
ADDRESS: 1121 KINWEST PKWY STE 100

IRVING, TX 75063

*CIVIL LAW*

*15300000022001271*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

153-000000-22

FILED
TARRANT COUNTY
2/7/2023 3:31 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 153-000000-22**

**NOT APPLICABLE TO ALL ACTIONS**

| | | | |
|---|---|---|---|
| **IN RE:** | **FEBRUARY 11, 2021 INCIDENT ON IH 35W** | § § | **IN THE DISTRICT COURT** |
| | | § § | **TARRANT COUNTY, TEXAS** |
| | | § § § | **153RD JUDICIAL DISTRICT** |

**Transferred from:**

**CAUSE NO. 067-328210-21**

| | | |
|---|---|---|
| **NANCY HERRERA** | § § | **IN THE DISTRICT COURT** |
| **Plaintiffs** | § § | |
| **V.** | § § § | **67th JUDICIAL DISTRICT** |
| **FED EX GROUND PACKAGE SYSTEM, INC.; NOLAN TRANSPORTATION GROUP LLC; ISO RIZO INC.; SIMON EXPRESS LLC; ENERGY TRUCKING LLC; JEAN MARIE SAINT LOT; FRANTZ CLEMENT; NTE MOBILITY PARTNERS LLC; NTE MOBILITY PARTNERS SEGMENTS 3 LLC; NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING LLC; NTE MOBILITY PARTNERS HOLDING, LLC CINTRA US SERVICES LLC; CINTRA HOLDING US CORP. D/B/A CINTRA US CORP; CINTRA NTE LLC; CINTRA TEXAS CORP; CINTRA NTE MOBILITY PARTNERS SEGMENTS 3 LLC; NORTH TARRANT** | § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| **INFRASTRUCTURE, LLC;** | § | |
| **WEBBER, LLC;** | § | |
| **FERROVIAL CONSTRUCTION US CORP.** | § | |
| **F/K/A FERROVIAL AGROMAN US CORP;** | § | |
| **REDMOND MINERALS, INC.** | § | |
| **REDMOND INCORPORATED** | § | |
| **RYDER TRUCK RENTAL, INC.** | § | |
| **ENVIROTECH SERVICES, INC.** | § | |
| | § | |
| **Defendants** | § | **TARRANT COUNTY, TEXAS** |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, and files this cause of action for negligence resulting in severe and significant bodily harm as a result of a catastrophic motor vehicle pile-up crash that occurred on February 11, 2021 on I-35.

## I.

## DISCOVERY CONTROL PLAN and CLAIM FOR MONETARY RELIEF

Pursuant to Rule 190 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level 3 under a scheduling order specific to the needs of this case. Each individual Plaintiff's actual damages are catastrophic and in excess of the jurisdictional minimums of this Court. The monetary amounts which represent fair and reasonable compensation for Plaintiff's damages are for the jury to decide; however, as required by Tex. R. Civ. Proc. 47(c), Plaintiff will ask the jury to appraise her damages, harms and losses in excess of $1,000,000. Actual damages for harms, losses and damages will be determined by a jury.

## II.
## PARTIES

1. Plaintiff Nancy Herrera is an individual residing in Tarrant County, Texas, who was operating vehicle number 136 as listed on the crash report generated with regard to this crash. Pursuant to Section 30.014 of the TEXAS CIVIL PRACTICE & REMEDIES CODE, Nancy Herrera provides

the last three numbers of her driver's license (486), and the last three numbers of her social security number (210);

1. Defendant FedEx Ground Package System Inc. (hereinafter "FedEx") [units 123-124 in crash report] is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, one of the commercial vehicles that violently crashed into multiple cars, including Nancy Herrera. Defendant FedEx does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. This Defendants has appeared by and through counsel in this lawsuit.

2. Defendant Nolan Transportation Group LLC (hereinafter "Nolan" or "Nolan Transportation") is foreign limited liability company who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms and losses. Defendant Nolan does substantial business in the State of Texas, including shipping, brokering, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Nolan Transportation operates under USDOT number 2236769 and under Motor Carrier number 567093. As a condition to operate under its USDOT number, Nolan Transportation has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. This Defendants has appeared by and through counsel in this lawsuit.

3. Defendant Iso Rizo Inc. (hereinafter "Iso Rizo") is a foreign corporation who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms and losses. Defendant Iso Rizo does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Iso Rizo operates under USDOT number 3182525 and under Motor Carrier number 1053943. As a condition to operate under its USDOT number, Iso Rizo has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. This Defendants has appeared by and through counsel in this lawsuit.

4. Defendant Simon Express LLC (hereinafter "Simon Express") is a foreign limited liability company who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms and losses. Defendant Simon Express does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Simon Express operates under USDOT number 2936569 and under Motor Carrier number 992361. As a condition to operate under its USDOT number, Simon Express has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. P This Defendants has appeared by and through counsel in this lawsuit.

5. Defendant Energy Trucking LLC (hereinafter "Energy Trucking") is a foreign limited liability company who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms and losses. Defendant Energy Trucking does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Energy Trucking operates under USDOT number 2822651 and under Motor Carrier number 942014. As a condition to operate under its USDOT number, Energy Trucking has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. This Defendants has appeared by and through counsel in this lawsuit.

6. Defendant Jean Marie Saint Lot (hereinafter "Saint Lot") is an individual who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms and losses. Said Defendant currently resides in the State of Florida. This Defendants has appeared by and through counsel in this lawsuit.

7. Defendant Frantz Clement (hereinafter "Clement") is an individual who was operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle that was a proximate cause of this crash and Plaintiff's injuries, harms and losses. that was a proximate cause of this crash and Plaintiff's injuries, harms and losses. Said Defendant currently resides in the State of Florida. This Defendant is believed to be staying and/or residing at 1957 Ibis Bay Ct., Ocoee, FL 34761-9119. This Defendants has appeared by and through counsel in this lawsuit.

8. Defendant NTE Mobility Partners LLC is a limited liability company with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. This Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and hence said Defendant is deemed to be a citizen of Texas. This Defendants has appeared by and through counsel in this lawsuit.

9. Defendant NTE Mobility Partners Segments 3 LLC is a limited liability company with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. This Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and hence said Defendant is deemed to be a citizen of Texas. This Defendants has appeared by and through counsel in this lawsuit.

10. Defendant NTE Mobility Partners Segments 3 Holding, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiffs understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

11. Defendant NTE Mobility Partners Holding, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

12. Defendant Cintra US Services LLC is a Texas limited liability company with its principal place of business located at 9600 Great Hills Trail, Suite 250 E, Austin, Texas 78759. This Defendant may be served with process through its registered agent, CT corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

13. Defendant Cintra Holding US Corp d/b/a Cintra US Corp is a foreign corporation company with its principal place of business located at 9600 Great Hills Trail, Suite 250 E, Austin, Texas 78759. This Defendant may be served with process through its registered agent, CT corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

14. Defendant Cintra NTE LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

15. Defendant Cintra Texas Corp is a foreign corporation company with its principal place of business located at 9600 Great Hills Trail, Suite 250 E, Austin, Texas 78759. This Defendant may be served with process through its registered agent, CT corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

16. Defendant Cintra NTE Mobility Partners Segments 3, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

17. North Tarrant Infrastructure, LLC is a limited liability company with its principal place of business located at 13601 North Freeway, Suite 200, Fort Worth, Texas 76177. This Defendant may be served with process through its registered agent, CT corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

18. Webber, LLC is a limited liability company with its principal place of business located at 1725 Hughes Landing Boulevard, Suite 1200, The Woodlands, Texas 77380. This Defendant may be served with process through its registered agent, CT corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

19. Ferrovial Construction US Corp. f/k/a Ferrovial Agroman U S Corp is a foreign corporation with its principal place of business located at 9600 Great Hills Trail, Suite 200 E, Austin,

Texas 78759. This Defendant may be served with process through its registered agent, CT corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

20. Defendant Redmond Minerals, Inc. is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that such defendant's home office address is 475 W. 910 S, Heber City, UT 84032. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C. at 322 E Gateway Drive, Suite 201, Heber City, UT 84032.

21. Defendant Redmond Incorporated is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that such defendant's home office address is 475 W. 910 S, Heber City, UT 84032. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C. at 322 E Gateway Drive, Suite 201, Heber City, UT 84032.

22. Defendant Ryder Truck Rental, Inc. is a Florida Corporation doing business in the state of Texas and can be served with process Pursuant to CPRC 17.062(a) by serving J. Bruce Bugg, Jr., Chairman, Texas Transportation Commission, 125 E. 11th Street, Austin, Texas 78701-2483 who will then forward to Ryder Truck Rental, Inc.'s registered agent for service Robert D Fatovic, 11690 NW 105 Street, Miami, FL 33178.

23. Defendant Envirotech Services, Inc. is a foreign corporation doing business in the State of Texas and may be served with process by serving their registered agent for service, Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas 78701.

## III.

## MISNOMER/ALTER-EGO

In the event that any parties are misnamed or not included herein, it is the contention of Plaintiffs that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein.

## IV.

## VENUE AND JURISDICTION

Venue is proper in this Court, pursuant to TEX. CIV. PRAC. & REM. CODE §15.002(a)(1), because Tarrant County is where all or a substantial part of the events or omissions giving rise to these claims occurred. Venue is also proper with this Court, pursuant to TEX. CIV. PRAC. & REM.

CODE §15.002(a)(3) because Tarrant County is the principal place of business for Defendants NTE Mobility Partners LLC and NTE Mobility Partners Segments 3 LLC. Furthermore, this Court has jurisdiction in that Plaintiff's damages are within the jurisdictional limits of this Court. This Court also has jurisdiction over this matter as Plaintiffs seeks damages in excess of the minimal jurisdictional limits of this Court.

Additionally, Plaintiffs and Defendants NTE Mobility Partners LLC and Defendant NTE Mobility Partners Segments 3 LLC are citizens of Texas, and hence there is no complete diversity of citizenship. The remaining Defendants who are non-citizens of Texas all have consented to jurisdiction in the State of Texas and have acknowledged that they "operate" in Texas by filing a Form BOC-3, as required as a condition to operate under their respective USDOT numbers, and designating an agent for service of process in Texas. Designation of such an agent operates as an express consent to personal jurisdiction. *Knowlton v. Allied Van Lines*, 8th Cir., 900 F.2d 1196, 1200 (1989)("This designation of an agent, in accordance with federal law, also operates as consent to the personal jurisdiction of the [forum] courts."); *see also Paz v. Castellini Co., LLC*, No. B-07-036, 2007 U.S. Dist. LEXIS 83028, at *19 (S.D. Tex. 2007)(Approving of Knowlton but limiting its designation jurisdiction to causes of action that, as here, arose in Texas). Moreover, said Defendants have established minimum contacts in Texas by driving, shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Further, all Defendants were engaged in interstate commerce in Texas and committed a tort in whole or in part in Texas. Therefore, this Court has specific personal jurisdiction over all Defendants. In addition, all Defendants have had continuous and systematic contacts with Texas invoking general personal jurisdiction over them. Accordingly, removal to federal court would be improper and sanctionable

because this lawsuit does not involve a federal question, this lawsuit lacks diversity of citizenship and/or because of the forum defendant rule.

## V.
## FACTS

On or about February 11, 2021, Nancy Herrera suffered severe damages, injuries, harms and losses as a result of Defendants' negligence and gross negligence.

The terms "FedEx Truck" and "FedEx Truck Defendants" collectively refers to Defendants FedEx, Nolan, Iso Rizo, Simon Express, Energy Trucking, Jean Marie Saint Lot, Frantz Clement and Ryder Truck Rental, Inc.. At all relevant times, the FedEx Truck Defendants were collectively operating, in whole or in part or via a partnership, agency, joint venture and/or joint enterprise, the commercial motor vehicle involved in this collision and were required to observe all commercial motor carrier safety rules and regulations.

The term "Defendant NTE" collectively refers to Defendants NTE Mobility Partners LLC, NTE Mobility Partners Segment 3 LLC, NTE Mobility Partners Segments 3 Holding, LLC, NTE Mobility Partners Holding, LLC.

The term "Defendant Cintra" collectively refers to Defendants Cintra US Services LLC, Cintra Holding US Corp d/b/a Cintra US Corp, Cintra NTE LLC, Cintra Texas Corp, Cintra NTE Mobility Partners Segments 3 LLC, Cintra NTE Mobility Partners Segments 3 LLC.

At all relevant times, Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were responsible for maintaining the express lanes where this collision occurred.

On the early morning of February 11, 2021, Nancy was driving on the expressway of Interstate 35 West in Fort Worth, Texas and had stopped when Defendants FedEx/Ryder/Saint Lot

violently and at a high rate of speed crashed into several vehicles, driving straight through and up and over them, causing significant and severe injuries, harms and losses, including to Nancy Herrera, who was in this Defendants' path of destruction. Saint Lot was driving a Ryder truck pulling a FedEx trailer.

The FedEx/Ryder/Saint Lot Defendants should not have been on the roadway, certainly should not have been driving in the express lanes, and clearly were driving too fast given the weather and hazardous road conditions. Additionally, the FedEx/Ryder/Saint Lot Defendants failed to pay proper attention to the traffic, weather, and road conditions and/or consciously chose to ignore the same.

This roadway was negligently and/or grossly negligently operated and/or maintained by one or more of the I35 Tollway Owners, Operators, and/or Maintenance Defendants named in this lawsuit. Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were contractually responsible for maintaining the express lanes where this collision occurred. As such, Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were responsible for preventing ice formation on the roadway through proper preventive treatments of the express lanes, and Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were likewise responsible for de-icing and removing any ice that formed on the express lanes. Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. knew and

was on notice that a prior collision had occurred just to the north in this same general vicinity approximately 3 hours prior to the collision at issue. Yet, Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were failed to prevent further ice development on the express lanes, failed to de-ice or remove ice from the express NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were failed to comply with its duties and obligations for maintaining the express lanes, including its contractual duties.

The conduct of Defendants (by and through their agents, employees and representatives) was grossly negligent, negligent and such acts and omissions proximately caused the occurrence and damages that form the basis of this lawsuit.

At all times relevant hereto, Defendants' unknow drivers were acting in the course and scope of their employment with Defendants and acting in furtherance of a mission for Defendants' benefit and subject to its control. Defendant drivers were operating vehicles owned and maintained by Defendants, and were operating their vehicles under the respective Defendants' commercial operating authority.

## VI.
## CAUSES OF ACTION
## FEDEX TRUCK DEFENDANTS

**A.** **NEGLIGENCE** – Defendants were negligent in at least, but not limited to one or more of the following:

1. Failing to use extreme caution in driving their commercial motor vehicle given the existing ice and freezing mist and freezing rain conditions
2. Failed to keep proper management and control of their vehicle as a person of ordinary prudence would have kept under the same or similar circumstances;

3. Driving their commercial motor vehicle in the express lanes given the existing ice and freezing mist and freezing rain conditions;
4. Driving and operating the commercial truck in hazardous conditions;
2. Failed to keep such lookout as a person of ordinary prudence would have kept under the same or similar circumstances;
4. Failed to maintain a safe distance from the vehicle in front and the vehicle in front of him as a person of ordinary prudence would have maintained under the same or similar circumstances;
5. Failed to brake;
6. In failing to turn the commercial vehicle to the right or to the left in an effort to avoid the collision in question;
7. In driving at a rate of speed too fast for the conditions;
8. Distracted while driving;
9. Speeding at a greater rate of speed than a person using ordinary care would have driven;
10. Such other and further acts and omission as will be shown in trial.

**B. NEGLIGENCE PER SE** – Defendants were negligent *per se* in one or more of the following particulars:

Driving in hazardous conditions in violation of 49 CFR § 392.14 and Section 2.13 of the Texas Commercial Motor Vehicle Driver's Handbook;

Failing to use extreme caution given the existing ice and freezing mist and rain conditions in violation of 49 CFR § 392.14;
Failing to operate at a reasonable rate of speed given the existing ice and freezing mist and rain conditions in violation of Section 545.351 of the Texas Transportation Code and Section 2.6 of the Texas Commercial Motor;

Failing to control the speed of the truck and/or driving at an unsafe speed, in violation of §545.352 of the TEXAS TRANSPORTATION CODE;

Failing to safely observe hazards in the roadway in violation of Section 2.8 of the Texas Commercial Motor Vehicle Driver's Handbook; and

Engaging in reckless driving in violation of Texas Transportation Code §545.401(a).

**C. NEGLIGENCE OF COMMERCIAL VEHICLE FEDEX DEFENDANTS**

Defendants were the employers of negligent and reckless drivers and at all times material hereto, the drivers were in the course and scope of their employment with the named commercial vehicle Defendants. Pursuant to *respondeat superior*, the negligence of the FedEx Defendants was a

direct and proximate cause of Plaintiff's injuries. Upon information and belief, Defendants were negligent in at least the following particulars:

1. in failing to properly train, supervise and/or instruct employees in the proper manner to operate a commercial vehicle;
2. in failing to provide reasonable rules and regulations for safe conduct while driving at work;
3. in failing to obey traffic laws and regulations concerning the operation of commercial vehicles;
4. in failing to promulgate and/or execute a periodic inspection program to ensure that there were proper and safe driving habits being exercised;
5. in failing to perform regular maintenance on their equipment;
6. in failing to maintain their equipment in good working order;
7. in failing to ensure the drivers of their commercial vehicles were qualified, trained, experienced or certified to drive the vehicle;
8. in negligently entrusting end users of commercial vehicle to operators they knew or should have known were not qualified, trained, licensed or otherwise competent to operate said vehicle;
9. in failing to exercise ordinary care;
10. Negligent hiring, retention and supervision;
11. Negligent and dangerous towing procedures;
12. Failure to properly and adequately train their employees;
13. Failure to retain properly and adequately train employees;
14. Failure to ensure that their employees, agents, and/or Representatives, possessed the requisite and appropriate certifications, qualifications, and training;
15. Failure to properly and adequately supervise its employees, agents, and/or representatives;
16. Failure to implement proper and appropriate safety policies and procedures;
17. Defendant failed to establish reasonable safety rules and regulations;
18. In putting commercial vehicles on the roads when it was hazardous and unsafe to do so due to ice accumulation;
19. Defendants failed to instruct the employees of the safety rules and regulations; and;
20. Such other and further acts and/or omissions as shown in trial.

As a direct and proximate result of the gross negligence and malicious conduct of Defendants. Plaintiffs suffered injuries and damages and are further entitled to exemplary damages in an amount within the jurisdictional limits of this Court, for which Plaintiff also hereby sue.

**D. NEGLIGENT ENTRUSTMENT**

The FedEx Truck Defendants are responsible for this collision under negligent entrustment, because (a) the FedEx Truck Defendants supervised and controlled the commercial tractor and trailer driven by Defendants Saint Lot and Clement at the time of the collision, (b) Defendants Saint Lot and Clement were incompetent and/or unsafe drivers, (c) the FedEx Truck Defendants either knew or should have known Defendants Saint Lot and Clement were incompetent and/or unsafe drivers, and (d) the negligence of Defendants' Saint Lot and Clement on the occasion in question proximately caused the collision. The negligence of the FedEx Truck Defendants in negligently entrusting Defendants Saint Lot and Clement to drive proximately caused the collision giving rise to this case and the injuries and damages suffered by Plaintiff.

Each of the foregoing acts or omissions, singularly or in combination with others, constitute negligence, which proximately caused the incident made the basis of this lawsuit and Plaintiff's injuries and damages.

## VII.
## VICARIOUS LIABILITY—RESPONDEAT SUPERIOR, STATUTORY EMPLOYEE, BORROWED SERVANT, AGENCY, JOINT VENTURE, JOINT ENTERPRISE, PARTNERSHIP

Further, the FedEx Defendants were the registered owners of the vehicles at the time of the collision which forms the basis of this lawsuit and negligently entrusted the vehicles to the Defendant drivers. Further, at the time Defendants entrusted the vehicles, Defendants knew or in the exercise of ordinary care should have known that said Defendants were reckless or incompetent drivers. In addition, such negligence of Defendants in entrusting the vehicle to said Defendants was a proximate cause of the occurrence and damages, which form the basis of this lawsuit.

At the time of the collision and at all relevant and material times, Defendant Saint Lot and Clement were driving the commercial motor vehicle in question in their capacity as employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers and/or partners

and they exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery, and manner of operations associated with the FedEx Truck Defendants. Additionally, FedEx monitored and/or had the ability to monitor the routes, timing, dispatching, location, delivery, and manner of operations associated with the FedEx truck and the drivers.

Additionally and/or alternatively, upon information and belief, FedEx exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery and manner of operations associated with the commercial vehicles and drivers subjecting the commercial vehicle Defendants to vicarious liability for this collision and/or making the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers and/or partners of FedEx and/or making the FedEx drivers the agents, borrowed servants, joint venturers, joint enterprisers and/or partners of FedEx.

Additionally and/or alternatively, upon information and belief, Defendant Nolan exercised control and/or had the right to exercise control over the routes, timing, dispatching, location, delivery and manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement and/or the driver's motor carrier(s) Defendants Iso Rizo, Simon Express, Ryder Truck Rental, Inc. and/or Energy Trucking subjecting Defendant Nolan to vicarious liability for this collision and/or making the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Nolan and/or making Defendants Iso Rizo, Simon Express, Ryder Truck Rental, Inc. and/or Energy Trucking the agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Nolan.

Additionally, and/or alternatively, upon information and belief, Defendants Iso Rizo, Simon Express, Ryder Truck Rental, Inc. and/or Energy Trucking were each and/or in concert

acting as the motor carrier of record subjecting them each and/or collectively to vicarious liability for this collision. Further, Defendants Iso Rizo, Simon Express, Ryder Truck Rental, Inc. and/or Energy Trucking exercised control and/or had the right to exercise control over the routes, timing, dispatching, location, delivery and manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement subjecting them each and/or collectively to vicarious liability for this collision and/or making the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers and/or partners of Defendants Iso Rizo, Ryder Truck Rental, Inc., Simon Express and/or Energy Trucking.

Additionally, and/or alternatively, upon information and belief, Defendant FedEx and Defendant Nolan were engaged in a partnership, joint venture, and/or joint enterprise and/or Nolan was acting as the agent of FedEx making FedEx vicariously liable for the acts and omissions of Nolan.

Additionally, and/or alternatively, upon information and belief, Defendant Nolan and Defendants Iso Rizo, Simon Express, Ryder Truck Rental, Inc. and/or Energy Trucking were engaged in a partnership, joint venture, and/or joint enterprise and/or Defendants Iso Rizo, Simon Express, Ryder Truck Rental, Inc. and/or Energy Trucking were acting as the agent(s) of Nolan making Nolan vicariously liable for the acts and omissions of Defendants Iso Rizo, Simon Express, Ryder Truck Rental, Inc. and/or Energy Trucking.

Additionally, and/or alternatively, upon information and belief, Defendant Simon Express, Ryder Truck Rental, Inc. and Defendant Energy Trucking were engaged in a partnership, joint venture, and/or joint enterprise and/or Defendant Simon Express, Ryder Truck Rental, Inc. and Defendant Energy Trucking were acting as the agent of one another making each vicariously liable for the acts and omissions the other.

Defendants Saint Lot and Clement were engaged in an agency relationship, joint venture, joint enterprise and/or partnership between themselves as they were driving the FedEx Truck as a team sharing driving duties and responsibilities along with sharing the profits and expenses.

Additionally, and/or alternatively, upon information and belief, the FedEx Truck Defendants collectively and/or a combination thereof were engaged in an agency relationship with one another, a partnership, joint venture and/or joint enterprise.

Each of the foregoing acts or omissions, singularly or in combination with others, constitute negligence, which proximately caused the incident made the basis of this lawsuit and Plaintiff's injuries and damages.

## VIII.
## CAUSES OF ACTION
## I35 TOLLWAY OPERATIONS AND MAINTENANCE DEFENDANT

Plaintiffs incorporate all allegations contained above.

Defendants N NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were contractually responsible for maintaining the express lanes where this collision occurred. As such, Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were responsible for preventing ice formation on the roadway through proper preventive treatments of the express lanes, and Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were likewise responsible for de-icing and removing any ice that formed on the express lanes. Defendants NTE, Cintra, North Tarrant

Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. knew and was on notice that a prior collision had occurred just to the north in this same general vicinity approximately 3 hours prior to the collision at issue. Yet, Defendants N NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. were failed to prevent further ice development on the express lanes, failed to de-ice or remove ice from the express lanes, and/or failed to simply close the express lanes to all traffic or at least to 18 wheelers. Defendants NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. failed to comply with its duties and obligations for maintaining the express lanes, including its contractual duties.

The NTE, Cintra, North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Construction US Corp. f/k/a Ferrovial Agroman US Corp, Redmond Minerals, Inc., Redmond Incorporated and EnviroTech Services, Inc. Defendants were negligent in at least, but not limited to one or more of the following:

1. Failing to properly operate and/or maintain the I-35 roadway where this incident occurred;
2. Failing to properly maintain the roadway in order to discover any defects as they existed at the time of this incident;
3. Failing to discover any hazards or defects which existed at this time of this incident;
4. Failing to inspect, or adequately and/or properly inspect, the roadway;
5. Failing to monitor, and/or timely monitor, the weather conditions that existed at the time of this incident;
6. Failing to adequately repair any defect which existed at the time of this incident;
7. Failing to post adequate warning signs on the roadway to warn of any hazards or defects of which this defendant had, or should have had, knowledge;
8. Failing to provide barriers that would have prevented this type of incident;
9. Failing to provide safeguards that would have prevented this type of incident;
10. Failing to de-ice the I-35 tollway prior to the time of the incident made the basis of this suit;

11. Failing to close the I-35 tollway because of the presence of ice on the tollway; and
12. Committing various acts and/or omissions of negligence and gross negligence, both statutory and common law, to be specified in detail at the time of trial.

Specifically, the NTSB (National Transportation Safety Board) issued its preliminary report noting that four hours before the crash, the weather station at Fort Worth Meacham International Airport had reported freezing rain and freezing mist. This airport is approximately three miles northwest of the crash site. Further, the report noted that more than two hours before the occurrence made the basis of this suit, NTE Mobility Partners Segments 3 had posted a message on a dynamic message sign that displayed the message "ICY CONDITIONS EXIST / PLEASE USE CAUTION" noting that this message was based on information from another earlier crash at 3:08. This evidence, along with other available evidence indicates that they were aware of the icy and hazardous conditions hours before these collisions occurred and yet negligently and/or grossly negligently failed to prevent this foreseeable hazardous event.

## IX.

## GROSS NEGLIGENCE

Collectively, Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, the Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiffs. This amounts to gross negligence; such gross negligence was a proximate case of the collision, the injuries, harms, losses and damages of each Plaintiff, and the resulting injuries and damages suffered by Plaintiffs; and as such the jury should consider assessing punitive or exemplary damages.

## X.

## DAMAGES TO NANCY HERRERA

As a result of this occurrence, Plaintiff Nancy Herrera has suffered bodily injuries and damages, including but not limited to, bodily injuries to her head, a traumatic brain injury, post concussive syndrome, fractures throughout her body, including sternum, compression fracture of vertebra in her back, and body in general. Plaintiff has suffered and seeks the following damages:

1. Medical Expenses: Plaintiff has incurred medical expenses in the past. These expenses were incurred for reasonable and necessary care and treatment of her injuries. The charges incurred are reasonable and were the usual and customary charges for the same or similar services at the time and place rendered. Plaintiff also expects to incur medical expenses in the future in an amount within the jurisdictional limits of this Court;

2. Lost Wages and Loss of Earning Capacity: Plaintiff has suffered lost wages in the past. Plaintiff will also suffer a loss of earning capacity in the future;

3. Physical Pain And Suffering: Plaintiff has endured severe physical pain and suffering in the past and will continue to endure severe physical pain and suffering in the future;

4. Mental Anguish: Plaintiff has endured severe mental anguish in the past and will continue to endure severe mental anguish in the future;

5. Physical Impairment: Plaintiff has suffered physical impairment in the past and will continue to suffer physical impairment in the future;

6. Scarring and Disfigurement; and

7. Punitive Damages.

By reason of the above and foregoing, Plaintiff has been damaged in a sum within the jurisdictional limits of this Court, for which Plaintiff hereby sues.

## XI.

## DISCOVERY FILED WITH THE PETITION

Pursuant to Rule 194.2, 194.3 and 194.4 of Texas Rules of Civil Procedure, Plaintiff serves upon Defendants this Request for Disclosure.

> Pursuant to Rule 194.2, 194.3, 194.4 and 195.5 of the Texas Rules of Civil Procedure, Defendants are requested to disclose, within 30 days after the filing of the first answer, the information or material described in Rule 194.2, 194.3, 194.4 and 195.5 of the Texas Rules of Civil Procedure. The Responses to these Requests shall be made separately and fully in writing under oath and signed by the person making the answers. The Responses shall be served upon counsel for Plaintiff Nancy Herrera.

**XII.**

**NOTICE OF SELF-AUTHENTICATION OF DOCUMENTS**

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, hereby gives written notice of the intent to self-authenticate any and all documents produced in discovery, and that such documents may be used against the party producing same at any pre-trial proceeding, hearing and at the time of any trial, post-trial matter or appeal regarding this case.

**XIII.**

**RELIEF SOUGHT**

Plaintiff requests that Defendant be cited to appear and answer, and that this case be tried before the Court after which Plaintiffs, Individually, recover:

1. Judgment against Defendants, jointly and severally for all actual damages as alleged herein, in an amount within the jurisdictional limits of this Court;
2. Pre-judgment interest at the maximum amount allowed by law;
3. Post-judgment interest at the maximum rate allowed by law;
4. Exemplary damages;
5. Costs of suit; and
6. Such other and further relief to which Plaintiffs may be justly entitled.

RESPECTFULLY SUBMITTED,

**MONTES LAW GROUP, PC**

Rachel E. Montes
SBOT 45005925
Rachel@MontesLawGroup.com
1121 Kinwest Parkway, Suite 100
Irving, Texas 75063
Telephone (214) 522-9401
Facsimile (214) 522-9428

***ATTORNEY FOR PLAINTIFF***
***NANCY HERRERA***

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served by Electronic Service on this 7th day of February, 2023 to all counsel of record.

Rachel E. Montes

# EXHIBIT B-14

**CAUSE NO. 153-000000-22**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH35W** | § § § § § | **IN THE DISTRICT COURT**<br>**TARRANT COUNTY, TEXAS**<br>**153RD JUDICIAL DISTRICT** |

**NOT APPLICABLE TO ALL ACTIONS**

**CAUSE NO. 153-339123-22**

| | | |
|---|---|---|
| **RHONDA CAROL JONES**<br>***Plaintiff,***<br><br>**VS.**<br><br>**FEDEX GROUND PACKAGE SYSTEM, INC.; JEAN MARIE SAINT LOT; FRANTZ CLEMENT; RYDER TRUCK RENTAL, INC.; SIMON EXPRESS LLC; ENERGY TRUCKING LLC; ISO RIZO INC.; NOLAN TRANSPORTATION GROUP, LLC; NTE MOBILITY PARTNERS LLC; NTE MOBILITY PARTNERS SEGMENTS 3 LLC; NTE MOBILITY PARTNERS HOLDINGS LLC; NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC; CINTRA US SERVICES LLC; CINTRA HOLDING US CORP D/B/A CINTRA US CORP; CINTRA NTE LLC; CINTRA TEXAS CORP.; CINTRA NTE MOBILITY PARTNERS SEGMENTS 3 LLC; NORTH TARRANT INFRASTRUCTURE LLC; WEBBER LLC; FERROVIAL AGROMAN US CORP A/K/A FERROVIAL CONSTRUCTION US CORP; REDMOND MINERALS, INC.; REDMOND INCORPORATED; AND J.B. HUNT TRANSPORT, INC.**<br><br>***Defendants,*** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **IN THE DISTRICT COURT**<br><br>**TARRANT COUNTY, TEXAS**<br><br>**153RD JUDICIAL DISTRICT** |

**PLAINTIFF'S FIRST AMENDED PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW **RHONDA CAROL JONES,** (hereinafter "Plaintiff"), complaining of **FEDEX GROUND PACKAGE SYSTEM, INC.; JEAN MARIE SAINT LOT; FRANTZ CLEMENT; RYDER TRUCK RENTAL, INC.; SIMON EXPRESS LLC; ENERGY TRUCKING LLC; ISO RIZO INC.; NOLAN TRANSPORTATION GROUP, LLC; NTE MOBILITY PARTNERS LLC; NTE MOBILITY PARTNERS SEGMENTS 3 LLC; NTE MOBILITY PARTNERS HOLDINGS LLC; NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC; CINTRA US SERVICES LLC; CINTRA HOLDING US CORP D/B/A CINTRA US CORP; CINTRA NTE LLC; CINTRA TEXAS CORP.; CINTRA NTE MOBILITY PARTNERS SEGMENTS 3 LLC; NORTH TARRANT INFRASTRUCTURE LLC; WEBBER LLC; FERROVIAL AGROMAN US CORP A/K/A FERROVIAL CONSTRUCTION US CORP; REDMOND MINERALS, INC.; REDMOND INCORPORATED; AND J.B. HUNT TRANSPORT, INC.** (hereinafter "Defendants") and for causes of action respectfully shows the following:

**1.00 Discovery Control Plan**

1.01 Discovery in this matter is to be conducted pursuant to the Case Management Orders entered by the MDL Judge for this matter.

**2.00 Claim for Relief**

2.01 Plaintiff requests the finder of fact to award the Plaintiff fair and reasonable amounts of damages after consideration of all the evidence presented in the case. Pursuant to

Rule 47 of the TEXAS RULES OF CIVIL PROCEDURE Plaintiff states the monetary relief sought herein is over $1,000,000.

**3.00 Parties and Service of Citations**

3.01 At the time this cause of action accrued, Plaintiff was and remains a resident of Hood County, Texas. The last three digits of the Plaintiff's driver's license number are 851. The last three digits of Plaintiff's social security number are 452.

3.02 Defendant FEDEX GROUND PACKAGE SYSTEM, INC. (hereinafter "FedEx") is a corporation incorporated in the State of Delaware. Its principal place of business is in Coraopolis, Pennsylvania. It is authorized to conduct business in the State of Texas and may be served with citation by and through its registered agent for service of process, CT Corporation System, 1999 Bryan St., Ste. 900 Dallas, TX 75201. It has been served with process.

3.03 Defendant JEAN MARIE SAINT LOT (hereinafter "Saint Lot") is an individual who was operating a vehicle involved in the crash that made the basis of this suit. Saint Lot operated Unit 123-124 as identified in the Texas Peace Officer's Crash Report. Saint Lot is a nonresident of Texas whose resident address is, 1817 East 24th Ave #7 Hutchinson, Kansas 67502. Saint Lot may be served with process pursuant to Tex. Civ. Prac. & Rem. Code § 17.062 by serving the Chairman of the Texas Transportation Commission, 125 E. 11th Street, Austin, Texas 78701. Pursuant to Tex. Civ. Prac. & Rem. Code § 17.063, upon receipt of a certified copy of the process, the chairman shall mail a properly addressed letter to Saint Lot via registered mail, or by certified mail, return receipt requested, with postage pre-paid, (1) a copy of the process and (2) notice that the process has been served on the chairman. Plaintiff requests that a citation be issued and served accordingly. He has been served with process.

3.04 Defendant FRANTZ CLEMENT (hereinafter "Clement") is an individual who was operating a vehicle involved in the crash that made the basis of this suit. Clement operated Unit 123-124 as identified in the Texas Peace Officer's Crash Report. Clement is a nonresident of Texas whose resident address is, 1817 East 24th Ave #7 Hutchinson, Kansas 67502. Clement may be served with process pursuant to Tex. Civ. Prac. & Rem. Code 17.062 by serving the Chairman of the Texas Transportation Commission, 125 E. 11th Street, Austin, Texas 78701. Pursuant to Tex. Civ. Prac. & Rem. Code § 17.063, upon receipt of a certified copy of the process, the chairman shall mail a properly addressed letter to Clement via registered mail, or by certified mail, return receipt requested, with postage pre-paid, (1) a copy of the process and (2) notice that the process has been served on the chairman, Plaintiff requests that a citation be issued and served accordingly. He has been served with process.

3.05 Defendant RYDER TRUCK RENTAL, INC. (hereinafter "Ryder") is a corporation incorporated in the State of Florida. Its principal place of business is located in Miami, Florida. Ryder is authorized to conduct business in the State of Texas and may be served with citation by and through its registered agent for service of process, Corporate Creations Network, Inc, at 5444 Westheimer #1000, Houston, TX 77056. It has been served with process.

3.06 Defendant SIMON EXPRESS LLC (hereinafter "Simon Express") is a foreign limited liability company that was operating—in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise—the commercial motor vehicle that rear-ended the vehicle Rhonda Jones was in. Defendant Simon Express does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Simon Express operates under USDOT number 2936569 and under Motor Carrier number 992361. As a condition to operate under its USDOT number, Simon Express

has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. Pursuant to its BOC-3 filing, Simon Express has designated #1 A+ Agents of Process Inc. as its blanket agent for service of process and in Texas may be served with this lawsuit by serving its agent John C. Sims, 1205 Broadway, Lubbock, Texas 79408. It has been served with process.

3.07 Defendant ENERGY TRUCKING LLC (hereinafter "Energy Trucking") is a foreign limited liability company that was operating—in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise—the commercial motor vehicle that rear-ended the vehicle Rhonda Jones was in. Defendant Energy Trucking does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Energy Trucking operates under USDOT number 2822651 and under Motor Carrier number 942014. As a condition to operate under its USDOT number, Energy Trucking has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. Pursuant to its BOC-3 filing, Energy Trucking has designated #1 A+ Agents of Process Inc. as its blanket agent for service of process and in Texas may be served with this lawsuit by serving its agent John C. Sims, 1205 Broadway, Lubbock, Texas 79408. It has been served with process.

3.08 Defendant ISO RIZO INC. (hereinafter "Iso Rizo") is a foreign corporation that was operating—in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise—the commercial motor vehicle that rear-ended the vehicle Rhonda Jones was in. Defendant Iso Rizo does substantial business in the State of Texas, including shipping, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Iso Rizo operates under USDOT number 3182525 and under Motor Carrier number 1053943. As a

condition to operate under its USDOT number, Iso Rizo has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. Pursuant to its BOC-3 filing, Iso Rizo has designated #1 A+ Agents of Process Inc. as its blanket agent for service of process and in Texas may be served with this lawsuit by serving its agent John C. Sims, 1205 Broadway, Lubbock, Texas 79408. It has been served with process.

3.09 Defendant NOLAN TRANSPORTATION GROUP, LLC. (hereinafter "Nolan Transportation") is foreign limited liability company that was operating—in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise—the commercial motor vehicle that rear-ended the vehicle Rhonda Jones was in. Defendant Nolan does substantial business in the State of Texas, including shipping, brokering, carrying, transporting, traversing, and delivering goods in and through the State of Texas. Defendant Nolan Transportation operates under USDOT number 2236769 and under Motor Carrier number 567093. As a condition to operate under its USDOT number, Nolan Transportation has filed a Form BOC-3 electing to designate a blanket agent for service of process subjecting it and consenting to jurisdiction in Texas. Pursuant to its BOC-3 filing, Nolan Transportation has designated Interstate Commerce Authority Inc. as its blanket agent for service of process and in Texas may be served with this lawsuit by serving its agent, Jeffrey P. Fultz, 5625 Cypress Creek Pkwy, 6th Floor, Houston, Texas 77069. It has been served with process.

3.10 Defendant NTE MOBILITY PARTNERS LLC is a limited liability company with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. Indeed, this Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and hence said Defendant is deemed to be a citizen of Texas. This Defendant may be served with

process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. It has been served with process.

3.11 Defendant NTE MOBILITY PARTNERS SEGMENTS 3 LLC is a limited liability company with its principal place of business located at 9001 Airport Freeway, Suite 600, North Richland Hills, Texas 76180. Indeed, this Defendant's headquarters, management team, and nerve center are all located at 9001 Airport Freeway, Suite 600, North Richland Hills, Tarrant County, Texas 76180, and hence said Defendant is deemed to be a citizen of Texas. This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. It has been served with process.

3.12 **Defendant NTE MOBILITY PARTNERS HOLDING, LLC** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is **9600 Great Hills Trail, Suite 250E, Austin, Texas 78759**.

3.13 **Defendant NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is **9600 Great Hills Trail, Suite 250E, Austin, Texas 78759**.

3.14 **Defendant CINTRA US SERVICES LLC** is a Texas limited liability company with its principal office and principal place of business located in Travis County, Texas. This

Defendant may be served with process through its registered agent, **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.

3.15 **Defendant CINTRA HOLDING US CORP D/B/A CINTRA US CORP.** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.

3.16 **Defendant CINTRA NTE, LLC**, is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is **9600 Great Hills Trail, Suite 250E, Austin, Texas 78759**.

3.17 **Defendant CINTRA TEXAS CORP** is a Delaware corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, through **C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201**.

3.18 **Defendant CINTRA NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING**, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is **9600 Great Hills Trail, Suite 250E, Austin, Texas 78759**.

3.19 **Defendant NORTH TARRANT INFRASTRUCTURE LLC** is a Texas limited liability company with its principal office and principal place of business located in Tarrant County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.

3.20 **Defendant WEBBER LLC** is a Texas limited liability company with its principal office and principal place of business located in Montgomery County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.

3.21 **Defendant FERROVIAL AGROMAN US CORP A/K/A FERROVIAL CONSTRUCTION US CORP** is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, **Fernando Martinez Caro at 700 Chevy Chase Blvd Ste 500, Austin, Texas 78752**.

3.22 **Defendant REDMOND MINERALS, INC.** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that such defendant's home office address is 475 W. 910 S, Heber City, UT 84032. This Defendant may be served with citation by serving its registered agent for service of process, **Gordon Law Group, P.C. at 322 E Gateway Drive, Suite 201, Heber City, UT 84032**.

3.23 **Defendant REDMOND INCORPORATED** is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant may be served by the Secretary

of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that such defendant's home office address is 475 W. 910 S, Heber City, UT 84032. This Defendant may be served with citation by serving its registered agent for service of process, **Gordon Law Group, P.C. at 322 E Gateway Drive, Suite 201, Heber City, UT 84032**.

3.24 Defendant J.B. HUNT TRANSPORT, INC. (hereinafter "J.B. Hunt") is a corporation incorporated in the State of Georgia. Its principal place of business is located in Lowell, Arkansas. J.B. Hunt is authorized to conduct business in the State of Texas and may be served with citation by and through its registered agent for service of process, Corporation Service Company, at 211 E. 7th Street, Suite 620 Austin, Texas 78701. It has been served with process.

3.25 In the event any party is misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice. In the event that the true parties are misidentified, Plaintiff asserts reliance upon the doctrine of misidentification.

**4.00 Jurisdiction and Venue**

4.01 Pursuant to Section 15.002(a)(1) the Texas Civil Practice and Remedies Code venue is proper in Tarrant County, Texas, because that is where the crash that gave rise to this claim occurred.

4.02 The Court has subject matter jurisdiction over the causes of action herein because the Plaintiff's damages are within this Court's jurisdictional limits. The Court has personal jurisdiction over each of the Defendants because each either has its principle place of business within the State of Texas or each has such minimal contacts with Texas that the exercise of personal jurisdiction by Texas does not offend the traditional notions of fair play and substantial

justice, the injuries Plaintiff suffered are related to those contacts, and 17.042 of the Texas Practice and Remedies Code in the Texas Long Arm statute allows for the exercise of personal jurisdiction. The "Texas long-arm statute's broad doing-business language 'allows the statute to reach as far as the federal constitutional requirements of due process will allow.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). A "nonresident does business in this state if the nonresident commits a tort in whole or in part in this state." *Id.*, at 341. This case is not removable to Federal court because there is not complete diversity between the parties, and because at least one of the defendants is a citizen of the State of Texas—28. U.S.C. §1441(b)(2).

**5.00 Statement of Facts**

5.01 Ms. Jones brings this civil action to recover the damages proximately caused by the Defendants' negligence, negligence per se, and gross negligence resulting in her serious and permanent injury.

5.02 "FedEx Truck" and "FedEx Truck Defendants" collectively refers to Defendants FedEx, Ryder, Nolan, Iso Rizo, Simon Express, Energy Trucking, Jean Marie Saint Lot, and Frantz Clement. At all relevant times, the FedEx Truck Defendants were collectively operating, in whole or in part or via a partnership, agency, joint venture, and/or joint enterprise, the commercial motor vehicle involved in this collision and were required to observe all commercial motor carrier safety rules and regulations. Additionally, any contract between FedEx Truck Defendants to limit FedEx Truck Defendants' liability is "a mere sham or cloak designed to conceal the true legal relationship between the parties." *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964).

5.03 "NTE" collectively refers to Defendants NTE Mobility Partners LLC; NTE Mobility Partners Segment 3 LLC; NTE Mobility Partners Holdings LLC; NTE Mobility Partners Segments 3 Holding, LLC.

5.04 "Cintra" collectively refers to Defendants Cintra US Services, LLC; Cintra Holding US Corp. d/b/a Cintra Us Corp.; Cintra NTE LLC; Cintra Texas Corp.; Cintra NTE Mobility partners Segments 3 LLC.

5.05 The term "Road Maintenance Defendants" collectively refers to Defendants NTE; Cintra; North Tarrant Infrastructure, LLC; Webber, LLC; and Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp. At all relevant times the Road Maintenance Defendants were responsible for maintaining the express lanes where this collision occurred.

5.06 The term "De-icing Manufacturer Defendants" collectively refers to Defendants Redmond Minerals, Inc. and Redmond Incorporated. The De-icing Manufacturer Defendants manufactured the de-icing materials used by Road Maintenance Defendants and put those materials out into the stream of commerce.

5.07 On February 11, 2021, Plaintiff—a truck driver for and employee of J.B. Hunt—was rear-ended by FedEx Truck Defendants causing Plaintiff serious and permanent injury. A 148-unit multi-vehicle pileup occurred in front of Plaintiff near downtown Fort Worth on Interstate Highway 35. After Plaintiff's vehicle came to a stop, and as she was sitting there helpless in her vehicle, a commercial 18-wheeler operated, directly and/or indirectly, by the FedEx Truck Defendants violently rear-ended her vehicle.

5.08 The FedEx Truck Defendants were driving too fast given the weather and hazardous road conditions. Additionally, the FedEx Truck Defendants failed to pay proper attention to the traffic, weather, and road conditions and/or consciously chose to ignore the same. FedEx is in the business of transporting and delivering packages. It owned the trailer being pulled by the truck that rear-ended Ms. Jones. The trailer was being hauled in Texas from one FedEx

facility to another FedEx facility. FedEx retained the right to control the transportation of its trailer, and its contents, because it was contractually responsible for the contents inside the trailer. Therefore, FedEx had a duty, among other duties, to use the care that a reasonable shipping company would have used when being paid to transport of others' goods.

5.09 Road Maintenance Defendants were contractually responsible for maintaining the express lanes where this collision occurred. As such, Road Maintenance Defendants were responsible for preventing ice formation on the roadway through proper preventive treatments of the express lanes, and Road Maintenance Defendants were likewise responsible for de-icing and removing any ice that formed on the express lanes. De-icing materials were supplied by De-icing Manufacturer Defendants. Road Maintenance Defendants knew, and were on notice, that a prior collision had occurred just to the north in this same general vicinity approximately 3 hours prior to the collision at issue. Yet, Road Maintenance Defendants failed to prevent further ice development on the express lanes, failed to de-ice or remove ice from the express lanes, and/or failed to simply close the express lanes to all traffic or at least to 18 wheelers. Road Maintenance Defendants failed to comply with its duties and obligations for maintaining the express lanes, including its contractual duties. In conjunction with Road Maintenance Defendants' failures, or alternatively, de-icing materials that were supplied by De-icing Manufacturer Defendants were defective or ineffective.

5.10 At the time of Plaintiff's injury, she was working within the course and scope of employment with Defendant J.B. Hunt—a **non-subscriber** to the Texas workers' compensation system. Defendant J.B. Hunt failed to use reasonable care to provide a safe work environment—a non-delegable duty owed to Plaintiff, its employee. Additionally, J.B. Hunt—whose primary business is transportation for compensation—violated section 643.106 of the Texas Transportation

Code, *Insurance for Employees*, by failing to obtain either workers' compensation or accidental insurance coverage approved by the Texas Department of Motor Vehicles.

5.11 Alternatively, Road Maintenance Defendants were responsible for maintaining the express lanes where this collision occurred because Plaintiff was an invitee on the expressway. As such, and under the necessary-use exception, Road Maintenance Defendants were responsible for preventing ice formation on the roadway through proper preventive treatments of the express lanes, and Road Maintenance Defendants were likewise responsible for de-icing and removing any ice that formed on the express lanes. Road Maintenance Defendants knew and were on notice that a prior collision had occurred just to the north in this same general vicinity approximately 3 hours prior to the collision at issue. Yet, Road Maintenance Defendants failed to prevent further ice development on the express lanes, failed to de-ice or remove ice from the express lanes, and/or failed to simply close the express lanes to all traffic or at least to 18 wheelers. Road Maintenance Defendants failed to comply with its duties and obligations for maintaining the express lanes, including its contractual duties.

5.12 As a proximate result of the acts and omissions of the Defendants, Plaintiff suffered serious injuries.

**6.00 FedEx Truck Defendants: General Negligence**

6.01 At the time the collision made the basis of this lawsuit, and at all relevant and material times, the FedEx Truck Defendants owed a duty of care to other motorists, including Plaintiff, to operate the truck in a reasonable and prudent manner, and said Defendants failed to do so. The FedEx Truck Defendants' negligent acts and/or omissions include, but are not limited to, the following:

(a) Driving their commercial motor vehicle in hazardous conditions;

(b) Failing to use extreme caution in driving their commercial motor vehicle given the existing ice and freezing mist and freezing rain conditions;

(c) Driving their commercial motor vehicle in the express lanes given the existing ice and freezing mist and freezing rain conditions;

(d) Failing to operate their commercial motor vehicle at a reasonable rate of speed given the existing ice and freezing mist and freezing rain conditions;

(e) Failing to control the speed of their commercial motor vehicle and/or driving at an unsafe speed;

(f) Failing to safely observe hazards in the roadway;

(g) Failing to maintain a proper and safe distance given the weather conditions that day;

(h) Failing to pay attention to the road and driving conditions;

(i) Failing to pay attention to the weather conditions;

(j) Failing to monitor road and weather conditions;

(k) Failing to operate their commercial motor vehicle in a reasonably safe manner;

(l) Failing to properly heed the warning signs posted on the highway concerning the road and weather conditions;

(m) Failing to properly heed to weather warning alerts;

(n) Failing to properly and/or timely apply the brakes of their commercial motor vehicle in order to avoid the collision in question;

(o) Failing to keep a proper lookout as a commercial motor driver using ordinary care would have done;

(p) Failing to maintain proper control of the commercial motor vehicle as a commercial driver using ordinary care would have done under the same or similar circumstances;

(q) Failing to take proper and timely evasive action;

(r) Violently striking Plaintiff's vehicle and literally running over the top of her and her vehicle; and

(s) Other negligent acts and omissions to be identified as discovery is conducted.

6.02 The acts and omissions described above, singularly or in any combination, amount to negligence and were a proximate cause of the collision involving Plaintiff that made the basis of this suit and of the Plaintiff's injuries and damages.

**7.00 FedEx Truck Defendants: Negligence Per Se, or additional General Negligence**

7.01 The FedEx Truck Defendants were negligent per se—or negligent—in committing acts that violated various statutes intended to protect persons traveling on the roadways, including but not limited to:

(a) Driving in hazardous conditions in violation of 49 CFR § 392.14 and Section 2.13 of the Texas Commercial Motor Vehicle Driver's Handbook;

(b) Failing to use extreme caution given the existing ice and freezing mist and rain conditions in violation of 49 CFR § 392.14;

(c) Failing to operate at a reasonable rate of speed given the existing ice and freezing mist and rain conditions in violation of Section 545.351 of the Texas Transportation Code and Section 2.6 of the Texas Commercial Motor;

(d) Failing to control the speed of the truck and/or driving at an unsafe speed, in violation of §545.352 of the Texas Transportation Code;

(e) Failing to safely observe hazards in the roadway in violation of Section 2.8 of the Texas Commercial Motor Vehicle Driver's Handbook; and

(f) Engaging in reckless driving in violation of Texas Transportation Code §545.401(a).

The acts and omissions described above, singularly or in any combination, amount to negligence per se and were a proximate cause of the collision involving Plaintiff that made the basis of this suit and of the Plaintiff's injuries and damages.

**8.00 FedEx Truck Defendants: Vicarious Liability—Respondeat Superior, Statutory Employee, Borrowed Servant, Agency, Joint Venture, Joint Enterprise, Partnership**

8.01 At the time of the collision and at all relevant and material times, Defendants Saint Lot and Clement were driving the commercial motor vehicle in question on behalf of the FedEx Truck Defendants, and Defendants Saint Lot and Clement were operating the FedEx Truck in their capacity as employees, statutory employees, borrowed servants, agents, joint venturers, joint enterprisers, and/or partners with the remaining FedEx Truck Defendants. Further, upon information and belief, the FedEx Truck Defendants exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery, and

manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement. Additionally, the FedEx Truck Defendants monitored and/or had the ability to monitor the routes, timing, dispatching, location, delivery, and manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement.

8.02 Additionally and/or alternatively—upon information and belief—Defendant FedEx exercised control and/or had the right to exercise control over the routes, timing, dispatching, communications, location, delivery, and manner of operations associated with the FedEx Truck, the drivers Defendants Saint Lot and Clement, and/or the driver's motor carrier(s)—Defendants Iso Rizo, Simon Express, and/or Energy Trucking. As such, (1) FedEx is vicarious liability for this collision, (2) the drivers were the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers, and/or partners of FedEx, and/or (3) Defendants Iso Rizo, Simon Express, and/or Energy Trucking were the agents, borrowed servants, joint venturers, joint enterprisers, and/or partners of FedEx.

8.03 Additionally and/or alternatively—upon information and belief—Defendant Nolan exercised control and/or had the right to exercise control over the routes, timing, dispatching, location, delivery, and manner of operations associated with the FedEx Truck, the drivers Defendants Saint Lot and Clement, and/or the driver's motor carrier(s)—Defendants Iso Rizo, Simon Express, and/or Energy Trucking. As such, (1) Defendant Nolan is vicarious liability for this collision, (2) the drivers were the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers, and/or partners of Nolan, and/or (3) Defendants Iso Rizo, Simon Express, and/or Energy Trucking were the agents, borrowed servants, joint venturers, joint enterprisers, and/or partners of Nolan.

8.04 Additionally, and/or alternatively—upon information and belief—Defendants Iso Rizo, Simon Express, and/or Energy Trucking were separately and/or in concert acting as the motor carrier of record subjecting them separately and/or collectively to vicarious liability for this collision. Further, Defendants Iso Rizo, Simon Express, and/or Energy Trucking exercised control and/or had the right to exercise control over the routes, timing, dispatching, location, delivery, and manner of operations associated with the FedEx Truck and the drivers Defendants Saint Lot and Clement. This subjects them each and/or collectively to vicarious liability for this collision and/or makes the drivers the employees, statutory employees, agents, borrowed servants, joint venturers, joint enterprisers, and/or partners of Defendants Iso Rizo, Simon Express, and/or Energy Trucking.

8.05 Additionally, and/or alternatively, upon information and belief, Defendant FedEx and Defendant Nolan were engaged in a partnership, joint venture, and/or joint enterprise and/or Nolan was acting as the agent of FedEx making FedEx vicariously liable for the acts and omissions of Nolan.

8.06 Additionally, and/or alternatively, upon information and belief, Defendant Nolan and Defendants Iso Rizo, Simon Express, and/or Energy Trucking were engaged in a partnership, joint venture, and/or joint enterprise and/or Defendants Iso Rizo, Simon Express, and/or Energy Trucking were acting as the agent(s) of Nolan making Nolan vicariously liable for the acts and omissions of Defendants Iso Rizo, Simon Express, and/or Energy Trucking.

8.07 Additionally, and/or alternatively, upon information and belief, Defendant Simon Express, and Defendant Energy Trucking were engaged in a partnership, joint venture, and/or joint enterprise and/or Defendant Simon Express, and Defendant Energy Trucking were acting as the agent of one another making each vicariously liable for the acts and omissions the other.

8.08 Defendants Saint Lot and Clement were engaged in an agency relationship, joint venture, joint enterprise, and/or partnership between themselves as they were driving the FedEx Truck as a team sharing driving duties and responsibilities along with sharing the profits and expenses.

8.09 Additionally, and/or alternatively, upon information and belief, FedEx Truck Defendants collectively and/or a combination thereof were engaged in an agency relationship with one another, a partnership, joint venture, and/or joint enterprise.

**9.00 FedEx Truck Defendants: Negligent Entrustment**

9.01 FedEx Truck Defendants are responsible for this collision under negligent entrustment, because (a) FedEx Truck Defendants supervised and controlled the commercial tractor and trailer driven by Defendants Saint Lot and Clement at the time of the collision, (b) Defendants Saint Lot and Clement were incompetent and/or unsafe drivers, (c) FedEx Truck Defendants either knew or should have known Defendants Saint Lot and Clement were incompetent and/or unsafe drivers, and (d) the negligence of Defendants' Saint Lot and Clement on the occasion in question proximately caused the collision. The negligence of FedEx Truck Defendants in negligently entrusting Defendants Saint Lot and Clement to drive proximately caused the collision giving rise to this case and the injuries and damages suffered by Plaintiff arising from this crash.

**10.00 FedEx Truck Defendants: Negligent Hiring, Training, Retention, Supervision, and Failure to Control**

10.01 FedEx Truck Defendants owed a duty to other motorists, including Plaintiff, to hire safe, competent drivers, to implement and enforce safety policies and procedures, to train, instruct, monitor and supervise its drivers, and to take actions to control their drivers to prevent collisions

and injuries to other motorists, including Plaintiff, but failed to do so. FedEx Truck Defendants' negligent acts and/or omissions in this regard include, but are not limited to, the following:

(a) Failing to train and instruct drivers in proper driving techniques, including in hazardous conditions;

(b) Failing to prohibit unsafe driving practices, including in hazardous conditions;

(c) Permitting, encouraging and approving unsafe driving practices, including in hazardous conditions;

(d) Failing to implement and/or enforce reasonable policies and procedures pertaining to safe driving operations, including in hazardous conditions;

(e) Failing to monitor drivers;

(f) Negligent and reckless hiring, qualification and retention of unfit, unsafe drivers;

(g) Negligent entrustment of commercial motor vehicle to unfit, unsafe drivers;

(h) Negligently creating or allowing a culture of non-compliance by failing to require observance of, and approving violations of, rules and regulations for commercial motor vehicles; and

(i) Aiding, abetting, and encouraging drivers to violate the rules of the road.

10.02 The acts and omissions described above, singularly or in any combination, amount to negligence and/or negligence per se, and were a proximate cause of the collision involving Plaintiff that made the basis of this suit and of the Plaintiff's injuries and damages.

**11.00 FedEx Truck Defendants: Negligent Hiring, Selecting, Retaining, as to Defendants FedEx and Nolan**

11.01 Additionally, and/or alternatively, Defendants FedEx and Nolan owed a legal duty to Plaintiff to exercise reasonable care in selecting, hiring, and retaining a qualified and competent motor carrier. Defendants FedEx and/or Nolan breached this duty and negligently selected motor carriers Defendants Iso Rizo, Simon Express, and/or Energy Trucking.

11.02 Section 411 of the Second Restatement of Torts addresses Defendants FedEx's and Nolan's liability associated with their negligent selection of Defendants Iso Rizo, Simon Express, and/or Energy Trucking. Specifically, Section 411 states as follows:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

Restatement (Second) of Torts § 411 (Am. Law Inst. 1965).

11.03 Operating a commercial motor vehicle on the public highways involves risks of physical harm unless it is skillfully and carefully done. Defendants FedEx and/or Nolan failed to make a sufficient inquiry as to the competence of Defendants Iso Rizo, Simon Express, and/or Energy Trucking under Section 411.

11.04 Defendants FedEx and Nolan knew or should have known that Defendants Iso Rizo, Simon Express, and/or Energy Trucking to whom they entrusted transporting and delivering the load at issue was an unsafe trucking company. Indeed, FedEx acknowledges and admits that the load was entrusted to a motor carrier who was not approved by FedEx and should never have been entrusted with hauling this load. Defendants FedEx and/or Nolan failed to investigate the background of Defendants Iso Rizo, Simon Express, and/or Energy Trucking to determine whether Defendants Iso Rizo, Simon Express, and/or Energy Trucking were safe, competent, and fit for the job. If Defendants FedEx and/or Nolan would have conducted a proper investigation, it would have revealed Defendants Iso Rizo, Simon Express, and/or Energy Trucking were not reasonably competent and safe motor carriers. Thus, the negligence of Defendants FedEx and/or Nolan in selecting Defendants Iso Rizo, Simon Express, and/or Energy Trucking was a proximate cause of Plaintiff's injuries.

**12.00 FedEx Truck Defendants: Gross Negligence**

12.01 The FedEx Truck Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and

magnitude of the potential harm to others. Further, the FedEx Truck Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. This amounts to gross negligence. Such gross negligence was a proximate case of the collision and the resulting injuries and damages suffered by Plaintiff. And as such the jury should consider assessing punitive or exemplary damages.

**13.00 NTE Defendants and other Road Maintenance Defendants: General Negligence, or alternatively, Premise Liability**

13.01 At the time the collision made the basis of this lawsuit, and at all relevant and material times, NTE and other Road Maintenance Defendants owed a duty to traveling motorist, and/or invitees, on the express lanes, including Plaintiff, and was contractually responsible for maintaining the express lanes where this collision occurred. NTE and other Road Maintenance Defendants' negligent acts and/or omissions include, but are not limited to, the following:

(a) Failing to properly and timely treat the express lanes to prevent the formation of ice on the express lanes;

(b) Failing to properly monitor the weather and road conditions;

(c) Failing to properly inspect the express lanes;

(d) Failing to de-ice and remove ice from the express lanes;

(e) Failing to close the express lanes to all traffic;

(f) Failing to close the express lanes to all commercial 18-wheeler vehicles;

(f) Failing to properly warn motorists of the icy road conditions on the express lanes;

(g) Failing to properly train personnel on the proper and timely treatments required to prevent the formation of ice on the express lanes;

(h) Failing to properly train personnel on the proper and timely de-icing and removal of ice required to prevent collisions on the express lanes;

(i) Failing to implement proper policies and procedures for the prevention of ice formation, pretreatment, de-icing and the removal of ice from the express lanes;

(j) Failing to take other actions to prevent hazardous road conditions on the express lanes;

(k) Failing to act as a reasonable and prudent road maintenance company;

(l) Failing to comply with its contractual obligations to maintain the express lanes in a safe condition for motorists and the travelling public; and

(m) Other negligent acts and omissions to be identified as discovery is conducted.

13.02 The acts and omissions described above, singularly or in any combination, amount to negligence and were a proximate cause of the collision involving Plaintiff that made the basis of this suit and of the Plaintiff's injuries and damages.

**14.00 NTE Defendants and other Road Maintenance Defendants: Gross Negligence**

14.01 NTE and other Road Maintenance Defendants' acts and/or omissions, when viewed objectively at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, NTE and other Road Maintenance Defendants had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. This amounts to gross negligence. Such gross negligence was a proximate cause of the resulting injuries and damages suffered by Plaintiff. And as such the jury should consider assessing punitive or exemplary damages.

**15.00 J.B. Hunt: General Negligence and Negligence Per Se**

15.01 At all times relevant to the incident that made the basis of this litigation, J.B. Hunt was a nonsubscriber to the Texas Workers Compensation system as that term is used under the Texas Labor Code. Yet, J.B. Hunt hired Plaintiff and made use of her services as an employee and controlled the manner and performance of her job duties. Plaintiff was seriously and permanently injured in the course and scope of her employment with J.B. Hunt. As her employer, J.B. Hunt owed certain duties to Plaintiff which were negligently breached by J.B. Hunt to wit:

(a) In failing to use reasonable care to provide a safe work environment;

(b) In violating section 643.106 of the Texas Transportation Code (negligent per se, or at least negligent) by failing to obtain either workers' compensation or accidental insurance coverage approved by the Texas Department of Motor Vehicles;

(c) Other acts of negligence to be established by discovery;

Under the provisions of §406.033, Texas Labor Code, Defendant is barred from asserting a defense to Plaintiff's claims which is based on contributory negligence, assumption of the risk, or negligence of a fellow employee.

The above referenced acts and or omissions, were negligent, and were—singularly and/or when taken together—a proximate and foreseeable cause of the (1) occurrence in question and resulting injuries and damages sustained by the Plaintiff or (2) additional consequential injuries and damages sustained by the Plaintiff.

**16.00 De-icing Manufacturer Defendants: General Negligence**

Based upon designations of potential responsible third parties made by certain defendants in this multi-district litigation, Plaintiff contends that the de-icing procedure(s) performed on the TEXPress Lanes of I-35W where this incident occurred was/were ineffective and failed. Plaintiff contends that this failure was caused in whole or in part by one or more of the following:

1. The de-icing material was ineffective;
2. The de-icing material was not the appropriate de-icing material for the specific conditions that existed on the TEXPress lanes of I-35W at the time of this incident;
3. The de-icing material lacked adequate instructions for the proper application of the deicing material;
4. The manufacturer of the de-icing material failed to provide warnings, instructions, and/or training and/or failed to provide adequate and/or sufficient warnings, instructions and/or training regarding the proper application of the de-icing material.

The incident described above and the injuries sustained by the Plaintiff were also proximately caused by the various acts, wrongs and/or omissions on the part of Defendants named

above and each and all of these acts, wrongs and/or omissions amounted to negligence and/or gross negligence on the part of Defendants.

**17.00 Damages**

16.01 As a direct proximate result of the negligent acts described above and/or omissions on the part of Defendants, Plaintiff has suffered catastrophic bodily injuries and damages, including but not limited to severe injuries to her back which have required medical care in the past and will continue to require medical care in the future. Despite the medical care she has received to date, she remains physically impaired and unable to work. Accordingly, Plaintiff has suffered and seeks the following damages:

1. Medical Expenses: Plaintiff has incurred medical expenses in the past. These expenses were incurred for reasonable and necessary care and treatment of her injuries. The charges incurred are reasonable and were the usual and customary charges for the same or similar services at the time and place rendered. Plaintiff also expects to incur medical expenses in the future in an amount within the jurisdictional limits of this Court;
2. Physical Pain and Suffering: Plaintiff has endured physical pain and suffering in the past and will continue to endure severe physical pain and suffering in the future;
3. Mental Anguish: Plaintiff has endured severe mental anguish in the past and will continue to endure severe mental anguish in the future;
4. Physical Impairment: Plaintiff has suffered physical impairment in the past and will continue to suffer physical impairment in the future;
5. Loss of Enjoyment of Life: Plaintiff has suffered a loss of enjoyment of life in the past and will continue to suffer such loss in the future;
6. Lost Wages and Earning Capacity: Plaintiff has suffered a loss of wages in the past and will continue to suffer a loss of earning capacity in the future.
7. Disfigurement: Plaintiff has suffered disfigurement and will continue to suffer from it.
8. All other and further relief, in law and in equity to which Plaintiff may be entitled.

By reason of the above and foregoing, Plaintiff has been damaged in a sum within the jurisdictional limits of this Court, for which Plaintiff hereby sues.

**18.00 Costs and Interest**

17.01 The Plaintiff also seek recovery for all costs of court.

17.02 The Plaintiff also seek recovery of pre-judgment and post-judgment interest in the maximum amounts allowable by law.

**19.00 Jury Trial**

18.01 Plaintiff hereby demand a trial by jury.

**20.00 Prayer**

19.01 Plaintiff prays that the Defendants be cited to appear herein and answer, and upon final hearing, Plaintiff be awarded a Judgment against the Defendants for actual or compensatory damages (past and future) as set forth above and/or to the fullest extent allowable by law and which are found to be fair and reasonable in amounts in excess of the minimum jurisdictional limits of this Court; costs of court; pre-judgment and post-judgment interest at the highest lawful rates until the Judgment is satisfied in full; and for such other and further relief, at law and in equity, to which the Plaintiff may show themselves justly entitled.

RESPECTFULLY SUBMITTED:

/s/ Clint B. Lee
Clint B. Lee
Texas Bar No. 24131450
clee@galyen.com

Kern A. Lewis
Texas Bar No. 12295320

BAILEY & GALYEN
1901 AIRPORT FWY,
BEDFORD, TEXAS 76021
972.674.8582 [TELEPHONE]
817.359.7048 [FACSIMILE]

ATTORNEY FOR PLAINTIFF

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

# EXHIBIT B-15

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/16/2023
CT Log Number 543236907

## Service of Process Transmittal Summary

**TO:** Catherine David, General Counsel
FERROVIAL CONSTRUCTION US CORP.
9600 Great Hills Trl Ste 200E
Austin, TX 78759-5680

**RE:** **Process Served in Texas**

**FOR:** Ferrovial Agroman US Corp (Former Name) (Domestic State: DE)
Ferrovial Construction US Corp. (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** Re: IN RE: FEBRUARY 11,2021 INCIDENT ON IH 35W // To: Ferrovial Construction US Corp.

**CASE #:** 15300000022

**NATURE OF ACTION:** Wrongful Death - Vehicle Collision

**PROCESS SERVED ON:** C T Corporation System, Dallas, TX

**DATE/METHOD OF SERVICE:** By Process Server on 02/16/2023 at 11:16

**JURISDICTION SERVED:** Texas

**ACTION ITEMS:** CT will retain the current log

Image SOP

Email Notification, Catherine David catherine.david@ferrovial.us

Email Notification, LEAH SWAIM lswaim@ferrovial.us

**REGISTERED AGENT CONTACT:** C T Corporation System
1999 Bryan Street
Suite 900
Dallas, TX 75201
866-665-5799
SouthTeam2@wolterskluwer.com

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/16/2023
CT Log Number 543236907

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED | DATE/METHOD OF SERVICE | TO | LOG NUMBER |
|---|---|---|---|
| -- | By Process Server on 02/16/2023 at 11:00 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543236752 |
| -- | By Process Server on 02/15/2023 at 12:29 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543231864 |
| -- | By Process Server on 02/14/2023 at 12:20 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543221438 |
| -- | By Process Server on 02/13/2023 at 11:27 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543207798 |
| -- | By Traceable Mail on 01/26/2023 at 12:26 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 543095218 |
| -- | By Process Server on 09/22/2022 at 15:03 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 542358691 |
| -- | By Process Server on 09/13/2022 at 14:49 | Catherine David, General Counsel FERROVIAL CONSTRUCTION US CORP. | 542299182 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Thu, Feb 16, 2023
**Server Name:** Caleb Malone

| | |
|---|---|
| Entity Served | FERROVIAL AGROMAN US CORP |
| Case Number | 153-000000-22 |
| Jurisdiction | TX |

| Inserts | | |
|---|---|---|
| | | |

# THE STATE OF TEXAS
# DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 153-000000-22*

IN RE: FEBRUARY 11, 2021 INCIDENT ON IH35W
VS.

TO: FERROVIAL AGROMAN US CORP
A/K/A FERROVIAL CONSTRUCTION US CORP

B/S REG AGENT-FERNANDO MARTINEZ CARO 700 CHEVY CHASE BLVD STE 500 AUSTIN, TX 78752-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S FIRST AMENDED PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 153rd District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

SUZETTE KILBREATH

Filed in said Court on February 9th, 2023 Against
GO TO LOGISTICS INC, CINTRA US SERVICES LLC, NORTH TARRANT INFRASTRUCTURE LLC, WEBBER LLC, FERROVIAL AGROMAN US CORP, CODY SLOAN WILLIAMS, CINTRA HOLDING US CORP, CINTRA TEXAS CORP, NTE MOBILITY PARTNERS HOLDING LLC, CINTRA NTE LLC, REDMON For suit, said suit being numbered 153-000000-22 the nature of which demand is as shown on said PLAINTIFF'S FIRST AMENDED PETITION a copy of which accompanies this citation.

WADE A BARROW
Attorney for SUZETTE KILBREATH Phone No. (817)617-7797
Address 1214 FAIRMOUNT AVE FORT WORTH, TX 76104

_____Thomas A. Wilder_____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 15th day of February, 2023.

By *Natalie Thigpen* Deputy
NATALIE THIGPEN

A CERTIFIED COPY
ATTEST: 02/15/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Natalie Thigpen

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *15300000022001546*

Received this Citation on the ______ day of ______________________, _____ at ______ o'clock ___M; and executed at ______________________________ within the county of ______________, State of ________ at _______ o'clock ___M on the _______ day of _______________, _____ by delivering to the within named (Def.): ______________________ defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S FIRST AMENDED PETITION , having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff: ______________________

County of ______________________ State of_________ By ____________________________ Deputy

Fees $________

State of _____________ County of ____________________________ (Must be verified if served outside the State of Texas)

Signed and sworn to by the said ______________________________ before me this _____ day of _________, ____

to certify which witness my hand and seal of office

(Seal)

______________________________

County of _________________, State of _________________



Caleb Malone
PSC 1574 exp 10/31/2021
2023/02/16 11:16:45

*CITATION*

Cause No. 153-000000-22

IN RE: FEBRUARY 11, 2021
INCIDENT ON IH35W

VS.

A CERTIFIED COPY
ATTEST: 02/15/2023
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Natalie Thigpen

ISSUED

This 15th day of February, 2023

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By NATALIE THIGPEN Deputy

WADE A BARROW
Attorney for: SUZETTE KILBREATH
Phone No. (817)617-7797
ADDRESS: 1214 FAIRMOUNT AVE

FORT WORTH, TX 76104

*CIVIL LAW*

*15300000022001546*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
**ORIGINAL**

153-000000-22

FILED
TARRANT COUNTY
2/9/2023 2:40 PM
THOMAS A. WILDER
DISTRICT CLERK

**MASTER CAUSE NO. 153-000000-22**
**NOT APPLICABLE TO ALL ACTIONS**

| | | |
|---|---|---|
| **IN RE: FEBRUARY 11, 2021 INCIDENT ON IH 35W** | § § § § § | **IN THE DISTRICT COURT** <br> **TARANT COUNTY, TEXAS** <br> **153RD JUDICIAL COURT** |

**CAUSE NO. 096-332954-22**

| | | |
|---|---|---|
| **SUZETTE KILBREATH** <br> vs. <br> **STEVEN RIDDER, NEW PRIME, INC., NTE MOBILITY PARTNERS, LLC and NTE MOBILITY PARTNERS SEGMENTS 3, LLC** | § § § § § § § § | **IN THE DISTRICT COURT** <br> **TARRANT COUNTY, TEXAS** <br> **96th JUDICIAL DISTRICT** |

**PLAINTIFF'S FIRST AMENDED PETITION**

Plaintiff Suzette Kilbreath files this her First Amended Original Petition against Steven Ridder, New Prime, Inc., Cody Sloan Williams, Go To Logistics, Inc., NTE Mobilities Partners, LLC, NTE Mobility Partners Segments 3, LLC, NTE Mobility Partners Holding, LLC, NTE Mobility Partners Segments 3 Holding, LLC (collectively referred to as Defendant NTE), Cintra US Services, LLC, Cintra Holding US Corp d/b/a Cintra US Corp, Cintra NTE, LLC, Cintra Texas Corp, Cintra NTE Mobility Partners Segments Holding, LLC, Cintra Toll Services, LLC, (collectively referred to as Defendant Cintra), North Tarrant Infrastructure, LLC, Webber, LLC, Ferrovial Argoman US Corp a/k/a Ferrovial Construction US Corp, Ferrovial Holding US Corp, Redmond Minerals, Inc., Redmond Incorporated, EnviroTech Services, Inc., Southwest Envirotx Partners, LLC, and would show as follows:

## I. SELECTION OF DISCOVERY LEVEL

Discovery in this matter is to be conducted pursuant to the Case Management Orders entered by the MDL Judge for this matter.

## II. PARTIES

Plaintiff, SUZETTE KILBREATH, (SSN: xxx-xx-8385) is an individual who resides in Fort Worth, Tarrant County, Texas.

Defendant STEVEN RIDDER is an individual who is a resident of Olsburg, Pottawatomie County, Kansas who has been served with process and answered herein.

Defendant NEW PRIME, INC. is a foreign corporation with a principal place of business in Springfield, Missouri. Defendant has been served with process and answered herein.

Defendant NTE MOBILITY PARTNERS, LLC is a limited liability company with its principal place of business in North Richland Hills, Texas. Defendant has been served with process and answered herein.

Defendant NTE MOBILITY PARTNERS SEGMENTS 3, LLC is a limited liability company with its principal place of business in North Richland Hills, Texas. Defendant has been served with process and answered herein.

Defendant NTE MOBILITY PARTNERS HOLDING, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

Defendant NTE MOBILITY PARTNERS SEGMENTS 3 HOLDING, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas

as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

Defendant CINTRA US SERVICES LLC is a Texas limited liability company with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Defendant CINTRA HOLDING US CORP D/B/A CINTRA US CORP. is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Defendant CINTRA NTE, LLC, is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

Defendant CINTRA TEXAS CORP is a Delaware corporation qualified to do business in the State of Texas and may be served through its registered agent for service of process in Texas, through C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

Defendant CINTRA NTE MOBILITY PARTNERS SEGMENTS HOLDING, LLC is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant qualified to do business in the State of Texas and may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that their home office address is 9600 Great Hills Trail, Suite 250E, Austin, Texas 78759.

Defendant CINTRA TOLL SERVICES, LLC is a foreign limited liability company with its principal place of business located in Travis County, Texas. This Defendant may be served through its registered agent for service of process in Texas, through C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

Defendant NORTH TARRANT INFRASTRUCTURE, LLC is a Texas limited liability company with its principal office and principal place of business located in Tarrant County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Defendant WEBBER, LLC is a Texas limited liability company with its principal office and principal place of business located in Montgomery County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Defendant FERROVIAL AGROMAN US CORP a/k/a FERROVIAL CONSTRUCTION US CORP is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, Fernando Martinez Caro at 700 Chevy Chase Blvd Ste 500, Austin, Texas 78752.

Defendant FERROVIAL HOLDING US CORP is a Delaware Corporation with its principal office and principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Defendant REDMOND MINERALS, INC. is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant may be served by the Secretary

of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that such defendant's home office address is 475 W. 910 S, Heber City, UT 84032. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C. at 322 E Gateway Drive, Suite 201, Heber City, UT 84032.

Defendant REDMOND INCORPORATED is a foreign corporation that does not maintain a registered agent in the State of Texas. This Defendant may be served by the Secretary of State of Texas as its agent upon whom service of process can be made. It is Plaintiff's understanding that such defendant's home office address is 475 W. 910 S, Heber City, UT 84032. This Defendant may be served with citation by serving its registered agent for service of process, Gordon Law Group, P.C. at 322 E Gateway Drive, Suite 201, Heber City, UT 84032.

Defendant ENVIROTECH SERVICES, INC. is a foreign corporation with its principal office and place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas 78701.

Defendant SOUTHWEST ENVIROTX PARTNERS, LLC is a domestic limited liability company with its principal place of business located in Travis County, Texas. This Defendant may be served with citation by serving its registered agent for service of process, Clay C. Speer, 10899 Deer Canyon Rd., Jonestown, Texas 78645.

Defendant CODY SLOAN WILLIAMS is an individual who resides in Tarrant County, Texas. He may be served with process at 1415 Tennis Dr., #205, Bedford, Texas 76022.

Defendant GO TO LOGISTICS, INC. is a foreign corporation with its principal place of business located in River Grove, Cook County, Illinois. This Defendant may be served with process

through its registered agent, Jeffrey Fultz, Process Agent Service Company, Inc., 1221 McKinney, Suite 4300, Houston, Texas 77010.

## III. Jurisdiction and Venue

This Court has jurisdiction in this cause since the damages to Plaintiff are within the jurisdictional limits of this Court. Plaintiff seeks monetary relief in excess of $250,000.00. Venue is proper pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), as Tarrant County is the county where all or a substantial part of the events or omission giving rise to the claims occurred. Venue is also proper pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3), as Tarrant County is the principal place of business for Defendant NTE Mobility Partners, LLC and Defendant NTE Mobility Partners Segments 3, LLC.

## IV. FACTS

This lawsuit results from a multi-vehicle collision that occurred on February 11, 2021.

"NTE" collectively refers to Defendants NTE Mobility Partners LLC; NTE Mobility Partners Segment 3 LLC; NTE Mobility Partners Holdings LLC; NTE Mobility Partners Segments 3 Holding, LLC.

"Cintra" collectively refers to Defendants Cintra US Services, LLC; Cintra Holding US Corp. d/b/a Cintra Us Corp.; Cintra NTE LLC; Cintra Texas Corp.; Cintra NTE Mobility partners Segments 3 LLC.

The term "Road Maintenance Defendants" collectively refers to Defendants NTE; Cintra; North Tarrant Infrastructure, LLC; Webber, LLC; Ferrovial Agroman US Corp. a/k/a Ferrovial Construction US Corp., and Ferrovial Holding US Corp. At all relevant times the Road Maintenance Defendants were responsible for maintaining the express lanes where this collision occurred.

The term "De-icing Manufacturer Defendants" collectively refers to Defendants Redmond Minerals, Inc., Redmond Incorporated, EnviroTech Services, Inc., and Southwest Envirotx Partners, LLC. The De-icing Manufacturer Defendants manufactured the de-icing materials used by Road Maintenance Defendants and put those materials out into the stream of commerce.

Plaintiff was traveling southbound in the 2600 block of I-35 express lanes in Fort Worth, Texas. Defendant Ridder was driving an 18-wheeler owned by Defendant New Prime, Inc. Defendant Ridder's 18-wheeler jackknifed when it encountered icy conditions on the road and collided with Plaintiff's vehicle. At all relevant times, the Road Maintenance Defendants were responsible for maintaining the express lanes where this collision occurred. As a result of the impact, Plaintiff suffered severe bodily injuries and other damages complained of herein.

Defendant Ridder should not have been on the roadway, certainly should not have been driving in the express lanes, and clearly was driving too fast given the weather and hazardous road conditions. Additionally, Defendants Ridder and New Prime, Inc. failed to pay proper attention to the traffic, weather, and road conditions and/or consciously chose to ignore the same.

The Road Maintenance Defendants were contractually responsible for maintaining the express lanes where this collision occurred. As such, the Road Maintenance Defendants were responsible for preventing ice formation on the roadway through proper preventive treatments of the express lanes, and the Road Maintenance Defendants were likewise responsible for de-icing and removing any ice that formed on the express lanes the Road Maintenance Defendants knew and were on notice that a prior collision had occurred just to the north in this same general vicinity approximately 3 hours prior to the collision at issue. Yet, the Road Maintenance Defendants failed to prevent further ice development on the express lanes, failed to de-ice or remove ice from the

express lanes, and/or failed to simply close the express lanes to all traffic or at least to 18 wheelers. The Road Maintenance Defendants failed to comply with their duties and obligations for maintaining the express lanes, including their contractual duties. In conjunction with Road Maintenance Defendants' failures, or alternatively, de-icing materials that were supplied by De-icing Manufacturer Defendants were defective or ineffective.

Alternatively, Road Maintenance Defendants were responsible for maintaining the express lanes where this collision occurred because Plaintiff was an invitee on the expressway. As such, and under the necessary-use exception, Road Maintenance Defendants were responsible for preventing ice formation on the roadway through proper preventive treatments of the express lanes, and Road Maintenance Defendants were likewise responsible for de-icing and removing any ice that formed on the express lanes. Road Maintenance Defendants knew and were on notice that a prior collision had occurred just to the north in this same general vicinity approximately 3 hours prior to the collision at issue. Yet, Road Maintenance Defendants failed to prevent further ice development on the express lanes, failed to de-ice or remove ice from the express lanes, and/or failed to simply close the express lanes to all traffic or at least to 18 wheelers. Road Maintenance Defendants failed to comply with its duties and obligations for maintaining the express lanes, including its contractual duties.

## V. General Causes of Action and Facts Underlying These Claims

On February 11, 2021, Defendant Ridder failed to obey traffic laws which caused the violent collision with Plaintiff's vehicle.

The acts and/or omissions of Defendants on February 11, 2021, also violated numerous provisions of the Texas Transportation Code and the Federal Carrier Safety Regulations, all of which

were, singularly or in combination, negligence and a proximate cause of the violent collision and Plaintiff's serious and permanent injuries.

Defendant New Prime, Inc. failed to properly train its driver, Defendant Steven Ridder. Defendant New Prime, Inc. is also responsible under the doctrine of *respondent superior* as Defendant Ridder was operating the tractor-trailer during the course and scope of his employment as defined by the Federal Motor Safety Carrier Regulations.

Defendant New Prime, Inc. also failed to adequately monitor, supervise, and/or audit Defendant Ridder as a driver before February 11, 2021.

## VI. Negligence and/or Negligence *per se* of Defendant Steven Ridder

On February 11, 2021, Defendant Steven Ridder was guilty of one or more of the following acts of negligence and/or negligence *per se*, among others, which proximately caused the collision in question and the injuries and damages sustained by Plaintiff. Defendant Ridder owed a duty to other motorists, including Plaintiff, to operate his vehicle in a reasonable and prudent manner and he failed to do so. His negligent acts and/or omissions include, but are not limited to, the following:

(a) Driving his commercial motor vehicle in hazardous conditions;

(b) Failing to use extreme caution in driving his commercial motor vehicle given the existing ice and freezing mist and freezing rain conditions;

(c) Driving his commercial motor vehicle in the express lanes given the existing ice and freezing mist and freezing rain conditions;

(d) Failing to operate his commercial motor vehicle at a reasonable rate of speed given the existing ice and freezing mist and freezing rain conditions;

(e) Failing to control the speed of his commercial motor vehicle and/or driving at an unsafe speed;

(f) Failing to safely observe hazards in the roadway;

(g) Failing to maintain a proper and safe distance given the weather conditions that day;

(h) Failing to pay attention to the road and driving conditions;

(i) Failing to pay attention to the weather conditions;

(j) Failing to monitor road and weather conditions;

(k) Failing to operate his commercial motor vehicle in a reasonably safe manner;

(l) Failing to properly heed the warning signs posted on the highway concerning the road and weather conditions;

(m) Failing to properly heed to weather warning alerts;

(n) Failing to properly and/or timely apply the brakes of his commercial motor vehicle in order to avoid the collision in question;

(o) Failing to keep a proper lookout as a commercial motor driver using ordinary care would have done;

(p) Failing to maintain proper control of the commercial motor vehicle as a commercial driver using ordinary care would have done under the same or similar circumstances; and

(q) Failing to take proper and timely evasive action.

All of the above acts and/or omissions, individually or in combination, were a proximate cause of the damages sustained by Plaintiff.

Defendant Ridder was negligent per se in committing acts that violated various statutes intended to protect the safety of persons traveling on the roadways, including but not limited to:

(a) Driving in hazardous conditions in violation of 49 CFR § 392.14 and Section 2.13 of the Texas Commercial Motor Vehicle Driver's Handbook;

(b) Failing to use extreme caution given the existing ice and freezing mist and rain conditions in violation of 49 CFR § 392.14;

(c) Failing to operate at a reasonable rate of speed given the existing ice and freezing mist and rain conditions in violation of Section 545.351 of the Texas Transportation Code and Section 2.6 of the Texas Commercial Motor;

(d) Failing to control the speed of the truck and/or driving at an unsafe speed, in violation of §545.352 of the TEXAS TRANSPORTATION CODE;

(e) Failing to safely observe hazards in the roadway in violation of Section 2.8 of the Texas Commercial Motor Vehicle Driver's Handbook; and

(f) Engaging in reckless driving in violation of Texas Transportation Code §545.401(a).

These acts by Defendant Ridder constituted negligence and/or negligence *per se* for which Defendant Ridder should be held liable for the serious personal injuries to Plaintiff. Alternatively, the statutes establish the standard of care for a driver of a commercial vehicle.

## VII. Negligence and/or Negligence *Per Se* Of Defendant New Prime, Inc.

Defendant New Prime, Inc. violated numerous federal and state statutes designed to protect and safeguard the motoring public, including the Plaintiff, and Defendant New Prime, Inc. is therefore liable for negligence and/or negligence *per se*. Such acts and/or omissions were a proximate cause of the damages in question.

On or about February 11, 2021, Defendant New Prime, Inc. was the owner of the truck/tractor semi-trailer operated by Defendant Steven Ridder which caused the collision in question. Prior to and at the time in question, Defendant New Prime, Inc. entrusted its truck/tractor semi-trailer to Defendant Ridder for the purpose of operating it on the public streets and highways of Texas. Thereafter, Defendant Ridder operated said truck/tractor semi-trailer with the knowledge, consent and permission of Defendant New Prime, Inc.

At such time, Defendant New Prime, Inc. knew or should have known that Defendant Ridder was incompetent or unfit to safely operate a truck/tractor semi-trailer on public streets and highways in that Defendant Ridder was reckless.

At such time, Defendant New Prime, Inc. knew, or in the exercise of due care, should have known that Defendant Ridder was an incompetent driver and would create an unreasonable risk of danger to persons or property on public streets and highways in Texas.

By way of example only, Defendant New Prime, Inc. violated at least the following:

(a) 49 C.F.R. 383.111 (failure to have required knowledge of vehicle operation);

(b) 49 C.F.R. 383.113 (failure to have required skills in vehicle operation);

(c) 49 C.F.R. 390.3 (knowledge and compliance with the regulations);

(d) 49 C.F.R. 390.11 (requiring observance of regulations);

(e) 49 C.F.R. 390.13 (aiding, abetting or encouraging drivers to violate the law);

(f) 49 C.F.R. 392.2 (operation in accordance with the law).

Defendant New Prime, Inc. was also required to observe those rules and regulations violated by Defendant Ridder as listed above. The conduct of Defendant New Prime, Inc. in this case was negligence and/or negligence *per se* resulting in damages to Plaintiff.

Defendant New Prime, Inc. is also liable for Plaintiff's damages under the doctrine of *Respondent Superior* as Defendant Ridder was driving in the course and scope of his employment as defined by the Federal Motor Carrier Regulations, including 49 C.F.R. §390.5.

In the alternative, the truck operated by Cody Williams and Go To Logistics was negligent in striking Plaintiff.

## VIII. Negligence and/or Negligence *Per Se* Of NTE Defendants and other Road Maintenance Defendants

At the time of the collision made the basis of this lawsuit and at all relevant and material times, NTE and other Road Maintenance Defendants owed a duty to traveling motorist on the express lanes, including Plaintiff, and was contractually responsible for maintaining the express lanes where this collision occurred. NTE and other Road Maintenance Defendants negligent acts and/or omissions include, but are not limited to, the following:

(a) Failing to properly and timely treat the express lanes to prevent the formation of ice on the express lanes;

(b) Failing to properly monitor the weather and road conditions;

(c) Failing to properly inspect the express lanes;

(d) Failing to de-ice and remove ice from the express lanes;

(e) Failing to close the express lanes to all traffic;

(f) Failing to close the express lanes to all commercial 18 wheeler vehicles;

(g) Failing to properly warn motorists of the icy road conditions on the express lanes;

(h) Failing to properly train personnel on the proper and timely treatments required to prevent the formation of ice on the express lanes;

(i) Failing to properly train personnel on the proper and timely de-icing and removal of ice required to prevent collisions on the express lanes;

(j) Failing to implement proper policies and procedures for the prevention of ice formation, pretreatment, de-icing and the removal of ice from the express lanes;

(k) Failing to take other actions to prevent hazardous road conditions on the express lanes;

(l) Failing to act as a reasonable and prudent road maintenance company;

(m) Failing to comply with its contractual obligations to maintain the express lanes in a safe condition for motorists and the travelling public; and

(n) Other negligent acts and omissions to be identified as discovery is conducted.

The acts and omissions described above, singularly or in any combination, amount to negligence and were a proximate cause of the collision involving Plaintiff made the basis of this suit and of the Plaintiff's injuries and damages.

## IX. De-icing Manufacturer Defendants: General Negligence

Based upon designations of potential responsible third parties made by certain Defendants in this multi-district litigation, Plaintiff contends that the de-icing procedure(s) performed on the TEXPress Lanes of I-35W where this incident occurred was/were ineffective and failed. Plaintiff contends that this failure was caused in whole or in part by one or more of the following:

(a) The de-icing material was ineffective;

(b) The de-icing material was not the appropriate de-icing material for the specific conditions that existed on the TEXPress lanes of I-35W at the time of this incident;

(c) The de-icing material lacked adequate instructions for the proper application of the deicing material;

(d) The manufacturer of the de-icing material failed to provide warnings, instructions, and/or training and/or failed to provide adequate and/or sufficient warnings, instructions and/or training regarding the proper application of the de-icing material.

The incident described above and the injuries sustained by the Plaintiff were also proximately caused by the various acts, wrongs and/or omissions on the part of Defendants named above and each and all of these acts, wrongs and/or omissions amounted to negligence and/or gross negligence on the part of Defendants.

## X. Causation

These acts and/or omissions by the Defendants, singularly or in any combination, were a proximate cause of the collision and the damages and severe injuries suffered by Plaintiff.

## XI. Gross Negligence

Plaintiff would further show that the negligent acts and/or omissions of Defendants jointly and severally, constitute an entire want to care as to indicate that such acts and/or omissions were the result of conscious indifference to the rights, safety and welfare of others, including Plaintiff, and thus amount to gross negligence as that term is defined by the laws of the State of Texas. Thus, Plaintiff is entitled to exemplary damages as allowed by Texas law.

## XII. Damages

As a result of the collision in question, Plaintiff suffered severe injuries and therefore seeks recovery of the following damages herein:

a. Physical pain in the past and future;

b. Medical expenses in the past and future;

c. Mental anguish in the past and future;

d. Disfigurement in the past and future;

e. Physical impairment in the past and future; and

f. Loss of earning capacity in the past and future.

## XIII. Required Initial Disclosures

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose, within thirty (30) days of filing an answer, the information or material described in Rule 194.2 (b)(1-12).

## XIV. Prayer

For these reasons, Plaintiff prays that upon final trial she have judgment for actual damages; exemplary damages; pre-judgment and post-judgment interest; costs of court; and for all other relief to which she may be entitled.

Respectfully submitted,

Wade A. Barrow (Bar No. 24031844)
BARROW LAW, PLLC
1214 Fairmount Avenue
Fort Worth, Texas 76104
(817) 617-7797 – Telephone
(817) 900-3408 – Facsimile
service@barrow-law.com

**ATTORNEYS FOR PLAINTIFF**

CERTIFICATE OF SERVICE

On February 9, 2023, I certify that a true and correct copy of the above document was forwarded to all known counsel of record in accordance with the Texas Rules of Civil Procedure 21 and 21a.

Wade A. Barrow