UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, § § § | |
| Plaintiff, § § | |
| VS. § | Civil Action No. 4:23-cv-01043-O |
| § | |
| NORTH TARRANT INFRASTRUCTURE LLC, FERROVIAL CONSTRUCTION US CORP AND WEBBER LLC, § § § § § § | |
| Defendants. § | |

### MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff Liberty Mutual Fire Insurance Company's Motion for Summary Judgment, Amended Brief, and Appendix (ECF Nos. 24, 29, 26); Defendants North Tarrant Infrastructure, LLC, Ferrovial Construction US Corp., and Webber, LLC's Response and Brief (ECF Nos. 33–34); and Plaintiff's Reply (ECF No. 35). Also before the Court are Defendants' Motion for Summary Judgment and Brief (ECF Nos. 27–28); Plaintiff's Response (ECF No. 30); and Defendants' Reply and Brief (ECF Nos. 36–37).

Having considered the briefing and applicable law, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Summary Judgment (ECF No. 24), and **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (ECF No. 27). Specifically, the Court **DECLARES** that Plaintiff has no duty to defend Defendants in the underlying lawsuits. The question of Plaintiff's duty to indemnify is not ripe for adjudication.

**I.  BACKGROUND**[1]

In 2013, Liberty Mutual Fire Insurance Company ("Plaintiff") issued an insurance policy (the "Policy") to North Tarrant Infrastructure, LLC ("NTI"), Ferrovial Construction US Corp., and Webber, LLC (collectively, "Defendants") for a construction project Defendants were undertaking on a stretch of toll road. As it is written,

> This policy does not cover work conducted for any project other than the following North Tarrant Express.
>
> Segment 3A defined as:
>
> The project will rebuild 6.5 miles of the existing main lanes of I-35W, construct new, expanded frontage roads, and expand the highway with the addition of two TEXpress lanes (or managed toll lanes) in both directions, doubling the capacity of the highway. The 3A Segment extends from I-30 in downtown Fort Worth up to and through the I-35/I-820 Interchange.

The Policy was further limited to exclude coverage for "'bodily injury', . . . arising out of the rendering of or failure to render any professional services," including "[p]roviding engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and [p]roviding or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform."

The toll road opened in 2018. In 2021, after one of the worst winter storms in Texas history, a fatal pile-up occurred on the stretch of roadway involving more than 100 vehicles. Six people died, and, consequently, their estates, as well as dozens of injured individuals, filed lawsuits in state court. Defendants here are among the defendants in the underlying lawsuits.

Defendants are accused in the underlying lawsuits of, at a minimum, failing to maintain the roadway. Defendants, in turn, ask their insurer, Plaintiff, to defend them in the underlying

---

[1] Unless otherwise indicated, all facts are taken from the Parties' summary judgment briefing.

lawsuits. Plaintiff, believing the Policy it issued does not extend to the allegations in those lawsuits, filed this action in federal court, seeking a declaration that it has no duty to defend Defendants in those lawsuits. Plaintiff also seeks a declaration that it has no duty to indemnify Defendants. Both Parties filed Motions for Summary Judgment, and at the time those Motions were filed, there were 30 underlying lawsuits.

## II. LEGAL STANDARDS

### A. Summary Judgment

Here, the questions before the Court are purely legal in nature and contain no fact disputes. "Each party's summary judgment burden depends on whether it is addressing a claim or defense for which it will have the burden of proof at trial." *Shanze Enterprises, Inc. v. Am. Cas. Co. of Reading, PA*, 150 F. Supp. 3d 771, 776 (N.D. Tex. 2015). To be entitled to summary judgment on a matter for which it will have the burden of proof, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). When the summary judgment movant will not have the burden of proof at trial, it need only point a court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Eight-Corners Rule

As the Court is sitting in diversity, Texas law applies to this dispute. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) (discussing *Erie* doctrine). In Texas, when an insured is sued by a third party, the insurer's duty to defend is determined "solely from terms of the policy and the pleadings of the third-party claimant." *Gore Design Completions, Ltd. v. Hartford Fire Ins.*, 538 F.3d 365, 368 (5th Cir. 2008) (quoting *GuideOne Elite Ins. v. Fielder Rd.*

3

*Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006)). "If the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend." *Liberty Mut. Ins. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006).

The policy is to be interpreted using the same general principles as contracts. *Don's Bldg. Supply, Inc. v. OneBeacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008). When a policy contains unambiguous terms, a court will enforce it as written. *Id.* No words should be read into the policy, and the meaning of any phrase should be interpreted within the context of the policy. *Id.* If a policy has more than one reasonable interpretation, the ambiguity is resolved in favor of the insured. *Nat'l Union Fire Ins. v. Hudson Energy*, 811 S.W.2d 552, 555 (Tex. 1991).

"[T]he general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Gore Design Completions*, 538 F.3d at 368–69 (quoting *Nat'l Union Fire Ins. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997)). "Allegations are read liberally in favor of the insured." *Id.* at 369. "The duty to defend does not depend upon the truth or falsity of the allegations." *Id.* at 368.

"[W]hen the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an *exclusion* from coverage, there is no duty to defend." *Gulf States Ins. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994) (emphasis added). Texas law places the burden of proving that an exclusion applies on the insurer. *Gore Design Completions*, 538 F.3d at 370.

### III.  ANALYSIS

Defendants want Plaintiff, their insurer, to cover the costs of their defense in the underlying lawsuits. Plaintiff seeks a declaration from this Court that it has no duty to defend or indemnify

4

Defendants if they are ultimately held liable. "The duty to indemnify is separate and distinct from the duty to defend." *Gilbane Bldg. v. Admiral Ins.,* 664 F.3d 589, 601 (5th Cir. 2011) (citing *Zurich Am. Ins. v. Nokia, Inc.*, 268 S.W.3d 487, 490–91 (Tex. 2008)). "The duty to defend is circumscribed by the eight-corners doctrine; the duty to indemnify, on the other hand, is controlled by the facts proven in the underlying suit." *Id.* (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins.*, 279 S.W.3d 650, 656 (Tex. 2009)). Because the duties must be taken separately, the Court addresses Plaintiff's duty to defend first.

### A. Duty to Defend

The Parties agree that Plaintiff's duty to defend can be resolved under the Eight-Corners Rule, in which the Court decides whether the Policy's coverage extends to the conduct alleged in the underlying lawsuits. But the Parties advance different interpretations of both the Policy and the allegations in the underlying lawsuits, so the Court resolves those disagreements before deciding Plaintiff's duty to defend.

#### 1. The Policy

Plaintiff argues that "[t]he claims against Defendants in the Underlying Lawsuits are all specifically excluded" by two exclusionary provisions in the Policy.[2] Plaintiff, as the insurer, has the burden of proving that those exclusions negate coverage. *Gore Design Completions*, 538 F.3d at 370. The exclusions are as follows:

##### i. Designated Work Exclusion

The Policy excludes coverage for "bodily injury . . . arising out of"[3] "work conducted for any project other than the following North Tarrant Express. [sic] Segment 3A defined as:"

---

[2] Pl.'s Am. Br. Supp. Mot. Summ. J. 11, ECF No. 29.
[3] Br. Supp. Defs.' Mot. Summ. J. 6, ECF No. 28. The exclusion incorporates by reference a separate description of "work," hence the break in quotations here.

5

> The project will rebuild 6.5 miles of the existing main lanes of I-35W, construct new, expanded frontage roads, and expand the highway with the addition of two TEXpress lanes (or managed toll lanes) in both directions, doubling the capacity of the highway. The 3A Segment extends from I-30 in downtown Fort Worth up to and through the I-35/I-820 Interchange.[4]

In other words, the Policy only includes coverage for bodily injury arising out of work conducted for the project. The exclusion defines what is excluded by reference to what is included.

The Parties agree this is how the Policy should generally be read, but they disagree as to the operative words. Plaintiff emphasizes the verbs in the project description—construct, rebuild, and expand—and argue that only work related to the construction, rebuilding, or expansion of the roadway is covered.[5] Defendants argue the operative word is "project," and they define the project by its geographic scope, such that any work conducted on that stretch of roadway should be covered.[6]

"Texas law has consistently held that, if an insurance coverage provision is susceptible to more than one reasonable interpretation, the court must interpret that provision in favor of the insured, so long as that interpretation is reasonable." *In re Deepwater Horizon*, 728 F.3d 491, 499 (5th Cir. 2013) (citing *Nat'l Union Fire Ins.*, 811 S.W.2d at 555). Thus, here, because Defendants are the insured, the Court must accept their interpretation of the Policy if it is reasonable.

Taken as a whole, the project is defined as a set of specific tasks *within* a geographic location. Defendants' interpretation ignores the discrete set of tasks the project entails and thus fails to interpret the project in its complete context. *See Don's Bldg. Supply*, 267 S.W.3d at 23 ("No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions." (citation omitted) (alteration in original)). Moreover, under

---

[4] *Id.* at 7.
[5] Pl.'s Am. Br. Supp. Mot. Summ. J. 11, ECF No. 29.
[6] Br. Supp. Defs.' Mot. Summ. J. 12, ECF No. 28.

Defendants' interpretation, the Policy would necessarily cover all work on the physical stretch of highway, regardless of the nature of the work or when it occurs. This would make a nullity of the Policy. Therefore, Defendants' interpretation is unreasonable, and the Court adopts Plaintiff's interpretation of the Policy.

### ii. Professional Liability Exclusion

Plaintiff argues that there is an additional limitation on liability in the Professional Liability exclusion.[7] The Policy also "does not apply to 'bodily injury', . . . arising out of the rendering of or failure to render any professional services."[8] The Policy then defines professional services as architectural and engineering services—not construction services.[9] Accordingly, Plaintiff argues, "liability arising from any alleged work by the named insureds involving the design of the roadway is also excluded from coverage under the Policy."[10] Defendants do not contest this interpretation of the Professional Liability exclusion, but they disagree that it applies to this dispute.

### 2. Allegations

The "work" that allegedly caused the accidents is appropriately defined by reference to the underlying lawsuits, specifically, the factual allegations on which the third-party plaintiffs base Defendants' liability. "[I]n reviewing the underlying pleadings, the [C]ourt must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins.*, 939 S.W.2d at 141 (citation omitted); *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied, 864 S.W.2d 491

---

[7] Pl.'s Am. Br. Supp. Mot. Summ. J. 19–20, ECF No. 29.
[8] *Id.* at 8.
[9] *Id.* at 8–9.
[10] *Id.* at 20.

(Tex. 1993)) ("It is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct." (emphasis in original)).

Plaintiff frames the allegations as Defendants' failure to maintain the roadway.[11] Defendants likewise frame the allegations in the underlying lawsuits as failure to maintain the roadway, but *additionally* argue that each underlying lawsuit makes allegations relating to defects.[12] Defendants note that the underlying lawsuits do not specify whether the defects are construction or design defects.[13] And given this ambiguity, the Court should infer the third-party plaintiffs pleaded construction defection claims, because the entity that constructed the roadway—NTI—was included as a defendant in the underlying lawsuits (and because the Court should draw all reasonable inferences in favor of the insured).[14]

But the Court finds no support for Defendants' theory that the defects are construction defects, because "the *facts* giving rise to the alleged actionable conduct" simply do not support that inference. *Adamo*, 853 S.W.2d at 676 (emphasis in original). The underlying lawsuits never discuss Defendants' negligence in the context of faulty construction. Rather, all facts in the underlying lawsuits concern Defendants' acts and omissions with respect to the weather events that contributed to the accident.[15] Every lawsuit alleges Defendants were contractually responsible for operating, maintaining, and treating the express lanes where the accident occurred, and they were negligent in performing those duties. Most of those acts and omissions were in the hours

---

[11] *Id.* at 11–12.
[12] Br. Supp. Defs.' Mot. Summ. J. 4–5, 18–19, ECF No. 28.
[13] Defs.' Reply Br. Supp. Mot. Summ. J. 10, ECF No. 36.
[14] Defs.' Reply Br. Supp. Mot. Summ. J. 18–19, ECF No. 36. It matters whether they are labeled as construction or design defects, because Parties seem to agree that construction defects would be covered under the Policy. But if they were allegations of design defects, Plaintiff properly notes that they would be excluded from coverage by the Professional Liability exclusion. *See* Pl.'s Am. Br. Supp. Mot. Summ. J. 19–20, ECF No. 29; Pl.'s Br. Resp. Defs.' Mot. Summ. J. 8, ECF No. 30.
[15] *See generally* App. Pl.'s Mot. Summ. J. Exs. B-1–31, App. 169–1066, ECF No. 26.

leading up to the accident. But even those suggesting earlier negligence do not implicate the construction of the roadway.

For example, Defendants cite to a lawsuit that alleges "the area [was] known to accumulate precipitation on the roadway"[16] to conclude that "improper/inadequate drainage is a construction defect."[17] But that is an improper inference to draw from the lawsuit. In context, the lawsuit alleges that Defendants were negligent because they did not "proactively [*i.e.*, in real time] deploy resources to minimize delays and safety hazards due to . . . ice . . . ," because they had no winter maintenance plan in place, and because they otherwise failed to comply with industry-best practices for monitoring weather conditions on roadways.[18] If anything, failure to implement "state-of-the-art technology" to measure ice build-up could suggest a design defect, which is excluded by the Professional Liability exclusion.[19] But the Court cannot interpret the allegations as construction defects when there is no basis for such an interpretation.

Therefore, the Court agrees with Plaintiff that the allegations in the underlying lawsuits unequivocally concern Defendants' maintenance and operation of the roadway.

### 3. No Duty to Defend

Having resolved the Parties' disputes over the "eight corners" under consideration—both the Policy and the allegations in the underlying lawsuits—the Court turns to Plaintiff's duty to defend. Summarizing the language of the Policy, Plaintiff would have a duty to defend if the injuries arose out of work conducted for the project. The underlying lawsuits establish the "work" that allegedly caused the injuries—as the Court explained, Defendants' negligent maintenance and operation of the roadway. And for the purpose of this analysis, the Court need not determine the

---

[16] *Id.* at App. 471, ¶ 89.
[17] Br. Supp. Defs.' Mot. Summ. J. 19, ECF No. 28.
[18] App. Pl.'s Mot. Summ. J. Ex. B-11, App. 466–73, ECF No. 26.
[19] *Id.* at App. 472, ¶ 90; *see infra* Section III.A.1.ii.

9

truth of those allegations. *See Gore Design Completions*, 538 F.3d at 368 ("The duty to defend does not depend upon the truth or falsity of the allegations."). The only remaining question is whether Defendants' maintenance and operation of the roadway was "*for* the project."

Plaintiff's understanding of work "for the project" is work conducted to rebuild, expand, and construct the roadway.[20] It defines the project by a discrete set of tasks and argues that any "work" after those tasks have been completed is specifically excluded.[21] The Court agrees that it is temporally not possible for "operation" and "maintenance" to be "for" the purpose of rebuilding, constructing, and expanding the roadway. Defendants argue that "maintenance could not logically occur 'but for' the initial rebuilding, construction, and expansion of that stretch of the roadway."[22] Although this statement is technically true, it is not a restatement of the Policy's causal requirement, which is that work (operation and maintenance) must be conducted for the tasks specified (rebuilding, constructing, and expanding). The underlying lawsuits maintain that the toll road opened in 2018, so the tasks defined in the "project"—"rebuild[ing], construct[ing], and expand[ing]"—would have been complete by then.[23] Any "work" thereafter relating to operation and maintenance of the roadway could not have been "for" the project, so Plaintiff has no duty to defend.

4. **Duty to Indemnify**

Because liability may or may not be established in an underlying lawsuit, the general rule is that an insurer's duty to indemnify cannot be determined until the underlying suit has been resolved. *See Colony Ins. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011). Given that the underlying lawsuits are still pending, Defendants argue the question of Plaintiff's duty to

---

[20] Pl.'s Am. Br. Supp. Mot. Summ. J. 1, ECF No. 29.
[21] Pl.'s Br. Resp. Defs.' Mot. Summ. J. 5–6, ECF No. 30.
[22] Br. Supp. Defs.' Mot. Summ. J. 17, ECF No. 28.
[23] *See, e.g.*, App. Pl.'s Mot. Summ. J. Ex. B-11, App. 468, ECF No. 26.

indemnify is not ripe.[24] Plaintiff relies on *Farmers Texas County Mutual Insurance Company v. Griffin*, which establishes an exception to this general rule, to argue that that it is impossible for any set of facts to develop that would implicate coverage under the Policy, and thus, the Court can declare that Plaintiff has no duty to indemnify now.[25] 955 S.W.2d 81, 84 (Tex. 1997) (holding no duty to indemnify because "[n]o facts c[ould] be developed in the underlying tort suit that c[ould] transform a drive-by shooting into an 'auto accident'").

But the Fifth Circuit and Texas Supreme Court have cautioned against the "over-application" of *Griffin*. *Liberty Mut. Fire Ins. v. Copart of Connecticut, Inc.*, 75 F.4th 522, 536–37 (5th Cir. 2023) (citing *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins.*, 300 S.W.3d 740, 744–45 (Tex. 2009)). The Court agrees with Defendants that the issue of indemnification is not ripe, as there is some possibility that "the facts adduced at trial might differ from the allegations, and thus, a duty to indemnify could be shown notwithstanding the absence of a duty to defend." *Colony Ins. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011). For example, because the third-party plaintiffs include NTI as a defendant, it is possible that they could still advance facts pertaining to construction defects, even if such facts are not found in the pleadings. Accordingly, the Court **DENIES** Plaintiff's request for declaratory judgment that it has no duty to indemnify, to the extent that the issue is not ripe.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Summary Judgment (ECF No. 24), and **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (ECF No. 27). Specifically, the Court **DECLARES**

---

[24] Br. Supp. Defs.' Mot. Summ. J. 21–23, ECF No. 28.
[25] Pl.'s Br. Resp. Defs.' Mot. Summ. J. 9–10, ECF No. 30.

that Plaintiff has no duty to defend Defendants in the underlying lawsuits. The question of Plaintiff's duty to indemnify is not ripe.

    **SO ORDERED** this **19th day** of **March, 2025**.

*[Signature: Reed O'Connor]*
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**